# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REPRESENTATIVES DAWN KEEFER,
TIMOTHY BONNER, BARRY JOZWIAK,
BARBARA GLEIM, JOSEPH HAMM,
WENDY FINK, ROBERT KAUFFMAN,
STEPHANIE BOROWICZ, DONALD
(BUD) COOK, PAUL (MIKE) JONES,
JOSEPH D'ORSIE, CHARITY KRUPA,
LESLIE ROSSI, DAVID ZIMMERMAN,
ROBERT LEADBETER, DANIEL MOUL,
THOMAS JONES, DAVID MALONEY,
TIMOTHY TWARDZIK, DAVID ROWE,
JOANNE STEHR, AARON BERSTINE,
KATHY RAPP, SENATOR CRIS DUSH—
ALL PENNSYLVANIA LEGISLATORS,

          Plaintiffs,

-vs-

JOSEPH R. BIDEN, IN HIS OFFICIAL
CAPACITY AS THE PRESIDENT OF THE
UNITED STATES, OR HIS SUCCESSOR;
JOSH SHAPIRO, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF
PENNSYLVANIA, OR HIS SUCCESSOR;
AL SCHMIDT, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF
THE COMMONWEALTH, OR HIS
SUCCESSOR; JONATHAN MARKS, IN HIS
OFFICIAL CAPACITY AS THE DEPUTY
SECRETARY FOR ELECTIONS AND
COMMISSIONS, OR HIS SUCCESSOR,

          Defendants

COMPLAINT

FILE NO:_____

Erick G. Kaardal (MN No. 229647)        Karen DiSalvo (PA No. 80309)
**Mohrman, Kaardal & Erickson, PA**        **Election Research Institute**
150 South Fifth Street                     Of Counsel, Mohrman, Kaardal & Erickson
Suite 3100                                 1451 Quentin Road, Suite 232
Minneapolis, MN 55402                      Lebanon, PA 17042
kaardal@mklaw.com                          kd@election-institute.com
Attorneys for Plaintiffs                   Attorney for Plaintiffs

Plaintiffs, by and through their undersigned counsel, respectfully allege and represent the following for their Complaint.

1.      The Plaintiffs seek prospective declaratory and injunctive relief to establish their federal rights under the Electors Clause and Elections Clause of the U.S. Constitution against the above-named Defendants, who are federal and state executive branch officials, to exercise their Constitutional rights to be participants in the law-making process regulating federal elections for President and Congress.

2.      The Defendants have each unconstitutionally excluded Plaintiffs from the law-making process regulating federal elections for President and Congress as further explained below.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution of the laws of the United States.

4.      This Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1346(a)(2), and 42 U.S.C. § 1983.

5.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

6.      Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiffs' claims against Defendants occurred in the state of Pennsylvania.

## PARTIES

7.      Plaintiffs are all Pennsylvania Legislators. All Plaintiffs are elected officials who represent constituents within their respective legislative districts, and each is responsible, on behalf of their constituents, for the drafting or passage of laws for enactment, including election laws affecting elections of federal officials. Plaintiffs are also voters and taxpayers in Pennsylvania.

8.      As state legislators, plaintiffs have particular civil rights that are specifically granted to only 253 "real persons" in the Commonwealth of Pennsylvania.

9.      Defendant Joseph R. Biden is the President of the United States. He is the chief executive officer for the United States of America. As such, he is responsible for implementing and enforcing the laws written by Congress.

10.      Defendant Josh Shapiro is the Governor of Pennsylvania. He is the chief executive officer for the State of Pennsylvania with the duty to execute and enforce the law.

11.      Defendant Al Schmidt is the Secretary of State. He is designated as the Commonwealth's Chief Election Official and thus has certain duties imposed upon him by the election code which are established by the legislature.

12.      Defendant Jonathan Marks is the Deputy Secretary for Elections and Commissions.

13.      Defendant Al Schmidt and Defendant Jonathan Marks are both within the executive office of the Pennsylvania Department of State.

14.      The above-named Defendants or their successors are sued in their official capacity only.  The above-named Defendants are not sued for damages, but for prospective declaratory and injunctive relief only.

## FACTUAL ALLEGATIONS

15.     The Electors Clause of the U.S. Constitution, Article II, Section 1, Clause 2, states:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress; but no Senator or Representative, or person holding an Office of Trust or Profit under the United States shall be appointed an Elector.

16.     The election for President and Vice President will be held on November 5, 2024.

17.     At the Constitutional Convention of 1787, one of the most important decisions made was the incorporation of the Electors Clause which involved the appointment of electors to elect the President and Vice President.

18.     The Constitutional Convention delegates adopted the Electors Clause late in the Convention, having reached no agreement regarding direct election by the people for president and vice-president.

19.     The Electors Clause was a compromise between selecting the President pursuant to a popular election or leaving Congress to determine the President.

20.     Justice Joseph Story, in his *Commentaries on the Constitution of the United States*, explained that the Framers viewed having an electoral college select the President rather than Congress would commit the decision "to persons, selected for that sole purpose . . . instead of persons, selected for the general purposes of legislation," --Joseph Story, Commentaries on the Constitution 3: § 1450 (1833).

21.     The Electors Clause of the U.S. Constitution is a direct grant of federal authority to state legislatures to determine the manner of conducting presidential selection in their respective states.

22.     The Electors Clause is similar to the U.S. Elections Clause in they both grant a particular federal power to state legislatures.

23.     The Elections Clause authorizes the state legislatures to regulate times, places and manners of Congressional elections, but subject to Congressional enactments:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const., Art. I, Sec. 4, Cl. 1.

