

# U.S. ELECTION ASSISTANCE COMMISSION
## OFFICE OF INSPECTOR GENERAL

## FINAL REPORT:

### ADMINISTRATION OF PAYMENTS RECEIVED UNDER THE HELP AMERICA VOTE ACT BY THE MISSISSIPPI SECRETARY OF STATE

#### APRIL 10, 2003 THROUGH SEPTEMBER 30, 2015

**Report No.
E-HP-MS-01-16
August 2017**

Exhibit 2



**U.S. ELECTION ASSISTANCE COMMISSION**
1335 EAST-WEST HIGHWAY, SUITE 4300
SILVER SPRING, MD 20910
*OFFICE OF THE INSPECTOR GENERAL*

## MEMORANDUM

To:        Brian Newby
           Executive Director

From:      Patricia L. Layfield
           Inspector General

Date:      August 24, 2017

Subject:   Final Performance Audit Report - Administration of Payments Received
           Under the Help America Vote Act by the Mississippi Secretary of State
           (Assignment Number E-HP-MS-01-16)

We contracted with the independent certified public accounting firm of McBride, Lock & Associates, LLC to audit the administration of payments received under the Help America Vote Act (HAVA) by the Mississippi Secretary of State (MSSOS).

In its audit, McBride, Lock & Associates, LLC concluded that the Office generally accounted for and expended the HAVA funds in accordance with applicable requirements for the period from April 10, 2003 through September 30, 2015. However the following exceptions were identified:

1. The Office did not adequately support all salaries and wages charged to the grant award.

2. The Office did not provide adequate documentation to support allowability for certain expenditures.

3. The Office expended $66,878 of HAVA funds for purposes that are not allowable under the award's terms and conditions or HAVA regulations.

In the report, McBride, Lock & Associates, LLC summarized the MSSOS response to the reported recommendations, as well as their comments on the responses after the recommendations. The MSSOS office generally agreed with the findings and recommendations. The EAC indicated that it would work with the MSSOS to resolve the issues in the report. The MSSOS complete

Exhibit 2

response is included as Appendix A-1 and the EAC's complete response is included as Appendix A-2.

We would appreciate being kept informed of the actions taken on our recommendations as we will track the status of their implementation. Please respond in writing to the findings and recommendations included in this report by October 20, 2017. Your response should include information on actions taken or planned, targeted completion dates, and titles of officials responsible for implementation.

To fulfill our responsibilities under *Government Auditing Standards*, the Office of Inspector General:

- Reviewed McBride, Lock & Associates, LLC's approach and planning of the audit;

- Evaluated the qualifications and independence of the auditors;

- Monitored the progress of the audit at key points;

- Reviewed the audit report, prepared by McBride, Lock & Associates, LLC to ensure compliance with *Government Auditing Standards*; and

- Coordinated issuance of the audit report.

McBride, Lock & Associates, LLC is responsible for the attached auditor's report and the conclusions expressed in the report. We do not express any opinion on the conclusions presented in McBride, Lock & Associates, LLC's audit report.

The legislation creating the Office of Inspector General requires that we report to Congress semiannually on all audit reports issued, actions taken to implement our recommendations, and recommendations that have not been implemented.

If you have any questions regarding this report, please call me at (301) 734-3104.

Attachment

cc:     Director of Grants and Payments

Exhibit 2

# Performance Audit Report


**Administration of Payments Received Under the Help America Vote Act by the Mississippi Secretary of State**


Prepared for

**The United States Election Assistance Commission (EAC)
Office of Inspector General**



By

**McBride, Lock & Associates, LLC**

May 2017



## McBRIDE, LOCK & ASSOCIATES, LLC

CERTIFIED PUBLIC ACCOUNTANTS
KANSAS CITY


Exhibit 2

**Performance Audit Report**
**Administration of Payments Received Under the Help America Vote Act by the Mississippi Secretary of State**

## TABLE OF CONTENTS

| | Page |
|---|---|
| EXECUTIVE SUMMARY | 1 |
| BACKGROUND | 2 |
| AUDIT OBJECTIVES | 4 |
| SCOPE AND METHODOLOGY | 5 |
| AUDIT RESULTS | 5 |

APPENDICES:

Appendix A-1: Response of the Mississippi Secretary of State to the Draft Report

Appendix A-2: Response of the U.S. Election Assistance Commission to the Draft Report

Appendix B:   Audit Methodology

Appendix C:   Monetary Impact as of September 30, 2015

Exhibit 2

# U.S. Election Assistance Commission
# Performance Audit Report
# Administration of Payments Received Under the Help America Vote Act by
# the Mississippi Secretary of State

## EXECUTIVE SUMMARY

McBride, Lock & Associates, LLC was engaged by the United States Election Assistance Commission (EAC) Office of the Inspector General to conduct a performance audit of the Mississippi Secretary of State's Office (Office) from inception on April 10, 2003 through September 30, 2015 to determine whether the Office used payments authorized by Sections 101, 102, and 251 of the Help America Vote Act of 2002 (the HAVA) in accordance with HAVA and applicable requirements; accurately and properly accounted for property purchased with HAVA payments and for program income; maintained state expenditures at a level not less than the level maintained in the fiscal year ending prior to November 2000; and met HAVA requirements for Section 251 funds for an election fund and for a matching contribution.

In addition, the Commission requires states to comply with certain financial management requirements, specifically:

- Comply with the *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Government,* 41 CFR 105-71, (originally Office of Management and Budget Circular A-102, also known as the "Common Rule").

- Expend payments in accordance with cost principles set forth in *Cost Principles for State and Local Governments*, 2 CFR 225, (originally Office of Management and Budget Circular A-87) for establishing the allowability or unallowability of certain items of cost for federal participation.

- Follow the requirements of the Federal Cash Management and Improvement Act.

