

# U.S. ELECTION ASSISTANCE COMMISSION
## OFFICE OF INSPECTOR GENERAL

## FINAL REPORT:

## ADMINISTRATION OF PAYMENTS RECEIVED UNDER THE HELP AMERICA VOTE ACT BY THE STATE OF FLORIDA

APRIL 25, 2003 THROUGH SEPTEMBER 30, 2007

**Report No.**
**E-HP-FL-02-08**
**NOVEMBER 2008**

Exhibit 3



**U.S. ELECTION ASSISTANCE COMMISSION**
OFFICE OF INSPECTOR GENERAL
1225 New York Ave. NW - Suite 1100
Washington, DC 20005

November 17, 2008

Memorandum

To: Thomas Wilkey
Executive Director

From: Curtis W. Crider
Inspector General

Subject: Final Audit Report - Administration of Payments Received Under the Help America Vote Act by the State of Florida (Assignment Number E-HP-FL-02-08)

We contracted with the independent certified public accounting firm of Clifton Gunderson LLP (Clifton Gunderson) to audit the administration of payments received under the Help America Vote Act (HAVA) by the State of Florida Secretary of State (SOS). The contract required that the audit be done in accordance with U.S. generally accepted government auditing standards. Clifton Gunderson is responsible for the attached auditor's report and the conclusions expressed therein.

In its audit of the SOS, Clifton Gunderson concluded that, except for the issues at the county level regarding HAVA related practices involving program income accounting and recognition; equipment controls; procurement and disbursement procedures; and cash management controls, our audit concluded that the SOS generally accounted for and expended HAVA funds in accordance with the HAVA requirements and complied with the financial management requirements established by the U.S. Election Assistance Commission. The SOS also complied with section 251 requirements.

In its July 16, 2008 responses to the findings and recommendations (Appendix A), the SOS was in general agreement, and proposed to implement corrective action. However, he was in partial disagreement with requiring the reimbursement of those questionable expenditures that were included in plans approved by the state Division of Elections, and disagreed with the recommendation to have counties compute and repay interest that should have been earned on unexpended HAVA balances from date of receipt.

Please provide us with your written response to the recommendations included in this report by January 20, 2009. Specifically, your response should indicate whether you agree or disagree with the results of the audit. Your response should also indicate the basis and support for any disagreements. In addition, the response should contain information on actions taken or planned, including target dates and titles of EAC officials responsible for implementing the recommendations.

The legislation, as amended, creating the Office of Inspector General (5 U.S.C. § App.3) requires semiannual reporting to Congress on all audit reports issued, actions taken to implement audit recommendations, and recommendations that have not been implemented. Therefore, this report will be included in our next semiannual report to Congress.

If you have any questions regarding this report, please call me at (202) 566-3125.

Exhibit 3

PERFORMANCE AUDIT REPORT

ADMINISTRATION OF PAYMENTS RECEIVED
UNDER THE HELP
AMERICA VOTE ACT BY THE
STATE OF FLORIDA

April 25, 2003 Through September 30, 2007

UNITED STATES ELECTION
ASSISTANCE COMMISSION

Exhibit 3

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| **EXECUTIVE SUMMARY** | 1 |
| **BACKGROUND** | 2 |
| **AUDIT OBJECTIVES** | 2 |
| **SCOPE AND METHODOLOGY** | 3 |
| **AUDIT RESULTS** | 3 |
| **APPENDICES** | |
| **Appendix A: Secretary Of State's Response To Audit Results** | 7 |
| **Appendix B: Audit Methodology** | 12 |
| **Appendix C: Monetary Impact as of September 30, 2007** | 14 |

Exhibit 3

U.S. Election Assistance Commission
Performance Audit of the Administration of Payments Received Under the
Help America Vote Act by the State of Florida

