

# U.S. ELECTION ASSISTANCE COMMISSION
## OFFICE OF INSPECTOR GENERAL

**FINAL REPORT:**

**ADMINISTRATION OF PAYMENTS RECEIVED UNDER THE HELP AMERICA VOTE ACT BY THE SOUTH DAKOTA SECRETARY OF STATE**

**APRIL 10, 2003 THROUGH SEPTEMBER 30, 2015**

**Report No.
E-HP-SD-04-16
July 2017**

Exhibit 4



**U.S. ELECTION ASSISTANCE COMMISSION**
1335 EAST-WEST HIGHWAY, SUITE 4300
SILVER SPRING, MD 20910
*OFFICE OF THE INSPECTOR GENERAL*

## MEMORANDUM

To:        Brian Newby
           Executive Director

From:      Patricia L. Layfield
           Inspector General

Date:      July 27, 2017

Subject:   Final Performance Audit Report - Administration of Payments Received
           Under the Help America Vote Act by the South Dakota Secretary of State
           (Assignment Number E-HP-SD-04-16)

We contracted with the independent certified public accounting firm of McBride, Lock &
Associates, LLC to audit the administration of payments received under the Help America Vote
Act (HAVA) by the South Dakota Secretary of State (SDSOS).

In its audit, McBride, Lock & Associates, LLC concluded that the Office generally accounted for
and expended the HAVA funds in accordance with applicable requirements for the period from
April 10, 2003 through September 30, 2015. However the following exceptions were identified:

1.  The Office did not have established policies and procedures addressing financial management
    activities including grant administration, program income, and Federal financial reporting.

2.  The Office submitted financial reports that were not supported by underlying accounting records.

3.  The Office did not adequately support all salaries and wages charged to the grant award.

4.  The Office's equipment management was inadequate in regards to the maintenance of property
    records and the performance of a physical observation of inventory.

5.  The Office expended $1,474 of HAVA funds for purposes that are not allowable under the award's
    terms and conditions or HAVA regulations.

6.  The Office did not adequately monitor subawardees.

In the report, McBride, Lock & Associates, LLC summarized the SDSOS response to the reported recommendations, as well as their comments on the responses after the recommendations. The Office generally agreed with the findings and recommendations. The EAC indicated that it would work with the Office to resolve the issues in the report. The Office's complete response is included as Appendix A-1 and the EAC's complete response is included as Appendix A-2.

We would appreciate being kept informed of the actions taken on our recommendations as we will track the status of their implementation. Please respond in writing to the findings and recommendation included in this report by October 20, 2017. Your response should include information on actions taken or planned, targeted completion dates, and titles of officials responsible for implementation.

To fulfill our responsibilities under Government Auditing Standards, the Office of Inspector General:

- Reviewed McBride, Lock & Associates, LLC's approach and planning of the audit;

- Evaluated the qualifications and independence of the auditors;

- Monitored the progress of the audit at key points;

- Reviewed the audit report, prepared by McBride, Lock & Associates, LLC to ensure compliance with Government Auditing Standards; and

- Coordinated issuance of the audit report.

McBride, Lock & Associates, LLC is responsible for the attached auditor's report and the conclusions expressed in the report. We do not express any opinion on the conclusions presented in McBride, Lock & Associates, LLC's audit report.

The legislation creating the Office of Inspector General requires that we report to Congress semiannually on all audit reports issued, actions taken to implement our recommendations, and recommendations that have not been implemented.

If you have any questions regarding this report, please call me at (301) 734-3104.

Attachment
cc:      Director of Grants and Payments

Exhibit 4

# Performance Audit Report

## Administration of Payments Received Under the Help America Vote Act by the South Dakota Secretary of State

Prepared for

### The United States Election Assistance Commission (EAC)
### Office of Inspector General

By

### McBride, Lock & Associates, LLC

April 2017

McBRIDE, LOCK & ASSOCIATES, LLC

CERTIFIED PUBLIC ACCOUNTANTS
KANSAS CITY

Exhibit 4

**Performance Audit Report**
**Administration of Payments Received Under the Help America Vote Act by**
**the South Dakota Secretary of State**

TABLE OF CONTENTS

Page

EXECUTIVE SUMMARY                                          1

BACKGROUND                                                2

AUDIT OBJECTIVES                                          4

SCOPE AND METHODOLOGY                                     5

AUDIT RESULTS                                             5

APPENDICES:

    Appendix A-1: Response of the South Dakota Secretary of State to the Draft Report

    Appendix A-2: Response of the U.S. Election Assistance Commission
                to the Draft Report

    Appendix B:   Audit Methodology

    Appendix C:   Monetary Impact as of September 30, 2015

Exhibit 4

# U.S. Election Assistance Commission
# Performance Audit Report
# Administration of Payments Received Under the Help America Vote Act by
# the South Dakota Secretary of State

## EXECUTIVE SUMMARY

McBride, Lock & Associates, LLC was engaged by the United States Election Assistance Commission (EAC) Office of the Inspector General to conduct a performance audit of the South Dakota Secretary of State's Office (Office) from inception on April 10, 2003 through September 30, 2015 to determine whether the Office used payments authorized by Sections 101, 102, and 251 of the Help America Vote Act of 2002 (the HAVA) in accordance with HAVA and applicable requirements; accurately and properly accounted for property purchased with HAVA payments and for program income; maintained state expenditures at a level not less than the level maintained in the fiscal year ending prior to November 2000; and met HAVA requirements for Section 251 funds for an election fund and for a matching contribution.

In addition, the Commission requires states to comply with certain financial management requirements, specifically:

- Comply with the *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Government,* 41 CFR 105-71, (originally Office of Management and Budget Circular A-102, also known as the "Common Rule").

- Expend payments in accordance with cost principles set forth in *Cost Principles for State and Local Governments*, 2 CFR 225, (originally Office of Management and Budget Circular A-87) for establishing the allowability or unallowability of certain items of cost for federal participation.

- Follow the requirements of the Federal Cash Management and Improvement Act.

- Submit detailed annual financial reports on the use of Title I and Title II payments.

- Comply with the provisions of *Audits of States, Local Governments and Non-Profit Organizations* (Office of Management and Budget Circular A-133).

We conducted this performance audit in accordance with *Generally Accepted Government Auditing Standards*. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on the audit objectives.

Based on the audit procedures performed, except for the matters discussed below, we concluded that the Office generally accounted for and expended the Grant funds in accordance with the

Exhibit 4

requirements mentioned above for the period from April 10, 2003 through September 30, 2015. The exceptions are as follows:

1. The Office did not have established policies and procedures addressing financial management activities including grant administration, program income and Federal financial reporting.

2. The Office submitted financial reports that were not supported by underlying accounting records.

3. The Office did not adequately support all salaries and wages charged to the grant award.

4. The Office's equipment management is inadequate in regards to the maintenance of property records and the performance of a physical observation of inventory.

5. The Office expended $1,474 of HAVA funds for purposes that are not allowable under the award's terms and conditions or HAVA regulations.

6. The Office did not adequately monitor subawardees.

We have included in this report as Appendix A, the Secretary of State's written response to the draft report. Such response has not been subjected to the audit procedures and, accordingly, we do not provide any form of assurance on the appropriateness of the response or the effectiveness of the corrective actions described therein.

## BACKGROUND

The Help America Vote Act of 2002 (HAVA) created the U.S. Election Assistance Commission (Commission) to assist States and insular areas (hereinafter referred to as States) with improving the administration of federal elections and to provide funds to States to help implement these improvements. The Commission administers payments to States authorized by HAVA under Titles I and II, as follows:

- Title I, Section 101 payments are for activities such as complying with HAVA requirements for uniform and nondiscriminatory election technology and administration requirements (Title III), improving the administration of elections for federal office, educating voters, training election officials and pool workers, and developing a State plan for requirements payments.

- Title I, Section 102 payments are available only for the replacement of punchcard and lever action voting systems.

- Title II, Section 251 requirements payments are for complying with Title III requirements for voting system equipment; and addressing provisional voting, voting information, Statewide voter registration lists, and voters who register by mail.

Exhibit 4

Title II also requires that states must:

- Have appropriated funds equal to five percent of the total amount to be spent for activities for which requirements payments are made.

- Maintain the expenditures of the State for activities funded by the requirements payment at a level that is not less than the expenditures maintained by the State for the fiscal year ending prior to November 2000.

- Establish an election fund for amounts appropriated by the State for carrying out activities for which requirements payments are made, for the Federal requirements payments received, for other amounts as may be appropriated under law and for interest earned on deposits of the fund.

**The Awardee – The South Dakota Secretary of State**

The HAVA funds were awarded to the South Dakota Secretary of State. The Office guides the administration of South Dakota's elections, assists in the registration of voters, oversees campaign finance reporting, and implements South Dakota's lobbyist disclosure laws. Elections in South Dakota are administered at the local level. The Office works closely with county auditors across South Dakota to ensure the smooth administration of South Dakota's local, state, and federal elections. The Office provides guidance on the election law, provides supplies that are fundamental to carrying out elections, and is a resource before and on election day to help election officials with any emergencies or routine questions that may arise.

**Help America Vote Act State of South Dakota State Plan**

The State of South Dakota formed a 17 member task force consisting of the Board of Elections, county auditors, Secretary of State Representatives, a state senator and representative, advocates for the community of people with disabilities and a spokesperson for Kids Voting.

The main objectives of the project funded by HAVA, as set forth in the state plan, were to establish a voter education program, establish instructions on how to correct ballot errors, provide one Direct Recording Electronic (DRE) voting machine per polling place and an appropriate ratio of back-up machines to the counties, posting of information at the polling place, develop an automated link between the felony records system and statewide voter file to send notices of felony convictions to appropriate county auditor, develop an automated link between the vital statistics system and statewide voter file to send deceased notices to the appropriate county auditor, verify driver's license or last four digits of social security number, and other activities to improve administration of elections.

The Secretary of State established and is maintaining an election fund for the exclusive purpose of carrying out activities of HAVA. The requirements payments and matching funds will be used for items which are not paid for under Title I Funds. Any unspent Title II money will be used for a voting equipment revolving fund to ensure South Dakota can continue to meet the mandates of HAVA in the future. The interest accrued on the revolving fund will be kept in the fund and used for the grants to the counties and/or entities.

Exhibit 4

## AUDIT OBJECTIVES

The objectives of our audit were to determine whether the Office:

1. Used payments authorized by Sections 101, 102, and 251 of the Grant in accordance with Grant and applicable requirements;

2. Accurately and properly accounted for property purchased with Grant payments and for program income;

3. Met HAVA requirements for Section 251 funds for creation of an election fund, providing required matching contributions, and meeting the requirements for maintenance of a base level of state outlays, commonly referred to as Maintenance of Expenditures (MOE).

In addition to accounting for Grant payments, the Grant requires states to maintain records that are consistent with sound accounting principles that fully disclose the amount and disposition of the payments, that identify the project costs financed with the payments and other sources, and that will facilitate an effective audit. The Commission requires states receiving Grant funds to comply with certain financial management requirements, specifically:

- Comply with the *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Government,* 41 CFR 105-71, (originally Office of Management and Budget Circular A-102, also known as the "Common Rule").

- Expend payments in accordance with cost principles set forth in *Cost Principles for State and Local Governments*, 2 CFR 225, (originally Office of Management and Budget Circular A-87) for establishing the allowability or unallowability of certain items of cost for federal participation.

- Follow the requirements of the Federal Cash Management and Improvement Act.

- Submit detailed annual financial reports on the use of Title I and Title II payments.

- Comply with the provisions of *Audits of States, Local Governments and Non-Profit Organizations* (Office of Management and Budget Circular A-133).

Exhibit 4

## SCOPE AND METHODOLOGY

We audited the Grant funds received and disbursed by the Office from April 10, 2003 through September 30, 2015 as shown in the following table:

| Description | HAVA Section 101 | HAVA Section 102 | HAVA Section 251 | Total |
|---|---|---|---|---|
| Funds Received from EAC | $ 5,000,000 | $ - | $ 13,026,182 | $ 18,026,182 |
| State Matching Funds | - | - | 686,348 | 686,348 |
| Program Income | 1,865,665 | - | 2,513,508 | 4,379,173 |
| Total Funds | $ 6,865,665 | $ - | $ 16,226,038 | $ 23,091,703 |
| Less Disbursements | (2,873,294) | - | (10,632,681) | (13,505,975) |
| Fund Balance | $ 3,992,371 | $ - | $ 5,593,357 | $ 9,585,728 |

## AUDIT RESULTS

We conducted this performance audit in accordance with *Generally Accepted Government Auditing Standards*. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on the audit objectives.

