## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

REPRESENTATIVES DAWN KEEFER,
TIMOTHY BONNER, BARRY JOZWIAK,
BARBARA GLEIM, JOSEPH HAMM,
WENDY FINK, ROBERT KAUFFMAN,
STEPHANIE BOROWICZ, DONALD
(BUD) COOK, PAUL (MIKE) JONES,
JOSEPH D'ORSIE, CHARITY KRUPA,
LESLIE ROSSI, DAVID ZIMMERMAN,
ROBERT LEADBETER, DANIEL MOUL,
THOMAS JONES, DAVID MALONEY,
TIMOTHY TWARDZIK, DAVID ROWE,
JOANNE STEHR, AARON BERSTINE,
KATHY RAPP, JILL COOPER, MARLA
BROWN, MARK GILLEN AND
SENATOR CRIS DUSH— ALL
PENNSYLVANIA LEGISLATORS,

        Plaintiffs,

v.

JOSEPH R. BIDEN, IN HIS OFFICIAL
CAPACITY AS THE PRESIDENT OF
THE UNITED STATES, OR HIS
SUCCESSOR; UNITED STATES; U.S.
DEPARTMENT OF AGRICULTURE;
TOM VILSACK, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF
AGRICULTURE; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
XAVIER BECERRA, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF HEALTH
AND HUMAN SERVICES; U.S.
DEPARTMENT OF STATE; ANTONY
BLINKEN, IN HIS OFFICIAL CAPACITY
AS SECRETARY OF STATE; U.S.
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT; MARCIA
FUDGE, IN HER OFFICIAL CAPACITY
AS SECRETARY OF HOUSING AND

Civil Case No. 1:24-CV-00147

Judge Jennifer P. Wilson

**AMENDED COMPLAINT**

URBAN DEVELOPMENT; U.S.
DEPARTMENT OF ENERGY; JENNIFER
GRANHOLM, IN HER OFFICIAL
CAPACITY AS SECRETARY OF
ENERGY; U.S. DEPARTMENT OF
EDUCATION; DR. MIGUEL CARDONA,
IN HIS OFFICIAL CAPACITY AS
SECRETARY OF EDUCATION;  JOSH
SHAPIRO, IN HIS OFFICIAL CAPACITY
AS GOVERNOR OF PENNSYLVANIA,
OR HIS SUCCESSOR; AL SCHMIDT, IN
HIS OFFICIAL CAPACITY AS
SECRETARY OF THE
COMMONWEALTH, OR HIS
SUCCESSOR; JONATHAN MARKS, IN
HIS OFFICIAL CAPACITY AS THE
DEPUTY SECRETARY FOR ELECTIONS
AND COMMISSIONS, OR HIS
SUCCESSOR,

       Defendants.

---

Plaintiffs, by and through their counsel, respectfully allege and represent the following for their Complaint.

1.    The Plaintiffs seek prospective declaratory and injunctive relief to establish their federal rights under the Electors Clause and Elections Clause of the U.S. Constitution against the above-named Defendants, who are federal and state executive branch officials, to exercise the Plaintiffs' Constitutional rights to be participants in the law-making process regulating federal elections for President and Congress and to seek elective office through an electoral process free from negligence, fraud, and abuse.

2.    The Defendants have each unconstitutionally excluded Plaintiffs from the law-making process regulating elections and harmed Plaintiffs in their role as candidates by failing

to adhere to the Pennsylvania Legislature's ("Legislature") regulatory regime for voter registration.

## JURISDICTION AND VENUE

3.     This action arises under the Constitution of the laws of the United States.

4.     This Court has jurisdiction pursuant to Article III of the United States Constitution, 5 U.S.C. § 701, et seq., 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1346(a)(2), and 42 U.S.C. § 1983.

5.     Plaintiffs' claims for declaratory, injunctive and other relief are authorized by 5 U.S.C. § 706, 28 U.S.C. §2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

6.     Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiffs' claims against Defendants occurred in the state of Pennsylvania.

## PARTIES

7.     The above-named plaintiffs are all Pennsylvania Legislators. All Plaintiffs are elected officials who represent constituents within their respective legislative districts, and each is responsible, on behalf of their constituents, for the drafting or passage of laws for enactment, including election laws affecting elections of federal officials.

8.     Plaintiffs are candidates for office in the upcoming 2024 general election.

9.     Plaintiffs are also citizens, voters and taxpayers in Pennsylvania.

10.     As state legislators, plaintiffs have particular civil rights that are specifically granted to only 253 "real persons" in the Commonwealth of Pennsylvania.

11.     Defendant Joseph R. Biden is the President of the United States. He is the chief executive officer for the United States of America. As such, he is responsible for

implementing and enforcing the laws written by Congress.

12.    The United States is also a defendant.

13.    Defendant Department of Agriculture ("DOA") is a Department of the Executive Branch of the U.S. Government and is a federal cabinet agency within the meaning of 5 U.S.C. § 552(f).

14.    Defendant Tom Vilsack is the Secretary of the DOA. He is responsible for implementing the President's Executive Orders. He is sued in his official capacity.

15.    Defendant Department of Health and Human Services ("DHS") is a Department of the Executive Branch of the U.S. Government and is a federal cabinet agency within the meaning of 5 U.S.C. § 552(f).

16.    Defendant Xavier Becerra is the Secretary of DHS. He is responsible for implementing the President's Executive Orders. He is sued in his official capacity.

17.    Defendant Department of Housing and Urban Development ("HUD") is a Department of the Executive Branch of the U.S. Government and is a federal cabinet agency within the meaning of 5 U.S.C. § 552(f).

18.    Defendant Antony Blinken is the Secretary of State. He is responsible for implementing the President's Executive Orders.  He is sued in his official capacity.

19.    Defendant Department of State ("DOS") is a Department of the Executive Branch of the United States and is a federal cabinet agency within the meaning of 5 U.S.C. § 552(f).

20.    Defendant Marcia Fudge is the Secretary of HUD. She is responsible for implementing the President's Executive Orders. She is sued in her official capacity.

21.    Defendant Department of Energy ("DOE") is a Department of the Executive

Branch of the U.S. Government and is a federal cabinet agency within the meaning of 5 U.S.C. § 552(f).

22.     Defendant Jennifer Granholm is the Secretary of the Department of Energy. She is responsible for implementing the President's Executive Orders. She is sued in her official capacity.

23.     Defendant Department of Education ("DOEd") is a Department of the Executive Branch of the U.S. Government and is a federal cabinet agency within the meaning of 5 U.S.C. § 552(f).

24.     Defendant Dr. Miguel Cardona is the Secretary of DOEd. He is responsible for implementing the President's Executive Orders. He is sued in his official capacity.

