## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAWN KEEFER, et al.,

      Plaintiff,

v.

JOSEPH R. BIDEN, et al.,

      Defendants.

Civil No. 1:24-CV-00147

Judge Jennifer P. Wilson

---

### Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction

BACKGROUND ...................................................................................................1

ARGUMENT .......................................................................................................1

I.    Plaintiffs are likely to prevail on the merits.............................................1

    A.  State legislator standing exists for the federal APA claim and the § 1983 claim...................................................................................................2

        1.  The U.S. Constitution, as the supreme law of land, through the Supremacy Clause ensures federal rights cannot be deprived or usurped through non-supreme lawmaking authority hindering or obstructing privileges and rights granted to state legislators under the Electors Clause and the Elections Clause. ............................2

        2.  The Plaintiffs have standing based on the deprivation of their federal rights. ................................................................................4

        3.  Defendants have injured Plaintiffs' interests as candidates for office. ..................................................................................10

        4.  The plaintiffs have standing for their claims against federal defendants. ..............................................................................11

        5.  Alternatively, the plaintiffs have standing as citizens, taxpayers, and voters to bring election law lawsuits. .................................11

6.   The legal violations are redressable; and, the claims are not speculative.................................................................................................11

B.  The textualist and structuralist interpretative arguments are straightforward and persuasive in this case........................................................12

II.   The Plaintiffs are irreparably harmed..............................................................17

III.  The plaintiffs will suffer irreparable harm if the preliminary injunction is not issued. ...................................................................................................17

IV.  The defendants will not suffer injury if the preliminary injunction is issued. ...........................................................................................................18

V.   Granting preliminary injunctive relief will be in the public interest...................18

## BACKGROUND

The amended complaint alleges President Biden, federal agencies, Governor Shapiro, and executive officials from the Pennsylvania Department of State have deprived the state lawmakers of federally protected privileges[1] and rights under the Electors Clause and the Elections Clause.

## ARGUMENT

In order to receive injunctive relief, the plaintiffs must show that (1) they are likely to prevail on the merits of their claims; (2) the extent to which the moving party is being irreparably harmed by the complained-of conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. See *Ramsey v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 256 (3d Cir. 2020), *cert. denied*, 141 S.Ct. 1517 (2021).

## I.      Plaintiffs are likely to prevail on the merits.

As to the first factor, the movant need only prove a "prima facie case," not a "certainty" of winning. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001).

---

[1] "Privilege" is defined as "a special right, advantage, or immunity granted or available only to a particular person or group." Oxford Dictionary, online (last visited Feb. 13, 2024).

**A.      State legislator standing exists for the federal APA claim and the § 1983 claim.**

1.  **The U.S. Constitution, as the supreme law of land, through the Supremacy Clause ensures federal rights cannot be deprived or usurped through non-supreme lawmaking authority hindering or obstructing privileges and rights granted to state legislators under the Electors Clause and the Elections Clause.**

The Supremacy Clause, Art. VI, cl. 2, reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land.

The U.S. Supreme Court has held that "[i]t is apparent that this Clause creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' The Supremacy Clause is not the source of any federal rights and does not create a cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). It instructs courts what to do when state and federal law clash but is silent regarding who may enforce federal laws in court and in what circumstances they may do so. The Supremacy Clause explicitly identifies the Constitution as the "law."

Hence, as a clause within the U.S. Constitution, the Electors Clause is the "law" as it pertains to the appointment of presidential electors as reserved within the exclusive province of a state legislature:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress.

Under the Electors Clause, the U.S. Supreme Court has explained that "[t]he legislative power is the supreme authority except as limited by the constitution of the State." *McPherson v. Blacker*, 146 U.S. 1, 25 (1892), quoted in *Moore v. Harper*, 600 U.S. 1, 28 (2023).

Similarly, as a clause within the U.S. Constitution, the Elections Clause, specifically delineated the manner of federal elections for senators and representatives, as reserved with state legislatures:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

The U.S. Supreme Court in *Moore v. Harper* explained that legislative authority regarding federal elections under the Elections Clause is restrained under both the federal and state constitutions:

> When a state legislature carries out its constitutional power to prescribe rules regulating federal elections, the "commission under which" it exercises authority is two-fold…The legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution. Both constitutions restrain the legislature's exercise of power.

