IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN KEEFER, et al., | Civil No. 1:24-CV-00147 |
| Plaintiff, | |
| | Judge Jennifer P. Wilson |
| v. | |
| JOSEPH R. BIDEN, et al., | **DECLARATION OF HEATHER HONEY** |
| Defendants. | |

I, Heather Honey, declare that the following statements are true and correct to the best of my ability and recollection:

1. I am the Executive Director of the Election Research Institute, a nonpartisan, nonprofit with a mission to protect voting rights and restore confidence in America's election systems. I have over 30 years of experience as a professional researcher and investigator. Mohrman, Kaardal & Erickson, P.A. has employed me to conduct research and investigations in this case. I engaged in independent research and investigation to affirm or otherwise discredit the facts to the best of my ability.

2. The plaintiffs allege certain civil rights violations as a result of executive actions that have usurped their authority to determine the manner of elections in the Commonwealth of Pennsylvania.

3. I am familiar with the US Constitution, the Pennsylvania Constitution, Pennsylvania Election Code, and the legislative process of the General Assembly in Pennsylvania.

4. The plaintiffs, as state legislators, are assigned the particular rights under the Electors Clause and the Elections Clause to establish the manner of elections including the laws regulating the registration of electors.

5. As part of my research, I reviewed the PA Election Code related to approval of voter registration applications to determine the law as established by the legislators. I found the relevant section 1328 which includes a provision for rejecting incomplete or inconsistent voter registration applications:

> **§ 1328. Approval of registration applications.[1]**
> **(b) Decision.—**A commission shall do one of the following:
> (2) Reject a voter registration application, indicate the rejection and the reasons for the rejection on the application and notify the applicant by first class nonforwardable mail, return postage guaranteed of the rejection and the reason if the commission finds during its examination under subsection (a) any of the following:
>> (i) The application was not properly completed and, after reasonable efforts by the commission to ascertain the necessary information, the application remains incomplete or inconsistent.

6. I reviewed relevant Directives and Guidance issued by the PA Department of State and found that a 2018 Directive that contradicts §1328 by requiring county commissions to register applicants even when their applications are incomplete or inconsistent.

7. The "DIRECTIVE CONCERNING HAVA-MATCHING DRIVERS' LICENSES OR SOCIAL SECURITY NUMBERS FOR VOTER REGISTRATION APPLICATIONS"[2] requires counties to register every "applicant whose driver's license or last four of SSN could not be matched." This Directive prohibits county commissions from

---

[1] See Exhibit A.
[2] See Exhibit B.

rejecting voter registration applications with invalid, incomplete, or inconsistent (non-matching) identification information.

8. The Directive referenced a court case from the Western District of Washington, is not a Pennsylvania case, as the justification for the directive. The case, Washington Association of Churches v. Reed, (W.D. Wash. 2006), did not require the registration of applicants who failed to provide valid identification information on their application.

9. The Stipulated Final Order and Judgement[3] in Washington Association of Churches v Reed said that if the applicant provided incomplete or inconsistent information and Washington State was "unable to match an applicant's driver's license or SSN4", then the applicant would be "**provisionally** registered to vote" and **promptly notified of the "need to provide additional documents or information."**

10. The Secretary of the Commonwealth, through a Department of State Directive, fundamentally changed the laws regulating the registration of electors in Pennsylvania.

11. In multiple legislative sessions, including the 2023 -2024 legislative sessions, legislation has been introduced in an attempt to pass a law allowing automatic voter registration in Pennsylvania.  Specifically, December 2022, State Senator Vincent Hughes announced his plans to reintroduce his "automatic voter registration legislation."[4]

---

[3] See Exhibit C.
[4] See Exhibit D.

12. Senator Hughes' Memorandum[5] said, "My legislation, based on a similar law in Oregon, would **essentially change our voter registration system** from an "opt-in" system to an "opt-out" system."

13. Hughes' legislation, introduced as Senate Bill 40[6] which sought to change the **definition of a voter registration applicant** in PA law from "an individual who applies to be registered to vote" to "an individual **who is automatically registered** or who applies to be registered to vote."

14. Hughes' legislation did not pass in the previous legislative session and did not make it out of committee in the 2023-2024 session because the General Assembly did not support his efforts to change the law in Pennsylvania.

15. In September 2023, Governor Shapiro issued a press release announcing that he had unilaterally changed PA law to enact Automatic Voter Registration.[7]

16. As Senator Hughes made clear, Automatic Voter Registration was a fundamental change to the voter registration law in Pennsylvania that required legislation.

17. Governor Shapiro, through a press release, fundamentally changed the laws regulating the registration of electors in Pennsylvania.

18. In July of 2022, the PA legislature passed law to eliminate third party funding of elections and to prohibit government officials from soliciting or entering into contracts

---

[5] See Exhibit D.
[6] See Exhibit E.
[7] See Exhibit F.

with any nongovernmental entity for the "registration of voters or the preparation, administration or conduction of any election in this Commonwealth."[8]

19. Section 107 of that act also limits the activities related to the registration of voters by state and local governments to activities funded through "lawful appropriation" of Federal, State and Local funds.

20. The Pennsylvania legislature voted to keep third parties out of elections.

21. In March 2021, President Biden issued Executive Order 14019[9] which ordered the head of every federal agency to create and submit a plan for their agency to promote voter registration and conduct get-out-the-vote activities in every state including Pennsylvania.

22. Some of the language in EO 14019 was taken from a Demos policy brief[10] which had been published 3 months earlier in December 2020. President Biden appointed the former President of Demos and their Director of Legal Strategies to coordinate the activities of federal agencies to support the EO 14019.

23. Despite the law passed by the General Assembly to keep third party, nongovernmental organizations out of Pennsylvania's elections, Biden's EO directs federal agencies to partner with third party NGOs for the registration of voters and for get out the vote activities.

24. President Biden, through an Executive Order, attempts to fundamentally change the laws regulating the registration of electors in Pennsylvania.

---

[8] See Exhibit G.
[9] See Exhibit H.
[10] See Exhibit I.

25. In researching this matter, I have found relevant and probative documents. I have attached true and correct copies of those documents to this declaration as Exhibits A through I.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated: February 16, 2024                                    /s/Heather Honey