24.     The Electors Clause, applying only to presidential elections, does not make the federal authority granted to state legislatures subject to Congressional enactments like the Elections Clause does. Accordingly, the Electors Clause grants state legislatures the vested plenary federal authority to enact statutes governing presidential elections.

25.     The state legislature under the Elections Clause and the Electors Clause is the entity assigned particular authority by the Federal Constitution.

26.     It is the legislature that must provide a complete code for congressional elections including regulations relating to registration of voters.

27.     The Pennsylvania Constitution, Article II, Section 1, provides that legislative power is vested in the Senate and House of Representatives which are two associations of elected legislators who enact laws subject to the Governor's veto.

28.     Article VII, Section 1 of the PA Constitution provides:

> Every citizen 21 years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.[1]

29.     Therefore, under the Electors Clause, the Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislators, as part of two associations called the senate and the

---

[1] The age at which a citizen is entitled to vote was subsequently changed from 21 to 18 years of age.

house of representatives, respectively, must enact laws, subject to the Governor's veto, to regulate the times, places, and manner of Presidential and Congressional elections.

30.     Thus, Plaintiffs, as state legislators, have federal civil rights under the Electors Clause and the Elections Clause to oversee and participate in making legislative decisions regulating the times, places, and manner of federal Presidential and Congressional elections.

31.     Under the Elections Clause, but not the Electors Clause, Congress can enact federal laws preempting state legal provisions regulating the times, places, and manner of Congressional elections.

32.     But, Congressional enactments are the only exception in the Elections Clause to the state legislators' federal rights to oversee and participate in making legislative decisions regulating the times, places, and manner of federal Congressional elections.

33.     Article VII, Section 1 of the Pennsylvania Constitution clearly places the duty of passing laws involving the registration of electors on the General Assembly.

34.     The Defendants have all violated the legislators' rights by unconstitutionally excluding Plaintiffs from the law-making process regulating federal elections for President and Congress as further explained below.

35.     First, on March 7, 2021, President Biden signed Executive Order 14019 on "Promoting Access to Voting."

36.     Executive Order 14019 is not legally authorized by any Congressional enactment.

37.     The President of the United States does not have the power to regulate the time, place, and manner of Presidential or Congressional elections in Pennsylvania.

38.     The PA state legislators have, through proper legislative acts, passed a law that prohibits the influence of third party entities in elections – Biden's Executive order contradicts Pennsylvania state election laws.

6

39.     President Biden does not have the unilateral power to oversee and participate in making legislative decisions regarding the time, place, and manner of Presidential and Congressional elections, including the registration of electors in Pennsylvania.

40.     The President of the United States does not have the power to usurp the authority of Pennsylvania legislators with regard to the registration of Pennsylvania voters, as Article VII, Section 1 of the Pennsylvania Constitution clearly places the duty of "regulating the registration of electors" on the General Assembly.

41.     Second, on September 19, 2023, Governor Shapiro announced that he was unilaterally implementing automatic voter registration in Pennsylvania.

42.     Governor Shapiro's automatic voter registration is not legally authorized by any state law.

43.     Pennsylvania state legislators have, through proper legislative acts, declined to pass a law authorizing automatic voter registration in Pennsylvania.

44.     Governor Shapiro does not have the power to regulate the time, place, and manner of Presidential and Congressional elections.

45.     The Governor does not have the power to legislate or to make law, to abrogate law, or even to interpret law. The function of the executive branch is to execute in a manner that is consistent with constitutional and statutory provisions.

46.     Governor Shapiro's edict instituting automatic voter registration in Pennsylvania is inconsistent with existing Pennsylvania law.

47.      Governor Shapiro does not have the unilateral power to oversee and participate in making legislative decisions regarding the times, places, and manner of Presidential and Congressional elections, including the registration of electors in Pennsylvania.

48.     Governor Shapiro does not have the power to usurp the authority of Pennsylvania legislators with regard to regulating the registration of Pennsylvania voters, as Article VII, Section 1 of the Pennsylvania Constitution clearly places the duty of "regulating the registration of electors" on the General Assembly.

49.     Third, the Pennsylvania Department of State has issued and continues to issue numerous directives that contradict laws established by the legislators, including a 2018 "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications."

50.     The Pennsylvania Department of State does not have the power to regulate the time, place, and manner of Presidential or Congressional elections.

51.     The Secretary of the Commonwealth and other members of the executive branch, do not have the power in Pennsylvania to interpret law but simply must execute it.

52.     Pennsylvania state legislators have, through proper legislative acts, passed a law regarding verification of information on voter registration applications. Directives issued by the executive branch through the Department of State contradict state election laws.

53.     The Pennsylvania Department of State does not have the unilateral power to oversee and participate in making legislative decisions regarding the times, places, and manner of Presidential or Congressional elections, including the registration of electors in Pennsylvania.

54.     The Pennsylvania Department of State does not have the power to usurp the authority of Pennsylvania legislators with regard to regulating the registration of Pennsylvania voters, as Article VII, Section 1 of the Pennsylvania Constitution clearly places the duty of "regulating the registration of electors" on the General Assembly.

55.     In summary, the U.S. Constitution assigns the legal authority of regulating the time, place, and manner of Presidential and Congressional elections to state legislators.

56.     The US Constitution operates as a limitation upon the State in respect to any attempt to circumscribe legislative power to regulate federal elections. Rule changes by executive officials who lack authority to do so are severely damaging the separation of powers and the electoral system on which our self-governance so heavily depends.

57.     The President, the Governor, the Department of State through the Secretary of the Commonwealth and the Deputy Secretary for Elections and Commissions, have repeatedly violated and continue to violate the Electors Clause and Elections Clause by usurping the rights of the state legislators by changing Pennsylvania election laws via Executive Orders, edicts, and directives without the state legislators' participation.