- Submit detailed annual financial reports on the use of Title I and Title II payments.

- Comply with the provisions of *Audits of States, Local Governments and Non-Profit Organizations* (Office of Management and Budget Circular A-133).

We conducted this performance audit in accordance with *Generally Accepted Government Auditing Standards*. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on the audit objectives.

Based on the audit procedures performed, except for the matters discussed below, we concluded that the Office generally accounted for and expended the Grant funds in accordance with the

1

Exhibit 2

requirements mentioned above for the period from April 10, 2003 through September 30, 2015. The exceptions are as follows:

1.  The Office did not adequately support all salaries and wages charged to the grant award.

2.  The Office did not provide adequate documentation to support allowability for certain expenditures.

3.  The Office expended $66,878 of HAVA funds for purposes that are not allowable under the award's terms and conditions or HAVA regulations.

We have included in this report as Appendix A, the Secretary of State's written response to the draft report. Such response has not been subjected to the audit procedures and, accordingly, we do not provide any form of assurance on the appropriateness of the response or the effectiveness of the corrective actions described therein.

## BACKGROUND

The Help America Vote Act of 2002 (HAVA) created the U.S. Election Assistance Commission (Commission) to assist States and insular areas (hereinafter referred to as States) with improving the administration of federal elections and to provide funds to States to help implement these improvements. The Commission administers payments to States authorized by HAVA under Titles I and II, as follows:

- Title I, Section 101 payments are for activities such as complying with HAVA requirements for uniform and nondiscriminatory election technology and administration requirements (Title III), improving the administration of elections for federal office, educating voters, training election officials and pool workers, and developing a State plan for requirements payments.

- Title I, Section 102 payments are available only for the replacement of punchcard and lever action voting systems.

- Title II, Section 251 requirements payments are for complying with Title III requirements for voting system equipment; and addressing provisional voting, voting information, Statewide voter registration lists, and voters who register by mail.

Title II also requires that states must:

- Have appropriated funds equal to five percent of the total amount to be spent for activities for which requirements payments are made.

- Maintain the expenditures of the State for activities funded by the requirements payment at a level that is not less than the expenditures maintained by the State for the fiscal year ending prior to November 2000.

Exhibit 2

- Establish an election fund for amounts appropriated by the State for carrying out activities for which requirements payments are made, for the Federal requirements payments received, for other amounts as may be appropriated under law and for interest earned on deposits of the fund.

**The Awardee – The Mississippi Secretary of State**

The HAVA funds were awarded to the Mississippi Secretary of State. The Secretary of State is the state's chief elections official. In that capacity, the office is responsible for National Voter Registration Act coordination among state registrar agencies and distribution of NVRA registration forms. The Office certifies the annual training and qualifications of local election officials and party executive committee chairs to conduct primary and general elections. The Office is the candidate qualifying office for certain judicial offices and all independent candidates for state, state district and legislative district offices. The Office is a member of a three person State Board of Election Commissioners which meets to certify certain candidates' eligibility for placement on general election ballots and to adopt an official sample ballot. Finally, the Secretary of State totals certified local election returns and certifies election results for statewide, state district and legislative district offices.

**Help America Vote Act State of Mississippi State Plan**

The Mississippi Secretary of State's advisory committee consisted of 27 individuals representing a cross-section of election stakeholders. The committee was selected by the chief elections officer, the Secretary of State.

The main objectives of the project funded by HAVA, as set forth in the state plan, were to purchase statewide uniform voting systems; purchase, implement, administrate and maintain a computerized statewide voter checklist; and training of voters, poll workers, local election officials on HAVA implementation.

The Secretary of State established and maintained an election fund for the exclusive purpose of carrying out activities of HAVA. The fund was non-lapsing and accrued interest earned. Additionally, the Office managed all expenditures funded by HAVA and did not distribute any of the requirements payments to the local units of government.

Exhibit 2

## AUDIT OBJECTIVES

The objectives of our audit were to determine whether the Office:

1. Used payments authorized by Sections 101, 102, and 251 of the Grant in accordance with Grant and applicable requirements;

2. Accurately and properly accounted for property purchased with Grant payments and for program income;

3. Met HAVA requirements for Section 251 funds for creation of an election fund, providing required matching contributions, and meeting the requirements for maintenance of a base level of state outlays, commonly referred to as Maintenance of Expenditures (MOE).

In addition to accounting for Grant payments, the Grant requires states to maintain records that are consistent with sound accounting principles that fully disclose the amount and disposition of the payments, that identify the project costs financed with the payments and other sources, and that will facilitate an effective audit. The Commission requires states receiving Grant funds to comply with certain financial management requirements, specifically:

- Comply with the *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Government,* 41 CFR 105-71, (originally Office of Management and Budget Circular A-102, also known as the "Common Rule").

- Expend payments in accordance with cost principles set forth in *Cost Principles for State and Local Governments*, 2 CFR 225, (originally Office of Management and Budget Circular A-87) for establishing the allowability or unallowability of certain items of cost for federal participation.

- Follow the requirements of the Federal Cash Management and Improvement Act.

- Submit detailed annual financial reports on the use of Title I and Title II payments.

- Comply with the provisions of *Audits of States, Local Governments and Non-Profit Organizations* (Office of Management and Budget Circular A-133).

4

Exhibit 2

## SCOPE AND METHODOLOGY

We audited the Grant funds received and disbursed by the Office from April 10, 2003 through September 30, 2015 as shown in the following table:

| Description | HAVA Section 101 | HAVA Section 102 | HAVA Section 251 | Total |
|---|---|---|---|---|
| Funds Received from EAC | $ 3,673,384 | $ 1,778,067 | $ 25,152,465 | $ 30,603,916 |
| State Matching Funds | - | - | 2,018,328 | 2,018,328 |
| Program Income | 443,450 | 102,733 | 1,588,892 | 2,135,075 |
| Total Funds | $ 4,116,834 | $ 1,880,800 | $ 28,759,685 | $ 34,757,319 |
| Less Disbursements | (4,116,834) | (1,880,800) | (28,759,685) | (34,757,319) |
| Fund Balance | $ - | $ - | $ - | $ - |

## AUDIT RESULTS

We conducted this performance audit in accordance with *Generally Accepted Government Auditing Standards*. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on the audit objectives.