<u>*EXECUTIVE SUMMARY*</u>

Clifton Gunderson LLP was engaged by the U.S. Election Assistance Commission (EAC or the Commission) Office of Inspector General to conduct a performance audit of the Florida Office of the Secretary of State (SOS) for the period April 25, 2003 through September 30, 2007 to determine whether the SOS used payments authorized by Sections 101, 102, and 251 of the Help America Vote Act of 2002 (HAVA or the Act) in accordance with HAVA and applicable requirements; accurately and properly accounted for property purchased with HAVA payments and for program income, and met HAVA requirements for Section 251 funds for an election fund, for a matching contribution. We did not include a determination of whether the SOS and its subgrantees met the requirements for maintenance of a base level of state outlays because the Commission is reviewing its guidance on the applicability of the maintenance of a base level of state outlays to the SOS's subgrantees.

In addition, the Commission requires states to comply with certain financial management requirements, specifically:

- Comply with the *Uniform Administrative Requirements For Grants And Cooperative Agreements With State And Local Governments* (also known as the "Common Rule") as published in the Code of Federal Regulations 41 CFR 105-71.

- Expend payments in accordance with cost principles for establishing the allowance or disallowance of certain items of cost for federal participation issued by the Office of Management and Budget (OMB) in Circular A-87.

- Submit detailed annual financial reports on the use of Title I and Title II payments.

We conducted this performance audit in accordance with Generally Accepted Government Auditing Standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on the audit objectives. Because of inherent limitations, a study and evaluation made for the limited purposes of our review would not necessarily disclose all weaknesses in administering HAVA payments.

Except for the issues at the county level regarding HAVA related practices, which are discussed below, our audit concluded that the SOS accounted for and expended HAVA funds in accordance with the requirements mentioned above. The exceptions needing SOS management attention are as follows:

- The state's oversight and monitoring of its subgrantees should be enhanced to ensure compliance with HAVA grant requirements relating to program income accounting and recognition; equipment controls; procurement and disbursement procedures; and cash management controls.

1

Exhibit 3

We have included in this report the SOS's formal responses to the findings and recommendations dated July 16, 2008.

## BACKGROUND

The Help America Vote Act of 2002 created the EAC to assist states and insular areas with the improvement of the administration of Federal elections and to provide funds to states to help implement these improvements. HAVA authorizes payments to states under Titles I and II, as follows:

- Title I, Section 101 payments are for activities such as complying with Title III of HAVA for uniform and nondiscriminatory election technology and administration requirements, improving the administration of elections for Federal office, educating voters, training election officials and poll workers, and developing a state plan for requirements payments.

- Title I, Section 102 payments are available only for the replacement of punch card and lever action voting systems.

- Title II, Section 251 requirements payments are for complying with Title III requirements for voting system equipment; and for addressing provisional voting, voting information, statewide voter registration lists, and voters who register by mail.

Title II also requires that states must:
- Have appropriated funds "equal to 5 percent of the total amount to be spent for such activities [activities for which requirements payments are made]." [Section 253(b)(5)].

- "Maintain the expenditures of the State for activities funded by the [requirements] payment at a level that is not less than the level of such expenditures maintained by the State for the fiscal year ending prior to November 2000." [Section 254 (a)(7)].

- Establish an election fund for amounts appropriated by the state "for carrying out the activities for which the requirements payment is made," for the Federal requirements payments received, for "such other amounts as may be appropriated under law," and for "interest earned on deposits of the fund." [Section 254 )(b)(1)].

## AUDIT OBJECTIVES

The objectives of our audit were to determine whether the State of Florida, Office of the Secretary of State:

1. Used payments authorized by Sections 101, 102, and 251 of the Help America Vote Act (HAVA) in accordance with HAVA and applicable requirements;

2. Accurately and properly accounted for property purchased with HAVA payments and for program income;

3. Met HAVA requirements for Section 251 funds for an election fund, for a matching contribution, and for maintenance of a base level of state outlays. We did not determine whether the SOS met the requirement for maintenance of a base level of state outlays

Exhibit 3

because the Commission is reviewing its guidance on the applicability of the maintenance of a base level of state outlays to subgrantees of the SOS.