Based on the audit procedures performed, except for the matters discussed below, we concluded that the Office accounted for and expended the HAVA funds in accordance with the requirements mentioned above for the period from April 10, 2003 through September 30, 2015. The exceptions to applicable compliance requirements are described below.

**Finding No. 1 – Documentation of Policies and Procedures**

The Secretary of State's Office lacked complete, documented policies with respect to internal controls for period under audit, April 10, 2003 through September 30, 2015, which covered three separate administrations.

Federal regulations, specifically 41 CFR 105-71.120(b)(3) - *Post-Award Requirements/Financial Administration, Standards for Financial Management Systems, Internal Control*, require that:

(a) A State must expand and account for grant funds in accordance with State laws and procedures for expending and accounting for its own funds, and

(b) Effective control and accountability must be maintained for all grant and subgrant cash, real and personal property, and other assets.

Exhibit 4

A key aspect of maintaining an effective system of internal controls is the documentation of related policies and procedures to ensure these criteria are current, approved, communicated, incorporated into training materials, and updated when appropriate.

There were no Office specific internal control procedures written for grant administration, program income, and financial reporting during the audit period of April 10, 2003 through September 30, 2015. It was noted that the State has procedures in place within the accounting system, payroll system and how a transaction is processed. Additionally, it is noted that various State Departments have procedure manuals, which the Office generally follows.

Inadequate documented policies and procedures may result in a lack of awareness and compliance with management's directives, and could allow noncompliance with grant terms and conditions to occur and not be detected.

The Office has had minimal experience with federal awards including the processes associated with federal reporting and administration of significant contracts. Accordingly, there had been no specific need for documentation of policies and procedures in these areas. Further, as a small office, much of the training has occurred through verbal discussion rather than use of written documentation of policies and procedures.

**Recommendation**

We recommend that the EAC require the Office to implement procedures to ensure that all significant accounting, financial management and grant administration policies and procedures are documented. Additionally, these procedures should be reviewed and updated on a regular basis.

**Secretary of State Response:**

This office complies with applicable policies, laws and procedures for managing funds from both State and Federal sources. Documentation of said policies, laws and procedures are detailed in state manuals, administrative rules and state statutes.

The state acknowledges that it did not have written program-specific policies and procedures for administration of EAC monies; however, the Office had established unwritten policies and procedures as of July 1, 2015. The Office has adopted written policies and procedures (Appendix 1 to the Response of the South Dakota Secretary of State to the Draft Report) on October 3, 2016 to address financial management activities, including procurement management, direct voucher county and non-county payments, Federal financial reconciliation and reporting and grant administration policies including property management. These items have been incorporated into HAVA training materials and updated when appropriate. This has been reviewed and signed on October 3, 2016, and will be annually reviewed, signed and dated by all affected personnel, or if a change in personnel, policy or procedure occurs.

Exhibit 4

**Auditor's Response:**

We commend the Secretary of State for the implementation of written policies and procedures to manage funds from State and Federal sources. As noted, these documents ensure the consistency of application of controls to better assure compliance. The regular updating of such policies and procedures will ensure that these processes will stay effective in managing funds.

**Finding No. 2 – Financial Reporting**

The Office submitted financial reports for Section 101 and Section 251 funds that could not be supported by underlying accounting records.

The terms and conditions of the HAVA awards require the submission of accurate and complete Federal Forms 269 (Financial Status Report) and 425 (Federal Financial Report) which reflect the uses of award funds and the interest and program income generated from those funds. HAVA Title IX, Section 902. AUDITS AND REPAYMENT OF FUNDS, Part (a) – Recordkeeping Requirement states, "Each recipient of a grant or other payment made under this Act shall keep such records with respect to the payment as are consistent with sound accounting principles, including records which fully disclose the amount and disposition by such recipient of funds, the total cost of the project or undertaking for which such funds are used, and the amount of that portion of the cost of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit."

The Office submitted financial reports for Section 101 and Section 251 through September 2015. A summary of the expenditure reconciliation of the Section 101 and Section 251 financial reports to year-end accounting reports as of September 30, 2015 is as follows:

|  | Section 101 Report | Section 251 Report |
|---|---|---|
| Federal Share of Expenditures | $ 2,906,832 | $ 9,771,273 |
| Program Income Expenditures | - | - |
| Recipient Share of Expenditures | - | 684,963 |
| Total Expenditures Reported | $ 2,906,832 | $ 10,456,236 |
| Actual Expenditures Incurred | 2,873,294 | 10,632,681 |
| Expenditures (Under)/Over | $ 33,538 | $ (176,445) |

The Office submitted financial reports for Section 101 and Section 251 through September 2015. A summary of the revenue reconciliation of the Section 101 and Section 251 financial reports to the year-end accounting reports as of September 30, 2015 is as follows:

Exhibit 4

|  | Section 101 Report | Section 251 Report |
|---|---|---|
| Federal Funds Authorized | $ 5,000,000 | $ 13,021,803 |
| Program Income Earned | 1,865,665 | 2,347,642 |
| Recipient Share Required | - | 686,348 |
| Total Revenues Reported | $ 6,865,665 | $ 16,055,793 |
| Actual Revenues Earned | 6,865,665 | 16,226,038 |
| Revenues (Under)/Over | $ - | $ (170,245) |

The Office provided a detailed list of transactions, however the audit was unable to reconcile the amounts detailed in the list of transactions to the amounts labelled actual expenditures incurred and actual revenues earned. The Office was also was not able to reconcile Section 101 and Section 251 activity into the fund balance.

**Recommendation**

We recommend that the EAC address and resolve the following recommendation that the South Dakota Secretary of State's Office:

(a) Perform a reconciliation of the grant activity for the Section 101 and Section 251 funds and ensure that all expenditures and revenues are fully disclosed and reconcile into the fund balance.

(b) Prepare and submit revised financial reports to the EAC for Section 101 and Section 251 activities as of September 30, 2015.

**Secretary of State Response:**

We will work with Election Assistance Commission regarding the above finding.

**Auditor's Response:**

The Secretary of State should ensure a reconciliation of grant activity for Section 101 and Section 251 as well as submission of the necessary revisions to the financial reports for these sections as of September 30, 2015.

**Finding No. 3 – Inadequate Payroll Documentation**

The Secretary of State's Office did not adequately support all salaries and wages charged to the grant award.

Exhibit 4

Office of Management and Budget (OMB) Circular A-87, <u>Cost Principles for State, Local, and Indian Tribal Governments</u>, Attachment B.8.h.(3) states that "Where employees are expected to work solely on a single Federal award or cost objective, charges for their salaries and wages will be supported by periodic certifications that the employees worked solely on that program for the period covered by the certification. These certifications will be prepared at least semi-annually and will be signed by the employee or supervisory official having first-hand knowledge of the work performed by the employee."

Attachment B.8.h.(4), states that "Where employees work on multiple activities or cost objectives, a distribution of their salaries or wages will be supported by personnel activity reports or equivalent documentation which meets the standards in subsection (5)… Such documentary support will be required where employees work on… (b) A Federal award and a non Federal award"

Attachment B.8.h.(5), states that "Personnel activity reports or equivalent documentation must meet the following standards: (a) They must reflect an after the fact distribution of the actual activity of each employee, (b) They must account for the total activity for which each employee is compensated, (c) They must be prepared at least monthly and must coincide with one or more pay periods, (d) They must be signed by the employee, and (e) Budget estimates or other distribution percentages determined before the services are performed do not qualify as support for charges to Federal awards but maybe used for interim accounting purposes."

The sample selection of 11 payroll transactions found 4 instances (36%) where the employee did not have an adequate work effort certification for the pay period. The 4 pay periods ended May 8, 2006, June 6, 2008, July 23, 2008 and April 8, 2011. Timesheets do not provide for distribution of time between Federal grant activity and state activity. Additionally, it was noted that the Office did not have pay rate approval forms for former employees since documentation is not kept past five years. Therefore, pay rates could not be verified for four of the 11 employees selected. Of the $18,612 of salary costs reviewed $10,855 (58%) was determined to be unsupported.

**Recommendation**

We recommend that EAC address and resolve the following recommendations that the South Dakota Secretary of State's Office:

(a) Transfer into the election fund $10,855 for the questioned salary charges as cited above.

(b) Perform and provide additional analysis for all payroll charges allocated to HAVA prior to September 30, 2015 to determine the extent of unsupported payroll costs.

(c) Formalize documented policies and procedures to ensure that employees who expend efforts on Federal activities accurately record their time in the Office's timekeeping system going forward.

Exhibit 4

**Secretary of State Response:**

For the four pay periods (2006, 2008 and 2011) of the three employees who make up the $10,855 in the questioned salary charges, our office provided several pieces of evidence to the audit firm including unsigned, required semi-annual certifications and screenshots of when those documents were created and saved on the network drive showing date and time. The screen shots of the certification dates and times, as well as the pay periods allocations in question, are in Appendix 2 to the Response of the South Dakota Secretary of State to the Draft Report.

Also provided were the payroll allocations for that time period. The "Company" line on the payroll allocations (Appendix 2 to the Response of the South Dakota Secretary of State to the Draft Report) indicates "2007," which identifies Federal payroll. Two of the three employees in question (making up three of the four referenced pay periods) worked on HAVA related projects full-time during the questioned time periods, thus their salaries would have been allocated to only Federal grant activity and not state activity.

Employee 1
Pay date: 05/16/2006
Amount: $1,911.19
Pay date: 06/16/2008
Amount: $6,748.91
Employee 2
Pay Date: 08/01/2008
Amount: $1,800.68
Employee 3
Pay Date: 04/15/2011
Amount: $394.49

This office has provided sufficient documentation to support the activity of Employees 1 and 2, whom were exclusively paid with Federal HAVA funds and, therefore, this office only needs to reimburse $394.49 into the HAVA fund.

The South Dakota Secretary of State's office began utilizing an advanced feature in the State's timekeeping system in February 2015 through which the employee allocates the actual hours worked on both federal and state projects per day. The employee then electronically affirms and signs the timesheet on a semi-monthly basis. The timesheet is then electronically signed by the supervisory official having first-hand knowledge of the work performed by the employee on a semi-monthly basis.

Employees who expend efforts on Federal activities accurately record their time in the State's time keeping system. These policies are included in the Office's HAVA Policies & Procedures Manual (Appendix 1 to the Response of the South Dakota Secretary of State to the Draft Report).

Exhibit 4

**Auditor's Response:**

The Secretary of State acknowledges that the work certifications presented were unsigned. The response does not provide for any additional information regarding the pay rate approvals for the four employee's salaries that were questioned. The statements regarding the limitation of employee effort to the Federal program is beneficial to the resolution process. The Secretary of State should ensure that work certifications are signed and that pay rates are approved.

**Finding No. 4 – Inadequate Equipment Management**

The Office's equipment management is inadequate in regards to the maintenance of property records and the performance of a physical observation of inventory.

The *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Governments* 41 CFR § 105-71.132 (d) (The "Common Rule") section states that, (1) "Property records must be maintained that include a description of the property, a serial number or other identification number, the source of property, who holds the title, the acquisition date, and cost of the property, percentage of Federal participation in the cost of the property, the location, use and condition of the property, and any ultimate disposition data including the date of disposal and sale price of the property and (2) A physical inventory of the property must be taken and the results reconciled with the property records at least once every two years."

The Office did not have documented policies regarding the maintenance of the equipment listing or the conduct of a physical inventory until after September 2015. The implementation by the Office of the Help America Vote Act Internal Control Procedures indicates that every two years prior to a primary election, all counties in South Dakota are to complete the inventory sheet provided by the Office and must be submitted to the HAVA Coordinator by July 1st the beginning of a new fiscal year. A review of the inventory indicated that all required elements are present and completed by each South Dakota County.

**Recommendation**

We recommend that EAC address and resolve the following recommendations that the Office:

(a) Formalize documented policies and procedures regarding inventory management.

(b) Conduct and document a physical inventory on a biannual basis.

**Secretary of State Response:**

As stated in the finding, this Office conducted a physical inventory with the county auditors. The information was documented in an Excel Spreadsheet after the physical inventory in June of 2016. We will continue to conduct and record a physical inventory of the equipment purchased with HAVA monies on a bi-annual basis in the months of May and June on even numbered years in accordance with federal requirements.