25.     Defendant Josh Shapiro is the Governor of Pennsylvania. He is the chief executive officer for the State of Pennsylvania with the duty to execute and enforce the law.

26.     Defendant Al Schmidt is the Secretary of State. He is designated as the Commonwealth's Chief Election Official and thus has certain duties imposed upon him by the election code which are established by the legislature.

27.     Defendant Jonathan Marks is the Deputy Secretary for Elections and Commissions.

28.     Defendant Al Schmidt and Defendant Jonathan Marks are both within the executive office of the Pennsylvania Department of State.

29.     The above-named Defendants or their successors are sued in their official capacity only. The above-named Defendants are not sued for damages, but for prospective declaratory and injunctive relief only.

## FACTUAL ALLEGATIONS

30.     The state legislature is assigned particular authority by the Federal

Constitution's Electors Clause and Elections Clause to regulate federal elections.

31.     The Electors Clause of the U.S. Constitution, Article II, Section 1, Clause 2,

states:

> Each State shall appoint, in such Manner as the Legislature thereof may direct,
> a Number of Electors, equal to the whole Number of Senators and
> Representatives to which the State may be entitled in the Congress; but no
> Senator or Representative, or person holding an Office of Trust or Profit
> under the United States shall be appointed an Elector.

32.     The election for President and Vice President will be held on November 5,

2024.

33.     At the Constitutional Convention of 1787, one of the most important decisions

made was the incorporation of the Electors Clause which involved the appointment of

electors to elect the President and Vice President.

34.     The Constitutional Convention delegates adopted the Electors Clause late in

the Convention, having reached no agreement regarding direct election by the people for

president and vice-president.

35.     The Electors Clause was a compromise between selecting the President

pursuant to a popular election or leaving Congress to determine the President.

36.     Justice Joseph Story, in his *Commentaries on the Constitution of the United States,*

explained that the Framers viewed having an electoral college select the President rather than

Congress would commit the decision "to persons, selected for that sole purpose . . . instead

of persons, selected for the general purposes of legislation," --Joseph Story, Commentaries on

the Constitution 3: § 1450 (1833).

37.     The Electors Clause of the U.S. Constitution is a direct grant of federal authority to state legislatures to determine the manner of conducting presidential selection in their respective states.

38.     The Electors Clause is similar to the U.S. Elections Clause in they both grant a particular federal power to state legislatures.

39.     The Elections Clause authorizes the state legislatures to regulate times, places and manners of Congressional elections, but subject to Congressional enactments:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const., Art. I, Sec. 4, Cl. 1.

40.     The Electors Clause, applying only to presidential elections, does not make the federal authority granted to state legislatures subject to Congressional enactments like the Elections Clause does. Accordingly, the Electors Clause grants state legislatures the vested plenary federal authority to enact statutes governing presidential elections.

41.     Under the Elections and Electors Clauses, the Pennsylvania Legislature is the entity assigned particular authority to govern the selection of Electors and the time, place, and manner of Representative and Senate elections.

42.     These Clauses of the Constitution cede primary jurisdiction over the time, place and manner of elections to state legislatures; absent specific acts of Congress to "make or alter such Regulations" a state legislature's decisions control the election process.

43.     Further, under the Elections Clause—but not the Electors Clause—Congress can only enact laws preempting state provisions regulating Congressional elections.

44.    When Congress "makes or alters" a state election regime, such as with the enactment of the National Voter Registration Act, these alterations are construed in a manner no broader than necessary to implement the express will of Congress.

45.    Accordingly, it is the both the duty and the prerogative of the Legislature to provide a complete code for federal elections, including regulations relating to registration of voters.

46.    Importantly, the Pennsylvania Constitution, Article II, Section 1, provides that the legislative power is vested in the Senate and House of Representatives which are two associations of elected legislators who enact laws subject to the Governor's veto.

47.    Article VII, Section 1 of the PA Constitution provides:

Every citizen 21 years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.

48.    Article VII, Section 1 of the Pennsylvania Constitution clearly places the duty of passing laws involving the registration of electors on the General Assembly.

49.    Therefore, under the Electors Clause, the Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislators, as part of two associations called the senate and the house of representatives, respectively, may enact laws, subject to the Governor's veto, to regulate the times, places, and manner of Presidential and Congressional elections.

50.    Thus, Plaintiffs, as individual state legislators, have federal rights under the Elections Clause and Electors Clause to oversee and participate in making legislative decisions regulating the times, places, and manner of federal elections.

51.    Pursuant to this authority, the Legislature has enacted a process whereby

citizens must register to vote prior to casting a ballot in an election.

52.　　Voter registration requirements are legitimate, content neutral methods of protecting the electoral system from fraud and abuse.

53.　　The integrity of the voter registration process in turn supports the integrity of elections themselves.

54.　　A voter registration process which is uncorrupted by falsely obtained, forged, or otherwise manipulated registrations protects elections from abuse.

55.　　The state has a compelling interest in preventing negligence, fraud, or abuse and to that end courts have upheld statutes affecting third party registration efforts by people and entities not employed by state governments.

56.　　Regulations affecting third party registration organizations have been upheld due to concerns over negligence, fraud, or violation of a registrant's privacy.

57.　　Similarly, the employment of out-of-state residents by third party organizations is subject to state regulations due to concerns that the individual may not be easily subject to the state's subpoena power.

58.　　Pennsylvania's voter registration regime sets out the following:

1) An otherwise qualified voter may register in one of four ways (25 Pa. C.S.A. § 1321):
   a. In person registration before the election commissions, polls, schools, or municipal buildings;
   b. Registration when applying for driver's license with the Pennsylvania Department of Transportation;
   c. Registration by mail; and,
   d. Through government agencies.
2) When a registration takes place at the Department of Transportation (25 Pa. C.S.A. § 1323) or offices providing public assistance, the clerk of an orphans' court, marriage license bureau, offices offering services to persons with disabilities, and armed forces recruiting centers (25 Pa. C.S.A. § 1325) the following applies to the staff at those offices:

      a.  They shall not seek to influence an applicant's political preference or party registration or display political preference or party allegiance;

      b.  They shall not make a statement to an applicant or take an action the purpose or effect of which is to discourage the applicant from registering to vote; and,

      c.  Agency employees who violate this subsection shall be removed from employment, provided that the agency at its discretion may impose a penalty of suspension without pay for at least 30 days, but not more than 120 days, if it finds that the violation does not warrant termination.

  3)  Any person who assists in the completion of the registration application shall sign the application and indicate the person's address. In the case of those registering under sections 1323 (relating to application with driver's license application) and 1325 (relating to government agencies), the person providing assistance shall insert the person's initials or employee or agent identification number on a separate or detachable portion of the application or computer data file. (25 Pa. C.S.A. § 1327)

59.     As to third party registration activity, the Legislature recently enacted specific legislation in 2022—referred to here as Senate Bill 982.