*Moore v. Harper*, 600 U.S. at 27.

In simple terms, the Constitution is the supreme law of the United States. The following chart shows how the three constitutional clauses distribute "supreme," "veto" and "non-supreme" law-making powers:

| Entity/Official | Supremacy Clause | Elections Clause | Electors Clause |
|---|---|---|---|
| Congress | Supreme--Supremacy Clause | Supreme--Elections Clause | No |
| President | Veto | Veto | No |
| State Legislature | Non-supreme | Supreme—Elections Clause | Supreme—Electors Clause |
| Governor | Veto | Veto | Veto |
| State Election Officials | Non-supreme | Non-supreme | Non-supreme |

The Electors and Elections Clauses grant certain privileges and rights to "state legislatures" to participate in lawmaking regarding aspects of federal elections.

In Pennsylvania, the state constitution defines legislative power as vested in a General Assembly that consists of a Senate and a House of Representatives. Pa. Const. art. II, § 1. The Senate has 50 members and the House 203 members, each having the authority to vote yea or nay on questions brought before them. Pa. Const. art. II, §§ 11,16; *see e.g.,* Bills passed by the General Assembly are subject to the Governor's veto. Pa. Const. art IV, ¶ 15.

In this regard, General Assembly members are granted constitutional rights to vote to exercise their authority as elected members to pass laws regarding federal elections, consistent with the mandate of the Electors and Elections clauses. The U.S. Constitution mandates that the state legislature has the authority as a privilege or right to enact laws governing times, places, and manner of federal elections and, in turn, provides individual state legislative members the same federal privilege or right, vis-à-vis the opportunity to vote on election laws, subject only to limitations within the U.S. Constitution (*e.g.* congressional acts (Elections Clause)) or within the applicable state constitution (*e.g..,* gubernatorial vetoes).

**2.  The Plaintiffs have standing based on the deprivation of their federal rights.**

The controlling case law confirms that individual state legislators have standing under the Constitution to challenge the usurpation of state legislative powers.  The applicable

standards for standing should be applied to the Plaintiffs' claims. The complaint asserts equitable relief claims against all defendants, APA violations against the federal agencies, and 42 U.S.C. §1983 claims against the state defendants based on violations of the individual state legislators' federal rights under the Elections and Electors Clauses.

For well over a century the Supreme Court has recognized the ability to seek injunctive relief in federal court for violations of the Constitution. *Ex Parte Young*, 209 U.S. 123 (1908); *Trump v. Hawaii,* 138 S.Ct. 2392, 2407 (2018). Writing for the Court in 2015, Justice Scalia observed that "we have long held that federal courts may in some circumstances grant injunctive relief . . . with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child,* 575 U.S. at 326-7. The authority of courts to "enjoin unconstitutional actions by state and federal officers" is a longstanding judicial remedy derived from a court's inherent equity powers.  Id. at 327.

In addition to equitable relief, the complaint seeks relief under the APA.  Under 5 U.S.C. § 706, APA claims can be based on agency actions that are "contrary to constitutional right, power, privilege, or immunity."  Here, the state legislators are claiming their federal constitutional rights under the Elections and Electors Clauses have been deprived or usurped by Executive Order 14019.

The question of state legislators' standing turns on whether the Elections Clause and Electors Clause create enforceable federal rights in favor of individual state legislators through a cause of action under § 1983. *See generally, City of Racho Palos Verdes v. Abrams,* 544 U.S. 113, 119–121 (2005).

The U.S. Supreme Court requires an "unambiguously conferred right to support a cause of action brought under § 1983." *Id.* Three factors are identified for the Court to consider:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016), quoting *Blessing v. Freestone*, 520 U.S. 329 (1997)(citations omitted).