58.     Plaintiffs seek to protect their Constitutional rights and put an end to these unlawful executive actions "**before the consequences become catastrophic**."

## COUNT I

**President's Violations of the State Legislators' Federal Rights Under the U.S. Constitution's Electors Clause and Elections Clause**

59.     Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

60.     On March 7, 2021, President Biden signed Executive Order 14019 which is not legally authorized by any Congressionally-enacted law.

61.     Executive Order 14019 requires all federal agencies to develop a plan to increase voter registration, and increase voter participation, or get out the vote (hereinafter GOTV) efforts.

62.     In 2022, in response to EO 14019, the U.S. Department of Health and Human Services announced that federal health centers located across the country, including in the state of Pennsylvania, "have discretion to participate in activities, including voter registration activities, that

are outside the scope of the Health Center Program project, so long as the health centers' efforts in carrying out the Health Center Program project are not impaired." HHS, Voter Registration and Health Centers (See https://bphc.hrsa.gov/compliance/scope-project/voter-requirements)(last visited: Jan. 20, 2024). "Such voter registration activities may include making available voter registration materials to patients, encouraging patients to register to vote, assisting patients with completing registration forms, sending completed forms to the election authorities, providing voter registration materials in waiting rooms, and allowing private, non-partisan organizations to conduct on-site voter registration." Id.

63.     In response to EO 14019, the U.S. Department of Housing and Urban Development likewise instructed more than 3000 public housing authorities, which manage approximately 1.2 million public housing units, across the country, including in the state of Pennsylvania, to run voter registration drives in those units. See Fred Lucas, HUD Pushes Voter Registration Drives in Public Housing Under Biden's Executive Order, The Daily Signal (2022), https://www.dailysignal.com/2022/04/27/hud-pushes-voter-registration-drives-in-public-housing-under-bidens-executive-order/ (last visited: Jan. 20, 2024). Federal housing officials also advised the local agencies on how to apply to become a "voter registration agency under the National Voter Registration Act," and how to set up drop boxes for ballots on the premises. Id.

64.     In response to EO 14019, the U.S. Department of Education, which last year sent a "dear colleague" letter to universities, including those located in the state of Pennsylvania, directing them to use Federal Work Study funds "to support voter registration activities," whether they occur "on or off-campus." Federal Student Aid, (GEN-22-05) Requirements for Distribution of Voter Registration Forms, https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2022-04-21/requirements-distribution-voter-registration-forms (last visited: Jan. 20, 2024).

65.     In response to EO 14019, the U.S. Department of Agriculture has issued letters to state agencies administering SNAP and WIC programs, including those located in the state of Pennsylvania, instructing them to carry out voter-registration activities with federal funds. See The White House,  https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/24/fact-sheet-biden-harris-administration-releases-report-on-native-american-voting-rights/ (last visited: Jan. 20, 2024).

66.     Additionally, in response to EO 14019, the U.S. General Services Administration has announced that federally-owned buildings, including those located in the state of Pennsylvania, are now available for voter registration drives by third-party organizations, regardless of whether the agency or agencies that own or operate out of those buildings have received an NVRA designation. See GSA, *Federal Meeting Facilities: Use by federal agencies*, https://www.gsa.gov/policy-regulations/policy/real-property-policy-division-overview/federal-meeting-facilities#vote (last visited: Jan. 20, 2024).

67.     EO 14019 directs *all* non-independent executive agencies to engage in voter registration and to solicit and facilitate third-party organizations to conduct voter registration on agency premises, including those located in the state of Pennsylvania, so it is certain that other agencies are carrying out similar efforts without disclosing their unlawful activities to the public or to the Pennsylvania state legislature.

68.     EO 14019 requires all federal agencies to identify and partner with specified partisan third party organizations chosen by the Biden administration whose names and roles are not transparent but are willfully withheld from the public.

69.     Under Executive Order 14019, taxpayer resources can be used to support the efforts of the third-party partners to do voter registration drives and GOTV activities.

70.     The Executive Order requires agencies to distribute voter registration and vote-by-mail ballot application forms.

71.     The Executive Order directs agencies to assist applicants in completing voter registration and vote-by-mail ballot application forms.

72.     The Executive Order directs agencies to solicit third-party organizations and directs state officials to provide voter registration services on agency premises.

73.     Typically, private parties – including plaintiffs, campaigns, political parties, and organizations – conduct voter registration drives as acknowledged and regulated by federal campaign finance laws.

74.     Federal campaign finance laws apply to private parties' voter registration activities. 11 C.F.R. § 100.133.

75.     Voter registration drives and GOTV are a federally recognized private function, not a government function.

76.     But, Biden's Executive Order requires agencies to develop plans for government-sponsored voter registration drives run by federal agencies and undisclosed third-party organizations.

77.     The U.S. Election Assistance Commission has issued an advisory opinion that states that election officials are prohibited from using federal funds to conduct "voter registration drives."

> Neither Section 101 nor 251 funds may be used to conduct voter registration drives or get out the vote efforts; including advertising for the event, setting up booths, and paying salaries of employees who register new voters.

U.S. Election Assistance Commission Funding Advisory Opinion FAO-08-005. (Exhibit 1)

78.     Since FY 2006, Office of Inspector General (OIG) audits of HAVA grants have resulted in 19 recommendations and just over $1 million dollars in questioned costs related to government-sponsored voter registration drives and GOTV activities.