Based on the audit procedures performed, except for the matters discussed below, we concluded that the Office accounted for and expended the HAVA funds in accordance with the requirements mentioned above for the period from April 10, 2003 through September 30, 2015. The exceptions to applicable compliance requirements are described below.

**Finding No. 1 – Inadequate Payroll Documentation**

The Mississippi Secretary of State (Office) did not adequately support all salaries and wages charged to the grant award.

Office of Management and Budget (OMB) Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments, Attachment B.8.h.(3) states that "Where employees are expected to work solely on a single Federal award or cost objective, charges for their salaries and wages will be supported by periodic certifications that the employees worked solely on that program for the period covered by the certification. These certifications will be prepared at least semi-annually and will be signed by the employee or supervisory official having first-hand knowledge of the work performed by the employee."

Attachment B.8.h.(4), states that "Where employees work on multiple activities or cost objectives, a distribution of their salaries or wages will be supported by personnel activity reports or equivalent documentation which meets the standards in subsection (5)… Such documentary support will be required where employees work on… (b) A Federal award and a non Federal award"

Exhibit 2

Attachment B.8.h.(5), states that "Personnel activity reports or equivalent documentation must meet the following standards: (a) They must reflect an after the fact distribution of the actual activity of each employee, (b) They must account for the total activity for which each employee is compensated, (c) They must be prepared at least monthly and must coincide with one or more pay periods, (d) They must be signed by the employee, and (e) Budget estimates or other distribution percentages determined before the services are performed do not qualify as support for charges to Federal awards but maybe used for interim accounting purposes."

The sample selection of 12 payroll transactions found two instances, related to one employee, in which the employee did not have an adequate work effort certification for the pay period. Timesheets were not provided for distribution of time between Federal grant activity and district activity.

Of the $55,630 of salary costs reviewed, $8,911 was determined to be unsupported.

**Recommendation**

We recommend that EAC address and resolve the following recommendations that the Mississippi Secretary of State's Office:

    a)  Transfer into the election fund $8,911 for the questioned salary charges.

    b)  Implement written policies to ensure that all employees who expend efforts on Federal activities to accurately record their time in compliance with Federal Regulations.

**Secretary of State Response:**

If the EAC determines these payments are not allowable under HAVA, the State maintains it has expended more than sufficient state funds in payment of election-related expenses to offset this expenditure. Specifically, EAC Funding Advisory Opinion FAO-08-008 opines, "it is in the best interest of voters to have voting systems that are safe, reliable, secure and functional and that inherent to those capabilities is a regular plan of maintenance of the voting system." The cost of preventative maintenance is an allowable HAVA expense. For example, one preventative maintenance expense paid by the State solely through state funds in August 2014 was in the amount of $285,000.

Additionally, the Report recommends the State "implement written policies to ensure that all employees who expend efforts on Federal activities to accurately record their time in compliance with Federal Regulations." The recommendation is not applicable as the State no longer has HAVA or any federal funds.

**Auditor's Response:**

The Secretary of State acknowledges that salaries may potentially not be allowable. The response indicates that additional costs may have been incurred that would otherwise qualify for this grant. We recommend that EAC evaluate the salary cost information and work with the Secretary of State

Exhibit 2

to evaluate the allowability of other related costs. The Secretary of State should ensure that work certifications are signed and that pay rates are approved.

**Finding No. 2 – Unsupported Costs**

Adequate documentation to support allowability was not provided for certain expenditures.

*Office of Management and Budget Circulars and Guidance, Cost Principles for State, Local, and Indian Tribal Governments* 2 CFR § 225, Appendix A.C.1.j states, "To be allowable under Federal awards, costs must meet the following general criteria: (j) Be adequately documented."

The *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Governments* 41 CFR § 105-71.120 (b)(7) (The "Common Rule") section states that, "Accounting records must be supported by such source documentation as cancelled checks, paid bills, payrolls, time and attendance records, contracts and subgrant award documents, etc."

The Office was unable to provide adequate documentation to support nine of the 60 transactions sampled. For these transactions, the Office was unable to provide documentation, outside of the transactions description, to show what was purchased.

The Office expended $134,211 of HAVA funds for these nine transactions.

The Office did not maintain adequate documentation to support the allowability expenditures charged to the HAVA grant as required by federal regulation.

**Recommendation**

We recommend that EAC address and resolve the following recommendations that the Mississippi Secretary of State's Office:

a) Transfer into the election fund $134,211 for the unsupported costs cited above.

b) Develop and implement policies and procedures regarding maintenance of supporting source documentation for all Federal expenditures incurred.

**Secretary of State Response:**

The State will respond to each of the nine questioned transactions individually below.

1. Payment to Mississippi Press Services, Inc. dated October 6, 2004.

   HAVA Section 101(b)(1)(C) states in part that funds distributed under this section shall be used to carry out educating voters concerning voting procedures and voting rights. The EAC issued Funding Advisory Opinion FAO-08-005 ("FAO-08-005") which further states Section 101 funds may be used "at any time to instruct individuals on how to register to vote. This would include print, radio, and television advertisements informing individuals

Exhibit 2

about the need to register to cast a vote, where to register to vote, how to obtain registration forms, and how to complete the forms."