In addition, to account for HAVA payments, the Act requires states to maintain records that are consistent with sound accounting principles that fully disclose the amount and disposition of the payments, that identify the project costs financed with the payments and other sources, and that will facilitate an effective audit. The Commission requires states receiving HAVA funds to comply with certain financial management requirements, specifically:

4. Comply with the *Uniform Administrative Requirements For Grants And Cooperative Agreements With State and Local Governments* (also known as the "Common Rule") as published in the Code of Federal Regulations at 41 CFR 105-71.

5. Expend payments in accordance with cost principles for establishing the allowance or disallowance of certain items of cost for federal participation issued by the Office of Management and Budget (OMB) in Circular A-87.

6. Submit detailed annual financial reports on the use of Title I and Title II payments.[1]

## SCOPE AND METHODOLOGY

We audited the HAVA funds received and disbursed by the SOS from April 25, 2003 through September 30, 2007.

Funds received and disbursed from April 25, 2003 (program initiation date) to September 30, 2007 (53-month period) are shown below:

| TYPE OF PAYMENT | EAC PAYMENT | STATE MATCH | INTEREST EARNED | TOTAL AVAILABLE | FUNDS DISBURSED | DATA AS OF |
|---|---|---|---|---|---|---|
| 101 | $ 14,447,580 | $ 0 | $1,199,135 | $15,646,715 | $12,158,480 | 9/30/2007 |
| 102 | 11,581,377 | $ 0 | 37,355 | 11,618,732 | 11,581,077 | 9/30/2007 |
| 251 | 132,502,091 | 6,973,794 | 12,402,622 | 151,878,507 | 86,448,331 | 9/30/2007 |
| | $158,531,048 | $6,973,794 | $13,639,112 | $179,143,954 | $110,187,888 | 9/30/2007 |

Our audit methodology is set forth in Appendix B.

## AUDIT RESULTS

We conducted this performance audit in accordance with Generally Accepted Government Auditing Standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable

---

[1] EAC requires states to submit annual reports on the expenditure of HAVA Sections 101, 102, and 251 funds. For Sections 101 and 102, reports are due on February 28 for the activities of the previous calendar year. For Section 251, reports are due by March 30 for the activities of the previous fiscal year ending on September 30.

3

Exhibit 3

basis for our findings and conclusions based on the audit objectives. Because of inherent limitations, a study and evaluation made for the limited purposes of our review would not necessarily disclose all weaknesses in administering HAVA payments.

Except for the state's lack of monitoring the subgrantees, and for the determination of whether the SOS and its subgrantees met the requirements for maintenance of a base level of state outlays which were specifically omitted from our scope of audit work as explained above, the SOS accounted for and expended HAVA funds in accordance with the requirements mentioned above. This includes compliance with section 251 requirements for an election fund. The SOS is working to resolve the exceptions in the areas described below:

**Oversight and Monitoring of Subgrantees**

We identified several issues at seven of the eight counties we visited and from responses to questionnaires sent to the fifty-nine counties not visited that could have been prevented or minimized with enhanced monitoring, as follows:

1. *Reporting of program income*
Program income generated at one of the counties from the use of HAVA funded equipment is not properly reported, recorded, or used for the HAVA program. The Supervisor of Elections deposited program income in the general fund, and did not make a determination of the portion of the income received allocable to the HAVA program that should have been reported to the Florida Department of State – Division of Elections.

2. *Equipment control procedures not adequate*
There were deficiencies in the procedures for controlling equipment purchased with HAVA funds at three of the eight counties visited. The annual equipment inventory at one of the counties visited consisted of a scan of the bar codes on the equipment listing, but did not include a physical observation of the items to ensure existence. HAVA funded computers donated by the State of Florida to two counties were not listed on the equipment inventory. The equipment listing at another county did not identify the items as purchased with HAVA funds.