Exhibit 4

No formalized policies and procedures regarding equipment management had been put in place prior to September 2015. The current administration formally documented and signed these procedures on October 3, 2016. These procedures are included in the office's "South Dakota Secretary of State's Office - HAVA Policies and Procedures Manual" (Appendix 1 to the Response of the South Dakota Secretary of State to the Draft Report).

**Auditor's Response:**

We commend the Secretary of State for taking corrective action regarding the taking of an inventory in even number years. We further commend their efforts in documenting their procedures in the Office Manual pertaining to HAVA.

**Finding No. 5 – Unallowable Costs**

The Secretary of State's Office expended HAVA funds for purposes that are not allowable under the award's terms and conditions or HAVA regulations.

HAVA Section 101(b)(1) states, "A State shall use the funds provided under a payment made under this section to carry out one or more of the following activities: (B) Improving the administration of elections for Federal Office. (C) Educating voters concerning voting procedures, voting rights, and voting technology."

The Secretary of State's Office expended $1,474 of HAVA funds, on an invoice dated October 13, 2006, for the purchase of letters to be distributed to students in grades K-12 for voter education. Each letter had a sample voter registration form on the back. Students in grades K-12 are not eligible voters. Therefore, this expense is not considered allowable under HAVA Section 101(b)(1).

**Recommendation:**

We recommend that the EAC require the Office to transfer to the election fund $1,474 for the questioned cost cited above.

**Secretary of State Response:**

The Office agrees with this finding. The Kids Voting letter was distributed in September 2006. The Secretary of State at the time developed and approved this project. The Office will reimburse the HAVA Fund for the cost of the Kids Voting letter in the amount of $1,474.00.

**Auditor's Response:**

The Secretary of State acknowledges the inappropriate payment for Kids Voting costs. The reimbursement of these funds is appropriate.

Exhibit 4

**Finding No. 6 –Inadequate Subawardee Monitoring**

The Office did not have documented policies and procedures in place to ensure subawardee's are being properly monitored in the areas of allowable costs, maintenance of effort and equipment management for period under audit, April 10, 2003 through September 30, 2015, which covered three separate administrations.

The *Uniform Administrative Requirements for Grants and Cooperative Agreements with State and Local Governments* 41 CFR § 105-71.140 (a) (the "Common Rule") states that, "Grantees are responsible for managing the day-to-day operations of grant and subgrant supported activities. Grantees must monitor grant and subgrant supported activities to assure compliance with applicable Federal requirements and that performance goals are being achieved. Grantee monitoring must cover each program, function or activity."

The Office initiated subgrant agreements with the counties. The basis of the subgrant agreement was the reimbursement request of the counties for election equipment and supplies. The county submits a Title II Reimbursement and/or Expenditure Electronic Reporting Form to the State. Additional documentation was systematically requested to ensure the acceptability of funds used. Counties are required to expend county-held accounts on Title III requirements before requesting state-held funds. Counties are reimbursed semi-annually from the state election fund. Originally, the Office requested actual copies of payment receipts of county expenditures if a county was selected for audit. The audit procedures required invoices to support one line, of the seventeen lines, on the Reporting Forms chosen at random from every fourth county submission for reimbursement received. New procedures require the county to submit all invoices with expenses claimed for reimbursement along with the Reporting Forms sent to the Office. The subgrant agreement with the counties did provide the necessary provisions as required by the Federal regulations. However, there was no monitoring performed by the Office subsequent to the review of the reimbursement request. County reimbursements provided by the Office totaled $3,986,529.

The Office initiated a maintenance of effort advisory on September 18, 2007. The advisory placed the Maintenance of Effort responsibility, as detailed in HAVA Section 254(a)(7), on the individual counties. Each county was to "make an accounting of any such expenses made in the county fiscal year ending prior to November 2000. Each county should define a 1999 base level of expenses that relate to title III requirements." Four counties were selected to review maintenance of effort documentation. Three of the four counties did not provide adequate documentation to support their compliance with maintenance of effort requirements.

Four counties were selected to physically observe inventory purchased under the subgrant agreement. Procedures were performed to determine the accuracy of the inventory listings of those counties. The observations indicated that assets purchased with HAVA funds were adequately safeguarded. However, the inventory listings maintained by the counties were not sufficient to be compliant with 41 CFR § 105-71.132 until after the audit period.

Monitoring subawardee's procurement of contractual services and goods, maintenance of effort and equipment management will ensure that purchases are made through full and open competition, help mitigate the potential misuse of federal funds, ensure compliance with the

Exhibit 4

maintenance of effort requirements under HAVA, and ensure equipment is adequately safeguarded.

The Office did not have policies in place to ensure that county reimbursements were made only for costs that were allocable, allowable and reasonable. Additionally, the Office did not ensure that each county tracked their maintenance of effort. Finally, the Office did not ensure that each county maintained a fixed asset listing that complied with federal regulations.

**Recommendation**

We recommend EAC require the office to document and implement monitoring policies and procedures to assure subawardee compliance with applicable Federal requirements and that performance goals are being achieved.

**Secretary of State Response:**

The office instituted a subawardee level inventory management and documentation procedure in 2016, after the end of the audit period. The procedure is detailed within the HAVA Policy and Procedure manual (Appendix 1) and will be completed in even numbered years in compliance with Federal regulation.

The office had instituted a written policy of HAVA allowable costs in the 2014 HAVA State Plan (Appendix 1-B to the Response of the South Dakota Secretary of State to the Draft Report) and will continue to follow these guidelines.

The office has instituted a policy for subawardee monitoring of Maintenance of Effort and is detailed in the HAVA Policies and Procedures Manual (Appendix 1 to the Response of the South Dakota Secretary of State to the Draft Report). It was previously detailed in the 2007 HAVA State Plan (Appendix 3 to the Response of the South Dakota Secretary of State to the Draft Report) for South Dakota that "the EAC has allowed that South Dakota counties will be responsible for maintenance of effort according to the county fiscal year 1999. Counties have been advised to determine if there existed any spending for title III type activities in 1999. If any existed in the county, the county will be responsible for maintaining that level every year according to the first year that the county used any federal or county funds dedicated to HAVA title III requirements."

**Auditor's Response:**

The institution of the subawardee level inventory management and documentation procedure in 2016 is responsive to the recommendation. The written policy pertaining to HAVA allowable costs is also appropriate as is the institution of a policy for subawardee monitoring.

We provided a draft of our report to the appropriate individuals of the Office of the South Dakota Secretary of State. We considered any comments received prior to finalizing this report.

Exhibit 4

The Office responded on May 26, 2017 and generally agreed with the report's findings and recommendations. The EAC responded on June 8, 2017 and stated they will work with the Secretary's Office to ensure appropriate corrective action. The Office's complete response is included as Appendix A-1 and the EAC's complete response as Appendix A-2.

McBride, Lock & Associates, LLC performed the related audit procedures between May 6, 2016 and April 5, 2017.

*(Original Signed by McBride, Lock & Associates, LLC)*

McBride, Lock & Associates, LLC
April 5, 2017

Exhibit 4

# APPENDIX A-1

## Response of the South Dakota
## Secretary of State to the Draft Report

Exhibit 4



*South Dakota Secretary of State*
### SHANTEL KREBS

May 26, 2017

U.S. Election Assistance Commission
1335 East-West Highway, Suite 4300
Silver Spring, MD 20910
Office of the Inspector General

*Via Electronic Transmission*

Dear Inspector General Patricia L. Layfield,

Enclosed you will find the written response from the South Dakota Secretary of State's office to the *Performance Audit Report – Administration of Payments Received Under the Help America Vote Act by the South Dakota Secretary of State*, dated April 2017.

Please let my office know if you have any questions regarding the response. HAVA Coordinator Kristin Gabriel can be reached at (605) 773-3537 or Kristin.Gabriel@state.sd.us.

Sincerely,

Shantel Krebs
South Dakota Secretary of State

Enclosure

SOUTH DAKOTA STATE CAPITOL • 500 E. CAPITOL AVE. • PIERRE, SD 57501
www.SDSOS.gov • phone 605 773 3537 • corporations 605 773 4845 • fax 605 773 6580
sdsos@state.sd.us • Twitter @SOSKrebs

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

**1. Documentation of Policies and Procedures**

**Recommendation:**

We recommend that the EAC require the Office to implement procedures to ensure that all significant accounting, financial management and grant administration policies and procedures are documented. Additionally, these procedures should be reviewed and updated on a regular basis.

**State response:**

This office complies with applicable policies, laws and procedures for managing funds from both State and Federal sources. Documentation of said policies, laws and procedures are detailed in state manuals, administrative rules and state statutes.

The state acknowledges that it did not have written program-specific policies and procedures for administration of EAC monies; however, the Office had established unwritten policies and procedures as of July 1, 2015. The Office has adopted written policies and procedures (Appendix 1) on October 3, 2016 to address financial management activities, including procurement management, direct voucher county and non-county payments, Federal financial reconciliation and reporting and grant administration policies including property management. These items have been incorporated into HAVA training materials and updated when appropriate. This has been reviewed and signed on October 3, 2016, and will be annually reviewed, signed and dated by all affected personnel, or if a change in personnel, policy or procedure occurs.

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

**2. Financial Reporting**

**Recommendation:**

We recommend that the EAC address and resolve the following recommendation that the South Dakota Secretary of State's Office:

(a) Perform a reconciliation of the grant activity for the Section 101 and Section 251 funds and ensure that all expenditures and revenues are fully disclosed and reconcile into the fund balance.

(b) Prepare and submit revised financial reports to the EAC for Section 101 and Section 251 activities as of September 30, 2015.

**State response:**

We will work with Election Assistance Commission regarding the above finding.

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

**3. Unsupported Payroll Costs Charged to the Grant**

**Recommendation:**

We recommend that EAC address and resolve the following recommendations that the South Dakota Secretary of State's Office:

(a) Transfer into the election fund $10,855 for the questioned salary charges as cited above.

(b) Perform and provide additional analysis for all payroll charges allocated to HAVA prior to September 30, 2015 to determine the extent of unsupported payroll costs.

(c) Formalize documented policies and procedures to ensure that employees who expend efforts on Federal activities accurately record their time in the Office's timekeeping system going forward.

**State response:**

For the four pay periods (2006, 2008 and 2011) of the three employees who make up the $10,855 in the questioned salary charges, our office provided several pieces of evidence to the audit firm including unsigned, required semi-annual certifications and screenshots of when those documents were created and saved on the network drive showing date and time. The screen shots of the certification dates and times, as well as the pay periods allocations in question, are in Appendix 2.

Also provided were the payroll allocations for that time period. The "Company" line on the payroll allocations (Appendix 2) indicates "2007," which identifies Federal payroll. Two of the three employees in question (making up three of the four referenced pay periods) worked on HAVA related projects full-time during the questioned time periods,

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

thus their salaries would have been allocated to only Federal grant activity and not state activity.

**Employee 1**

Pay date: 05/16/2006

Amount: $1,911.19

Pay date: 06/16/2008

Amount: $6,748.91

**Employee 2**

Pay Date: 08/01/2008

Amount: $1,800.68

**Employee 3**

Pay Date: 04/15/2011

Amount: $394.49

**TOTAL - $10,855.27**

This office has provided sufficient documentation to support the activity of Employees 1 and 2, whom were exclusively paid with Federal HAVA funds and, therefore, this office only needs to reimburse $394.49 into the HAVA fund.

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

The South Dakota Secretary of State's office began utilizing an advanced feature in the State's timekeeping system in February 2015 through which the employee allocates the actual hours worked on both federal and state projects per day. The employee then electronically affirms and signs the timesheet on a semi-monthly basis. The timesheet is then electronically signed by the supervisory official having first-hand knowledge of the work performed by the employee on a semi-monthly basis.

Employees who expend efforts on Federal activities accurately record their time in the State's time keeping system. These policies are included in the Office's HAVA Policies & Procedures Manual (Appendix 1).

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

**4. Inadequate Equipment Management**

**Recommendation:**

      We recommend that EAC address and resolve the following recommendations that the Office:

      (a) Formalize documented policies and procedures regarding inventory management.

      (b) Conduct and document a physical inventory on a biannual basis.

**State response:**

      As stated in the finding, this Office conducted a physical inventory with the county auditors. The information was documented in an Excel Spreadsheet after the physical inventory in June of 2016. We will continue to conduct and record a physical inventory of the equipment purchased with HAVA monies on a bi-annual basis in the months of May and June on even numbered years in accordance with federal requirements.