60.     Senate Bill 982 was designed, in part, to ban outside, third party financial support for Pennsylvania elections and to eliminate the influence of nongovernmental third party organizations from elections in the Commonwealth.

61.     Senator Phillips-Hill, in introducing Senate Bill 982 said, "No matter how well intended, such outside support has the potential to unduly influence election procedures, policies, staffing, and purchasing, which in turn may unfairly alter election outcomes. Even more importantly, it stands to erode voter confidence in a pillar of our beloved democracy." Seehttps://www.legis.state.pa.us//cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=S& SPick=202 10&cosponId=36370 (last visited: Jan. 20, 2024).

62.     Senate Bill 982 amended the Pennsylvania Election Code with the following language (Pa. St. 25 P.S. § 2607):

(a) The cost and expense to State and local governments relating to the registration of voters and the preparation, administration and conduct of elections in this Commonwealth shall be funded only upon lawful appropriation of the Federal, State and local governments, and the source of funding shall be limited to money derived from taxes, fees and other sources of public revenue.

(b) State and local governments, including their public officers, public officials, employees and agents, acting in their official capacity, may not solicit, apply for, enter into a contract for or receive or expend gifts, donations, grants or funding from any individual, business, organization, trust, foundation, or any nongovernmental entity for the registration of voters or the preparation, administration or conducting of an election in this Commonwealth.

(c) This section shall not be construed to apply to the collection of fees authorized by law or to the donation or use of:

(i)   a location for voting purposes;
(ii)  services that are provided without remuneration; or
(iii) goods that have a nominal value of less than one hundred ($100) dollars.

63.     Senate Bill 982 governs the activity of third-party voter registration groups in Pennsylvania, and it does not authorize the third-party efforts encouraged by Executive Order 14019.

64.     Together with the rest of Pennsylvania's voter registration regulations, Senate Bill 982 controls the ability to conduct voter registration efforts in Pennsylvania.

65.     To ensure this separation and prevent outside influence, the Pennsylvania legislature has specifically stated that any costs incurred by the government relating to the registration of voters "shall" be funded "only" through lawful appropriations. Thus, ensuring the oversight of the Legislature. No funds have been appropriated to support President Biden's Executive Order 14019. Therefore, it is a violation of Pennsylvania law.

66.     Senate Bill 982 prohibits public officials from entering into agreements with

third party entities for the registration of voters or the administration of elections.

## DEFENDANTS' UNLAWFUL ACTS

67.     The Defendants have violated Plaintiffs' rights by unconstitutionally frustrating the voter registration regime established by the Legislature.

### Federal Defendants

68.     First, on March 7, 2021, President Biden signed Executive Order 14019 on "Promoting Access to Voting." (Exhibits H-I)

69.     Executive Order 14019 is not legally authorized by any Congressional enactment.

70.     Executive Order 14019 requires all federal agencies to develop a plan to increase voter registration, and increase voter participation, or get out the vote (hereinafter GOTV) efforts.

71.     The mandate placed upon federal agencies by Executive Order 14019 has substantially influenced the operation of Pennsylvania elections.

72.     Based on information and belief, the U.S. Department of Health and Human Services has implemented its voter registration program within the Commonwealth of Pennsylvania.

73.     Based on information and belief, Pennsylvania residents have utilized the U.S. Department of Health and Human Services' voter registration program to register to vote within the Commonwealth.

74.     In 2022, in response to EO 14019, the U.S. Department of Health and Human Services announced that federal health centers located across the country, including in the state of Pennsylvania, "have discretion to participate in activities, including voter registration

activities, that are outside the scope of the Health Center Program project, so long as the health centers' efforts in carrying out the Health Center Program project are not impaired." HHS, Voter Registration and Health Centers (See https://bphc.hrsa.gov/compliance/scope-project/voter-requirements)(last visited: Jan. 20, 2024). "Such voter registration activities may include making available voter registration materials to patients, encouraging patients to register to vote, assisting patients with completing registration forms, sending completed forms to the election authorities, providing voter registration materials in waiting rooms, and allowing private, non-partisan organizations to conduct on-site voter registration." Id.

75.     Based on information and belief, the U.S. Department of Housing and Urban Development has implemented its voter registration program within the Commonwealth of Pennsylvania.

76.     Based on information and belief, Pennsylvania residents have utilized the U.S. Department of Housing and Urban Development's voter registration program to register to vote within the Commonwealth.

77.     In response to EO 14019, the U.S. Department of Housing and Urban Development likewise instructed more than 3000 public housing authorities, which manage approximately 1.2 million public housing units, across the country, including in the state of Pennsylvania, to run voter registration drives in those units. See Fred Lucas, HUD Pushes Voter Registration Drives in Public Housing Under Biden's Executive Order, The Daily Signal (2022), https://www.dailysignal.com/2022/04/27/hud-pushes-voter-registration-drives-in-public-housing-under-bidens-executive-order/ (last visited: Jan. 20, 2024). Federal housing officials also advised the local agencies on how to apply to become a "voter registration agency under the National Voter Registration Act," and how to set up drop boxes

for ballots on the premises. *Id.*

78.    Based on information and belief, the U.S. Department of Education has implemented its voter registration program within the Commonwealth of Pennsylvania.

79.    Based on information and belief, Pennsylvania residents have utilized the U.S. Department of Education's voter registration program to register to vote within the Commonwealth.

80.    In response to EO 14019, the U.S. Department of Education, which last year sent a "dear colleague" letter to universities, including those located in the state of Pennsylvania, directing them to use Federal Work Study funds "to support voter registration activities," whether they occur "on or off-campus." Federal Student Aid, (GEN-22-05) Requirements for Distribution of Voter Registration Forms, https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2022-04-21/requirements-distribution-voter-registration-forms (last visited: Jan. 20, 2024).

81.    Based on information and belief, the U.S. Department of Agriculture has implemented its voter registration program within the Commonwealth of Pennsylvania.

82.    Based on information and belief, Pennsylvania residents have utilized the U.S. Department of Agriculture's voter registration program to register to vote within the Commonwealth.

83.    In response to EO 14019, the U.S. Department of Agriculture has issued letters to state agencies administering SNAP and WIC programs, including those located in the state of Pennsylvania, instructing them to carry out voter-registration activities with federal funds. See The White House, https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/24/fact-sheet-biden-harris-administration-releases-

report-on-native-american-voting-rights/ (last visited: Jan. 20, 2024).