As for the first factor—the intent to benefit the plaintiffs—establishing that factor requires a showing that the plaintiffs were intended to be the class of beneficiaries to which the plaintiffs belong. *Rancho Palos Verdes,* 544 U.S. at 120; *see also, Gonzaga Univ.* 536 U.S. at 281. The targeted portion of the Elections and Electors Clauses fits comfortably among federal legal provisions found to create individually enforceable rights because of their "'unmistakable focus on the benefited class.'" *Colon-Marrero,* 813 F.3d at 17, quoting *Gonzaga Univ.* 536 U.S. at 287. The Elections Clause text specifies the "Legislature" as a discrete class of beneficiaries and provides to them a specific power of regulating federal elections to them:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof…

The command of the Elections Clause directs the state legislators to "prescribe" the manner of federal elections.  The corresponding rights are the state legislators' federal rights to prescribe the manner of federal elections.

Similarly, the key phrase from the Electors Clause authorizes the state legislators to act, also creating federal rights for state legislators:

> Electors Clause:  "Each State shall appoint, in such Manner as the Legislature thereof may direct…"

The Electors Clause authorizes the state legislators to determine the method of appointment of the electors.  And, the corresponding federal rights are the state legislators' federal rights to direct the method of appointment of the presidential electors.

So, the Elections and Electors Clauses specify the same discrete class of beneficiaries—state legislators—and command them to prescribe the manner of federal elections and the method of appointment of presidential electors. Specifically, the word "legislature" in the Elections and Electors Clauses confers federal rights onto the individual state legislators.  The U.S. Supreme Court has opined that the purpose of extending rights to corporations is to protect the rights of the people associated with the corporation:

> When rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people.

*Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 706–07 (2014).  Also, the U.S. Supreme Court has recognized associational standing. *See, e.g., Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 342 (U.S. 1977). Similarly, a purpose of the Elections Clause and Electors Clause, granting power to the state legislators, is to protect the privileges and rights of the individual state legislators.

As alleged in the amended complaint, the Pennsylvania Constitution vests the Elections Clause legislative power in individual state legislators as part of their respective "senate" and "house" associations:

> Therefore, under the Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislators, as part of two associations called the senate and house of representatives, respectively, must enact laws, subject to the Governor's veto, to regulate the times, places and manner of federal elections subject only to Congressional enactments.

So, at least in this case, the complaint alleges that the Elections and Electors Clauses' references to "legislature" confer rights onto the individual state legislators. *Id.* The Pennsylvania state legislature is not a state agency with a governor-appointed Commissioner and employees. Instead, the Pennsylvania state legislature consists of elected senators and representatives who organize their respective legislative bodies at the first meeting after the general election. In this way, the individual state legislators, with their newly printed election certificates, precede and constitute the legislative body, as it is with any association.

The Supreme Court has taken this legal position on standing, albeit under the provisions of the Constitution, Article V, for state legislative ratification of federal constitutional amendments. *Coleman v. Miller,* 307 U.S. 433 (1939), cited in *Arizona State Legislature v. Arizona Independent Redistricting Com'n*, 576 U.S. 787, 803 (2015). Additionally, Pennsylvania Supreme Court case law authorizes individual state legislators to bring legislative usurpation claims. *Fumo v. City of Philadelphia*, 972 A.2d 487, 491 (Pa. 2009). The U.S. Supreme Court has opined that a state may authorize anyone to represent the state in Elections Clause legislative usurpation cases. *Virginia House of Delegates v. Bethune-Hill*, 139

S.Ct. 1945, 1951–52 (2019).  Other states have also authorized individual legislators to bring legislative usurpation claims.[2]

The plaintiffs anticipate that the defendant's opposition brief will present the proverbial strawman by asserting that the plaintiffs are asserting "institutional injury" on behalf of the state legislature. But, nowhere in the complaint's allegations do the individual legislators complain about institutional injury.  The complaint's allegations are targeted to the individual legislators' federal rights under the Elections and Electors Clauses being violated. In *Va. House of Delegates v. Bethune-Hill,* the Supreme Court leaves room for individual legislator standing under the Elections Clause.  *Virginia House of Delegates v. Bethune-Hill*, 139 S.Ct. at 1954 citing *Coleman v. Miller,* 307 U.S. 433 (1939). Moreover, since the decision in *Virginia House of Delegates,* the U.S. Supreme Court has recognized state legislative powers under the Elections Clause in a more specific way:

> The legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution.

*Moore v. Harper*, 600 U.S. at 27.