79.     Mississippi expended HAVA funds for GOTV and voter registration forms, which are not allowable under the award's terms and conditions or HAVA. (Exhibit 2)

80.     Florida charged salaries and benefits for poll workers serving at voter registration drives to HAVA grants, resulting in $139,056 in questioned costs. (Exhibit 3)

81.     South Dakota spent $1,474 in HAVA funds for letters containing a sample voter registration form to be distributed to K-12 students for voter education. Students in grades K-12 are not eligible voters, making the expense unallowable. (Exhibit 4)

82.     Colorado charged $315,830 to its HAVA grant for contractual services associated with a voter registration campaign, which included only an incidental educational component. As a result, the charges were questioned. (Exhibit 5)

83.     Further, federal campaign finance laws are premised on voter registration drives being conducted by private parties, not the government. See 11 C.F.R. Section 100.133.

84.     In 2022, Pennsylvania lawmakers passed Senate Bill 982 (also known as Act 88).

85.     Senate Bill 982 was designed, in part, to ban outside, third party financial support for Pennsylvania elections and to eliminate the influence of nongovernmental third party organizations from elections in the Commonwealth.

86.     Senator Phillips-Hill, in introducing the bill (SB 982) said, "No matter how well-intended, such outside support has the potential to unduly influence election procedures, policies, staffing, and purchasing, which in turn may unfairly alter election outcomes. Even more importantly, it stands to erode voter confidence in a pillar of our beloved democracy." See https://www.legis.state.pa.us//cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=S&SPick=202 10&cosponId=36370 (last visited: Jan. 20, 2024).

87.     Act 88 amended the Pennsylvania Election Code by adding Section 107 "Public Funding of Elections" prohibiting private funding:

(a) The cost and expense to State and local **governments relating to the registration of voters** and the preparation, administration and conduct of elections in this Commonwealth shall be funded **only upon lawful appropriation of the Federal, State and local governments**, and the source of the funding shall be limited to money derived from taxes, fees and other sources of public revenue.

(b) State and local **governments**, including their public officers, public officials, employees and agents, acting in their official capacity, **may not solicit**, apply for, enter into a contract for or receive or expend gifts, donations, grants or funding from any individual, business, organization, trust, foundation, or **any nongovernmental entity for the registration of voters** or the preparation, administration or conducting of an election in this Commonwealth. (Emphasis added).

88.   The state legislators voted to prevent outside organizations from potentially influencing government administration of elections including the registration of voters through large donations from private donors and NGOs.

89.   Certainly, outside organizations including campaigns and nonprofit organizations can and should –without collaboration with government agencies -- do compliant campaign related GOTV and voter registration drives.

90.   To ensure this separation and prevent outside influence, the Pennsylvania legislature has specifically stated that any costs incurred by the government relating to the registration of voters "shall" be funded "only" through lawful appropriations.  Thus, ensuring the oversight of the state legislature. No funds have been appropriated to support Biden's Executive Order 14019. Therefore, it is a violation of Pennsylvania law.

91.   The law prohibits public officials from entering into agreements with third party entities for the registration of voters or the administration of elections.

92.   Biden's EO 14019, which was largely drafted by a third party, nongovernmental organization, requires public officials to solicit and enter into partnership agreements with third-party

nongovernmental organizations to conduct voter registration drives and get-out-the-vote activities. See: https://www.demos.org/policy-briefs/executive-action-advance-democracy-what-biden-harris-administration-and-agencies-can (last visited: Jan. 23, 2024)

93.      The executive action taken by the President, nullifies the votes of the individual legislators, violates the Electors Clause, violates the Elections Clause, and deprives the legislators of their particular rights.

94.      The legislators have suffered and continue to suffer an injury-in-fact because the President has denied them a voting opportunity to which the Constitution entitles them.

95.      The injury is traceable to the President's conduct because he has taken actions to impact the conduct of his own election and in doing so has denied the legislators their Constitutional rights.

96.      The injury can only be redressed by a favorable judicial decision which restores their authority to determine the manner of elections in the Commonwealth.

97.      Biden's Executive Order 14019 gives agencies the ability to select third-party organizations, using unappropriated taxpayer funding, to register voters, distribute vote-by-mail ballots, and engage in get out the vote activities.

98.      The Pennsylvania Constitution provides that the legislative power is vested in the senate and the house of representatives. Pa. Const., Art. II, Sec. 1.

99.      The Pennsylvania Constitution vests the legislative power in the state senate and the house of representatives to regulate the registration of electors in Pennsylvania. Pa. Const., Art. VII, Sec. 1.

100.     Therefore, under the Electors Clause, Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has

the exclusive authority to enact laws, subject to the Governor's veto to regulate the times, places, and manner of Presidential and Congressional elections.

101.    Under the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto to regulate the manner in which voters are registered to vote.

102.    Accordingly, President Biden's Executive Order 14019 attempting to regulate the registration of Pennsylvania electors is unlawful.  The order should not be permitted to nullify the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections.

103.    Plaintiffs have standing under applicable federal statutes and rules of civil procedure to seek a declaratory judgment and related injunctive relief.

104.    Plaintiffs, as legislators, are injured by Defendants when they support or enforce election laws that circumvent or usurp the authority of the legislature.

105.    Plaintiffs under the Pennsylvania Constitution and state law have individual legislator standing to challenge usurpation of state legislative powers.

106.    Plaintiffs, as state legislators have federal rights under the Electors Clause and the Elections Clause to oversee and participate in making legislative decisions regulating the times, places and manner of Presidential and Congressional elections.

107.    Under the Elections Clause, but not the Electors Clause, Congress can enact federal laws preempting state legal provisions regulating the times, places and manner of federal elections.

108.    But, Congressional enactments are the only exception in the Elections Clause to the state legislators' federal rights to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections.