The State is in possession of the print advertisements related to the payment to Mississippi Press Services and will produce the advertisements to the EAC. The content of the advertisements informs potential voters of the need to register to vote in advance of the November 2004 Presidential Election, the voter registration deadline, how and where to register to vote, and advises voters of their voting rights (including their right to cast a vote by affidavit/provisional ballot if their name does not appear on the poll list and their right to receive assistance if they are blind, are unable to read, or have some other disability). The State maintains this expenditure is allowable under HAVA Section 101(b)(1)(C) and FAO-08-005.

2. Payment to Nick Clark Printing and Signs dated June 1, 2005.

The State is in possession of supporting documentation which attributes this expense to the printing of polling place signage related to the prohibition against campaigning within 150 feet of a polling place. If the EAC determines this payment is not allowable, the State again maintains it has expended more than sufficient state funds to offset such amount.

3. Payment to G. Williams & Associates, Inc. dated December 29, 2008.

The State is in possession of the script used in connection with the payment to G. Williams & Associates for radio advertisement placement and will produce it to the EAC. The content of the script informs individuals of the need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005 as set forth above.

4. Payment to Boxx Jockey, LLC dated July 15, 2009.

The State is in possession of the script used in connection with the payment to Boxx Jockey for production services to produce a radio advertisement and will produce it to the EAC. The content of the script informs individuals they need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005 as set forth above.

5. Payment to Coalition for Citizens with Disabilities dated January 17, 2007.

HAVA provides that funds received under its provisions shall be used for making polling places accessible to individuals with disabilities, including the blind and visually impaired,

Exhibit 2

in a manner that provides the same opportunity for access and participation as for other voters.

The Coalition for Citizens with Disabilities surveyed Mississippi's more than 1,800 polling places and conducted a needs assessment to determine improvements necessary to ensure each was accessible to individuals with disabilities and therefore compliant with the Americans with Disabilities Act, as well as HAVA. This expense was paid for by HAVA funds based upon a grant request to and award letter issued by the United States Department of Health and Human Services. The State is in possession of (1) the contents of the survey; (2) the State's application for HAVA funds (which states part of the funds, if awarded, would be used for the needs assessment study conducted by Coalition for Citizens with Disabilities); and (3) the award letter from the United States Department of Health and Human Services approving said application. The State will provide these documents to the EAC. The State maintains the payment to the Coalition for Citizens with Disabilities was in accordance with the mandate of HAVA and the terms and conditions of the grant awarded to it under HAVA.

6. Payment to Yazoo County dated June 6, 2007.

HAVA Section 101(b)(1)(G) provides, in part, that funds received under its provisions may be used to improve the accessibility of polling places, including providing physical access for individuals with disabilities.

The State is in possession of an invoice from the Yazoo County Board of Supervisors requesting reimbursement for polling place improvements for accessibility for individuals with physical disabilities and detailed documentation of said improvements (installation of handicap accessible door locks, signage, and ramps) and will produce said documentation to the EAC. The State maintains the payment to Yazoo County was in accordance with the mandate of HAVA Section 101(b)(1)(G).

7. Payment to WLOX Inc. dated February 10, 2009.

The State is in possession of the script used in connection with the payment to WLOX for airtime to run an informational voter registration advertisement and will produce it to the EAC. The content of the script informs individuals of the need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005.

8. Payment to National Cable Communications, LLC dated April 1, 2009.

The State is in possession of the script used in connection with the payment to National Cable Communications for advertisement placement and will produce it to the EAC. The content of the script informs individuals of the need to register to vote in advance of the

Exhibit 2

2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005.

9. Payment to Sir Speedy, Inc. dated May 25, 2006.

HAVA Section 101(b)(1)(D) provides, in part, that HAVA funds shall be used for "training election officials, poll workers, and election volunteers." Further, HAVA Section 102 required the replacement of punch card and lever voting machines. The TSX Voting System was one of the voting systems Mississippi chose as a replacement for the punch card and lever voting machines. The payment to Sir Speedy was for printing and delivery costs associated with the distribution of the 500-plus page training and process document titled "Guide for Conducting Elections in Mississippi with the Statewide TSX Voting System" (the Guide).

The State maintains the payment to Sir Speedy for the printing and distribution of the Guide to the officials in charge of elections in all eighty-two (82) counties throughout Mississippi in 2006 is an allowable expenditure under HAVA Section 101(b)(1)(D). The Guide is a training and process document for election officials to aid them in transitioning to the new TSX Voting System as required by HAVA Section 102. The State will make the Guide available to the EAC.

Further, the Report recommends the State "develop and implement policies and procedures regarding maintenance of supporting source documentation for all Federal expenditures incurred." This recommendation is not applicable as the State no longer has HAVA or any federal funds.

**Auditor's Response:**

The response provides for additional information regarding the allowability of certain of the items. On other questioned items, the response indicates that additional costs, other than those claimed were incurred that would otherwise qualify as allowable costs for this grant. The EAC should evaluate the detail for the questioned items included in this report. The additional incurred costs not previously claimed are not specifically identified in the response.

**Finding No. 3 – Unallowable Costs**

The Office expended HAVA funds for purposes that are not allowable under the award's terms and conditions or HAVA regulations.

HAVA Section 101 (b)(1) states, "A State shall use the funds provided under a payment made under this section to carry out one or more of the following activities: (B) Improving the administration of elections for Federal Office. (C) Educating voters concerning voting procedures, voting rights, and voting technology.

Exhibit 2

The EAC, in its Funding Advisory Opinion FAO-08-005, concluded that, neither Section 101 nor 251 funds may be used to conduct voter registration drives or get out the vote efforts. Further, the EAC concluded that, neither Section 101 nor 251 funds may be used to print, copy, or revise State voter registration forms.

The Office expended $62,117 of HAVA funds for four transactions for advertising which would be considered get out the vote efforts. The Office expended $4,761 of HAVA funds for one transaction which was for voter registration forms. These costs are not allowable under HAVA Section 101(b)(1)(B) or (C).