3. *Expenditures not an appropriate use of HAVA funds*
In four of eight counties visited expenditures were identified that were questionable uses of HAVA funds totaling $89,669. These included payments for educational booklets and materials for students of non-voting age; promotional items that did not relate to educating voters about voting procedures, rights or technology; costs of organizing and conducting voter registration drives; and gifts for pollworkers.

4. *Disbursements not appropriate or not supported at one county*
Two disbursements, totaling $33,083 at one of the counties visited, did not have adequate documentation or evidence to support costs claimed against the HAVA grant program.

5. *Personnel costs not properly supported*
In one of the counties visited, the total cost for one employee was charged to the HAVA grant program; however, there was no certification or other evidence on file to provide justification for the charges.

4

Exhibit 3

### 6. Poll worker charges not appropriate for voter registration drives

Salaries and benefits for poll workers serving at voter registration drives in one of the counties visited were charged to the HAVA voter education grants, and the portion allocable to registration activity was not separately stated. Therefore, the total costs for the poll workers for fiscal years 2004 through 2006 of $139,056 are questioned.

### 7. Interest earned not credited to the election fund

Interest earned on HAVA funds received by six of the eight counties visited was under collected by an undetermined amount. In four of the counties, interest was computed and credited to the election fund; however, the determination of interest owed did not start upon receipt of HAVA funds from the state. In one county, interest was computed on the HAVA balances beginning with the receipt of the funds, but it was not compounded, resulting in lost interest of $582.58 as of September 30, 2007. We noted that one county did not start computing interest until October 2007, and did not recoup additional interest due of $2,639.26 earned on HAVA balances prior to September 30, 2007.

### 8. Cash management not performed properly at all of the counties

Cash advances of HAVA funds were made to the counties from fiscal year 2004 through 2007. We noted that cash balances were on hand at 48 of 58 counties that responded to the questionnaires sent them, and the reported balances totaled $15,878,530.70 as of September 30, 2007. The responses from the counties were varied regarding interest earned on unexpended funds, and ranged from depositing interest into the election fund to not computing any interest on the outstanding balances. We were unable to determine the total amount of interest earned on HAVA fund balances but not credited to the election funds for the benefit of the HAVA program.

### Recommendations:

We recommend that the EAC direct Florida's Secretary of State to strengthen its program for monitoring the counties' use of HAVA funds on a risk-based approach. In addition, the Secretary should ensure appropriate corrective action is implemented to address the issues noted above.

### SOS Response:

The Secretary of State expressed general agreement with the issues identified above, and proposed to implement corrective action; however, he was in partial disagreement with the questionable uses of HAVA funds noted in item 3 and disagreed with item 8, noting that the states were not informed that HAVA funding would be treated like other federal funding until receipt of the EAC's Frequently Asked Questions responses or from reading other states' audits, as detailed in Appendix A.

### Auditors' Response:

Although we understand the Secretary's position regarding the concerns expressed in his response, we believe that the HAVA and other federal regulations provide appropriate guidance on the use and control of federal funding. We recommend that the state contact the EAC to address the issues where there is disagreement to determine a satisfactory resolution.

5

Exhibit 3

******************************************

We provided a draft of our report to the appropriate individuals of the State of Florida Office of the Secretary of State, and the United States Election Assistance Commission. We considered any comments received prior to finalizing this report.

CG performed its work between January 14 and February 8, 2008.

*Clifton Gunderson LLP*

Calverton, Maryland
August 7, 2008

6

Exhibit 3



# FLORIDA DEPARTMENT *of* STATE

**CHARLIE CRIST**
Governor

**KURT S. BROWNING**
Secretary of State

July 16, 2008

Mr. Curtis Crider
Office of the Inspector General
United States Election Assistance Commission
1225 New York Avenue NW, Suite 1100
Washington, D.C. 20005

Dear Inspector General Crider,

This letter is in response to your invitation to comment upon the Notifications and Findings that were prepared by Clifton Gunderson with respect to the EAC Audit report of the Help American Vote Act activities in Florida. Please find below our response to the findings:

<u>Finding #1</u>  Program Income

Recommendations:

1. We recommend that the State require all county Supervisors of Elections to track program income, identify the costs of assisting with local elections, and determine the portion of net income associated with HAVA equipment. That portion of net income should be reported to the Secretary of State as program income.