      No formalized policies and procedures regarding equipment management had been put in place prior to September 2015. The current administration formally documented and signed these procedures on October 3, 2016. These procedures are included in the office's "South Dakota Secretary of State's Office - HAVA Policies and Procedures Manual" (Appendix 1).

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

**5. Inadequate Invoice Approval**

**Recommendation:**

We recommend that the EAC require the Office to transfer to the election fund $1,474 for the questioned cost cited above.

**State response:**

The Office agrees with this finding. The Kids Voting letter was distributed in September 2006. The Secretary of State at the time developed and approved this project. The Office will reimburse the HAVA Fund for the cost of the Kids Voting letter in the amount of $1,474.00.

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

**6. Inadequate Subawardee Monitoring**

**Recommendation:**

      We recommend EAC require the office to document and implement monitoring policies and procedures to assure subawardee compliance with applicable Federal requirements and that performance goals are being achieved.

**State response:**

      The office instituted a subawardee level inventory management and documentation procedure in 2016, after the end of the audit period.  The procedure is detailed within the HAVA Policy and Procedure manual (Appendix 1) and will be completed in even numbered years in compliance with Federal regulation.

      The office had instituted a written policy of HAVA allowable costs in the 2014 HAVA State Plan (Appendix 1-B) and will continue to follow these guidelines.

      The office has instituted a policy for subawardee monitoring of Maintenance of Effort and is detailed in the HAVA Policies and Procedures Manual (Appendix 1). It was previously detailed in the 2007 HAVA State Plan (Appendix 3) for South Dakota that "the EAC has allowed that South Dakota counties will be responsible for maintenance of effort according to the county fiscal year 1999. Counties have been advised to determine if there existed any spending for title III type activities in 1999. If any existed in the county, the county will be responsible for maintaining that level every year according to the first year that the county used any federal or county funds dedicated to HAVA title III requirements."

Exhibit 4

# Appendix 1

Help America Vote Act Policies &

Procedures Manual – Office of the

South Dakota Secretary of State

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

## INDEX

**GRANT ADMINISTRATION**

- Equipment Management/Inventory
- State Plan
- Records Retention
- In-Person Satellite Sites
- HAVA Grants
- Approving Title II Reimbursement Requests
- Maintenance of Effort

**ACCOUNTING PROCEDURES/FINANCIAL MANAGEMENT**

- Reconciliation of HAVA County and State Balances/Year-End Reports
- Payroll & Employee Compensation
  - Timekeeping System (TKS)
  - Conflict of Interest
- Payments to counties (Title II Reimbursements)
- Payments to non-counties
- Receipting Systems (Elections) Instructions
  - Deposit Procedures
- Procurement Policies
- Contracts
  - BPro
  - GCR
  - AAMVA
  - MelissaData
- Memoranda of Understanding
  - South Dakota Department of Health, Division of Vital Records
  - Unified Judicial System
  - Department of Public Safety, Division of Drivers Licensing
  - Interstate Voter Crosscheck

**PROGRAM INCOME**

- Sale of voter registration file
- Interest proration voucher

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

## GRANT ADMINISTRATION

❖ **Equipment Management/Inventory**
- o All equipment purchased with Federal HAVA funds must be physically inventoried every even numbered year by the County Auditors.
- o The county auditor must then sign a certification (Appendix 1-A) prescribed by the Secretary of State's office indicating the equipment they have in their possession and send it to the HAVA Coordinator in the South Dakota Secretary of State's office by July 1 of the even numbered year.
- o A master spreadsheet will be kept by the HAVA Coordinator and will include:
  - o A description of the property
  - o Serial number or other identification number
  - o Source of property
  - o Who holds the title
  - o Acquisition date
  - o Cost of the property
  - o Percentage of Federal participation in the cost of the property
  - o Location
  - o How often the Equipment is Used
    - ▪ Federal
    - ▪ County
    - ▪ Municipal
    - ▪ School
    - ▪ All
  - o Condition of the property
    - ▪ Working
    - ▪ Needs Repair
    - ▪ Not Repairable
    - ▪ Disposed
  - o Any ultimate disposition data including:
    - ▪ Date of disposal
    - ▪ Sale price of the property
  - o State Sticker Identifying Number
- o Electronic location of spreadsheet:
  - o N:/Elections/Federal/HAVA/Equipment/Master Inventory Equipment List
- o When a new piece of equipment is purchased, the HAVA Coordinator will send state issued numerical sticker to label equipment purchased with Federal funds. These numbers will be kept on the spreadsheet indicated above.
- o State issued numbered stickers will be in the following format:



Exhibit 4

- o Secretary of State Office Equipment
  - o When equipment comes in the office that was purchased with federal funds the HAVA Coordinator places a sticker that states "purchased with federal funds" on the equipment and also denotes them in the master spreadsheet.

❖ **HAVA State Plan (Appendix 1-B)**
  - o The mission of the South Dakota Help America Vote Act State Plan is designed to use HAVA funds to facilitate the enfranchisement of as many eligible voters as reasonably possible through the promotion, access and availability of voting.
  - o Allowable expenditures that are reimbursable by HAVA are detailed within the South Dakota HAVA State Plan
  - o The State Plan must be updated if there are changes in procedure in the office.
  - o The updated State Plan must be sent to the Election Assistance Commission for the review process and then are published in the Federal Register.

❖ **Records Retention**
  - o The following information shall be retained in the office until all funds are expended of the Federal HAVA Grant:
    - ▪ Reimbursement requests from counties and supporting documents
    - ▪ Year-End Reports for Section 101 and Section 251
    - ▪ Equipment Inventory List
    - ▪ Official Election Assistance Commission Correspondence
    - ▪ Employee Time Sheets tracking actual time worked on Federal Projects
    - ▪ Work Certifications
    - ▪ 2016 Federal Audit Documentation

❖ **In-Person Satellite Sites**
  - o The following criteria must be met before a county may be allowed to use HAVA funds to setup an additional in-person satellite absentee voting location in a particular jurisdiction. The voters living in the jurisdiction are*:
    - ▪ Have 50% more individuals below the poverty line than the rest of the county; and
    - ▪ Live, on average, 50% farther from the existing county seat or other satellite location than the rest of the county.
      OR
    - ▪ Jurisdiction for the criteria listed below is limited to an incorporated municipality, unincorporated town or a census designated place; and
    - ▪ Have no access to affordable, regular, convenient public transportation within the county from the proposed satellite location to the county seat; and
    - ▪ The jurisdiction is composed of 75% or more individuals who belong to a suspect class. (Suspect Classes: a presumptively unconstitutional distinction made between individuals on the basis of race, national origin, alienage, or religious affiliation, in a statute ordinance, regulation, or policy.[1] )

Exhibit 4

- o *According to the most recent United States Census Bureau, American Community Survey results as analyzed by the Government Research Bureau at the University of South Dakota. A jurisdiction is defined as a voting precinct, township, municipality, town, school district, or special district. The following counties are approved to have met the criteria in this plan: Buffalo, Dewey and Jackson Counties.
    - ▪ A county is not required to spend down their county held HAVA fund balance prior to being awarded HAVA grant funds for an in-person absentee voting satellite location.
    - ▪ A county must submit estimated expenses to the South Dakota Secretary of State's office three (3) months prior to the election for pre-approval in order to be reimbursed with HAVA funds.
    - ▪ These parameters do not prohibit the Secretary of State from granting additional HAVA funding to the 66 county auditors at any time due to extraordinary circumstances.
    - ▪ A county is allowed (1) one HAVA funded satellite voting location, however, these parameters do not preclude counties from spending county funds to pay for an in-person absentee voting satellite location.
1) As defined by: https://www.law.cornell.edu/wex/suspect_classification http://law2.umkc.edu/faculty/projects/ftrials/conlaw/epcscrutiny.htm

❖ **HAVA Grants**
- o HAVA grants were established by the South Dakota HAVA State Plan and approved by the HAVA Grant Board.
- o The HAVA Grant Board, with the approval of the State Board of Elections, is made up of:
    - ▪ Four (4) County Auditors,
        - • Two (2) Democrats
        - • Two (2) Republicans
    - ▪ HAVA Coordinator in the office of the Secretary of State,
    - ▪ One member from the disability community; and
    - ▪ One member from the Department of Tribal Relations.
- o A county may apply for a HAVA grant to reimburse election expenses related to HAVA. All expenses submitted must meet the requirements of HAVA and may be subject to both federal and state audits.
- o Before a county may apply for a HAVA grant, all funds in the county's State-Held account and County-Held Match Money account must be spent.
- o The maximum amount for which a county may apply for non-in-person satellite voting center related expenses is $9,000 per Primary and General Election cycle or $4,500 per year. Exceptions may be made in extraordinary cases.
- o Applications must be received by the Secretary of State's office by July 1 of every odd-numbered year for the following year's anticipated expenses.
- o Applications will be approved or denied by November 1 of the odd-numbered year.

Exhibit 4

- If a county is denied a HAVA grant, the county may submit an appeal to the State Board of Elections to review the decision and must do so within 30 days of receiving their denial notice. The decision of the State Board of Elections is final and may not be appealed again.
- A county that has received a HAVA grant must submit a Title II reimbursement with supporting invoices and documentation before being reimbursed.
  - Only the amount of the grant will be reimbursed

❖ **Approving Title II Reimbursements from Counties**
- Title II reimbursement forms and supporting documentation are received by the HAVA Coordinator via mail or electronic mail from the county and the line items submitted are reviewed for HAVA compliance.
  - HAVA Compliant items are detailed in the 2014 HAVA State Plan (Appendix 1-B)
  - Once all items on the reimbursement are reviewed it is signed and dated by the HAVA Coordinator then given to the Deputy Secretary of State-Elections Services to review for compliance, sign and date.
  - If the reimbursement or part of the reimbursement is denied the HAVA Coordinator will send an e-mail to the county auditor detailing why the request was denied including but not limited to:
    - Not an allowable expense to be reimbursed
    - No supporting documentation and a request to submit invoices
    - Not enough county-held HAVA funds to cover all expenses requested to be reimbursed
- One (1) copy of the signed and dated HAVA Title II Reimbursement Form is made.
  - Copy of approved form is given to HAVA Accountant by the Deputy Secretary of State – Elections Services to process for payment.
  - Original form and supporting documentation is kept and filed by the HAVA Coordinator in the Election office's northern most filing cabinet.
  - HAVA Coordinator corresponds with the county that their request has been fulfilled, partially fulfilled or denied via electronic mail.
  - HAVA Coordinator tracks expenditures in:
    - TitleIIReimbusrementFormTracking.xlsx
      - Location: N: Drive/Elections/Federal/HAVA/Title II/YEAR
    - SDSOS_HAVAFundBalances.xlsx
      - Location: N:Drive/Elections/Federal/HAVA/TitleII

❖ **Maintenance of Effort**
- The Office initiated maintenance of effort advisory on September 18, 2007. The advisory placed the Maintenance of Effort responsibility, as detailed in HAVA Section 254(a)(7), on the individual counties. Each county was to "make an accounting of any such expenses made in the county fiscal year ending prior to November 2000. Each county should define a 1999 base level of expenses that relate to title III requirements."

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

- o Each county auditor/finance officer shall send their yearly maintenance of effort to the Secretary of State's office by January 30 of the year after the associated fiscal year.
- o The office of the Secretary of State will send two reminders to counties prior to the submission deadline of January 30.

## ACCOUNTING PROCEDURES / FINANCIAL MANAGEMENT

- ❖ **Reconciliation of HAVA County and State Balances/Year-End Reports**
    - o Federal Fiscal Year-End reports are annually submitted from the South Dakota Secretary of State's office to the Federal Election Assistance Commission (EAC) by December 30 immediately following the end of the Federal fiscal year.
        - ▪ County and state expenditures are reconciled between the HAVA Accountant and the HAVA Coordinator and compiled into the year-end report on the form prescribed by the EAC.
            - • HAVA Coordinator's record of county payments are matched with record of payment from HAVA Accountant
        - ▪ The Secretary of State reviews and signs the reconciled reports and the HAVA Coordinator submits the signed reports to the Federal Election Assistance Commission via electronic mail.