84.     Additionally, in response to EO 14019, the U.S. General Services Administration has announced that federally-owned buildings, including those located in the state of Pennsylvania, are now available for voter registration drives by third-party organizations, regardless of whether the agency or agencies that own or operate out of those buildings have received an NVRA designation. See GSA, *Federal Meeting Facilities: Use by federal agencies,* https://www.gsa.gov/policy- regulations/policy/real-property-policy-division-overview/federal-meeting-facilities#vote   (last visited: Jan. 20, 2024).

85.     Executive Order 14019 directs *all* non-independent executive agencies to engage in voter registration and to solicit and facilitate third-party organizations to conduct voter registration on agency premises, including those located in the state of Pennsylvania, so it is certain that other agencies are carrying out similar efforts without disclosing their unlawful activities to the public or to the Pennsylvania state legislature.

86.     Executive Order 14019 requires all federal agencies to identify and partner with specified partisan third party organizations chosen by the President Biden administration whose names and roles are not transparent but are willfully withheld from the public.

87.     Under EO 14019, taxpayer resources can be used to support the efforts of the third-party partners to do voter registration drives and GOTV activities.

88.     Executive Order 14019 requires agencies to distribute voter registration and vote-by- mail ballot application forms.

89.     Executive Order 14019 directs agencies to assist applicants in completing voter registration and vote-by-mail ballot application forms.

90.     Executive Order 14019 directs agencies to solicit third-party organizations and

directs state officials to provide voter registration services on agency premises.

91.     Typically, private parties — including plaintiffs, campaigns, political parties, and organizations — conduct voter registration drives as acknowledged and regulated by federal campaign finance laws.

92.     Federal campaign finance laws apply to private parties' voter registration activities. 11 C.F.R. § 100.133.

93.     Voter registration drives and GOTV are a federally recognized private function, not a government function.

94.     But, President Biden's Executive Order 14019 requires agencies to develop plans for government- sponsored voter registration drives run by federal agencies and undisclosed third-party organizations.

95.     The U.S. Election Assistance Commission has issued an advisory opinion that states that election officials are prohibited from using federal funds to conduct "voter registration drives."

> Neither Section 101 nor 251 funds may be used to conduct voter registration drives or get out the vote efforts; including advertising for the event, setting up booths, and paying salaries of employees who register new voters.

U.S. Election Assistance Commission Funding Advisory Opinion FAO-08-005. (Exhibit J)

96.     Since FY 2006, Office of Inspector General (OIG) audits of HAVA grants have resulted in 19 recommendations and just over $1 million dollars in questioned costs related to government-sponsored voter registration drives and GOTV activities.

97.     Mississippi expended HAVA funds for GOTV and voter registration forms, which are not allowable under the award's terms and conditions or HAVA. (Exhibit K)

98.     Florida charged salaries and benefits for poll workers serving at voter

registration drives to HAVA grants, resulting in $139,056 in questioned costs. (Exhibit L)

99.     South Dakota spent $1,474 in HAVA funds for letters containing a sample voter registration form to be distributed to K-12 students for voter education. Students in grades K-12 are not eligible voters, making the expense unallowable. (Exhibit M)

100.     Colorado charged $315,830 to its HAVA grant for contractual services associated with a voter registration campaign, which included only an incidental educational component. As a result, the charges were questioned. (Exhibit N)

101.     Further, federal campaign finance laws are premised on voter registration drives being conducted by private parties, not the government. See 11 C.F.R. Section 100.133.

102.     All agency action in conformity with Executive Order 14019 is without congressional delegation or funding, and conducted merely by executive fiat.

103.     As such, all federal agency actions in conformity with Executive Order 14019 are unauthorized by law.

104.     Further, actions taken pursuant to Executive Order 14019 do not comply with Pennsylvania law, including that all election expenses be funded by federal, state or local appropriations, and undermine the integrity of Pennsylvania's elections. (Exhibit G)

105.     The President of the United States does not have the authority to regulate the time, place, and manner of elections in Pennsylvania.

106.     The President, the U.S. Department of Agriculture, the U.S. Department of Energy, the U.S. Department of Health and Human Services, the U.S. Department of Housing and Urban Development, the U.S. Department of Energy, the U.S. Department of Education, the Governor, the Department of State through the Secretary of the

Commonwealth and the Deputy Secretary for Elections and Commissions, have repeatedly

violated and continue to violate the Electors Clause and Elections Clause by usurping the

rights of the state legislators by changing Pennsylvania election laws via Executive Orders,

edicts, and directives without the state legislators' participation.

107.    No aspect of Pennsylvania's voter registration regime permits the President or

the Executive Branch of the federal government—with the sole exception of voter

registration efforts in military recruiting offices—to participate in or engage with voter

registration in the Commonwealth of Pennsylvania.

108.    Accordingly, Executive Order 14019 is invalid within the Commonwealth of

Pennsylvania and federal agencies acting in conformity with it are in violation of Pennsylvania

law and the Constitution.

### State Defendants

### *Governor Josh Shapiro*

109.    On September 19, 2023, Governor Shapiro announced that he was unilaterally

implementing automatic voter registration in Pennsylvania. (Exhibit F) See:

https://www.governor.pa.gov/newsroom/governor-shapiro-implements-automatic-voter-

registration-in-pennsylvania-joining-bipartisan-group-of-states-that-have-taken-

commonsense-step- to-make-voter-registration-more-streamlined-and-secure/ (last visited:

Jan. 20, 2024).

110.    Beginning on September 19, 2023, Commonwealth residents obtaining new or

renewed driver licenses and ID cards have been, and continue to be automatically registered

to vote by the Pennsylvania Department of Transportation unless they opt out of doing so.

111.    Governor Shapiro's alteration to the voter registration process by gubernatorial

edict was unsupported by Pennsylvania law and runs afoul of powers proscribed to Pennsylvania legislators under both the U.S. Constitution and the Pennsylvania Constitution.

112.   As mentioned above, the U.S. Constitution (under the Elections Clause, the Electors Clause, and the 10th Amendment) and the Pennsylvania Constitution, taken together place plenary regulatory authority over both federal and state elections within the commonwealth in the state legislature, subject only to Congressional enactment as to time, place, manner.

113.   The Pennsylvania Constitution provides that legislative power is vested in the senate and the house of representatives. Pa. Const., Art. II, Sec. 1.

114.   The Pennsylvania Constitution vests the legislative power in the state senate and the house of representatives to regulate the registration of electors in Pennsylvania. Pa. Const., Art. VII, Sec. 1. Therefore, the Pennsylvania legislature, comprised of the senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto to regulate the manner in which voters are registered to vote.

115.   As such, the lawful extent of Governor Shapiro's authority over the regulatory schema of elections in Pennsylvania starts and stops with the powers delegated to his office by duly enacted commonwealth legislation.