The remaining factors of the private-right inquiry are also satisfied. Enforcing the federal rights of individual state legislators, as commanded under the Elections and Electors Clauses, would impose no "'strain [on] judicial competence,' as the right is concrete and well-defined." *Colon-Marrero*, 813 F.3d at 20, quoting *Blessing,* 520 U.S. at 341. The specificity

---

[2] See, e.g., *Dodak v. State Administrative Bd.,* 495 N.W.2d 539, 543 (Mich., 1993); *Romer v. Colorado Gen. Assembly*, 810 P.2d 215, 218-219 (Colo., 1991); *Wisconsin Legislature v. Palm*, 942 N.W.2d 900 (2020).

of the Elections Clause and Electors Clause directives "shields against potentially disparate outcomes, bolstering the conclusion that the language is rights-creating." *Id.* (citation omitted). Furthermore, the Elections and Electors Clause terms requiring state legislators to prescribe the manner of federal elections is couched in mandatory terms, "rather than precatory, terms,' and 'unambiguously impose a binding obligation.'" *Id.*

Because there exist individual state legislators' federal rights under the Elections Clause and Electors Clause, an action lies under 42 U.S.C. § 1983, and, this Court may properly provide the Plaintiffs equitable relief, relief under the APA, and through § 1983.

### 3. Defendants have injured Plaintiffs' interests as candidates for office.

An election that is operated unlawfully has an effect on candidates' interests, which impacts them in a "personal and individual way." *Trump v. Wisconsin Elections Commission*, 983 F.3d 919, 924 (7th Cir. 2020). See also *Albence v. Higgin*, 295 A.3d 1065, 1087 ("for standing purposes, it matters little whether the ballots are unlawful because they are constitutionally unauthorized absentee ballots or because they are cast by unlawfully registered voters"). The Defendants' actions collectively undermine the integrity of Pennsylvania's elections by introducing procedures that were not provided by the Legislature.  Furthermore, not only are federal efforts unaccounted for in Pennsylvania's registration regimes, state enforcement against federal officers of Pennsylvania's regulations raises profound federalism questions— for example, will state officials be allowed to enter federal property to arrest federal employees conditioning the grant of benefits on registration?  Will federal officials accept service of any witness subpoenas in such criminal trials?  These issues are mooted by the third prong of standing which the Plaintiff candidates meet—redressability.  If this Court

enjoins the Defendants' unlawful acts, the Court will preserve the integrity of Pennsylvania's upcoming elections.

### 4. The plaintiffs have standing for their claims against federal defendants.

5 U.S.C. § 706 provides that APA claims can be based on agency actions that are "contrary to constitutional right, power, privilege, or immunity."  Here, the state legislators are claiming their federal constitutional rights under the Elections and Electors Clauses have been deprived or usurped by Executive Order No. 14019.

### 5. Alternatively, the plaintiffs have standing as citizens, taxpayers, and voters to bring election law lawsuits.

Alternatively, the plaintiffs have standing as citizens, taxpayers, and voters to bring Electors Clause and Election Clause claims. The Supreme Court has taken review of Elections Clause legislative usurpation cases in the past brought by a citizen, taxpayer and voter. For example, in *Smiley v. Holm,* 285 U.S. 355, 361 (1932), the "suit was brought by the petitioner as a 'citizen, elector and taxpayer' of the state."  There was no problem with standing in that case.

### 6. The legal violations are redressable; and, the claims are not speculative.

Redressability is "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens For a Better Environment,* 523 U.S. 83, 102–03 (2008).  The plaintiffs' claim to redressability is simple. The plaintiffs seek prospective equitable relief that their federal rights under the Elections and Electors Clauses are being violated by the Defendants. The Court can redress the alleged injury by issuing a straightforward order.  That is hardly speculative.