109.   Executive Orders announced unilaterally by the President which affect the times, places, and manner of federal elections, without legislative participation, including the debate and acts or actions of state legislators, is not an exception contemplated under the Electors Clause nor Elections Clause.

110.   Defendant Biden caused injury to Plaintiffs with his Executive Order No. 14019 changing Pennsylvania election law, which usurps the state legislature's powers and violates the state legislators' federal civil rights under the Electors Clause and the Elections Clause.

111.   Plaintiffs who draft, author, and support bills for passage in the state legislature are injured because the President's Executive Order is constitutionally invalid under the Electors Clause and the Elections Clause.

112.   A controversy exists between Plaintiffs and Defendants on the issue of whether President Biden's Executive Order 14019 involving the regulating of registration of Pennsylvania electors is a legally valid regulation of federal elections. The implementation and effect of the Executive Order is ongoing. Moreover, if permitted to stand, similar executive orders can be signed in the future, hence, the controversy is continuing.

113.   Defendant Biden causes injury to Plaintiffs when he supervises, misuses federal funds, or otherwise supports statewide unconstitutional Executive Orders.

114.   Plaintiffs as state legislators are uniquely injured by such illegal disbursement or illegal use of taxpayer funds because through this unconstitutional order, there is a violation of the state legislators' federal civil rights under the Electors Clause and the Elections Clause.

115.   Alternatively, Plaintiffs are also candidates on the ballot who will be impacted by the legally unauthorized changes made by President Biden.

116.   Alternatively, the Plaintiffs also have standing as voters to bring this lawsuit as Defendant caused injury by unnecessarily burdening Plaintiffs' voting rights when he signed Executive

Order 14019 giving federal agencies and third-party organizations, unprecedented power to make changes unilaterally and illegally to the manner of elections in Pennsylvania.

117.    Alternatively, the Plaintiffs also have standing as taxpayers to bring this lawsuit as Defendants use taxpayer funds to support and enforce his unconstitutional executive order governing federal elections, without legislative involvement.

118.    Plaintiffs seek prospective declaratory and injunctive relief against Executive Order 14019.

# COUNT II

**Governor's Violations of the State Legislators' Federal Rights Under the U.S. Constitution's Electors Clause and Elections Clause**

119.    Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

120.    Through a Press Release on September 19, 2023, Governor Shapiro announced automatic voter registration in Pennsylvania. (Exhibit 6). See:

https://www.governor.pa.gov/newsroom/governor-shapiro-implements-automatic-voter-registration-in-pennsylvania-joining-bipartisan-group-of-states-that-have-taken-commonsense-step-to-make-voter-registration-more-streamlined-and-secure/ (last visited: Jan. 20, 2024).

121.    Beginning on September 19, 2023, Commonwealth residents obtaining new or renewed driver licenses and ID cards are automatically registered to vote unless they opt out of doing so.

122.    The Governor's change is legally unauthorized because state legislative approval was not obtained for this change to Pennsylvania's voter registration process.

123.    The Governor, by edict, created automatic voter registration in Pennsylvania.

124.     Under the Electors Clause, Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto to regulate the times, places, and manner of Presidential and Congressional elections.

125.     The Pennsylvania Constitution provides that legislative power is vested in the senate and the house of representatives. Pa. Const., Art. II, Sec. 1.

126.     The Pennsylvania Constitution vests the legislative power in the state senate and the house of representatives to regulate the registration of electors in Pennsylvania. Pa. Const., Art. VII, Sec. 1.

127.     Under the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto to regulate the manner in which voters are registered to vote.

128.     Policy decisions regarding how one registers to vote in Pennsylvania have been clearly addressed by the Pennsylvania legislature.

An individual qualified to register to vote under section 1301(a) (relating to qualifications to register) may apply to register as follows:

(1) Under section 1322 (relating to in-person voter registration).
(2) Under section 1323 (relating to application with driver's license application).
(3) Under section 1324 (relating to application by mail).
(4) Under section 1325 (relating to government agencies).

25 Pa.C.S.A. § 1321.

129.     25 Pa.C.S.A. § 1323(a)(1) provides:

The Department of Transportation shall provide for simultaneous application for voter registration in conjunction with the process under 75 Pa.C.S. § 1510. An application under this subsection shall serve as an application to register to vote unless the applicant fails to sign the voter registration application. The secretary has the primary responsibility for implementing and enforcing the driver's license voter registration system created under this section. The secretary, in consultation with the Secretary of Transportation, may promulgate regulations for implementing this section.

130.     Section 1321 clearly requires an application for the registration process, whether relating to in-person voter registration, application with driver's license application, or application by mail.

131.     Through Section 1323, the Pennsylvania legislature appointed "the secretary" as the party responsible for "implementing and enforcing" the system that the legislature "created under this section."

132.     The process "relating to application with driver's license application" is defined in §1323(b) which states:

> 1)The Department of Transportation shall provide for an application for voter registration as part of a driver's license application.
> 2)The format of the driver's license/voter registration application shall be determined and prescribed by the secretary and the Secretary of Transportation.
> 3)The voter registration application portion of the application shall contain all the requirements of an official voter registration application specified in section 1327 (relating to preparation and distribution of applications).

25 Pa.C.S.A. § 1323(b).

133.     Under 25 Pa.C.S.A. § 1327(a)(1) the "secretary" is to prescribe the form for the official "voter registration application."

134.     The official voter registration application must contain a registration declaration and "the applicant" is required to affirm the information provided under penalty of perjury. See 25 Pa.C.S.A. § 1327(b)(2)(ii)(B) and 25 Pa.C.S.A. § 1327(b)(4).

135.     An application, by definition, is a formal request to an authority. It requires an overt action by the person.

136.     According to Merriam-Webster Dictionary, the term "apply" is defined as "to make an appeal or request especially in the form of a written application."