**Recommendation**

We recommend that EAC address and resolve the following recommendations that the Mississippi Secretary of State's Office:

(a) Transfer into the election fund $66,878 for the unallowable costs cited above.

(b) Perform an analysis of charges incurred for advertising to determine the extent of HAVA funds spent on get out the vote efforts.

(c) Develop and implement policies and procedures and provide training to ensure that charges to HAVA are allowable, allocable and reasonable to HAVA.

**Secretary of State Response:**

The State will respond to each of the five questioned transactions individually below.

1. Payment to SRCP Media Inc. dated September 24, 2010.

   The State is in possession of supplemental and supporting documentation in the form of two scripts used in advertisements related to the SRCP Media payment for video advertisement production services and will provide this documentation to the EAC. The first script informs voters who registered to vote for the first time by mail that they may be required to show a form of HAVA-approved identification when they arrive at their polling place to vote. Voters are instructed to contact the Office of the Mississippi Secretary of State or their local circuit clerk for more information or to answer any questions they may have. Further, the script instructs voters to visit the polling place locator located on the Mississippi Secretary of State's website to find information regarding where their polling place is located. The second script educates voters about voting procedures and rights (including the right to cast an absentee ballot, the applicable qualification requirements for voting absentee, and who to contact for more information). The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005.

Exhibit 2

2. Payment to Godwin Advertising Agency, Inc. dated January 15, 2013.

The State is in possession of two scripts used in advertisements related to the payment for airtime to Godwin Advertising Agency and will produce them to the EAC. The content of the first script informs potential voters of the voter registration deadline for the 2012 Presidential Election, where they may register to vote, and when those locations will be open for individuals to register to vote. The second advertisement airing after the voter registration deadline encouraged voter participation in the upcoming Presidential Election. The State maintains some or all of this payment is an allowable expenditure under HAVA and again refers to FAO-08-005, which states HAVA "Section 101 funds may be used at any time to instruct individuals on how to register to vote" and further expands by stating this includes radio advertisements informing individuals about the need to register to cast a vote and where to register to vote. If the EAC determines this payment is not allowable, the State maintains it has expended more than sufficient state funds to offset such expenditure in whole.

3. Payment to Comcast Spotlight dated January 28, 2013.

The State is in possession of two scripts used in advertisements related to the payment for airtime to Comcast Spotlight and will produce them to the EAC. The content of the first script informs potential voters of the voter registration deadline for the 2012 Presidential Election, where they may register to vote, and when those locations will be open for individuals to register to vote. The second advertisement airing after the voter registration deadline encouraged voter participation in the upcoming Presidential Election. The State maintains some or all of this payment is an allowable expenditure under HAVA and FAO-08-005. If the EAC determines this payment is not allowable, the State maintains it has expended more than sufficient state funds to offset such expenditure in whole

4. Payment to Maris West & Baker, Inc. dated June 17, 2010.

The State is in possession of the script used in connection to the advertising placement related to the payment to Maris West & Baker. Upon additional review of the content of the script, the State has determined the nature of the script's content is "get out the vote." If the EAC determines this payment is not allowable, the State maintains it has expended more than sufficient state funds to operate as an offset.

5. Payment to AmeriMail Direct dated March 9, 2005.

The State has reviewed the details of the invoice related to the payment to AmeriMail and disputes MLA's finding this expense was not allowable under HAVA. This payment was made in 2005, well before the EAC provided any guidance or advisories that would have precluded the use of HAVA Section 101 funds for this purpose. The explicit language of HAVA Title III permits the expenditure of Section 101 funds for printing and mailing voter registration forms. HAVA Section 303(a)(4) specifies the requirements for mail-in registration forms; Section 303(d)(2) requires a state to make these materials available to voters by 2004.

Exhibit 2

The EAC first provided guidance in FAO-08-005 on the specific question of using HAVA funds to print voter registration forms in August 2008; nearly two and a half years after the State made the payment to AmeriMail for printing and distributing voter registration applications to potential voters. Although FAO-08-005 states Section 101 funds may not be used to print voter registration forms, it also states: "[e]ducating voters on voting procedures would include providing instructions on how to register to vote…" Further, it states: "Section 101 funds may be used at any time to instruct individuals on how to register to vote." The particular voter registration forms in question here, which include instructions on how to register to vote, were updated for potential voters most likely to be impacted by new HAVA identification requirements for first-time voters August 11, 2017 who register by mail. The State maintains this payment should be allowable under HAVA Section 101 due to the EAC's failure to provide specific guidance to the State before the expenditure was made.

Additionally, MLA recommends (1) the State perform an analysis of charges incurred for advertising to determine the extent of HAVA funds spent on get out the vote efforts and (2) develop and implement policies and procedures and provide training to ensure that charges to HAVA are allowable, allocable and reasonable to HAVA. In regards to this recommendation, the state responds this recommendation is not applicable as Mississippi no longer has HAVA funds.

**Auditor's Response:**

The response provides for additional information regarding the allowability of certain of the items. On other questioned items, the response indicates that additional costs, other than those claimed were incurred that would otherwise qualify as allowable costs for this grant. The EAC should evaluate the detail for the questioned items included in this report. The additional incurred costs not previously claimed are not specifically identified in the response.

We provided a draft of our report to the appropriate individuals of the Office of the Mississippi Secretary of State. We considered any comments received prior to finalizing this report.

The Office responded on August 4, 2017 and generally agreed with the report's findings and recommendations. The EAC responded on August 10, 2017 and stated they will work with the Secretary's Office to ensure appropriate corrective action. The Office's complete response is included as Appendix A-1 and the EAC's complete response as Appendix A-2.

McBride, Lock & Associates, LLC performed the related audit procedures between May 3, 2016 and July 13, 2017.