2. We recommend that the State require the Supervisors of Elections to deposit program income in an election fund for the benefit of the HAVA Program.

Response:

We agree that program income should be calculated and reported. With respect to the use of voting equipment by municipalities and other entities, we will instruct the Supervisors of Elections to identify the costs of assisting municipalities with their elections and determine the portion of the net income, if any, which should be allocated to the HAVA program.

7

R. A. Gray Building, Room 316 • 500 South Bronough Street • Tallahassee, Florida 32399-0250
Telephone: (850) 245-6200 • Facsimile: (850) 245-6125
www.dos.state.fl.us

Exhibit 3

Finding #2  Equipment

Recommendations:

1. We recommend that the state ensure that the county Supervisors of Elections identify the specific equipment items as purchased with HAVA funds.

2. We also recommend that the state require the county Supervisor of Elections to establish procedures to ensure all HAVA equipment is subject to a physical inventory at least every two years and a complete inventory list of all HAVA equipment is maintained.

Response:

We agree that counties should be tracking and maintaining inventories of equipment purchased with HAVA funds and have instructed the counties to do so.  In May 2007, a memo was provided to all Supervisors of Elections instructing counties to maintain detailed records of items purchased with HAVA funds including the following:

- Description of the property
- Serial or other identification number
- Source of the property
- Percentage of Federal participation
- Who holds the title
- Acquisition date
- Cost of the property
- Location
- Use and condition
- Ultimate disposition data

We will reiterate this information to the counties.


Finding #3  Disbursements Testing

Recommendations:

1. Reimburse HAVA funds $89,668.84 identified as questioned costs.

2. Review allowability of other expenses of similar nature to ensure that funds determined to be unallowable costs are reimbursed to the HAVA program.

3. Monitor and educate the Supervisors of Elections offices on the appropriate uses of HAVA funds, and solicit all counties to reimburse the election funds for unallowable expenditures.

Exhibit 3

Response:

Although we agree that the Supervisors of Elections should be educated on the proper use of HAVA funds, we disagree that reimbursement should be provided for all questionable expenses. Before the State provides funds to the counties for voter education purposes, the county must submit a voter education plan outlining the proposed uses for the funds. That plan must be approved by the Division of Elections prior to a county receiving the funds. The Division made every effort to scrutinize the submitted plans to assure that the items approved were indeed voter education. However, not until the EAC published its Frequently Asked Questions in July 2006 had the EAC published any guidelines with respect to the proper uses of HAVA funds, specifically with respect to voter education. Therefore, we would challenge those items which were in plans submitted by the Supervisors of Elections and approved by the Division of Elections prior to the EAC publishing its Frequently Asked Questions. We agree that items purchased by the Supervisors of Elections which did not have prior approval and which are unallowable should be reimbursed to the HAVA account. In fact the current contract that is signed by the Supervisors prior to receipt of HAVA funds provides that the Supervisors reimburse the State for any funds expended which were not in accordance with approved plans.

Finding #4  Unsupported Costs

Recommendation:

We recommend that the Florida Department of State require Palm Beach County to return $33,092.50 for these purchases to the HAVA grant or provide supporting documentation to substantiate the costs.

Response:

We agree with this recommendation.

Finding #5  Personnel Costs

Recommendation:

1. Provide guidance to all Florida counties on this OMB Circular A-87 requirement.

2. Instruct the Pinellas County Supervisor of Elections that without the certifications, the salaries and fringe benefits claimed for the employee that charged 100 per cent of her time to HAVA program activities during the audit period are not eligible HAVA program expenditures.