- ❖ **Payroll & Employee Compensation/Timekeeping System**
    - o Employees paid with HAVA funds are required to record actual hours worked on HAVA projects per pay period within the State's Timekeeping system (TKS).
        - ▪ ███████████ - Deputy Secretary of State, Elections Services
        - ▪ ███████████ - State Election Coordinator
        - ▪ ███████████ - Election Coordinator
        - ▪ ███████████ - HAVA Coordinator
        - ▪ ███████████ - HAVA Accountant
    - o Deputy Secretary of State-Election Services approves time sheets for the Election Team and is made aware of the actual hours worked that are related to HAVA projects. Deputy Secretary of State-Administrative Services is also made aware of the actual hours worked that the Accountant does that is HAVA related.
    - o Time sheets are not allowed to be changed after the supervisor and payroll coordinator signs off on them.
    - o Time sheets are signed and approved on a semi-monthly basis.
    - o Employee travel is not allowed to be reimbursed to the employee unless the agenda clearly states federal topics.
        - ▪ Travel detail is signed by the employee, supervisor and Secretary of State.
        - ▪ Travel must be submitted within 30 days of travel or a delayed travel form must be filled out and indicate why the submission is late. This form is signed by the employee and supervisor and submitted with the travel voucher prior to the submission of the State Auditor's office.
    - o All employees of the office sign a conflict of interest waiver on a yearly basis (Appendix 1-C).

6

Exhibit 4

❖ **Payments to Counties (Title II Reimbursements)**
- o Title II forms and supporting documentation are received by the HAVA Coordinator via mail or electronic mail from the county and the line items submitted are reviewed for HAVA compliance.
  - ▪ HAVA Compliant items are detailed in the 2014 HAVA State Plan
  - ▪ Once the reimbursement is approved it is signed and dated by the HAVA Coordinator then given to the Deputy Secretary of State-Elections Services to review, sign and date.
  - ▪ If the reimbursement or part of the reimbursement is denied the HAVA Coordinator will send an e-mail to the county auditor detailing why the request was denied including but not limited to:
    - • Not an allowable expense to be reimbursed
    - • Not enough supporting documentation and a request to submit invoices
    - • Not enough county-held HAVA funds to cover all expenses requested to be reimbursed
- o One (1) copy of the signed and dated HAVA Title II Reimbursement Form is made.
  - ▪ Copy of approved form is given to HAVA Accountant by the Deputy Secretary of State – Elections Services to process for payment.
  - ▪ Original form and supporting documentation is kept and filed by the HAVA Coordinator in the Election office northern most filing cabinet, third drawer.
  - ▪ HAVA Coordinator corresponds with the county that their request has been fulfilled, partially fulfilled or denied via electronic mail.
  - ▪ HAVA Coordinator tracks expenditures in:
    - • TitleIIReimbusrementFormTracking.xlsx
      - o Location: N Drive/Elections/Federal/HAVA/Title II/YEAR
    - • SDSOS_HAVAFundBalances.xlsx
      - o Location: N:Drive/Elections/Federal/HAVA/TitleII
- o Once received by the Accountant payment is processed in the same week.
  - ▪ Payment is processed in the State's Accounting System and a voucher is created.
  - ▪ The voucher is signed off by the Accountant and Secretary of State.
  - ▪ Signed voucher is attached to the Title II form and scanned into File Director.
    - • Location: Financial Direct Vouchers
  - ▪ Signed voucher and form is taken to the Auditor's Office on a daily basis for final payment process.

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

❖ **Payments to Non-Counties**
- o All invoices that are to be paid with federal funds must be signed by the HAVA Coordinator and Deputy Secretary of State-Elections Services.
  - ▪ Types of funds used for federal payments:
    - • HAVA Title I
    - • HAVA Title II - Funds are to only be used for county reimbursements
- o Once received by the Accountant payment is processed in the same week.
  - ▪ Payment is processed in the State's Accounting System and a voucher is created.
  - ▪ The voucher is signed off by the Accountant and Secretary of State.
  - ▪ Signed voucher is attached to the Title II form and scanned into File Director.
    - • Location: Financial Direct Vouchers
  - ▪ Signed voucher and form is taken to the State Auditor's Office for final payment process.

❖ **Receipting Systems (Elections) Instructions**
- o To process a payment of a voter registration list:
  - ▪ Log into the Tequity software receipting system
  - ▪ Click Accounting and select New Receipt
  - ▪ Choose Voter Registration File from drop down menu below "Type" on the Receipt Items tab
  - ▪ Enter in Check number under "Ref/Check #"
  - ▪ Enter Payment type
  - ▪ Type in who the payment is from
  - ▪ Enter Check number again
  - ▪ Enter Amount of the payment
  - ▪ Click Save
  - ▪ Print receipt
- o Reconcile at the end of the day
  - ▪ Click Accounting
  - ▪ Click Reconcile Individual Batch
  - ▪ Enter Amount that you have payment for
  - ▪ Click Next
  - ▪ Click Reconcile Batch
  - ▪ Print the page and sign
  - ▪ Paperclip the cash/checks to the balance sheet and place in the locked desk drawer in the front desk's southernmost filing cabinet.
  - ▪ Sign the Daily Deposit Sign-in sheet
- o Deposit Procedures
  - ▪ Cash/Check Deposits
    - • After all staff members have completed their daily reconciliation, all balance sheets and cash/checks are turned into the accountant to process the deposit for each day.

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

❖ **Procurement Policies**
  o All purchasing is processed by the Accountant and approved by Deputy Secretary of State-Administrative Services.
    ▪ Any new equipment purchased with federal funds will be made known to the Secretary of State and Deputies of Administrative Services and Elections Services.
    ▪ Inventory is taken by the HAVA Coordinator when equipment arrives and is tagged with the sticker indicating that it was purchased with Federal Funds.
❖ **Contracts**
  o All contracts for the office are drafted by Deputy Secretary of State-Administrative Services and are signed by the Secretary of State.
  o State policies are followed during procurement for contracts and are followed when the contracts are established.
  o Original, signed contracts are kept in the office of the Deputy Secretary of State, Administrative Services in a binder marked "Current Contracts" on the shelves of the north side of the office.
  o Current Contracts paid with HAVA Funds
    ▪ BPro Inc.
      • Statewide Voter Registration System Maintenance
    ▪ GCR Inc.
      • Maintenance of Vote605 Mobile Application
    ▪ American Association of Motor Vehicle Administrators (AAMVA)
      • Contract Agreement held with the South Dakota Department of Public Safety for verification against the Social Security Administration for voter registration purposes
    ▪ MelissaData
      • Provides Address Verification for Voter Registration

❖ **Memoranda of Understanding**
  o The office of the Secretary of State operates under memoranda of understanding with governmental agencies in regards to Voter Registration verification.
    ▪ South Dakota Department of Health, Division of Vital Records
      • For purposes of verifying death records of registered voters and those attempting to register to vote
    ▪ Unified Judicial System
      • For purposes of verifying felony records of registered voters and those attempting to register to vote
    ▪ Department of Public Safety, Division of Drivers Licensing
      • For purposes of individuals registering to vote or updating their voter registration information on their driver's license application
    ▪ Interstate Voter Crosscheck
      • Used after General Elections to verify voter registrations against other states

Exhibit 4

## PROGRAM INCOME

❖ **Interest Proration Vouchers**
  - o In September of every year an interest proration voucher is sent to the Secretary of State's office from the South Dakota Bureau of Finance and Management Office. The interest proration is allocated based on the average daily balance of the HAVA account during the previous state fiscal year.
  - o The HAVA Coordinator allocates the interest earned to each county based on the balance of their state-held county account as of June 30 of every year.

❖ **Voter Registration List Sales**
  - o Dollars earned from the sale of voter registration lists are to be coded to Title II.
  - o Payments can be processed by using the Receipting Systems (Elections) Instructions outlined in the ACCOUNTING PROCEDURES / FINANCIAL MANAGEMENT section of this manual.

Policies and procedures were established in July 2015
Policies and procedures were revised in June 2016

I have read through and understand the Policies & Procedures required of me in my official capacity in regards to the Help America Vote Act Grant Funding.

████████████████████████        <u>10-3-2016</u>
South Dakota Secretary of State, ████████        Date

████████████████████████        <u>10-3-2016</u>
Deputy South Dakota Secretary of State        Date
Elections Division, ████████

████████████████████████        <u>10-3-2016</u>
HAVA Coordinator, ████████        Date

████████████████████████        <u>10-3-2016</u>
HAVA Accountant, ████████        Date

████████████████████████        <u>10-3-2016</u>
State Election Coordinator, ████████        Date

████████████████████████        <u>10-3-2016</u>
Election Coordinator, ████████        Date

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

# Appendix 1-A

# Biennial County Equipment Inventory Certification

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

# Equipment Purchased with HAVA Funds Biennial Certification

I, _____, the county auditor/finance officer of
_____ County certify that I have the below equipment purchased with
Federal funds in my possession at the listed locations. I have physically inventoried the
equipment and confirm the condition of the property.

| County | Item Description | Serial Number | Condition of Equipment | Where equipment is stored | How Often Equipment is used (Election Type) | Purchase Price | Where equipment was purchased (Vendor Name) | Purchased Date (MM/YY) | Disposal Date (MM/YY) | Sale Price | State ID |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

If there are any changes, please cross off the equipment or add to this list and detail the
correct information prior to submitting to the HAVA Coordinator.

_____          _____

Signature                                                          Date

Please return this signed and dated form to the Secretary of State's office by July 1 by email
(HAVA@state.sd.us) or mail: Secretary of State's Office, ATTN: HAVA Coordinator, 500 East
Capitol Avenue, Suite 204, Pierre, SD 57501

Exhibit 4

Help America Vote Act Policies & Procedures Manual – Office of the South Dakota Secretary of State

# Appendix 1-B

# 2014 HAVA State Plan

Exhibit 4

# State of South Dakota

**Help America Vote Act**
**Revised State Plan**
**2014**

As required by the Help America Vote Act of 2002



**Jason M. Gant**
**Secretary of State**

*1889-2014*

Exhibit 4

**Mission Statement**

The mission of the South Dakota Help America Vote Act State Plan is designed to use HAVA funds to facilitate the enfranchisement of as many eligible voters as reasonably possible through the promotion, access and availability of voting.

**(1) How the State will use the requirements payment to meet the requirements of title III, and, if applicable under section 251(b)(2), to carry out other activities to improve the administration of elections.**

Since South Dakota is HAVA compliant, all remaining HAVA funds, future interest earned and any additional requirements payments given to South Dakota will be spent on training election officials, educating voters, improving the accessibility of elections for individuals with disabilities and economically disadvantaged people, and making improvements to the administration of federal elections.

Voters with disabilities include, but are not limited to, voters with vision impairments, speech, hearing and language impairments, mobility concerns, physical or intellectual disabilities, behavior health disabilities and other disabling conditions.

Examples of such activities include but are not limited to:

- The cost implementing and maintaining TotalVote (Statewide Election Management System);
- Election night reporting;
- Applications for mobile devices;
- Secretary of State staff salaries and benefits;
- Office computers, supplies and rent;
- The use of electronic pollbooks; and
- Programs that help improve the accuracy and efficiency of the State's voter registration list.

**(2) How the State will distribute and monitor the distribution of the requirements payment to units of local government or other entities in the State for carrying out the activities described in paragraph (1), including a description of—**
 **(A) The criteria to be used to determine the eligibility of such units or entities for receiving the payment; and**
 **(B) The methods to be used by the State to monitor the performance of the units or entities to whom the payment is distributed, consistent with the performance goals and measures adopted under paragraph (8).**

The Secretary of State will manage activities and projects funded by HAVA requirements payments, and the state will account for all expenditures, funding levels, program controls and outcomes in accordance with state and federal laws.

2

Exhibit 4

The Secretary of State, with the approval of the State Board of Elections, will establish a local government grant program to assist County Auditors in complying with HAVA requirements. Only counties are eligible for local grant funding. Since South Dakota is HAVA compliant, a portion of the requirements payments authorized in Title III will be allocated for local government grants.

**HAVA Grant Board**

The Secretary of State, with the approval of the State Board of Elections, will establish a HAVA Grant Board, consisting of four County Auditors (two Democrats and two Republicans), the Senior Elections Coordinator in the office of the Secretary of State, one member from the disability community, and one member from the Department of Tribal Relations. All members, except for the Senior Elections Coordinator, will serve a four year term. The Senior Elections Coordinator will serve as the Chair of the HAVA Grant Board and the Secretary of State's office will assist the HAVA Grant Board with anything necessary to meet the requirements set forth in this plan. This board is responsible for developing, reviewing, and making recommendations to the Secretary of State in matters pertaining to the local government grant program and will comply with the State's open meeting laws.