116.   Pennsylvania law regarding voter registration is clear. "An individual qualified to register to vote...may apply to register..." 25 Pa.C.S.A. § 1321.

117.   An application, by definition, is a formal request to an authority. It requires an overt action by the person.

118.   According to Merriam-Webster Dictionary, the term "apply" is defined as "to make an appeal or request especially in the form of a written application."

119.     Although not specifically defined in the Election Code, the General Assembly has defined the term "application" in other contexts. Specifically, in 7 Pa.C.S.A. § 6102, the term application is defined as "a request[.]"

120.     Policy decisions regarding how one registers to vote in Pennsylvania have been clearly addressed by the Pennsylvania legislature:

> An individual qualified to register to vote under section 1301(a) (relating to qualifications to register) may apply to register as follows:
> (1)      Under section 1322 (relating to in-person voter registration).
> (2)      Under section 1323 (relating to application with driver's license application).
> (3)      Under section 1324 (relating to application by mail).
> (4)      Under section 1325 (relating to government agencies).

25 Pa.C.S.A. § 1321.

121.     25 Pa.C.S.A. § 1323(a)(1) provides:

> The Department of Transportation shall provide for simultaneous application for voter registration in conjunction with the process under 75 Pa.C.S. § 1510. An application under this subsection shall serve as an application to register to vote unless the applicant fails to sign the voter registration application. The secretary has the primary responsibility for implementing and enforcing the driver's license voter registration system created under this section. The secretary, in consultation with the Secretary of Transportation, may promulgate regulations for implementing this section.

122.     Section 1321 clearly requires an application for the registration process, whether relating to in-person voter registration, application with driver's license application, or application by mail.

123.     Through Section 1323, the Pennsylvania legislature appointed "the secretary [of transportation]" as the party responsible for "implementing and enforcing" the regulatory schema that the legislature "created under this section."

124.    The process "relating to application with driver's license application" is defined in §1323(b) which states:

> 1)    The Department of Transportation shall provide for an application for voter registration as part of a driver's license application.
>
> 2)    The format of the driver's license/voter registration application shall be determined and prescribed by the secretary and the Secretary of Transportation.
>
> 3)    The voter registration application portion of the application shall contain all the requirements of an official voter registration application specified in section 1327 (relating to preparation and distribution of applications).

25 Pa.C.S.A. § 1323(b).

125.    While 25 Pa.C.S.A. § 1327(a)(1) directs the "secretary" to prescribe the form for the official "voter registration application" leaving the design of the application to the discretion of the secretary, the law also includes mandatory language regarding necessary contents of that application. Under both 25 Pa.C.S.A. § 1323(b)(3) and 25 Pa.C.S.A. § 1327(a) the secretary of transportation is obliged to create and provide a voter registration application that incudes space for, *inter alia*, the applicants (i) full name; (ii) address of residence; (iii) mailing address; (iv) name and residence address of previous registration; (v) designation of political party; (vi) date of birth; (vii) telephone number; (viii) race.

126.    Furthermore, the official voter registration application must contain a registration declaration and "the applicant" is required to affirm the information provided under penalty of perjury. See 25 Pa.C.S.A. § 1327(b)(2)(ii)(B) and 25 Pa.C.S.A. § 1327(b)(4).

127.    Pennsylvania jurisprudence requires that fundamental policy choices involved in legislative power actually be made by the legislature as constitutionally mandated. This constraint serves two purposes. First, it ensures that duly authorized and politically

responsible officials make all of the necessary policy decisions, as is their mandate per the electorate. And second, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power.

128.    Governor Shapiro's directive to the Pennsylvania Department of Transportation, and its implementation, is inconsistent with existing laws, and as such, is not legally authorized.

129.    Although "the secretary [of transportation]" was given the task of "implementing and enforcing" the driver's license voter registration system, the legislature clearly mandated that a voter register through an application process. 25 Pa.C.S.A. § 1323.

130.    According to Merriam-Webster Dictionary, the term "implement" is defined as to carry out or to accomplish. It does not mean to change or modify — but simply put into practice the lawfully enacted decisions made by the Pennsylvania legislature.

131.    Where provisions of a statute are unambiguous, the agency charged with administering cannot amend statutory provisions through interpretation.

132.    The state legislature, in its deliberative process, has in fact opted to not pass a regulatory scheme that mirrors what Governor Shapiro has attempted to do by fiat. Through the years, several bills establishing automatic voter registration have been introduced in the proper body of government for those policy considerations, but on each occasion, the proposal failed in the deliberative body of the Pennsylvania legislature.

133.    Most recently, in January 2023, PA State Senator Hughes introduced Senate Bill 40 Amending Title 25 Elections of the PA Consolidated Statutes in an effort to enact automatic voter registration. (Exhibits D and E) Like similar bills in prior legislative sessions, the bill failed because the legislature representing the citizens of Pennsylvania did not support

automatic voter registration.

134.    Governor Shapiro circumvented the rights and authority of the legislators and violated the U.S. Constitution and the Pennsylvania Constitution.

135.    Governor Shapiro's automatic voter registration is not legally authorized by any state law.

136.    Pennsylvania state legislators have, through proper legislative acts, declined to pass a law authorizing automatic voter registration in Pennsylvania.

137.    Governor Shapiro does not have the power to regulate the time, place, and manner of elections.

138.    Governor Shapiro's edict instituting automatic voter registration in Pennsylvania is inconsistent with existing Pennsylvania law.

### Secretary of Commonwealth Al Schmidt, Deputy Secretary for Elections Jonathan Marks, and the Department of State

139.    Al Schmidt, the Secretary of the Commonwealth, acting through the Pennsylvania Department of State and Deputy Secretary for Elections Jonathan Marks (collectively, "Department of State"), issues "guidance" and "directives" that usurp the legislature's authority including a 2018 "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers For Voter Registration Applications." (Exhibit B) See https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/HAVA%20M atching %20Directive%202018.pdf (last visited: Jan. 20, 2024).

140.    This guidance, issued by the Department of State, directs Pennsylvania counties to register applicants even if an applicant provides invalid identification.

141.    Based on the Department of State's directive, if an applicant simply affirms

that they meet the age, citizenship, and the residency requirements to become a qualified

elector, the applicant must be registered — regardless of verification of identity.

142.   The Department of State's Directive specifically states:

> Counties must ensure their procedures comply with state and federal
> law, which means that if there are no independent grounds to reject a
> voter registration application other than a non-match, the application
> may *not* be rejected and must be processed like all other applications.

143.   This directive is in direct contravention of clearly established Pennsylvania law,

which requires verification of both identity and eligibility.