**B.** **The textualist and structuralist interpretative arguments are straightforward and persuasive in this case.**

The textualist argument for the unconstitutionality of the Defendants' actions is straightforward and persuasive.  Under textualism, the text of the Electors and Elections Clauses supports the unconstitutionality of the Defendants' actions because their respective actions contradict laws enacted by a state legislature.   First, on March 7, 2021, President Biden signed Executive Order 14019 on "Promoting Access to Voting."  EO14019 requires all federal agencies to develop a plan to increase voter registration, voter participation, or get out the vote (GOTV) efforts. It further directs all non-independent executive agencies to facilitate third-party organizations to conduct voter registration on agency premises and requires federal agencies to identify and partner with specified third-party organizations chosen by the Biden administration, whose names and roles are not transparent but are withheld from the public.  EO14019 is not legally authorized by any congressional enactment.  The state legislators have, through proper legislative acts, passed a law that prohibits the influence of third-party entities in elections. This law was passed to eliminate the potential for outside groups to influence Pennsylvania elections. Pennsylvania law requires that any costs incurred by the government relating to the registration of voters "shall" be funded "only" through lawful appropriations. 25 Pa.C.S.A. Section 107. No funds have been appropriated to support EO14019. Therefore, it is a violation of Pennsylvania law.[3]

---

[3] See Heather Honey Decl. ¶¶ 18-24.

Federal law preempts state law under the Supremacy Clause. But, under the Electors Clause, Pennsylvania state law regulating the registration of voters preempts EO14019. Since the will of the legislators was manifested through final legislative action, the executive order nullified the effects of that legislative action, thus preventing it from ever taking its intended legal effect, depriving the legislators of the opportunity to vote and causing injury to individual legislators. See *Goldwater v. Carter*, 617 F.2d 697, 711, vacated by 444 U.S. 996 (1979).

Second, on September 19, 2023, Governor Shapiro announced that he was unilaterally implementing automatic voter registration in Pennsylvania. Commonwealth residents obtaining new or renewed driver licenses and ID cards are automatically registered to vote unless they opt out of doing so.  But, policy decisions regarding how one registers to vote in Pennsylvania have been clearly addressed by the Pennsylvania legislature. Individuals "may apply to register." See 23 Pa.C.S.A. § 1321.

The governor does not individually have the power to make law but has a distinct role in the legislative process through the use of his veto powers. Pennsylvania legislators have previously tried unsuccessfully to pass a law establishing automatic voter registration. Through use of the proper legislative process, the Governor would have the ability to veto such legislation. The Governor does not, however, have the unilateral power to create law by simply pronouncing it.[4]

Pennsylvania legislators have suffered injury in fact from Governor Shapiro's unilateral edict because they were deprived of the opportunity to vote to prevent the

---

[4] See Honey Decl. ¶¶ 11-17.

implementation of automatic voter registration. By excluding the legislators from the legislative process, Governor Shapiro deprived the legislators of their right to cast a vote, thus nullifying the rights of each individual legislator. Moreover, the legislators have no ability or recourse through the legislative process to remedy the abuse. See *Goldwater v. Carter*, 617 F.2d at 702.

Third, the Pennsylvania Department of State has issued and continues to issue numerous directives that contradict laws established by the legislators, including a 2018 "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers For Voter Registration Applications." This directive instructs Pennsylvania counties to register applicants even if an applicant provides invalid identification. This directive is in direct contravention of clearly established Pennsylvania law, which requires verification of both identity and eligibility. See 23 Pa.C.S.A. § 1328(a) and (b).[5]

State executive officials are not granted any constitutional rights through the Electors Clause or the Elections Clause. Pennsylvania's Constitution similarly places the duty of "regulating the registration of electors" on the legislature. When state election officials direct county election offices to disregard the law, as established by the legislature, they effectively disenfranchise legislators.  Essentially, through this directive, the votes of the legislators have been nullified and no power exists through the legislative process to remedy the abuse.  See *Goldwater v. Carter*, 617 F.2d at 702.

Under the Electors and Elections Clauses, the president and state executive officials do not have any independent authority to contradict state-legislatively enacted laws

---

[5] See Honey Decl. ¶¶ 6-10.

regulating elections. So, when the President and state executive officials issue executive orders or adopt policies that contradict state laws, enacted by the state legislature, regulating elections, as they have here, it is unconstitutional.

The President and the state executive officials have no constitutional authority to enact such election policies contradicting state-legislatively-enacted laws. The Electors and Elections Clauses grant to the state legislature, not the President and state executive officials, the power to regulate elections.