137.     Although not specifically defined in the Election Code, the General Assembly has defined the term "application" in other contexts. Specifically, in 7 Pa.C.S.A. § 6102, the term application is defined as "a request…"

138.     Moreover, the PA legislature has already established that failure to check a box is considered a declination to register.

25 Pa.C.S.A. § 1325(c) states:
Effect.—Failure to check either box under subsection (b)(3) shall be considered a declination to register to vote.

139.     Pennsylvania jurisprudence requires that the basic policy choices involved in legislative power actually be made by the legislature as constitutionally mandated. This constraint serves two purposes. First, it ensures that duly authorized and politically responsible officials make all of the necessary policy decisions, as is their mandate per the electorate. And second, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power.

140.     Governor Shapiro's edict is inconsistent with existing laws, and as such, is not legally authorized.

141.     Although "the secretary" was given the task of "implementing and enforcing" the driver's license voter registration system, the legislature clearly mandated that a voter register through an application process.

142.     According to Merriam-Webster Dictionary, the term "implement" is defined as to carry out or to accomplish. It does not mean to change or modify – but simply put into practice the lawfully enacted decisions made by the Pennsylvania legislature.

143.     The Governor does not have the power to legislate or to make law, to abrogate law, or even to interpret law. The function of the executive branch is to execute in a manner that is consistent with constitutional and statutory provisions.

21

144.    Pennsylvania's constitution clearly gives the responsibility for regulating the registration of electors to the legislative branch.

145.    Pennsylvania law regarding voter registration is clear. "An individual qualified to register to vote…may apply to register…" 25 Pa.C.S.A. § 1321.

146.    Where provisions of a statute are unambiguous, the agency charged with administering cannot amend statutory provisions through interpretation.

147.    Accordingly, Governor Shapiro's edict attempting to regulate the registration of Pennsylvania electors is unlawful.  This edict should not be permitted to nullify the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections.

148.    Governor Shapiro's edict is an abusive and capricious exercise of executive power which usurps the function of the Pennsylvania legislature.

149.    Automatic registration is inconsistent with existing requirements that individuals must "apply" to register in Pennsylvania.

150.     Through the years, several bills establishing automatic voter registration have been introduced but failed in the Pennsylvania legislature.

151.    For example, in January 2023, PA State Senator Hughes introduced Senate Bill 20 Amending Title 25 Elections of the PA Consolidated Statutes in an effort to enact automatic voter registration. Like similar bills in prior legislative sessions, the bill failed because the legislature and the citizens of Pennsylvania do not support automatic voter registration.

152.    Governor Shapiro circumvented the rights of the legislators and violated the U.S. Constitution and the Pennsylvania Constitution.

153.    Plaintiffs have standing under applicable federal statutes and rules of civil procedure to seek a declaratory judgment and related injunctive relief.

154.    Defendants are responsible for enforcement of laws governing elections, including federal elections.

155.    Plaintiffs, as legislators are injured by Defendants when they support or enforce election laws that circumvent or usurp the authority of the legislature.

156.    Defendants support and enforce laws edicts/announcements that violate the Electors Clause and Elections Clause because such edicts/announcements are not law and are legally null and void under the Electors Clause and Elections Clause when they directly or indirectly regulate federal elections.

157.    Plaintiffs have individual legislator standing under the Pennsylvania Constitution and law to challenge usurpation of state legislative powers.

158.    Plaintiffs, as state legislators, have federal civil rights under the Electors Clause and the Elections Clause, to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections.

159.    Under the Elections Clause, Congress can enact federal laws preempting state legal provisions regulating the times, places and manner of federal elections.

160.    But, Congressional enactments are the only exception in the Elections Clause to the state legislators' federal rights to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections.

161.    There is no such exception under the Electors Clause.

162.    Edicts announced by the Governor which affect the times, places, and manner of federal elections, without legislative participation, including the debate and acts or actions of state legislators, is not an exception contemplated under the Electors Clause nor the Elections Clause.

163.    Defendants caused injury to Plaintiffs when they announced changes to Pennsylvania laws regarding elections that usurped the state legislature's powers and violated the state legislator's federal rights under the Electors Clause and the Elections Clause.

164.    Plaintiffs who draft, author, and support bills for passage in the state legislature are injured because the Governor's edict is constitutionally invalid under the Electors Clause and the Elections Clause.

165.    The Governor's edict was not constitutionally enacted under the Electors Clause and the Elections Clause because state legislative approval and state legislator participation were not involved.

166.    A controversy exists between Plaintiffs and Defendants on the issue of whether Governor Shapiro's edict involving automatic voter registration is a legally valid regulation of federal elections. The implementation and effect of the edict is ongoing. Moreover, if permitted to stand, similar edicts can occur again in the future, hence, the controversy is continuing.

167.    Defendants cause injury to Plaintiffs when they supervise, fund, or otherwise support statewide unconstitutional edicts unilaterally announced by the Governor.

168.    Plaintiffs as state legislators are uniquely injured by such illegal disbursement or illegal use of taxpayer funds because through this unconstitutional edict, there is a violation of the state legislators' federal rights under the Electors Clause and the Elections Clause.

169.    Alternatively, Plaintiffs are also candidates on the ballot who will be impacted by the legally unauthorized changes made by the Governor.

170.    Alternatively, the Plaintiffs also have standing as voters to bring this lawsuit as Defendants cause injury by unnecessarily burdening Plaintiffs' voting rights when they supervise, fund, or otherwise support statewide automatic voter registration illegally.

171.     Alternatively, the Plaintiffs also have taxpayer standing to bring this lawsuit because Defendants use taxpayer funds to support and enforce this unconstitutional edict governing federal elections, without legislative involvement.