*(Original Signed by McBride, Lock & Associates, LLC)*

McBride, Lock & Associates, LLC
July 13, 2017

Exhibit 2

**APPENDIX A-1**

**Response of the Mississippi
Secretary of State to the Draft Report**

Exhibit 2



August 11, 2017

Ms. Patricia L. Layfield
Inspector General
U.S. Election Assistance Commission
1335 East West Highway, Suite 4300
Silver Spring, MD 20910

Dear Inspector General Layfield,

The Office of the Mississippi Secretary of State (the State) has received and reviewed the Draft Performance Audit Report (the Report) prepared by McBride, Lock & Associates (MLA) in connection with the State's administration of payments received under the Help America Vote Act of 2002 (HAVA).

Since the inception of HAVA and receipt of the funds thereunder, the State has taken the utmost care when contemplating the use of HAVA funds and implementing requirements in accordance with HAVA. The State appreciates the opportunity to provide a written response to the Report and the State is committed to resolving any concerns with the United States Election Assistance Commission (the EAC).

The State disputes the findings of MLA in the Report and maintains the majority of the questioned costs therein were allowable expenditures under HAVA. The State sets forth the authority under HAVA for those expenditures below and the supporting documentation to the EAC.

Though HAVA funds have been fully exhausted, the State continues to expend in excess of $1,000,000 per fiscal year in election related expenditures, specifically those which further and fulfill the requirements of HAVA, such as the performance of preventative maintenance of more than 7,500 TSX voting machines and the education of Mississippi voters through print and radio public service announcements focused upon voters' rights and voter registration. These election-related expenses, solely paid from State resources since the exhaustion of HAVA funds in fiscal year 2013, are more than sufficient to offset any amount questioned by MLA.

Exhibit 2

August 11, 2017
Page 2 of 7

## Finding No. 1 – Inadequate Payroll Documentation

The Report states, generally, the State did not adequately support all salaries and wages charged to the grant award. Specifically, MLA noted three instances, related to one employee, in which the employee did not have an adequate work effort certification for the pay period and that timesheets were not provided for distribution of time between Federal grant activity and district activity.

Additionally, the Report recommends the State "implement written policies to ensure that all employees who expend efforts on Federal activities to accurately record their time in compliance with Federal Regulations."

## State's Response to Finding No. 1

If the EAC determines these payments are not allowable under HAVA, the State maintains it has expended more than sufficient state funds in payment of election-related expenses to offset this expenditure. Specifically, EAC Funding Advisory Opinion FAO-08-008 opines, "it is in the best interest of voters to have voting systems that are safe, reliable, secure and functional and that inherent to those capabilities is a regular plan of maintenance of the voting system." The cost of preventative maintenance is an allowable HAVA expense. For example, one preventative maintenance expense paid by the State solely through state funds in August 2014 was in the amount of $285,000.

Additionally, the Report recommends the State "implement written policies to ensure that all employees who expend efforts on Federal activities to accurately record their time in compliance with Federal Regulations." The recommendation is not applicable as the State no longer has HAVA or any federal funds.

## Finding No. 2 – Unsupported Costs

The second finding of the Report alleges a lack of documentation, outside of the transactions description, to support the allowance of nine transactions.

## State's Response to Finding No. 2

The State will respond to each of the nine questioned transactions individually below.

1. Payment to Mississippi Press Services, Inc. dated October 6, 2004.

HAVA Section 101(b)(1)(C) states in part that funds distributed under this section shall be used to carry out educating voters concerning voting procedures and voting rights. The EAC issued Funding Advisory Opinion FAO-08-005 ("FAO-08-005") which further states Section 101 funds may be used "at any time to instruct individuals on how to register to vote. This would include print, radio, and television advertisements informing individuals about the need to register to cast a vote, where to register to vote, how to obtain registration forms, and how to complete the forms."

Exhibit 2

August 11, 2017
Page 3 of 7

The State is in possession of the print advertisements related to the payment to Mississippi Press Services and will produce the advertisements to the EAC. The content of the advertisements informs potential voters of the need to register to vote in advance of the November 2004 Presidential Election, the voter registration deadline, how and where to register to vote, and advises voters of their voting rights (including their right to cast a vote by affidavit/provisional ballot if their name does not appear on the poll list and their right to receive assistance if they are blind, are unable to read, or have some other disability). The State maintains this expenditure is allowable under HAVA Section 101(b)(1)(C) and FAO-08-005.

2.  Payment to Nick Clark Printing and Signs dated June 1, 2005.

The State is in possession of supporting documentation which attributes this expense to the printing of polling place signage related to the prohibition against campaigning within 150 feet of a polling place. If the EAC determines this payment is not allowable, the State again maintains it has expended more than sufficient state funds to offset such amount.

3.  Payment to G. Williams & Associates, Inc. dated December 29, 2008.

The State is in possession of the script used in connection with the payment to G. Williams & Associates for radio advertisement placement and will produce it to the EAC. The content of the script informs individuals of the need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005 as set forth above.

4.  Payment to Boxx Jockey, LLC dated July 15, 2009.

The State is in possession of the script used in connection with the payment to Boxx Jockey for production services to produce a radio advertisement and will produce it to the EAC. The content of the script informs individuals they need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005 as set forth above.

5.  Payment to Coalition for Citizens with Disabilities dated January 17, 2007.

HAVA provides that funds received under its provisions shall be used for making polling places accessible to individuals with disabilities, including the blind and visually impaired, in a manner that provides the same opportunity for access and participation as for other voters.