3. Instruct other Florida counties that unless time sheets indicated that full time employees worked solely on HAVA program activities, or certifications have been completed that periodically and at least semi-annually certify that an employee worked solely on HAVA program activities during the period of the certification, the costs associated with the salaries and fringe benefits of those employees are ineligible as HAVA expenditures.

Exhibit 3

Response:

We agree and will provide the necessary guidance to the counties, along with a certification form for their employees.

Finding #6  Voter Registration Drives

Recommendation:

1. Provide clarification to all Florida counties that costs associated with voter registration drives are not eligible for HAVA funding.

2. Notify the Pinellas County Supervisor of Elections to analyze the above time charges to identify voter registration drive time charges or otherwise allocate them between voter registration and other activities. The Secretary of State should then notify the Supervisor of Elections that labor costs associated with the voter registration drives are not eligible for HAVA funding.

Response:

The State became aware that voter registration drives were not eligible for HAVA funding when the EAC published its Frequently Asked Questions in July 2006. Since that time, the Division has only approved expenditures for voter registration drives in which voter education activities were also occurring. We will provide further clarification to the counties on this issue and will notify Pinellas County to analyze the voter registration drives in question with regard to charges which are solely for voter registration drives.

Finding #7  Interest Calculations

Recommendations:

1. Implement procedures to ensure that the account reconciliation process in all counties includes a determination that the correct interest has been posted to the HAVA accounts.

2. A calculation of interest earned should be performed and the funds reimbursed to the HAVA account.

Response:

We will implement procedures to ensure that correct interest is posted to the counties' HAVA accounts. In May 2007 the Department provided each Supervisor of Elections with a memo outlining the requirement to keep all unexpended funds in an interest bearing account. With regard to the reimbursement of interest to the HAVA account, we will make an effort to work with the counties to calculate the interest. However, as you can appreciate, this exercise will be a logistically difficult and cumbersome task, especially in light of both the counties' and the State's time-consuming efforts in preparing for the upcoming Presidential Election.

Exhibit 3

Finding # 9   Cash Management – Advances to Counties

Recommendations:

1. Calculate the interest earned on the idle funds and reimburse the HAVA election funds for the lost interest.

2. Develop policies and procedures for minimizing the time elapsing between the transfer of funds from the Florida Treasury and disbursement by the grantees whenever advance payment procedures are used.

3. Inform the counties receiving HAVA funds of the 41 C.F.R. 105-71.120I(b)(7) requirement for minimizing the time elapsing between the funds transfer and disbursement of funds by grantee.

Response:

We disagree with this finding. From the very first workshop on HAVA in December 2002, states were told that the HAVA funding was like no other federal funding that the states receive. For example, generally, interest earned on any federal funds are returned to the Federal Government; however, states are allowed to keep interest earned on these HAVA funds. The states were never told that the HAVA funding was to be treated, for example, like the funds provided through the Act by Health and Human Services. Those funds are not drawn down by the State until we are ready to expend them. This recommendation seems to be counter to the recommendation that the funds not expended be placed in an interest bearing account. If the funds are earning interest, there appears to be no need to expend the funds immediately upon receipt.

Department staff has attended many workshops over the years regarding the implementation of HAVA. The language in HAVA is somewhat confusing in places; however we have made every attempt to implement the provisions accurately and reasonably. Many of the issues put forth in the findings were brought to the attention of the Department through the issuance of the EAC's Frequently Asked Questions or from reading other states' audits. At the time we became aware of the issues, counties were notified and the Department's procedures with regard to approval of counties' plan were altered.

The Department of State would like to resolve each of the findings in a manner that is fair and does not put an unreasonable hardship on the State or the counties.

Thank you for the opportunity to comment on your report. If you have any questions, please do not hesitate to contact me.

Sincerely,

Kurt S. Browning
Secretary of State

KSB/mra

Exhibit 3

**Appendix B**

## AUDIT METHODOLOGY

Our audit methodology included:

- Assessing audit risk and significance within the context of the audit objectives.