The Secretary of State will administer the grant program and will be responsible for meeting federal auditing requirements.

Examples of activities eligible for local government grant funding are listed below:

- Developing and requiring education and training programs and related services for state, county, and local election officials involved in the conduct of elections;
- Replacing or upgrading voting equipment;
- Purchasing additional voting equipment;
- Approving an appropriate level of financial support of local activities related to HAVA requirements; and
- Developing additional in-person absentee voting locations.

The HAVA Grant Board will prescribe a general application form that counties shall use to apply for a HAVA Grant. Applications must be received by the Secretary of State by July 1st of every odd-numbered year for the following election year's anticipated expenses. Applications will be approved or denied by November 1st of that year. The county shall submit receipts, not to exceed the grant award, to the Secretary of State in a timely manner for reimbursement.

Before a county may apply for a HAVA grant, all funds in their State-Held account and County-Held Match Money account must be spent. The HAVA Grant Board will review applications and award funds consistent with this plan. Should a county be denied a HAVA Grant, the county may submit an appeal to the Board of Elections to review the decision. The decision of the Board of Elections shall be final. The appeal application will be prescribed by the HAVA Grant Board. The county that is submitting the appeal must do so within 30 days of receiving their denial notice. Grant funds may only be used for an allowable HAVA expense. If a county

3

Exhibit 4

spends HAVA funds on an expense that is determined not to be an allowable HAVA expense, the expense shall be repaid to the State using the county's general fund.

The following are HAVA reimbursable expenses that are approved prior to the implementation of the HAVA Grant Program:

- Total cost of voting machines;
- Acceptance of testing of voting equipment;
- Maintenance of voting equipment;
- Storage and transport of voting equipment;
- Election-specific programming and installation;
- Training election workers in the proper orientation and maintenance of voting machines and scanners;
- Voter education programs;
- Provisional voting;
- Posting sample ballots in a polling place on Election Day;
- Posting the following information in a polling place on Election Day:
  - Polling place hours,
  - Instructions on how to vote,
  - How to cast a provisional ballot,
  - Voting rights,
  - Laws prohibiting acts of fraud and misrepresentation;
- Publishing voter education instructions and sample ballot in the newspaper;
- Implementing and maintaining TotalVote (Statewide Election Management System) and maintaining accurate and up-to-date information in the voter registration list. This does not include costs associated with routine NVRA list maintenance;
- Supplies necessary for voting equipment (e.g. ballot boxes for optical scan ballots, privacy sleeves, accessible voting device print cartridges, media cards or drives);
- Insurance on voting equipment; and
- The following Secretary of State approved projects to improve the county administration of federal elections:
  - Cost for the portion of election school having to do with training poll workers on how to more effectively assist voters with disabilities,
  - Cost for software to better organize precinct/district relationships,
  - Cost for ballot printer training to improve ballot printing,
  - Cost for Election Reporting Manager (ERM) for quicker election night results,
  - Cost of "Vote Here" signs to more clearly identify your polling places,
  - Cost of ballot trays to better organize ballots,
  - Cost of the appropriate portion of polling place help-station laptop computers,
  - Cost for providing absentee voting locations in Shannon or Todd Counties,
  - Cost of chairs for use with an accessible voting device,
  - Cost of accessible voting booths,
  - Cost associated with the Potential Duplicate Deletion Process,
  - Cost associated with providing Lakota language assistance,
  - Cost associated with implementing the Military and Overseas Voter Empowerment (MOVE) Act,

4

Exhibit 4

> o   Cost for label printers for absentee ballot systems,
> o   Cost of installing network connections in an auditor's office.

This list is not comprehensive and the state may fund grant applications for activities not listed as long as the activities are eligible under HAVA.

**(3) How the State will provide for programs for voter education, election official education and training, and poll worker training which will assist the State in meeting the requirements of title III.**

County Auditors are trained by the State on HAVA procedures at election workshops, conventions, publications, and e-mails. County Auditors in turn train precinct officials at county election schools. The State organizes an election workshop in every odd-numbered year to prepare the County Auditors for the following year's election. This workshop is critical in the training and compliance of HAVA procedures.

Two posters in 48 point font posted in each polling place and instructions posted in each voting booth inform voters of voting procedures, how not to overvote, how to obtain a replacement ballot, how to obtain assistance, the right to a provisional ballot, how to contact an election official if rights are violated, and how to avoid election crimes. Facsimile ballots are available in county auditor offices prior to elections, posted at each polling place, and published in newspapers. Voters can also access their individual sample ballot and polling place information through the Secretary of State's Voter Information Portal (VIP) located on the Secretary of State's website at sdsos.gov. Instructions are printed on all official ballots. The State also educates voters through its website at sdsos.gov. The Secretary of State also prepares a ballot question pamphlet, made available in alternate formats.

**(4) How the State will adopt voting system guidelines and processes which are consistent with the requirements of section 301.**

The original HAVA task force guided the State on the voting system that would be selected. South Dakota laws and administrative rules have been passed to provide for all Section 301 requirements. The Secretary of State and County Auditors manage the processes needed to comply with Section 301.

Existing voting systems in South Dakota are required to meet the standards set out in Section 3-1 of the Help America Vote Act of 2002. The voting system standards include the following:

- Permits the voter to verify in a private and independent manner the votes selected by the voter on the ballot before the ballot is cast and counted;
- Provides the voter with the opportunity, in a private and independent manner, to change the ballot or correct any error before the ballot is cast and counted; and
- Notification of the voter of any over votes, the effect of the over vote and the opportunity to correct. Since South Dakota uses central count optical scan ballot; this will be achieved through voter education of the standards, including instructions to the voter at the polling place and on the ballot.

5

Exhibit 4

**(5) How the State will establish a fund described in subsection (b) for purposes of administering the State's activities under this part, including information on fund management.**

An election fund has been established in the South Dakota State Treasury containing Title II Section 251 funds. Expenditures are made as needed by the Secretary of State, with oversight by the State Auditor, through spending authority granted by the State Legislature. Interest is earned and credited to the fund annually. All expenditures from the fund are subject to state government accounting and audit procedures.

**(6) The State's proposed budget for activities under this part, based on the State's best estimates of the costs of such activities and the amount of funds to be made available, including specific information on—**
    **(A) The costs of the activities required to be carried out to meet the requirements of title III;**
    **(B) The portion of the requirements payment which will be used to carry out activities to meet such requirements; and**
    **(C) The portion of the requirements payment which will be used to carry out other activities.**

Since the State has fulfilled HAVA's requirements and will continue to do so, the State wishes not to restrict itself unnecessarily through this state plan. New programs to improve the administration of federal elections may develop that have not yet been contemplated. The State will continue to submit annual financial status and narrative reports to the EAC concerning HAVA grants as required.

In previous HAVA state plans the State described a budget for projected amounts to fund Title III required programs. All programs were fulfilled within that budget and significant funds remain available to the State. Since South Dakota is HAVA compliant, all remaining HAVA funds, future interest earned and any additional requirements payments given to South Dakota will be spent on training election officials, educating voters, improving the accessibility of elections for individuals with disabilities and economically disadvantaged people, and making improvements to the administration of federal elections.

South Dakota received a Title II Section 251 payment in April of 2005 in the amount of $11,596,803.00. As of September 30, 2013, the State has a total of $6,267,333.12 of Title II funds remaining available. Of this amount, $3,323,913.24 is reserved in the counties' state-held Title II accounts. As of September 30, 2013, the counties have $1,385.41 (including interest) remaining in reserved county-held match money accounts.

The State expects that costs to counties will continue and increase at least at the rate of inflation to prepare and implement federal elections within the framework of the current voting system. When new voting systems are required, counties will face significant additional costs in acquiring the new equipment. The State and counties will work to maintain the current voting system for as long as practicable.

6

Exhibit 4

With continued conservative management of the HAVA grant funds and the benefit of accumulating interest, the State may be able to indefinitely continue to meet HAVA obligations and continue to improve the administration of federal elections in South Dakota. However, the State is concerned that with the lack of future appropriations, the State may be faced with unfunded mandates.

**(7) How the State, in using the requirements payment, will maintain the expenditures of the State for activities funded by the payment at a level that is not less than the level of such expenditures maintained by the State for the fiscal year ending prior to November 2000.**

In previous HAVA state plans, the State described the expense to the State for the State Election Supervisor as maintenance of effort. However, in 2007 the EAC advised that maintenance of effort (MOE) applies specifically to prior expenses that became Title III requirements. HAVA's maintenance of effort requirement is designed to ensure that federal funds do not replace already occurring state or county expenses. With that new understanding, the State clarified that it had no such spending prior to HAVA and, therefore, had no level of spending to maintain.

With the new advisory issued by the EAC on February 19, 2010, regarding MOE pending, the State has once again reviewed the HAVA maintenance of effort issue and has again concluded that the State of South Dakota in State Fiscal Year 2000, had no prior expenses that became Title III requirements. Therefore, the State has no level of spending to maintain.

The pending EAC advisory on MOE states, "MOE tracks State expenditures on a prescribed set of Federal election activities, which includes any funds appropriated by the State to lower tier entities to support those activities. Under this MOE policy, States may exclude lower tier spending from MOE when the funds used by the lower tier entities are not derived from a State appropriation or expenditure."

The State also hereby clarifies that in the State Fiscal Year 2000 no State appropriations were given to the counties for election related expenditures. Therefore, South Dakota's 66 counties also, have no level of spending to maintain.

**(8) How the State will adopt performance goals and measures that will be used by the State to determine its success and the success of units of local government in the State in carrying out the plan, including timetables for meeting each of the elements of the plan, descriptions of the criteria the State will use to measure performance and the process used to develop such criteria, and a description of which official is to be held responsible for ensuring that each performance goal is met.**

South Dakota believes that accurate measurable objectives and the tracking of performance goals help achieve what our mission statement lays out. Performance goals give a high-level overview of the desired mission. The State's main goal has always been to achieve election reform and compliance with HAVA requirements through the successful implementation of the programs outlined in the State Plan. The 2004 State Plan laid out specific goals and

7

Exhibit 4

measurables.  In March 2007, the Secretary of State certified to the Election Assistance Commission that South Dakota had fulfilled all Title III requirements.  This State Plan specifically details how and when each objective was met.

### 301 (a)(1)(B)(i) - Establish a voter education program on the effect of casting multiple votes for an office.

| | |
|---|---|
| Performance Goal | Eliminate overvotes |
| Performance Measurement | Counties have a capability to produce overvote reports from their tabulating systems. |
| Timetable | Continuous |
| How to Measure Performance | Determine the proper instructions are posted in the polling place.  Compare percentage of overvotes to votes cast in each election. |
| Who will Measure | County auditors will report to the Secretary of State. |

### 301 (a)(1)(B)(ii) - Establish instructions on how to correct ballot errors.

| | |
|---|---|
| Performance Goal | Provide easily accessible instructions in each polling place. |
| Performance Measurement | Are the instructions posted? |
| Timetable | Continuous |
| How to Measure Performance | Determine the proper instructions are posted in the polling place.  Precinct workers report to county auditor on compliance. |
| Who will Measure | County auditors |

### 301 (a)(3)(B) - Provide one accessible voting device per polling place.

| | |
|---|---|
| Performance Goal | Provide an accessible voting device per polling place. |
| Performance Measurement | Is there a functioning machine in each polling place? |
| Timetable | Continuous |
| How to Measure Performance | Precinct workers report to county auditor on compliance. |
| Who will Measure | County auditors |

### 302 - Provisional voting.

| | |
|---|---|
| Performance Goal | 1. Provide notice to voters on availability of provisional ballot.<br>2. Provide provisional ballot materials at each polling place.<br>3. Train poll workers on provisional ballot requirements.<br>4. Offer provisional ballots to voters who qualify.<br>5. Allow all voters who claim to be registered to vote in |

8

Exhibit 4

| | the precinct, but who can't be confirmed to vote a provisional ballot. |
|---|---|
| Performance Measurement | Monitor the number of calls to county auditors or Secretary of State reporting a person was not able to vote a provisional ballot. |
| Timetable | Continuous |
| How to Measure Performance | Determine the auditors were trained by the Secretary of State, the poll workers were trained by the auditors, training materials were provided to the auditors, and provisional ballots were printed and available at the polling place. |
| Who will Measure | County auditors will report to Secretary of State. |