144.   25 Pa.C.S.A. § 1328(a)(1) and (2)(i) and (ii) relating to the "Approval of

Registration Applications" (Exhibit A) states:

> (a)   Examination.—Upon receiving a voter registration application, a
> commissioner, clerk or registrar of a commission shall do all of
> the following:
> (1)   Initial and date the receipt of the application.
> (2)   Examine the application to determine all of the following:
>    (i)   whether the application is complete.
>    (ii)   whether the applicant is a qualified elector.

145.   Under Pennsylvania law, an application must be rejected if incomplete or

inconsistent.

146.   25 Pa.C.S.A. § 1328(b) (Exhibit A) specifically states:

> (b)   Decision.—A commission shall do one of the following:
> (1)   Record and forward a voter registration application to the
> proper commission if the commission finds during its
> examination under subsection (a) that the applicant does
> not reside within the commission's county but resides
> elsewhere in this Commonwealth.
> (2)   Reject a voter registration application, indicate the
> rejection and the reasons for the rejection on the
> application and notify the applicant by first class
> nonforwardable mail, return postage guaranteed of the
> rejection and the reason if the commission finds during its
> examination under subsection (a) any of the following:

    (i)       the application was not properly completed and after reasonable efforts by the commission to ascertain the necessary information, the application remains incomplete or inconsistent.

    (ii)     The applicant is not a qualified elector.

147.     As mentioned above, the U.S. Constitution (under the Elections Clause, the Electors Clause, and the 10th Amendment) and the Pennsylvania Constitution, taken together place plenary regulatory authority over both federal and state elections within the commonwealth in the state legislature, subject only to Congressional enactment as to time, place, manner.

148.     The lawful extent of authority that may be exercised by Secretary Schmidt and the Department of State in election regulation starts and stop with that which the state legislature has delegated to that office through duly enacted legislation.

149.     But, here, Secretary Schmidt and the Department of State not only assume authorities not delegated or assigned to that office, they also have directed the explicit violation of Pennsylvania election regulations.

150.     When the Department of State unilaterally issued guidance to Pennsylvania counties, directing the counties to register voters regardless of whether the driver's license numbers or the last four digits of the social security number match the records of PennDOT or the records of the Social Security Administration, thus eliminating any requirement for verification or confirmation of identity for new voters, it violated federal and state law.

151.     In its illegal directive, the Department of State relies on a misinterpretation of a district court case from the state of Washington as the justification for its overreach. *See Washington Association of Churches v. Reed,* 492 F.Supp 2d 1264 (W.D. Wash. 2006).

152.     According to *Washington Association of Churches,* if the state is unable to match an

applicant's driver's license or social security number, then the applicant "shall be **provisionally** registered to vote." *Id. See* Stipulated Final Order and Judgment of March 15, 2007, Paragraph (1)(c). (Exhibit C)

153. The Department of State's directive requires counties to process incomplete and inconsistent applications "like all other applications" and register the applicants with invalid identification. In effect, the Department of State's directive selectively ignores the *provisional registration* remedy that was central to the *Washington Association of Churches* Court's analysis, and directs county election officials to fully approve incomplete and inconsistent voter registration applications in spite of the electoral safety measures put in place by the Pennsylvania legislature.

154. The Department of State's attempt to circumvent state and federal law through this directive is a *per se* violation of the legislators' federal rights under the Electors Clause and the Elections Clause because the state legislators are not and were not involved. Their opportunity to deliberate and vote on such policy matters, whether in support or rejection of such a registration regulatory shift was preempted by the unchecked executive action taken by Secretary Schmidt and the State Department.

155. The directive, unilaterally issued by the Department of State to Pennsylvania counties undermines the state legislature as "the entity assigned particular authority by the Federal Constitution" to regulate the times, places, and manner of Presidential and Congressional elections.

156. The directive, unilaterally issued through the Department of State to Pennsylvania counties, directing the counties to process incomplete or inconsistent voter registration applications like all other applications violates clear provisions of Pennsylvania

law.

157.    Accordingly, the Department of State's "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" attempting to regulate the registration of Pennsylvania electors is unlawful. This directive nullifies the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections.

### Plaintiff Standing

158.    Plaintiffs have standing under applicable federal statutes and rules of civil procedure to seek a declaratory judgment and related injunctive relief.

159.    Defendants are responsible for the enforcement of duly enacted laws governing all elections, including federal elections.

160.    Plaintiffs, as state legislators are injured by Defendants when they exercise positive regulatory authority over election practices that circumvent or usurp the authority of the legislature.

161.    Defendants support and enforce directives that violate the Electors Clause, the Elections Clause, the 10th Amendment, and the Pennsylvania Constitution because such directives are not law and are legally null and void under the Electors Clause and Elections Clause when they directly or indirectly regulate federal elections.

162.    By directing and effectuating their respective election regulation schema, each Defendant has established, operated, and enforced undeliberated election policy, and each plaintiff has been denied the opportunity to exercise their constitutionally vested authority to cast their legislative vote on affirming or rejecting those new regulatory regimes.

163.    Plaintiffs have individual legislator standing under the both the U.S. and

Pennsylvania Constitutions and federal and state law to challenge usurpation of state legislative powers.

164.    Plaintiffs, as state legislators have federal civil rights under the Electors Clause and the Elections Clause, to oversee and participate in making legislative decisions regulating the times, places, and manner of federal elections.

165.    Under the Elections Clause, but not the Electors Clause, Congress can enact federal laws preempting state legal provisions regulating the times, places and manner of federal elections.

166.    But, Congressional enactments are the only exception in the Elections Clause to the state legislators' federal rights to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections.

167.    Taken together, the 10th Amendment and the Pennsylvania Constitution vest all remaining election regulatory authority not contemplated by the Electors Clause and Elections Clause, in the state legislature.

168.    Plaintiffs who draft, author, and support bills for passage in the state legislature are injured because by each of the Defendants for their respective usurpation of legislative power.

169.    Plaintiffs are also candidates on the ballot who will be impacted by the legally unauthorized changes made to the regulation of voter registration by each Defendant for their respective usurpation of legislative power.

170.    Plaintiffs have a distinct interest in the free, fair, and legal operation of these elections.

171.    Each Plaintiff stands to suffer the particularized harm of competing in

elections that have been interfered with by unlawful regulations.

172.    Each Plaintiff stands to suffer the particularized harm of competing in elections where their opponents have been provided an unlawful advantage.

173.    Furthermore, as candidates, the Plaintiffs have a vested interest in an election process free from negligence, fraud, or abuse—a process that starts with voter registration.

174.    Plaintiffs likewise have standing as voters to bring this lawsuit as Defendants cause injury by unnecessarily burdening Plaintiffs' voting rights when they supervise, fund, or otherwise support statewide illegal directives regarding voter registration applications.