Alternatively, the interpretivist's structuralist arguments also support the unconstitutionality of Defendants' actions. The structure of the Electors Clause and the Elections Clause is to empower the state legislatures, not the President or state executive officials. The structure of the Electors Clause and the Elections Clause is anti-President, anti-Governors, and pro-state legislatures. The Electors Clause's and Elections Clause's imperative sentences regarding presidential and congressional elections, respectively, put the state legislatures in exclusive control of presidential and congressional elections. To be sure, gubernatorial vetoes and congressionally enacted laws under the Elections Clause still have a role to play. Nonetheless, under the Electors Clause, the President and the Governors (except for their veto powers) are not to have substantive lawmaking roles regarding presidential elections. And, under the Elections Clause, the President (except for the veto power) and the governors (except for their veto powers) are not to have substantive lawmaking roles regarding Congressional elections.

First, as to the pro-state legislatures principle, the Electors and Elections Clauses trust state legislatures to regulate elections. The Constitution chose state legislatures to make the

laws regulating presidential and congressional elections.  The state legislatures--not the President, nor the governors, nor the state election official—are to make law regulating Presidential and Congressional Elections.

Second, as to the anti-President principle, the Constitution, in the Electors Clause and the Elections Clause, mistrust the President in regulating presidential and congressional elections. This is the anti-President principle of the Electors Cause and Elections Clause. These Clauses prevent the President unduly influencing presidential and congressional elections.  Under the Electors Clause, the President has no role in regulating a presidential election.  Under the Elections Clause, the President is left with only narrowly prescribed veto power regarding bills that pass Congress that regulate congressional elections. Otherwise, the President is not to interfere with the state legislators' powers under the Electors and Elections Clauses.

Third, as to the anti-Governors principle, the Electors Clause and Elections Clause mistrust Governors in presidential and congressional elections. The governors, other than their veto powers under the state constitutions relating to state-legislatively passed bills, are to have no constitutional role in presidential and congressional elections. Under the Electors Clause and the Elections Clause, the Governor is not to interfere with the state legislature's federal powers.

Similarly, the Electors Clause and Elections Clause mistrust state election officials, who have even less power under the Electors Clause and the Election Clause than governors, who have the veto power over state legislatively enacted election law bills.

The structural argument for the unconstitutionality of the Defendants' actions is straightforward and persuasive.  Under the structural argument, the text of the Electors Clause and Elections Clause is pro-state legislature, anti-President and anti-Governor. Here, the President, the Governor and state executive officials have contradicted laws enacted by the state legislature.  The state legislature was chosen in the Constitution to make the election laws for the President and Congress.  The President, Governor and state executive branch officials do not have any independent authority to contradict state-legislatively enacted laws regulating presidential and congressional elections. The Defendants have violated what the Framers intended by the Electors Clause and Elections Clause.

## II.     The Plaintiffs are irreparably harmed.

"[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). The federal civil rights of Plaintiff legislators – unique, particular constitutional rights—have been violated and continue to be violated and no other adequate remedy exists.  The plaintiffs claim injury based upon their own particular circumstances.  Keefer Decl.; Dush Decl.; Gleim Decl.; Hamm Decl.; Krupa Decl.

## III.    The plaintiffs will suffer irreparable harm if the preliminary injunction is not issued.

Denial of Plaintiffs' Preliminary Injunction will result in irreparable harm to the Plaintiffs because without the injunction, the unlawful executive actions described in the amended complaint will continue and cause ongoing civil rights violations. The potential for harm is ongoing in that the denial of Plaintiffs' Preliminary Injunction will embolden the Defendants to continue to change election laws before the next presidential election. "The

precedent that it would set to allow an executive branch official to negate the duly-enacted election laws of a state as they pertain to a presidential election is toxic to the concepts of the rule of law and fair elections." *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020). Moreover, U.S. Supreme Court Justice Clarence Thomas has opined that "[t]here is a reasonable expectation" that Pennsylvania legislators "will again confront nonlegislative officials altering elections" based upon the sheer number of petitions filed to the Pennsylvania Supreme Court following the 2020 election. See *Republican Party of Pennsylvania v. Degraffenreid*, 141 S.Ct. 732, 737 (2021)(*Justice Thomas Dissenting from the denial of certiorari*).