172.     Plaintiffs seek prospective declaratory and injunctive relief against the Governor's edict mandating automatic voter registration.

# COUNT III

### Department of State's Violations of the State Legislators' Federal Rights Under the U.S. Constitution's Electors Clause and Elections Clause

173.     Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

174.     The Secretary of the Commonwealth acting through the Pennsylvania Department of State issues "guidance" and "directives" that usurp the legislature's authority including a 2018 "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers For Voter Registration Applications." (Exhibit 7). See

https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/HAVA%20Matching%20Directive%202018.pdf (last visited: Jan. 20, 2024).

175.     This guidance, issued by the Department of State, instructs Pennsylvania counties to register applicants even if an applicant provides invalid identification.

176.     Based on the Department of State's directive, if an applicant simply affirms that they meet the age, citizenship, and the residency requirements to become a qualified elector, the applicant must be registered – regardless of verification of identity.

177.     The Department of State's Directive specifically states:

> Counties must ensure their procedures comply with state and federal law, which means that if there are no independent grounds to reject a voter registration application other

than a non-match, the application may *not* be rejected and must be processed like all other applications.

178.    This directive is in direct contravention of clearly established Pennsylvania law, which requires verification of both identity and eligibility.

179.    25 Pa.C.S.A. § 1328(a)(1) and (2)(i) and (ii) relating to the "Approval of Registration Applications" states:

> (a) Examination.—Upon receiving a voter registration application, a commissioner, clerk or registrar of a commission shall do all of the following:
>
> (1) Initial and date the receipt of the application.
>
> (2) Examine the application to determine all of the following:
>
> > (i) whether the application is complete.
> >
> > (ii) whether the applicant is a qualified elector.

180.    Under Pennsylvania law, an application must be rejected if incomplete or inconsistent.

181.    25 Pa.C.S.A. § 1328(b) specifically states:

> (b) Decision.—A commission shall do one of the following:
>
> (1) Record and forward a voter registration application to the proper commission if the commission finds during its examination under subsection (a) that the applicant does not reside within the commission's county but resides elsewhere in this Commonwealth.
>
> (2) Reject a voter registration application, indicate the rejection and the reasons for the rejection on the application and notify the applicant by first class nonforwardable mail, return postage guaranteed of the rejection and the reason if the commission finds during its examination under subsection (a) any of the following:
>
> > (i) the application was not properly completed and after reasonable efforts by the commission to ascertain the necessary information, the application remains incomplete or inconsistent.
> >
> > (ii) The applicant is not a qualified elector.

182.    When the Department of State unilaterally issued guidance to Pennsylvania counties, directing the counties to register voters regardless of whether the driver's license numbers or the last

four digits of the social security number match the records of PennDOT or the records of the Social Security Administration, thus eliminating any requirement for verification or confirmation of identity for new voters, it violated federal and state law.

183.    In its illegal directive, the Department of State references a district court case from the state of Washington as the justification for its overreach.

184.    *Washington Association of Churches v. Reed,* 492 F.Supp 2d 1264 (W.D. Wash. 2006), does not, however, stand for the proposition asserted by the Department of State.

185.    According to *Washington Association of Churches*, if the state is unable to match an applicant's driver's license or social security number, then the applicant "shall be **provisionally** registered to vote." Id. See Stipulated Final Order and Judgment of March 15, 2007, Paragraph (1)(c), (Exhibit 8).

186.    The Department of State's directive requires counties to process incomplete and inconsistent applications "like all other applications" and register the applicants with invalid identification.

187.     The Department of State's attempt to circumvent state and federal law through this directive is a *per se* violation of the legislators' federal rights under the Electors Clause and the Elections Clause because the state legislators are not and were not involved.

188.    The directive, unilaterally issued by the Department of State to Pennsylvania counties undermines the state legislature as "the entity assigned particular authority by the Federal Constitution" to regulate the times, places, and manner of Presidential and Congressional elections.

189.    The directive, unilaterally issued through the Department of State to Pennsylvania counties, directing the counties to process incomplete or inconsistent voter registration applications like all other applications violates clear provisions of Pennsylvania law.

190.    The Pennsylvania Constitution provides that the legislative power is vested in the senate and the house of representatives. Pa. Const., Art. II, Sec. 1.

191.    The Pennsylvania Constitution vests the legislative power in the state senate and the house of representatives to regulate the registration of electors in Pennsylvania. Pa. Const., Art. VII, Sec. 1.

192.    Therefore, under the Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto to regulate the times, places, and manner of federal elections subject only to Congressional enactments.

193.    Under the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto to regulate the manner in which voters are registered to vote.

194.    In contravention of clearly established Pennsylvania law regarding the regulation of elections, the Pennsylvania Department of State has issued a directive to counties to disregard state law in verifying the identify and eligibility of electors.

195.    Accordingly, the Department of State's "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" attempting to regulate the registration of Pennsylvania electors is unlawful.  This directive should not be permitted to nullify the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections.

196.    Plaintiffs have standing under applicable federal statutes and rules of civil procedure to seek a declaratory judgment and related injunctive relief.

197.    Defendants are responsible for enforcement of laws governing all elections, including federal elections.

198.     Plaintiffs, as legislators are injured by Defendants when they support or enforce election laws that circumvent or usurp the authority of the legislature.

199.     Defendants support and enforce directives that violate the Electors Clause and the Elections Clause because such directives are not law and are legally null and void under the Electors Clause and Elections Clause when they directly or indirectly regulate federal elections.

200.     Plaintiffs have individual legislator standing under the Pennsylvania Constitution and law to challenge usurpation of state legislative powers.