The Coalition for Citizens with Disabilities surveyed Mississippi's more than 1,800 polling places and conducted a needs assessment to determine improvements necessary to ensure each was accessible to individuals with disabilities and therefore compliant with the Americans with Disabilities Act, as well as HAVA.  This expense was paid for by HAVA funds based upon a grant

Exhibit 2

August 11, 2017
Page 4 of 7

request to and award letter issued by the United States Department of Health and Human Services. The State is in possession of (1) the contents of the survey; (2) the State's application for HAVA funds (which states part of the funds, if awarded, would be used for the needs assessment study conducted by Coalition for Citizens with Disabilities); and (3) the award letter from the United States Department of Health and Human Services approving said application. The State will provide these documents to the EAC. The State maintains the payment to the Coalition for Citizens with Disabilities was in accordance with the mandate of HAVA and the terms and conditions of the grant awarded to it under HAVA.

6. Payment to Yazoo County dated June 6, 2007.

HAVA Section 101(b)(1)(G) provides, in part, that funds received under its provisions may be used to improve the accessibility of polling places, including providing physical access for individuals with disabilities.

The State is in possession of an invoice from the Yazoo County Board of Supervisors requesting reimbursement for polling place improvements for accessibility for individuals with physical disabilities and detailed documentation of said improvements (installation of handicap accessible door locks, signage, and ramps) and will produce said documentation to the EAC. The State maintains the payment to Yazoo County was in accordance with the mandate of HAVA Section 101(b)(1)(G).

7. Payment to WLOX Inc. dated February 10, 2009.

The State is in possession of the script used in connection with the payment to WLOX for airtime to run an informational voter registration advertisement and will produce it to the EAC. The content of the script informs individuals of the need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005.

8. Payment to National Cable Communications, LLC dated April 1, 2009.

The State is in possession of the script used in connection with the payment to National Cable Communications for advertisement placement and will produce it to the EAC. The content of the script informs individuals of the need to register to vote in advance of the 2008 Presidential Election and directs potential voters to the Mississippi Secretary of State's website to obtain more information about where to register to vote and how to obtain voter registration forms in accordance with the guidance provided by the EAC in FAO-08-005. The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005.

9. Payment to Sir Speedy, Inc. dated May 25, 2006.

HAVA Section 101(b)(1)(D) provides, in part, that HAVA funds shall be used for "training election officials, poll workers, and election volunteers." Further, HAVA Section 102 required the

Exhibit 2

replacement of punch card and lever voting machines. The TSX Voting System was one of the voting systems Mississippi chose as a replacement for the punch card and lever voting machines. The payment to Sir Speedy was for printing and delivery costs associated with the distribution of the 500-plus page training and process document titled "Guide for Conducting Elections in Mississippi with the Statewide TSX Voting System" (the Guide).

The State maintains the payment to Sir Speedy for the printing and distribution of the Guide to the officials in charge of elections in all eighty-two (82) counties throughout Mississippi in 2006 is an allowable expenditure under HAVA Section 101(b)(1)(D). The Guide is a training and process document for election officials to aid them in transitioning to the new TSX Voting System as required by HAVA Section 102. The State will make the Guide available to the EAC.

Further, the Report recommends the State "develop and implement policies and procedures regarding maintenance of supporting source documentation for all Federal expenditures incurred." This recommendation is not applicable as the State no longer has HAVA or any federal funds.

**Finding No. 3 – Unallowable Costs**

Finally, the Report asserts the State expended HAVA funds for get out the vote efforts and for voter registration forms which MLA concludes are not allowable under HAVA Section 101(b)(1)(B) or (C).

**State's Response to Finding No. 3**

The State will respond to each of the five questioned transactions individually below.

1. Payment to SRCP Media Inc. dated September 24, 2010.

The State is in possession of supplemental and supporting documentation in the form of two scripts used in advertisements related to the SRCP Media payment for video advertisement production services and will provide this documentation to the EAC. The first script informs voters who registered to vote for the first time by mail that they may be required to show a form of HAVA-approved identification when they arrive at their polling place to vote. Voters are instructed to contact the Office of the Mississippi Secretary of State or their local circuit clerk for more information or to answer any questions they may have. Further, the script instructs voters to visit the polling place locator located on the Mississippi Secretary of State's website to find information regarding where their polling place is located. The second script educates voters about voting procedures and rights (including the right to cast an absentee ballot, the applicable qualification requirements for voting absentee, and who to contact for more information). The State maintains this expenditure was in accordance with the mandate of HAVA Section 101(b)(1)(C) and FAO-08-005.

2. Payment to Godwin Advertising Agency, Inc. dated January 15, 2013.

The State is in possession of two scripts used in advertisements related to the payment for airtime to Godwin Advertising Agency and will produce them to the EAC. The content of the first script informs potential voters of the voter registration deadline for the 2012 Presidential Election,

Exhibit 2

where they may register to vote, and when those locations will be open for individuals to register to vote. The second advertisement airing after the voter registration deadline encouraged voter participation in the upcoming Presidential Election. The State maintains some or all of this payment is an allowable expenditure under HAVA and again refers to FAO-08-005, which states HAVA "Section 101 funds may be used at any time to instruct individuals on how to register to vote" and further expands by stating this includes radio advertisements informing individuals about the need to register to cast a vote and where to register to vote. If the EAC determines this payment is not allowable, the State maintains it has expended more than sufficient state funds to offset such expenditure in whole.

3.   Payment to Comcast Spotlight dated January 28, 2013.

The State is in possession of two scripts used in advertisements related to the payment for airtime to Comcast Spotlight and will produce them to the EAC. The content of the first script informs potential voters of the voter registration deadline for the 2012 Presidential Election, where they may register to vote, and when those locations will be open for individuals to register to vote. The second advertisement airing after the voter registration deadline encouraged voter participation in the upcoming Presidential Election. The State maintains some or all of this payment is an allowable expenditure under HAVA and FAO-08-005. If the EAC determines this payment is not allowable, the State maintains it has expended more than sufficient state funds to offset such expenditure in whole

4.   Payment to Maris West & Baker, Inc. dated June 17, 2010.

The State is in possession of the script used in connection to the advertising placement related to the payment to Maris West & Baker. Upon additional review of the content of the script, the State has determined the nature of the script's content is "get out the vote." If the EAC determines this payment is not allowable, the State maintains it has expended more than sufficient state funds to operate as an offset.