- Obtaining an understanding of internal control that is significant to the administration of the HAVA funds.

- Understanding relevant information systems controls as applicable.

- Identifying sources of evidence and the amount and type of evidence required.

- Determining whether other auditors have conducted, or are conducting, audits of the program that could be relevant to the audit objectives.

To implement our audit methodology, below are some of the audit procedures we performed:

- Interviewed appropriate SOS employees about the organization and operations of the HAVA program.

- Reviewed prior single audit report and other reviews related to the state's financial management systems and the HAVA program for the last 2 years.

- Reviewed policies, procedures and regulations for the SOS's management and accounting systems as they relate to the administration of HAVA programs.

- Analyzed the inventory lists of equipment purchased with HAVA funds.

- Tested major purchases and supporting documentation.

- Tested randomly sampled payments made with the HAVA funds.

- Verified support for reimbursements to local governments (counties, cities, and municipalities).

- Reviewed certain state laws that impacted the election fund.

- Examined appropriations and expenditure reports for state funds used to maintain the level of expenses for elections at least equal to the amount expended in fiscal year 2000 and to meet the five percent matching requirement for section 251 requirements payments.

- Evaluated compliance with the requirements for accumulating financial information reported to the Commission on the Financial Status Reports, Form SF-269, accounting for property, purchasing HAVA related goods and services, and accounting for salaries.

- Verified the establishment and maintenance of an election fund.

12

Exhibit 3

- Verified whether the state has sustained the state's level of expenditures for Elections.

- Conducted site visits of selected counties and local election authorities in St. Louis County to perform the following:

    - Observe equipment purchased with HAVA funds for proper accounting and safeguarding
    - Test disbursement of HAVA funds for allowability and compliance
    - Test cash receipts from SOS to ensure proper cash management
    - Test procurement of voting equipment for competitive bid process
    - Ensure compliance with HAVA Act

Appendix C

## MONETARY IMPACT AS OF SEPTEMBER 30, 2007

| Description | Questioned Costs | Additional Funds for Program |
|---|---:|---:|
| Interest earned not credited | $0 | $3,222 |
| Oversight & Monitoring | | |
| • Unallowable costs | 89,669 | 0 |
| • Missing documentation | 33,083 | 0 |
| • Voter registration drives | 139,056 | 0 |
| Totals | $261,808 | $3,222 |

**Note**: In addition to the amounts shown in the schedule above, additional funds for the HAVA program should be made available as a result of the resolution of issues related to program income and interest earnings as discussed in the report.

14

Exhibit 3

| | |
|---|---|
| **OIG's Mission** | The OIG audit mission is to provide timely, high-quality professional products and services that are useful to OIG's clients. OIG seeks to provide value through its work, which is designed to enhance the economy, efficiency, and effectiveness in EAC operations so they work better and cost less in the context of today's declining resources. OIG also seeks to detect and prevent fraud, waste, abuse, and mismanagement in these programs and operations. Products and services include traditional financial and performance audits, contract and grant audits, information systems audits, and evaluations. |
| **Obtaining Copies of OIG Reports** | Copies of OIG reports can be requested by e-mail. (eacoig@eac.gov).<br><br>Mail orders should be sent to:<br><br>U.S. Election Assistance Commission<br>Office of Inspector General<br>1225 New York Ave. NW - Suite 1100<br>Washington, DC 20005<br><br>To order by phone: Voice:   (202) 566-3100<br>                                   Fax:     (202) 566-0957 |
| **To Report Fraud, Waste and Abuse Involving the U.S. Election Assistance Commission or Help America Vote Act Funds** | By Mail:  U.S. Election Assistance Commission<br>               Office of Inspector General<br>               1225 New York Ave. NW - Suite 1100<br>               Washington, DC 20005<br><br>E-mail:     eacoig@eac.gov<br><br>OIG Hotline: 866-552-0004 (toll free)<br><br>FAX: 202-566-0957 |



Exhibit 3