**302 (b) - Posting of information at the polling place.**

| | |
|---|---|
| Performance Goal | Provide easily accessible instructions in each polling place including at least three 48-point or larger font poster-sized versions. |
| Performance Measurement | Are the instructions posted? |
| Timetable | Continuous |
| How to Measure Performance | Determine the Secretary of State provided the auditors 3 poster-sized directions in 48-point font or larger addressing provisional voting and hours of operation of the polling place.  Determine the auditor displayed a sample ballot, directions on overvoting, how to mark a ballot, and how to correct a ballot in each voting booth.  Precinct workers report to county auditor on compliance. |
| Who will Measure | County auditors |

**303 (a)(2)(A)(ii)(I) - Felony record check.**

| | |
|---|---|
| Performance Goal | Every person convicted of a felony is removed from the voter registration list and is not able to reregister until their entire sentence is completed.  Establish a computer system to conduct checks and notify auditors about felony convictions. |
| Performance Measurement | 1. Ensure each new or updated voter registration is checked against the felony conviction file.<br>2. Ensure all new felony convictions are checked against the statewide voter file.<br>3. Remove all those who are ineligible from voter file.<br>4. Secretary of State will double check felony convictions identified by this system to prevent erroneous removal of eligible voters. |
| Timetable | Continuous |

Exhibit 4

| How to Measure Performance | Verify accuracy of the telephone complaint against actual voter and felon records. |
|---|---|
| Who will Measure | County auditor and Secretary of State |

### 303 (a)(2)(A)(ii)(II) - Death records check.

| Performance Goal | Every deceased person is removed from the voter registration list and that no deceased person's name is added to the voter registration list. Establish a computer system to conduct checks and notify auditors about deaths. |
|---|---|
| Performance Measurement | 1. Ensure each new or updated voter registration is checked against the vital statistics file.<br>2. Ensure all new deaths are checked against the statewide voter file.<br>3. Remove all those who are deceased from voter file.<br>4. Secretary of State will double check death notices identified by this system to prevent erroneous removal of eligible voters. |
| Timetable | Continuous |
| How to Measure Performance | Verify accuracy of the report against actual voter and death records. |
| Who will Measure | County auditor and Secretary of State |

### 303 (a)(5)(A)(iii) - Verify driver license or verify last four digits of SSN.

| Performance Goal | Ensure no person is allowed to register to vote without providing an accurate driver license number or last four digits of their social security number. |
|---|---|
| Performance Measurement | Establish computerized access system for information verification to validate all new registrations. |
| Timetable | Continuous |
| How to Measure Performance | Verify accuracy of the system by comparing actual voter and driver license records. |
| Who will Measure | Secretary of State |

### 303 (b)(4) - New voter registration forms.

| Performance Goal | Provide voter registration forms which comply with HAVA. |
|---|---|
| Performance Measurement | Check to make sure all official voter registration sites have new forms. |
| Timetable | Complete |
| How to Measure Performance | Telephone and mail verification with sites. |
| Who will Measure | County auditor and Secretary of State |

10

Exhibit 4

**251(b)(2) - Other activities to improve administration of elections.**

| Performance Goal | Provide daily electronic transmission of new voter registration data from all driver license offices to the appropriate county auditor office. Eliminate missed voter registration deadlines because of registration card transit time. |
|---|---|
| Performance Measurement | Affirm all voter registrations completed at a driver license office by a registration deadline are added to the official registration list for that election. |
| Timetable | Continuous |
| How to Measure Performance | Affirm all voter registrations completed at a driver license office by a registration deadline are added to the official registration list for that election. |
| Who will Measure | County auditor and Secretary of State |

**(9) A description of the uniform, nondiscriminatory State-based administrative complaint procedures in effect under section 402.**

South Dakota law was written, effective July 1, 2003, to comply with HAVA Section 402. South Dakota Codified Law 12-1-21 thru 12-1-30 provides the procedure for the administrative complaint process. Initial complaints are resolved by the State Board of Elections using an existing administrative complaint process. The alternative dispute process involves judicial appointment of an arbitrator to resolve the complaint.

**(10) If the State received any payment under title I, a description of how such payment will affect the activities proposed to be carried out under the plan, including the amount of funds available for such activities.**

South Dakota received a Title I Section 101 payment in the amount of $5,000,000 in April of 2003. Title I funds have been used for payments to counties for punch card voting system buyouts; voter education; statewide voter registration system programming; computer hardware, internet and intranet connection costs for the counties; development of additional systems such as a new voter registration system (TotalVote); training and materials for election personnel; travel for election personnel; salary and expenses for select Secretary of State staff working on HAVA required projects and state plan development. The State may continue to use Title I funds on these programs and for other programs permitted by HAVA §101(b).

As of September 30, 2013, the State's Title I Section 101 fund remaining total is $4,770,732.56.

**(11) How the State will conduct ongoing management of the plan, except that the State may not make any material change in the administration of the plan unless the change—**
**(A) Is developed and published in the Federal Register in accordance with section 255 in the same manner as the State plan;**

11

Exhibit 4

**(B) Is subject to public notice and comment in accordance with section 256 in the same manner as the State plan; and**
**(C) Takes effect only after the expiration of the 30-day period which begins on the date the change is published in the Federal Register in accordance with subparagraph (A).**

South Dakota has used the State Plan as the basis for managing activities necessary for the implementation of HAVA requirements. The Secretary of State is ultimately responsible for the management and implementation of the State Plan. Local election officials have responsibility for the day-to-day coordination and implementation of distinct projects with the HAVA plan. These election officials may be State Elections Division staff, County Auditors, or contractors.

The State understands and agrees to comply with HAVA requirements related to the ongoing management of the State Plan. Specifically, the State agrees not to make any material change in the administration of the state plan unless the change:

- Is developed and published in the Federal Register in accordance with HAVA Section 255 in the same manner as the State Plan;
- Is subject to public notice and comment in accordance with HAVA Section 256 in the same manner as the State Plan; and
- Takes effect after the expiration of the 30-day comment period that begins on the date the change is published in the Federal Register in accordance with subparagraph (A).

**(12) In the case of a State with a State plan in effect under this subtitle during the previous fiscal year, a description of how the plan reflects changes from the State plan for the previous fiscal year and of how the State succeeded in carrying out the State plan for such previous fiscal year.**

The methods by which the State fulfilled its previous state plans have already been described in this plan. The State anticipates no major changes to its implementation of HAVA, except the implementation of the HAVA Grant Board and that Title II Section 251 funds may now be used for additional in-person satellite absentee voting locations provided they meet the criteria set out in this plan.

**Additional In-Person Satellite Absentee Voting Location**

The following criteria must be met before a county may be allowed to use HAVA funds to set-up an additional in-person satellite absentee voting location in a particular jurisdiction. The voters living in the jurisdiction are*:

- Have 50% more individuals below the poverty line than the rest of the county; and
- Live, on average, 50% farther from the existing county seat or other satellite location than the rest of the county.

12

Exhibit 4

*According to the most recent United States Census Bureau, American Community Survey results as analyzed by the Government Research Bureau at the University of South Dakota.

A jurisdiction is defined as a voting precinct, township, municipality, town, school district, or special district.  The following counties are approved to have met the criteria in this plan: Buffalo, Dewey and Jackson Counties.

If a county spends HAVA funds on an expense that is determined not to be an allowable HAVA expense, the expense shall be repaid to the State using the county's general fund.

**(13) A description of the committee which participated in the development of the State plan in accordance with section 255 and the procedures followed by the committee under such section and section 256.**

The HAVA Task Force held public meetings on the following dates:
November 21, 2013 at the State Capitol in Pierre, SD;
December 18, 2013 at the State Capitol in Pierre, SD;
January 29, 2014 at RedRossa in Pierre, SD; and
February 26, 2014 at RedRossa in Pierre, SD.

The Secretary of State appointed the following persons or their designee to assist in the development of this State Plan:

| | |
|---|---|
| Office of the Secretary of State | State Representative |
| Jason M. Gant, Secretary of State | Karen Soli |
| | |
| Office of the Secretary of State | SD Advocacy Services |
| Patricia Miller, Deputy Secretary of State | Robert Kean |
| | |
| Office of the Secretary of State | SD Coalition of Citizens With Disabilities |
| Brandon Johnson, Senior Elections Coordinator | Shelly Pfaff |
| | |
| State Board of Elections | South Dakota Municipal League |
| Patty McGee, Sully County Auditor | Yvonne Taylor, Executive Director |
| | |
| State Board of Elections | City of Harrisburg |
| Pam Lynde, Deuel County Auditor | Andrew Pietrus, City Administrator |
| | |
| State Board of Elections | South Dakota Democratic Party |
| Linda Lea Viken | Zach Crago, Executive Director |
| | |
| State Board of Elections | ACLU of South Dakota |
| Richard D. Casey | Heather Smith, Executive Director |
| | |
| State Board of Elections | Four Directions, Inc. |
| Christopher Madsen | O.J. Semans, Executive Director |

13

Exhibit 4

| | |
|---|---|
| State Board of Elections | Chiesman Center for Democracy |
| Drew Duncan | Rob Timm, President/CEO |
| | |
| Minnehaha County Auditor's Office | South Dakota Driver Licensing |
| Bob Litz, County Auditor | Cindy Gerber, Director |
| | |
| Pennington County Auditor's Office | South Dakota American Legion |
| Julie Pearson, County Auditor | Rick MacDonald |
| | |
| Grant County Auditor's Office | South Dakota Advisory Committee |
| Karen Layher, County Auditor | Richard Braunstein |

The Secretary of State also invited the following:

| | |
|---|---|
| State Senator | US Senator |
| Billie Sutton | John Thune |
| | |
| State Senator | US Senator |
| Mark Kirkeby | Tim Johnson |
| | |
| South Dakota Republican Party | US Representative |
| Craig Lawrence, Chairman | Kristi Noem |
| | |
| US Department of Justice | Department of the Military |
| Sara Beth Donovan | Timothy Reisch |
| | |
| Department of Tribal Relations | Department of Veteran Affairs |
| J.R. LaPlante, Secretary | Larry Zimmerman, Secretary |
| | |
| Cheyenne River Sioux Tribe | Crow Creek Sioux Tribe |
| Kevin Keckler, Chairman | Brandon Sazue Sr., Chairman |
| | |
| Flandreau Santee Sioux Tribe | Lower Brule Sioux Tribe |
| Anthony Reider, President | Michael Jandreau, Chairman |
| | |
| Oglala Sioux Tribe | Rosebud Sioux Tribe |
| Bryan Brewer, President | Cyril Scott, Chairman |
| | |
| Sisseton Wahpeton Oyate | Standing Rock Sioux Tribe |
| Robert Shepherd, Chairman | Charles Murphy, Chairman |
| | |
| Yankton Sioux Tribe | Office of the Governor |
| Robert Flying Hawk, Chairman | Dennis Daugaard, Governor |

14

Exhibit 4

# Appendix 1-C

# Conflict of Interest Waiver

Exhibit 4

# SECRETARY OF STATE'S OFFICE
# CONFLICT WAIVER DECISION MATRIX

*SDCL 3-16-8*
*SDCL 5-18A -17 to 5-18A-17.6*

## DO I NEED TO REQUEST A
## WAIVER?

This matrix is designed to assist a current or past officer or employee in determining whether it is necessary to seek a waiver in order to be a party to or benefit from a contract with a state agency. This matrix is designed to be utilized in conjunction with the Secretary of State's Office Conflict Waiver Policy and Instructions and Form, review of the statute, and contact with your supervisor.

NOTE: SDCL 3-16-8 provides that state officers and employees may not solicit or accept any gift, favor, reward or promise of reward, including any promise of future employment, in exchange for recommending, influencing, or attempting to recommend or influence the award of a state contract. This prohibition is absolute and cannot be waived.

This matrix is intended as a general guide only and is not by itself determinative of whether a conflict of interest exists.

The questions in this matrix may not address your specific situation. When in doubt as to the answer to any of the questions below, you are encouraged to complete the entire matrix and decide whether you need to ask for assistance.

As used in this matrix, except as used in question #2 below, the term "contract" means a contract between the Secretary of State's Office and a person or entity outside state government.

1.  Am I now, or within the past year was I, an officer or employee of the Secretary of State's Office?

    If YES, proceed to next question.
    If NO, you do not need to proceed further.