175.    Plaintiffs also have taxpayer standing to bring this lawsuit because Defendants use taxpayer funds to support and enforce unconstitutional directives which govern federal elections without legislative involvement.

## COUNT I
## DECLARATORY AND INJUNCTIVE RELIEF AGAINST
## EXECUTIVE ORDER 14019

176.    Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

177.    The Plaintiffs seek a declaratory judgment that Executive Order 14019 is unconstitutional under the Electors and Elections Clauses, and injunctive relief prohibiting its adoption by agencies under the control of President.

178.    The executive action taken by the President, nullifies the votes of the individual legislators, nullifies the enactment of the Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights, and jeopardizes candidates' rights to an election free from fraud and abuse.

179.    The legislators have suffered and continue to suffer an injury-in-fact because

the Executive Order denies them a voting opportunity to which the Constitution entitles them.

180.    The injury is traceable to the President's conduct because he has taken actions to impact the conduct of his own election and in doing so has denied the legislators their Constitutional rights.

181.    The injury can only be redressed by a favorable judicial decision which restores their authority to determine the manner of elections in the Commonwealth.

182.    President Biden's Executive Order 14019 gives agencies the ability to select third-party organizations, using unappropriated taxpayer funding, to register voters, distribute vote-by-mail ballots, and engage in get out the vote activities.

183.    The Pennsylvania Constitution provides that the legislative power is vested in the senate and the house of representatives. Pa. Const., Art. II, Sec. 1.

184.    The Pennsylvania Constitution vests the legislative power in the state senate and the house of representatives to regulate the registration of electors in Pennsylvania. Pa. Const., Art. VII, Sec. 1.

185.    Therefore, under the Electors Clause, Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislature, defined as senate and house of representatives, has the exclusive authority to enact laws, subject to the Governor's veto, to regulate the times, places, and manner of Presidential and Congressional elections.

186.    Accordingly, President Biden's Executive Order 14019 attempting to regulate the registration of Pennsylvania electors is unlawful. The order should not be permitted to nullify the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections.

187. Plaintiffs, as state legislators, have federal rights under the Electors Clause and the Elections Clause to oversee and participate in making legislative decisions regulating the times, places and manner of Presidential and Congressional elections.

188. Defendant Biden caused injury to Plaintiffs with his Executive Order No. 14019 changing Pennsylvania election law, which usurps the state legislature's powers and violates the state legislators' federal civil rights under the Electors Clause and the Elections Clause.

189. A controversy exists between Plaintiffs and Defendants on the issue of whether President Biden's Executive Order 14019 involving the regulating of registration of Pennsylvania electors is a legally valid regulation of federal elections. The implementation and effect of the Executive Order is ongoing. Moreover, if permitted to stand, similar executive orders can be signed in the future, hence, the controversy is continuing.

190. As candidates, Plaintiffs are on the ballot who will be impacted by the legally unauthorized changes made by President Biden.

191. As voters, Defendant President Biden caused injury by unnecessarily burdening Plaintiffs' voting rights when he signed Executive Order 14019 giving federal agencies and third-party organizations unprecedented power to make changes unilaterally and illegally to the manner of elections in Pennsylvania.

192. As taxpayers, the Plaintiffs also have standing as Defendants use taxpayer funds to support and enforce his unconstitutional executive order governing federal elections, without legislative involvement.

193. Based on the foregoing, Plaintiffs seek prospective declaratory and injunctive relief.

**COUNT II**
**ADMINISTRATION PROCEDURE ACT**
**(Substantively Arbitrary and Capricious, Abuse of Discretion, Contrary to Constitution or Statute)**

194.     Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

195.     The Plaintiffs believe, upon information and belief, the following Defendants have implemented the EO: DOS; DOA; DOE; DOEd; HHS and HUD.

196.     Upon information and belief, the following federal agencies have implemented the EO; however, Section 3(b) of the EO, in contravention of Article IV of the Constitution, the NVRA, and HAVA, that "[w]ithin 200 days of the date of this order, the head of each agency shall submit to the Assistant to the President for Domestic Policy a strategic plan outlining the ways identified under this review that the agency can promote voter registration and voter participation: U.S. Treasury; U.S. Department of Defense; Department of Justice; Department of the Interior; Department of Commerce; Department of Labor; Department of Transportation; Department of Veterans Affairs; Department of Homeland Security; and the Environmental Protection Agency.

197.     All of the Defendant federal agencies either have a physical presence in the state of Pennsylvania or maintain websites that affect the citizens of the State.

198.     The Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), prohibits federal agency action that is arbitrary, unconstitutional, and contrary to statute.

199.     In implementing Executive Order 14019 the federal agencies have taken unconstitutional and unlawful action, acted arbitrarily and capriciously, and otherwise not in accordance with law, and have abused their discretion, in violation of the APA.

200.    Defendant federal agencies' violation causes ongoing harm to the Plaintiffs.

201.    Based on the foregoing, Plaintiffs seek prospective declaratory and injunctive relief.

## COUNT III
## ADMINISTRATION PROCEDURE ACT
### (Procedurally Arbitrary and Capricious Notice and Comment)

202.    Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

203.    The APA, 5 U.S.C. §§ 553 and 706(2)(D), requires federal agencies to conduct formal rule making before engaging in action that impacts substantive rights.

204.    Defendants DHS, DOA, DHS, HUD, DOEd, and the DOE (collectively "federal agencies"), are "agencies" under the APA. 5 U.S.C. § 551(1).

205.    The actions that the federal agencies have taken to implement the EO are "rules" under the APA. 5 U.S.C. § 551(4).

206.    In implementing the EO, the federal agencies have changed the substantive election procedures. The federal agencies did not follow the procedures required by the APA before taking action impacting these substantive rights.

207.    With exceptions that are not applicable here, agency rules must go through notice-and-comment rulemaking. 5 U.S.C. § 553.

208.    The federal agencies promulgated these rules without authority and without notice-and-comment rulemaking in violation of the APA.

209.    The Plaintiffs will be impacted because they have not had the opportunity to comment on substantive election procedures.

210.    The federal agencies' violation causes ongoing harm to the Plaintiffs.

211.    Based on the foregoing, Plaintiffs seek prospective declaratory and injunctive relief.

## COUNT IV
### Governor's Violations of the State Legislators' Federal Rights Under the U.S. Constitution's Electors Clause and Elections Clause
### —Claim Under 42 U.S.C. § 1983

212.    Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

213.    42 U.S.C. § 1983 confers a federal private right of action against any person acting under the color of state law who inflicts a deprivation of any right, privilege, or immunity secured by the U.S. Constitution.