## IV.    The defendants will not suffer injury if the preliminary injunction is issued.

The third factor is a balancing of the parties' relative harms—"that is, the potential injury to the plaintiffs without this injunction versus the potential injury to the defendant with it in place." *Novartis Consumer Health, Inc. v. Johnson*, 290 F.3d 578, 596 (3d Cir. 2002). Defendants cannot assert an "interest in continuing practices" that violate civil rights as proof of potential harm. See *Issa v. The School District of Lancaster*, 847 F.3d 121,143 (3d Cir. 2017).  Although the Defendants may assert that there is some potential for confusion, if this Court enters an injunction, an orderly process will replace the Defendants usurping the authority of Pennsylvania legislators under the U.S. Constitution.

## V.    Granting preliminary injunctive relief will be in the public interest.

The final factor that must be weighed is whether the public interest favors the preliminary injunction. First of all, it is undeniably in the public interest for the Defendants to comply with the federal Constitution. *See Carson*, 978 F.3d at 1061, citing *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by *Phelps-Rooper v. City of*

*Manchester*, 697 F.3d 678, 692 (8ᵗʰ Cir. 2012)(en banc)("[I]t is always in the public interest to protect constitutional rights.") The U.S. Constitution operates as a limitation upon the state with respect to any attempt to circumscribe legislative power to regulate federal elections. *McPherson v. Blacker*, 146 U.S. 1, 25 (1892). An election system lacks clear rules when "different officials dispute who has authority to set or change those rules. This kind of dispute brews confusion because voters may not know which rules to follow." *Republican Party v Degraffenreid*, 141 S.Ct. at 734.

Elections are "of the most fundamental significance under our constitutional structure." *See Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). It is through elections that we exercise self-government. "But elections enable self-governance only when they include processes that 'giv[e] citizens…confidence in the fairness of the election." *Republican Party v Degraffenreid,* 141 S.Ct at 734.

Although Pennsylvania courts have held that the "public interest" factor is "often fairly routine," the public interest factor in the present case is of monumental importance. Justice Thomas defined it in this way:

> [R]ule changes by officials who may lack the authority to do so…can severely damage the electoral system on which our self governance so heavily depends. If state officials have the authority they have claimed, we need to make it clear. If not, we need to put an end to this practice now before the consequences become catastrophic."

*Id.* at 735. It is clearly in the public interest to maintain the integrity of elections by ensuring that Pennsylvania election laws relating to the registration of voters are strictly followed. Setting rules well in advance of an election rather than relying on post-election litigation ensures that courts are not placed in the untenable position of being forced to make a

"policy decision they have no business making." *Id.* at 736. The public interest is served by maintaining the ability to enforce the laws adopted by the Pennsylvania legislature and in upholding the exclusive authority vested to them under the Elections and Electors Clauses of the Constitution. Rule changes by nonlegislative officials who lack the authority to do so cannot be permitted to stand, and granting the injunction and upholding the constitutional rights of Pennsylvania legislators is clearly in the public's best interest.

Dated: February 16, 2024          /s/ Erick Kaardal
                                  By: Erick G. Kaardal (MN No. 229647)
                                  Mohrman, Kaardal & Erickson, P.A.
                                  150 South Fifth Street, Suite 3100
                                  Minneapolis, Minnesota 55402
                                  (612) 341-1074
                                  kaardal@mklaw.com

Dated: February 16, 2024          /s/Karen DiSalvo
                                  By: Karen DiSalvo (PA No. 80309)
                                  Mohrman, Kaardal & Erickson, P.A.
                                  Election Research Institute
                                  1451 Quentin Road, Suite 232
                                  Lebanon, PA 17042
                                  717-281-1776
                                  kd@election-institute.com


                                  Richard P. Lawson
                                  Jessica H. Steinmann
                                  Jase Panebianco
                                  Patricia Nation
                                  AMERICA FIRST POLICY INSTITUTE
                                  1001 Pennsylvania Ave., NW, Suite 530
                                  Washington, DC 20004
                                  813-952-8882
                                  rlawson@americafirstpolicy.com
                                  jsteinmann@americafirstpolicy.com
                                  jpaenbianco@americafirstpolicy.com
                                  pnation@americafirstpolicy.com