201.     Plaintiffs, as state legislators have federal civil rights under the Electors Clause and the Elections Clause, to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections.

202.     Under the Elections Clause, but not the Electors Clause, Congress can enact federal laws preempting state legal provisions regulating the times, places and manner of federal elections.

203.     But, Congressional enactments are the only exception in the Elections Clause to the state legislators' federal rights to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections.

204.     Directives issued by the Department of State which affect the times, places, and manner of federal elections, without legislative participation, including the debate and acts or actions of state legislators, is not an exception contemplated under the Elections Clause—nor under the Electors Clause.

205.     Defendants caused injury to Plaintiffs when they announced changes to Pennsylvania elections that usurped the state legislature's powers and violated the state legislator's federal civil rights under the Electors Clause and the Elections Clause.

206.     Plaintiffs who draft, author, and support bills for passage in the state legislature are injured because the Department of State's "Directive Concerning HAVA-Matching Drivers' License

or Social Security Numbers for Voter Registration Applications" is constitutionally invalid under the Electors Clause and Elections Clause.

207.    The Department of State's Directive was not constitutionally enacted under the Electors Clause and the Elections Clause because state legislative approval and state legislator participation were not involved.

208.    A controversy exists between Plaintiffs and Defendants on the issue of whether the Department of State's "Directive Concerning HAVA-Matching Drivers' License or Social Security Numbers for Voter Registration Applications" is a legally valid regulation of federal elections. The implementation and effect of the directive is ongoing. Moreover, if permitted to stand, similar directives can occur again in the future, hence, the controversy is continuing.

209.    Defendants cause injury to Plaintiffs when they supervise, fund, or otherwise support statewide unconstitutional directives unilaterally issued by the Department of State.

210.    Plaintiffs as state legislators are uniquely injured by such illegal disbursement or illegal use of taxpayer funds because through this unconstitutional edict, there is a violation of the state legislators' federal civil rights under the Electors Clause and the Elections Clause.

211.    Alternatively, Plaintiffs are also candidates on the ballot who will be impacted by the legally unauthorized changes made by President Biden.

212.    Alternatively, the Plaintiffs also have standing as voters to bring this lawsuit as Defendants cause injury by unnecessarily burdening Plaintiffs' voting rights when they supervise, fund, or otherwise support statewide illegal directives regarding voter registration applications.

213.    Plaintiffs also have taxpayer standing to bring this lawsuit because Defendants use taxpayer funds to support and enforce unconstitutional directives which govern federal elections without legislative involvement.

214.     Plaintiffs seek prospective declaratory and injunctive relief against Executive Order 14019.

## PRAYER FOR RELIEF

For the reasons stated in this complaint, the Plaintiffs, Pennsylvania Legislators, request that this Court grant the following relief:

1. Enter a declaratory judgment that President Biden's Executive Order 14019 is unconstitutional and violates the Electors Clause and the Elections Clause as it seeks to regulate the times, places and manner of Presidential and Congressional elections, and seeks to regulate the registration of Pennsylvania electors without the state legislature's approval and the state legislators' participation.

2. Issue an order granting injunctive relief enjoining President Biden from any actions funding, supporting, or facilitating Executive Order 14019 as it violates the Electors and Elections Clause and Art. VII, Section 1 of the Pennsylvania Constitution which gives the Pennsylvania General Assembly the power to "regulate the registration of electors…"

3. Enter a declaratory judgment that the edict or announcement by Governor Shapiro for the regulation of times, places, and manner of federal elections is unconstitutional and violates the Electors Clause and the Elections Clause because the state legislature's approval and the state legislators' participation are required.

4. Issue an order granting injunctive relief enjoining Defendants Shapiro, Schmidt, or Marks from any actions funding, supporting, or facilitating the edict or announcement regarding automatic voter registration as it violates the Electors and Elections Clause and Art. VII, Section 1 of the Pennsylvania Constitution which gives the General Assembly the power to "regulate the registration of electors…"

5. Enter a declaratory judgment that the directive issued by the Department of State in 2018 regarding the verification of the identity and eligibility of Pennsylvania voters is unconstitutional, violates the legislators' federal rights, and violates established laws; and,

6. Issue an order granting injunctive relief enjoining Defendants Shapiro, Schmidt, or Marks from any actions funding, supporting, or facilitating the "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" as this directive violates the Electors and Elections Clause and Art. VII, Section 1 of the Pennsylvania Constitution which gives the General Assembly the power to "regulate the registration of electors…"

7. Issue a declaratory judgment that Plaintiffs have prevailed on a 42 U.S.C. § 1983 claim;

8. Grant Plaintiffs their reasonable attorney fees, costs, and expenses incurred and authorized under 42 U.S.C. § 1988; and

9. Issue an order that prohibits the Defendants, all non-legislative executive officials, from making future changes to the election process in Pennsylvania without following the proper, lawful, legislative process.

10. Grant such other and further relief as is just and appropriate.

Respectfully submitted,

Dated: January 24, 2024              /s/Erick Kaardal
                                     By: Erick G. Kaardal (MN No. 229647)
                                     Mohrman, Kaardal & Erickson, P.A.
                                     150 South Fifth Street, Suite 3100
                                     Minneapolis, Minnesota 55402
                                     (612) 341-1074
                                     kaardal@mklaw.com

Dated: January 24, 2024            /s/Karen DiSalvo
                                   By: Karen DiSalvo (PA No. 80309)
                                   Election Research Institute
                                   Of Counsel, Mohrman, Kaardal & Erickson, P.A.
                                   1451 Quentin Road, Suite 232
                                   Lebanon, PA 17042
                                   717-281-1776
                                   kd@election-institute.com