5.   Payment to AmeriMail Direct dated March 9, 2005.

The State has reviewed the details of the invoice related to the payment to AmeriMail and disputes MLA's finding this expense was not allowable under HAVA. This payment was made in 2005, well before the EAC provided any guidance or advisories that would have precluded the use of HAVA Section 101 funds for this purpose. The explicit language of HAVA Title III permits the expenditure of Section 101 funds for printing and mailing voter registration forms. HAVA Section 303(a)(4) specifies the requirements for mail-in registration forms; Section 303(d)(2) requires a state to make these materials available to voters by 2004.

The EAC first provided guidance in FAO-08-005 on the specific question of using HAVA funds to print voter registration forms in August 2008; nearly two and a half years after the State made the payment to AmeriMail for printing and distributing voter registration applications to potential voters. Although FAO-08-005 states Section 101 funds may not be used to print voter registration forms, it also states: "[e]ducating voters on voting procedures would include providing instructions on how to register to vote…" Further, it states: "Section 101 funds may be used at any time to instruct individuals on how to register to vote." The particular voter registration forms in question here, which include instructions on how to register to vote, were updated for potential voters most likely to be impacted by new HAVA identification requirements for first-time voters

Exhibit 2

August 11, 2017
Page 7 of 7

who register by mail. The State maintains this payment should be allowable under HAVA Section 101 due to the EAC's failure to provide specific guidance to the State before the expenditure was made.

Additionally, MLA recommends (1) the State perform an analysis of charges incurred for advertising to determine the extent of HAVA funds spent on get out the vote efforts and (2) develop and implement policies and procedures and provide training to ensure that charges to HAVA are allowable, allocable and reasonable to HAVA. In regards to this recommendation, the State responds this recommendation is not applicable as Mississippi no longer has HAVA funds.

**State's Proposal for Corrective Action Regarding Unallowable Costs**

Should the EAC determine any expenditure of HAVA funds by the State was unallowable, the State maintains any such amount may be offset by the election-related expenditures, and those which fulfill and further HAVA specifically, paid solely by the State. To that end, the State will provide documentation supporting said allowable expenditures.

The State appreciates the opportunity to review and respond to the Report. If you have any questions or require any additional information, please do not hesitate to contact my office.

Sincerely,

Kim Turner
Assistant Secretary of State, Elections Division

cc:    Mark Abbott, Grants Office, U.S. Election Assistance Commission
       Aaron Rhodenbaugh, McBride, Lock & Associates, LLC
       Michael Kenefick, MLKenefick, LLC

Exhibit 2

# APPENDIX A-2

# Response of the
# U.S. Election Assistance Commission
# to the Draft Report

Exhibit 2



**EAC RESPONSE TO THE DRAFT AUDIT:**

*OIG Performance Audit Report on the Administration of Payments Received Under the Help America Vote Act by the Mississippi Secretary of State for the Period* April 10, 2003 through September 30, 2015.

August 10, 2017

**MEMORANDUM**

To:            Patricia Layfield, Inspector General

From:        Brian Newby, Executive Director

Subject:     Draft Performance Audit Report – "Administration of Payments Received under the Help America Vote Act by the Mississippi Secretary of State

Thank you for this opportunity to review and respond to the draft audit report for the Mississippi Secretary of State.

The Election Assistance Commission (EAC) appreciates the auditor's detailed findings and recommendations outlined in the draft audit report and will work with the Secretary's Office to ensure appropriate corrective actions are taken in a timely and complete manner.

Exhibit 2

# APPENDIX B

# Audit Methodology

Exhibit 2

# AUDIT METHODOLOGY

Our audit methodology included:

- Assessing audit risk and significance within the context of the audit objectives.
- Obtaining an understanding of internal control that is significant to the administration of the HAVA funds and of relevant information systems controls as applicable.
- Identifying sources of evidence and the amount and type of evidence required.
- Determining whether other auditors have conducted, or are conducting, audits of the program that could be relevant to the audit objectives.

To implement our audit methodology, below are some of the audit procedures we performed.

- Interviewed appropriate Office employees about the organization and operations of the HAVA program.
- Reviewed prior single audit reports and other reviews related to the State's financial management systems and the HAVA program for the period under review.
- Reviewed policies, procedures and regulations for the Office management and accounting systems as they relate to the administration of the HAVA program.
- Analyzed the inventory lists of equipment purchased with HAVA funds.
- Tested major purchases and the supporting documentation.
- Tested randomly sampled payments made with HAVA funds.
- Evaluated compliance with the requirements for accumulating financial information reported to the Commission on the financial status reports and progress reports, accounting for property, purchasing HAVA related goods and services, and accounting for salaries.
- Verified the establishment and maintenance of an election fund.
- Verified the State expenditures met the Maintenance of Expenditures requirement
- Conducted site visits of selected counties to observe physical security/safeguard of equipment purchased with HAVA funds and ensure compliance with federal regulation.
- Verified that the matching requirement was timely met and matching expenditures met the prescribed criteria and allowability requirements of HAVA.
- Verified program income was properly accounted for and not remitted to the State's general fund.

Exhibit 2

**APPENDIX C**

**Monetary Impact**

Exhibit 2

**Appendix C**

## MONETARY IMPACT AS OF SEPTEMBER 30, 2015

| Description | Questioned Costs | Additional Funds for Program |
|---|---|---|
| Unsupported Payroll Costs | $ 8,911 | $ - |
| Unsupported Costs | 134,211 | - |
| Unallowable Costs | 66,878 | - |
| Total | $ 210,000 | $ - |

23

Exhibit 2