2. Have I entered into, or am I thinking of entering into, a contract or other business transaction (other than a contract of employment) with any state agency and have I ever been involved in recommending, approving, awarding, or administering a state contract or supervising those who were involved in approving, awarding or administering a state contract? (NOTE that an agreement need not always be in writing to be considered a contract.)

    If YES, you must request a waiver.
    If NO, proceed to next question.

3.  Did I have any role in recommending the award of a contract?

    If YES, proceed to question 7.
    If NO, proceed to next question.

Exhibit 4

4. Did I have any role in approving or awarding a contract?

    If YES, proceed to question 7.
    If **NO,** proceed to next question.

5. Do or will I administer the contract, meaning do or did I have any decision-making authority, or substantive influence on decision-making by others, concerning the manner, method, or means of the contract's performance or enforcement, such as the ability to terminate, suspend, change terms, or evaluate the outside party's performance under the contract?

    If YES, proceed to question 7.
    If NO, proceed to next question.

6. Am I or was I in the chain of supervisors above a person who approved or awarded, or will administer a contract to an outside person or entity, or am I or was I in the chain of supervisors above a person who can or does exercise decision–making or substantive influence on decision making by others concerning the manner, method or means of the contract's performance or enforcement?

    If YES, proceed to question 7.
    If NO, no waiver is needed.

7. Will or do I, my spouse or any other person with whom I live and commingle assets fit into any of the following categories vis-a-vis the contract or the contracting person or entity: (a) have a five percent or more ownership or other interest (such as being a creditor) of the contracting person or entity; (b) will earn or receive a salary, commission, or other income from the contracting person or entity or directly as a result of the contract; (c) acquire anything under the contract?

    If YES, you must request a waiver.
    If NO, proceed to question 8.

8. Do I, my spouse or any other person with whom I live and commingle assets serve on the board of directors of a for-profit entity that benefit from the contract?

    If YES, you must request a waiver.
    If NO, no waiver is needed.

Date: _____  Print Name: _____

                                             Sign: _____

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

# Appendix 2

Employee Payroll Allocations

and Certifications

Exhibit 4

| Name | Employee 1 |
|---|---|
| Funds | HAVA - 2007 |
| Pay Period | 4/24/2006-5/8/2006 |
| Pay Day | 05/16/2006 |

| Description | Amount |
|---|---|
| Full Time Wages | 1,500.00 |
| OASI - Employer Share | 112.71 |
| Retirement - Employer's Share | 90.00 |
| Hlth Insurance - Employer's Share | 207.73 |
| Unemployement Comp | 0.75 |
| Grand Total | 1,911.19 |

| Name | Employee 1 |
|---|---|
| Funds | HAVA - 2007 |
| Pay Period | 5/26/2008-6/6/2008 |
| Pay Day | 06/16/2008 |

| Description | Amount |
|---|---|
| Full Time Wages | 5,952.32 |
| OASI - Employer Share | 441.46 |
| Retirement - Employer's Share | 125.00 |
| Hlth Insurance - Employer's Share | 230.13 |
| Grand Total | 6,748.91 |

| Name | Employee 2 |
|---|---|
| Funds | HAVA - 2007 |
| Pay Period | 7/9/2008-7/23/2008 |
| Pay Day | 08/01/2008 |

| Description | Amount |
|---|---|
| Full Time Wages | 1,375.00 |
| OASI - Employer Share | 99.41 |
| Retirement - Employer's Share | 82.50 |
| Hlth Insurance - Employer's Share | 240.54 |
| Workers' Comp | 2.34 |
| Unemployement Comp | 0.89 |
| Grand Total | 1,800.68 |

| Name | Employee 3 |
|---|---|
| Funds | General - 1000 |
| Pay Period | 3/24/2011-4/7/2011 |
| Pay Day | 04/15/2011 |

| Description | Amount |
|---|---|
| Full Time Wages | 1,770.84 |
| OASI - Employer Share | 134.05 |
| Retirement - Employer's Share | 106.25 |
| Hlth Insurance - Employer's Share | 217.29 |
| Workers' Comp | 5.67 |
| Unemployement Comp | 1.51 |
| Grand Total | 2,235.61 |

| Name | Employee 3 |
|---|---|
| Funds | HAVA - 2007 |
| Pay Period | 3/24/2011-4/7/2011 |
| Pay Day | 04/15/2011 |

| Description | Amount |
|---|---|
| Full Time Wages | 312.49 |
| OASI - Employer Share | 23.65 |
| Retirement - Employer's Share | 18.75 |
| Hlth Insurance - Employer's Share | 38.34 |
| Workers' Comp | 1.00 |
| Unemployement Comp | 0.26 |
| Grand Total | 394.49 |

Exhibit 4

Certification Creation Dates – Help America Vote Act Audit – South Dakota Secretary of State's Office

| Name | Date modified | Type | Size |
|------|---------------|------|------|
| ▨ ▮▮▮▮ semi-annual certification.doc | 03/30/2007 7:03 PM | Microsoft Word 97 - 2003 Docu... | 24 KB |
| ▨ ▮▮▮▮ semi-annual certification.9.26.2007.doc | 09/26/2007 4:49 PM | Microsoft Word 97 - 2003 Docu... | 20 KB |
| ▨ ▮▮▮▮ semi-annual certification.5.27.2008.doc | 05/27/2008 7:05 PM | Microsoft Word 97 - 2003 Docu... | 20 KB |
| ▨ ▮▮▮▮ semi-annual certification.8.05.2008.doc | 08/05/2008 9:25 AM | Microsoft Word 97 - 2003 Docu... | 20 KB |
| ▨ ▮▮▮▮ semi-annual certification 12-11-2009.doc | 12/11/2009 10:20 AM | Microsoft Word 97 - 2003 Docu... | 39 KB |
| ▯ ▮▮▮H HAVA certification letter signed.pdf | 08/12/2010 4:16 PM | Adobe Acrobat Document | 20 KB |
| ▯ HAVA Timesheets.pdf | 01/07/2011 4:15 PM | Adobe Acrobat Document | 147 KB |
| ▨ ▮▮▮▮semi-annual certification 06-01-2009.doc | 03/08/2011 9:38 AM | Microsoft Word 97 - 2003 Docu... | 38 KB |
| ▯ ▮▮▮▮▮▮ ▮▮▮▮▮▮ semi-annual certification 04-06-11.pdf | 04/11/2011 1:47 PM | Adobe Acrobat Document | 34 KB |
| ▨ ▮▮▮▮▮▮ ▮▮▮▮▮▮ semi-annual certification 04-06-11.doc | 10/19/2011 5:00 PM | Microsoft Word 97 - 2003 Docu... | 43 KB |
| ▯ ▮▮▮▮▮▮ ▮▮▮▮▮▮ semi-annual certification 10-19-11.pdf | 10/20/2011 8:03 AM | Adobe Acrobat Document | 66 KB |

Exhibit 4



August 5, 2008

I, ███████████, certify that I work full-time in the South Dakota Office of Secretary of State for this office and the people of South Dakota on program activities relating to the Help America Vote Act.

████████████

Exhibit 4



May 27, 2008

I, ████████, certify that I work full-time in the South Dakota Office of Secretary of State for this office and the people of South Dakota on program activities relating to the Help America Vote Act.

████████

Exhibit 4

**South Dakota Secretary of State HAVA Audit Responses**

# Appendix 3

# 2007 HAVA State Plan Excerpt

Exhibit 4

HAVA obligations and continue to improve the administration of federal elections in South Dakota without needing further state resources or additional federal grants.

The estimate for the development of ST25 is $200,000; support costs will continue. For ST25, South Dakota may use either title I section 101 or title II section 251 funds. South Dakota may effect additional programs as determined useful by the State.

(7) How the State, in using the requirements payment, will maintain the expenditures of the State for activities funded by the payment at a level that is not less than the level of such expenditures maintained by the State for the fiscal year ending prior to November 2000.

In previous HAVA state plans, the State described the expense to the State for the State Election Supervisor. However, in 2007 the EAC advised that maintenance of effort applies specifically to prior expenses that became title III requirements. HAVA's maintenance of effort requirement is designed to ensure that federal grant funds do not replace already occurring state or county expenses. With this new understanding, the State clarifies that it had no such spending prior to HAVA and, therefore, has no level of spending to maintain.

Some counties, however, did have expenses consistent with title III requirements prior to HAVA. The EAC has allowed that South Dakota counties will be responsible for maintenance of effort according to the county fiscal year 1999. Counties have been advised to determine if there existed any spending for title III-type activities in 1999. If any existed in the county, the county will be responsible for maintaining that level every year according to the first year that the county used any federal or county funds dedicated to HAVA title III requirements.

(8) How the State will adopt performance goals and measures that will of local government in the State in carrying out the plan, including timetables for meeting each of the elements of the plan, descriptions of the criteria the State will use to measure performance and the process used to develop such criteria, and a description of which official is to be held responsible for ensuring that each performance goal is met.

South Dakota has fulfilled the goals described in earlier state plans – including reducing the percentage of overvotes, educating voters on how to avoid and correct ballot errors, providing at least one §301(a)(3)(B) voting device in every polling place for any federal election, providing provisional voting, posting required notices at polling places as described above in (1.1), removing every person convicted of a felony and sentenced to the adult state penitentiary system from the statewide voter registration list, verifying every new voter registration against either the person's driver license or last four digits of social security number, providing voter registration cards as described above in (1.5), and providing quicker, easier one-form voter registration and updating at driver licensing stations as described above in (1.6).

Exhibit 4

**APPENDIX A-2**


**Response of the
U.S. Election Assistance Commission
to the Draft Report**

Exhibit 4



**EAC RESPONSE TO THE DRAFT AUDIT:**
*OIG Performance Audit Report on the Administration of Payments Received Under the Help America Vote Act by the South Dakota Secretary of State for the Period April 10, 2003 through September 30, 2015*

June 8, 2017

**MEMORANDUM**

To:        Patricia Layfield, Inspector General

From:      Brian Newby, Executive Director

Subject:   Draft Performance Audit Report – "Administration of Payments Received under the Help America Vote Act by the South Dakota Secretary of State

Thank you for this opportunity to review and respond to the draft audit report for the South Dakota Secretary of State.

The Election Assistance Commission (EAC) appreciates the auditor's detailed findings and recommendations outlined in the draft audit report and will work with the Secretary's Office to ensure appropriate corrective actions are taken in a timely and complete manner.

Exhibit 4

# APPENDIX B

# Audit Methodology

Exhibit 4

# AUDIT METHODOLOGY

Our audit methodology included:

- Assessing audit risk and significance within the context of the audit objectives.
- Obtaining an understanding of internal control that is significant to the administration of the HAVA funds and of relevant information systems controls as applicable.
- Identifying sources of evidence and the amount and type of evidence required.
- Determining whether other auditors have conducted, or are conducting, audits of the program that could be relevant to the audit objectives.

To implement our audit methodology, below are some of the audit procedures we performed.

- Interviewed appropriate Office employees about the organization and operations of the HAVA program.
- Reviewed prior single audit reports and other reviews related to the State's financial management systems and the HAVA program for the period under review.
- Reviewed policies, procedures and regulations for the Office management and accounting systems as they relate to the administration of the HAVA program.
- Analyzed the inventory lists of equipment purchased with HAVA funds
- Tested major purchases and the supporting documentation.
- Tested randomly sampled payments made with HAVA funds.
- Tested randomly sampled subawardee costs charged to the award.
- Evaluated compliance with the requirements for accumulating financial information reported to the Commission on the financial status reports and progress reports, accounting for property, purchasing HAVA related goods and services, and accounting for salaries.
- Verified subawardees were adequately monitored.
- Verified the establishment and maintenance of an election fund.
- Verified the State expenditures met the Maintenance of Expenditures requirement
- Conducted site visits of selected counties to observe physical security/safeguard of equipment purchased with HAVA funds and ensure compliance with federal regulation.
- Verified that the matching requirement was timely met and matching expenditures met the prescribed criteria and allowability requirements of HAVA.
- Verified program income was properly accounted for and not remitted to the State's general fund.

Exhibit 4

# APPENDIX C

# Monetary Impact

Exhibit 4

## MONETARY IMPACT AS OF SEPTEMBER 30, 2015

| Description | Questioned Costs | | Additional Funds for Program | |
|---|---|---|---|---|
| Unsupported Payroll Costs | $ | 10,855 | $ | - |
| Unallowable Ballot Costs | | 1,474 | | - |
| Total | $ | 12,329 | $ | - |

Exhibit 4