214.    Through 42 U.S.C. § 1983 Plaintiffs seek injunctive relief enjoining and prohibiting Governor Shapiro's automatic voter registration regime through the Pennsylvania Department of Transportation as unconstitutional under the Electors and Elections Clauses.

215.    The executive action taken by Governor Shapiro nullifies the votes and diminishes the influence of the individual legislators, nullifies the enactments of the State Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an election free from fraud and abuse.

216.    Plaintiffs have suffered and continue to suffer an injury-in-fact because the edict issued by Governor Shapiro denies the Plaintiffs a voting opportunity to the acceptance of rejection of a voter registration schema that, under the U.S. and Pennsylvania Constitutions can only originate in the Pennsylvania legislature or U.S. Congress.

217.    Plaintiffs' injuries are not capable of being redressed by monetary damages.

218.    The injury is traceable to the Governor's conduct because he has assumed authority particular assigned to the state legislators, demonstrably diminishing their constitutionally vested authority.

219.    The injury can only be redressed by a favorable judicial decision which restores Plaintiffs' authority to determine and establish the regulation of elections in the Commonwealth.

## COUNT V
### Department of State's Violations of the State Legislators' Federal Rights Under the U.S. Constitution's Electors Clause and Elections Clause —Claim Under 42 U.S.C. § 1983

220.    Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

221.    42 U.S.C. § 1983 confers a federal private right of action against any person acting under the color of state law who inflicts a deprivation of any right, privilege, or immunity secured by the U.S. Constitution.

222.    Through 42 U.S.C. § 1983 Plaintiffs seek injunctive relief enjoining and prohibiting the Department of State's "Directive Concerning HAVA-Matching Drivers' License or Social Security Numbers for Voter Registration Applications" and similar guidance as unconstitutional under the Electors and Elections Clauses.

223.    The executive action taken by Secretary Schmidt nullifies the votes and diminishes the influence of the individual legislators, nullifies the enactments of the State Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an election free from fraud and abuse.

224.    Plaintiffs have suffered and continue to suffer an injury-in-fact because the guidance issued by the Department of States denies the Plaintiffs a voting opportunity to the acceptance of rejection of a voter registration schema that, under the U.S. and Pennsylvania Constitutions can only originate in the Pennsylvania legislature or U.S. Congress.

225.    The Department of State's "Directive Concerning HAVA-Matching Drivers' License or Social Security Numbers for Voter Registration Applications" established a fundamentally new voter registration schema wherein applications with incomplete and inconsistent voter registration applications are accepted. As a consequence, whereas a voter registration application with incomplete or inconsistent information regarding the identity of the applicant would otherwise be rejected in conformity with state law, under the Department of State's directive such applications are accepted. This directive fundamentally creates a new voter registration schema by executive fiat outside the deliberative process required under the U.S. and Pennsylvania constitution.

226.    The Department of State's directive has individually deprived each Plaintiff of their U.S. constitutional right to vote on and direct election policy, established under both the Elections Clause and Electors Clause.

227.    A controversy exists between Plaintiffs and Defendant Schmidt and Defendant Pennsylvania Department of State on whether the Department of State's "Directive Concerning HAVA-Matching Drivers' License or Social Security Numbers for Voter Registration Applications" is legally valid. The implementation of the Directive is ongoing. Moreover, if permitted to stand, similar executive action can be expected to further usurp Plaintiffs' authority in the future, and so in both regards, the controversy is continuing.

228.    Plaintiffs' injuries are not capable of being redressed by monetary damages.

229.    The injury is traceable to Secretary Schmidt's and the Department of State's conduct because he, and the Department of State, have assumed authority particular assigned to the state legislators, demonstrably diminishing their constitutionally vested authority.

230.    The injury can only be redressed by a favorable judicial decision which restores Plaintiffs' authority to determine and establish the regulation of elections in the Commonwealth.

## PRAYER FOR RELIEF

For the reasons stated in this complaint, the Plaintiffs, Pennsylvania Legislators, request that this Court grant the following relief:

1.    Enter prospective declaratory and injunctive relief, including holding and setting aside Executive Order 14019, pursuant to 5 U.S.C. § 706, because Executive Order 14019 is (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity;  (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and (D) without observance of procedure required by law.

2.    Enter a declaratory judgment that the edict or announcement by Governor Shapiro for the regulation of times, places, and manner of federal elections is unconstitutional and violates the Electors Clause and the Elections Clause because the state legislature's approval and the state legislators' participation are required.

3.    Issue an order granting injunctive relief enjoining Defendants Shapiro, Schmidt, or Marks from any actions funding, supporting, or facilitating the edict or announcement regarding automatic voter registration as it violates the Electors and Elections Clause and Art. VII, Section 1 of the Pennsylvania Constitution which gives the General

Assembly the power to "regulate the registration of electors."

4.     Enter a declaratory judgment that the directive issued by the Department of State in 2018 regarding the verification of the identity and eligibility of Pennsylvania voters is unconstitutional, violates the legislators' federal rights, and violates established laws; and,

5.     Issue an order granting injunctive relief enjoining Defendants Shapiro, Schmidt, or Marks from any actions funding, supporting, or facilitating the "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" as this directive violates the Electors and Elections Clause and Art. VII, Section 1 of the Pennsylvania Constitution which gives the General Assembly the power to "regulate the registration of electors..."

6.     Issue a declaratory judgment that Plaintiffs have prevailed on their 42 U.S.C. § 1983 claims;

7.     Grant Plaintiffs their reasonable attorney fees, costs, and expenses incurred and authorized under 42 U.S.C. § 1988 and other applicable laws; and

8.     Grant such other and further relief as is just and appropriate.


Dated: February 16, 2024                    /s/Erick Kaardal
                                            By: Erick G. Kaardal (MN No. 229647)
                                            Mohrman, Kaardal & Erickson, P.A.
                                            150 South Fifth Street, Suite 3100
                                            Minneapolis, Minnesota 55402
                                            (612) 341-1074
                                            kaardal@mklaw.com

Dated: February 16, 2024

/s/Karen DiSalvo
By: Karen DiSalvo (PA No. 80309)
Mohrman, Kaardal & Erickson, P.A.
Election Research Institute
1451 Quentin Road, Suite 232
Lebanon, PA 17042
717-281-1776
kd@election-institute.com


Richard P. Lawson
Jessica H. Steinmann
Jase Panebianco
Patricia Nation
AMERICA FIRST POLICY INSTITUTE
1001 Pennsylvania Ave., NW, Suite 530
Washington, DC 20004
813-952-8882
rlawson@americafirstpolicy.com
jsteinmann@americafirstpolicy.com
jpaenbianco@americafirstpolicy.com
pnation@americafirstpolicy.com