## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REPRESENTATIVES DAWN KEEFER, ET AL.

        Plaintiffs

v.

JOSEPH R. BIDEN, ET AL.

        Defendants

: No. 1:24-cv-00147-JPW
:
:
:
:
:
:
:
:

## BRIEF OF *AMICUS CURIAE* THE FOUNDATION FOR GOVERNMENT ACCOUNTABILITY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

David Craig (WI 1121040)
Sofia DeVito (FL 1019192)
Stewart L. Whitson (MN 0391405)
FOUNDATION FOR GOVERNMENT ACCOUNTABILITY
15275 Collier Blvd., Suite 201
Naples, FL 34119
Telephone: (239) 244-8808
dcraig@thefga.org
sdevito@thefga.org
stewart@thefga.org

Walter S. Zimolong III (PA 89151)
ZIMOLONG LLC
P.O. Box 552
Villanova, PA 19085
Telephone: (215) 665-0842
wally@zimolonglaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF INTEREST ................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 2

ARGUMENT ..................................................................................... 5-14

    I.  EO 14019 IS ILLEGAL & UNCONSTITUTIONAL ...................... 5

        A. EO 14019 and the Biden administration's efforts to carry it
           out violate the NVRA ................................................................ 7

        B. EO 14019 violates the Elections Clause ................................. 11

        C. EO 14019 violates the Anti-Deficiency Act .............................. 13

    II. EO 14019 IS A TAXPAYER-FUNDED GET-OUT-THE-VOTE
        EFFORT DESIGNED TO BENEFIT THE CURRENT
        PRESIDENT'S POLITICAL PARTY THROUGH TARGETED
        VOTER     REGISTRATION     WHICH     WILL     CAUSE
        IRREPARABLE    HARM    TO    PLAINTIFFS    UNLESS
        ENJOINED BY THIS COURT. ..................................................... 15

CONCLUSION ....................................................................................... 24

CERTIFICATES OF SERVICE AND COMPLIANCE .......................... 26

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Albence v. Higgin*, 295 A.3d 1065 (Del. 2022)........................................ 20

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)........... 13

*Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) ..................................... 22

*Fulani v. Brady*, 935 F.2d 1324 (D.C. Cir. 1991) .................................. 21

*Fulani v. Hogsett*, 917 F.2d 1028 (7th Cir. 1990) .................................. 22

*Gundy v. United States*, 139 S. Ct. 2116 (2019) .................................... 12

*Green Party of Tenn. v. Hargett*, 767 F.3d 533 (6th Cir. 2014). ........... 22

*Hollander v. McCain*, 566 F. Supp. 2d 63 (D.N.H. 2008) ...................... 23

*Mann v. Powell*, 333 F. Supp. 1261 (N.D. Ill. 1969) ............................. 23

*Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022) ................................... 24

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018)....... 12

*Nat. Law Party of U.S. v. Fed. Elec. Comm'n*, 111 F. Supp. 2d 33
   (D.D.C. 2000)......................................................................... 21

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of
   Jacksonville*, 508 U.S. 656 (1993) ....................................... 21

*Nelson v. Warner*, 472 F. Supp. 3d 297 (S.D. W. Va. 2020) ............ 21-22

*Pagano v. Pa. State Horse Racing Com.*, 413 A.2d 44 (Pa. Commw.
   Ct. 1980) .............................................................................. 10

*Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS), 2020 U.S. Dist.
   LEXIS 103989, 2020 WL 3183249, at *12-14 (D. Minn. 2020)......... 23

*Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) ................................... 5

*Schulz v. Williams*, 44 F.3d 48 (2d Cir. 1994)...................................... 22

*Shapp v. Butera*, 348 A.2d 910 (Pa. Commw. Ct. 1975) ........................ 10

*Shays v. Fed. Elec. Comm'n*, 414 F.3d 76 (D.C. Cir. 2005) ............... 4, 22

*Smiley v. Holm*, 285 U.S. 355 (1932) ........................................................ 5

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) ........ 22

*The Found. For Gov't Accountability v. United States*, 2:22-cv-252
   (M.D. Fla.) ...................................................................................... 18

*Trump v. Wisconsin Elections Commission*, 983 F.3d 919 (7th Cir.
   2020) ............................................................................................... 20

*Wayman v. Southard*, 23 U.S. (10 Wheat.) 1 (1825) .............................. 12

## Constitution

U.S. CONST. Art. I, §1 ................................................................................ 12

U.S. CONST. Art. I, §4, cl. 1 ............................................................... *passim*

U.S. Const. amend. X ......................................................................... 12, 13

## Federal Statutes

5 U.S.C. §706(2) .................................................................................. 13, 14

5 U.S.C. §706(2)(C) ......................................................................... 3, 10, 11

5 U.S.C. 552(a)(3) ..................................................................................... 18

31 U.S.C. §1341 ............................................................................... 4, 7, 14

52 U.S.C. §20502 ......................................................................... 3, 7, 9, 13

52 U.S.C. §20506 ......................................................................... 3, 7, 9, 13

52 U.S.C. §20506(a)(3)(B)(ii) ......................................................... 9, 10, 11

52 U.S.C. §20506(a)(4) ............................................................................ 9

52 U.S.C. §20506(c) ........................................................................ 10

**Federal Regulations**

86 Fed. Reg. 13623 (Mar. 7, 2021) ............................................ 3, 6, 16

**State Constitution**

Pa. Const. Art. II, §1 ...................................................................... 9

**State Statutes**

Pa. Cons. Stat. Ann. §1325(a) ...................................................... 9

25 Pa. Cons. Stat. Ann. §1101 *et seq* ......................................... 9

**Other Authorities**

Alexander Hamilton, *The Federalist Papers,* No. 59, (February 22, 1788), The Avalon Project, Yale Law School, Lillian Goldman Law Library, bit.ly/3Ia2zLk ........................................................ 5

Alexander Hamilton, *The Federalist Papers,* No. 60, (February 26, 1788), The Avalon Project, Yale Law School, Lillian Goldman Law Library, bit.ly/3uLye2H .......................................................... 13

Briefing Room, *Fact sheet: Biden-Harris administration releases report on Native American voting rights*, The White House (2022), bit.ly/49nLsBS ................................................................ 19

Briefing Room, *How the Biden-Harris Administration is Continuing to Promote Voting Access*, The White House (Sept. 20, 2022), bit.ly/3E48TTP ................................................................. 8, 11

*Budd, Hagerty, Colleagues Renew Demand for Transparency on Taxpayer-Funded Voter Mobilization*, Office of U.S. Senator Ted Budd (2023), bit.ly/42PQnZQ ........................................... 7, 18

*Demos Applauds Biden's Executive Order Aimed at Facilitating Voter Registration, Urges Strong Follow-Through*, Demos (March 7, 2021), bit.ly/49InIbd ....................................................... 15

*Emails Re: Voting EO Listening Session #2*, Foundation for Government Accountability (2023), bit.ly/3T6cSq1 .............................. 17

*Executive Action to Advance Democracy: What the Biden-Harris Administration and the Agencies Can Do to Build a More Inclusive Democracy*, Demos (Dec. 3, 2020), bit.ly/48vxP2a ................................. 15

Fred Lucas, *Exclusive: Demos, ACLU Among "Voter Advocacy Groups" Helping Federal Agencies Turn Out Vote on Biden's Order*, The Daily Signal (June 7, 2023), dailysign.al/49Ak6IA ........................ 17

Fred Lucas, *HUD Pushes Voter Registration Drives in Public Housing Under Biden's Executive Order*, The Daily Signal (2022), dailysign.al/3IdvyxK ................................................................. 20

Fred Lucas, *USDA Colludes with Left-Wing Group to Turn Out Voters Under Biden Order*, document Reveal, The Daily Signal (February 20, 2024), dailysign.al/49r5vzs ................................. 17

Gabriel Pietrorazio, *Native Health becomes 1st IHS facility to receive voter registration agency status in U.S.*, KJZZ (Nov. 12, 2023), bit.ly/3wrosDq ................................................................... 8

*Long-Term Unemployed Survey*, Kaiser Family Foundation/NPR (Dec. 2011), n.pr/49o1ziH ........................................................... 19

*Official Statement: Biden Administration Attempts Another Federal Overreach*, Mississippi Secretary of State (2022), bit.ly/49N2ER7 ......................................................................... 7

Rich Morin, *The Politics and Demographics of Food Stamp Recipients*, Pew Research Center (July 12, 2013), pewrsr.ch/42M6HKW ............................................................... 18

Sergio Robles, *Northern California health center first in nation to be designated a voter registration center on Tribal lands*, Fox40.com (Sept. 13, 2023), bit.ly/4bG91Yh ........................................... 8

*State Attorneys General Call for Repeal of Biden's Federal Electioneering EO*, Oklahoma Office of the Attorney General (2022), bit.ly/48pnrJs ................................................................ 7

Stewart Whitson, *Biden's Unlawful Plan to Federalize Elections*, The American Spectator (Oct. 22, 2021), bit.ly/3OTS1Up ................... 16

Tarren Bragdon & Stewart Whitson, *Voter Registration Drive: What's Biden Hiding?*, Wall Street Journal (Apr. 19, 2022), on.wsj.com/3uJRw8M ................................................................. 16

The Maxwell School of Citizenship and Public Affairs, *Maxwell School Poll: 2004-2007 Survey on Inequality and the American Public*, Roper iPoll, bit.ly/3UO7gCj ......................................... 19

*US Department of Labor issues guidance to states, territories to designate American Job Centers as voter registration agencies*, U.S. Department of Labor (2022), bit.ly/4bOOYHc ....................................... 19

## STATEMENT OF INTEREST

The Foundation for Government Accountability ("FGA") is a nonpartisan, nonprofit organization that seeks to enhance the lives of all Americans by improving welfare, workforce, healthcare, and election integrity policy at the state and federal levels. Launched in 2011, FGA promotes policy reforms that seek to free individuals from government dependence, restore dignity and self-sufficiency, and empower individuals to take control of their futures, including through free, fair elections that inspire confidence and encourage participation.

Since its founding, FGA has helped achieve more than 700 reforms impacting policies in 42 states and the federal government in policy areas related to welfare, healthcare, workforce, and election integrity. FGA advances its mission by conducting innovative research, deploying outreach and education initiatives, and equipping policymakers with the information they need to achieve meaningful reforms. FGA recently filed *amicus curiae* briefs with, among others, the United States Supreme Court in *Loper Bright Enterprises v. Raimondo*, *CFPB v. Community Financial Services Association of America*, *Biden v. Nebraska*, and *Azar v. Gresham*; with the Federal District Court for the Northern District of

Ohio in *Northeast Ohio Coalition for the Homeless v. LaRose*; and with the United States Courts of Appeal for the Tenth and Eleventh Circuits in *League of Women Voters v. Florida Secretary of State* and *VoteAmerica, Inc. v. Schwab*.

In this case, through executive order, President Biden and several agencies led by his political appointees have unconstitutionally excluded Plaintiffs from the lawmaking process by regulating elections in a way that harms Plaintiffs in their roles as legislators and candidates. Since this case directly implicates FGA's core election-integrity mission, FGA files this *amicus curiae* brief in support of Plaintiffs' Motion for Preliminary Injunction.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Elections Clause provides that, "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the *Congress* may at any time *by Law* make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. ART. I, §4, cl. 1 [emphasis added]. Thus, under the U.S. Constitution, only state legislatures, not the federal executive branch, may regulate elections, and only Congressional

legislation may override that authority. *Id.* Yet, through Executive Order (EO) 14019, the President has launched a new, unprecedented voter registration and mobilization effort carried out by federal agencies in close coordination with White House "approved" third-party groups. *See* 86 Fed. Reg. at 13623-24. EO 14019 breaches the limits of the federal Constitution. *See* U.S. CONST. Art. I, §4, cl. 1.

Besides violating the Constitution, EO 14019 and agency efforts to carry it out also violate federal law. Both the text of the National Voter Registration Act (NVRA) and the constitutional limits on congressional regulation of elections make clear that federal executive agencies can perform voter registration only with a voluntary and proper State designation. *See* 52 U.S.C. §§20502, 20506; U.S. CONST. Art. I, §4, cl. 1. Lacking such a designation, federal agencies carrying out EO 14019 are, therefore, acting *ultra vires* and in excess of statutory authority. *See* 5 U.S.C. §706(2)(C). In addition, EO 14019's requirements that federal officers and employees participate in voter registration activities as well as solicit and support third-party organizations to perform those activities on agency premises, invariably requires either an expenditure of federal funds or a contract with third parties for the payment of federal

funds. Such funds are neither "available in an appropriation" nor "authorized by law," because those funds are spent in violation of the NVRA. *See* 31 U.S.C. §1341. Thus, agencies carrying out EO 14019 are violating the Anti-Deficiency Act as well. *See Id.*

Lastly, it is clear, that a *targeted* voter registration and mobilization scheme that impacts the manner in which Pennsylvania elections are run, advanced through a Presidential EO that is unconstitutional and illegal on its face and carried out in a highly secretive manner, will, if left unchecked, render the competitive landscape for Plaintiffs running for office in 2024 and beyond worse than it otherwise would be if the EO were declared unlawful by this Court. Under the theory of "competitive standing" courts have held that "when regulations illegally structure a competitive environment" such as "***a reelection race***—parties defending concrete interests (e.g., ***retention of elected office***) in that environment suffer legal harm under Article III." *Shays v. Fed. Elec. Comm'n*, 414 F.3d 76, 87 (D.C. Cir. 2005) [emphasis added]. This EO and the effort to carry it out has and will continue to cause irreparable harm to Plaintiffs, both as individual legislators and candidates for political office.

4

For all these reasons, Plaintiffs' Motion for a Preliminary Injunction should be granted, EO 14019 should be set aside, and all efforts to enforce it should be declared unlawful and enjoined.

## ARGUMENT

### I.   EO 14019 is Illegal & Unconstitutional

When they crafted the Constitution, the Framers sought to assign the power over elections in a way that preserved the primacy of the state legislatures over elections, without undermining the long-term stability of the newly formed nation. Alexander Hamilton, *The Federalist Papers*, No. 59, (February 22, 1788), The Avalon Project, Yale Law School, Lillian Goldman Law Library, bit.ly/3Ia2zLk.  To achieve this balance, "[t]hey settled on a characteristic approach, assigning the issue to the state legislatures, expressly checked and balanced by the Federal Congress." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2496 (2019). "At no point was there a suggestion that the federal courts [or the executive branch] … had a role to play" in determining the times, places, and manner of elections. *Id.* This includes in the determination of how, when, and by whom voters in each state may be registered to vote. *See, e.g. Smiley v. Holm*, 285 U.S. 355, 366 (1932). As the Elections Clause states, "[t]he

Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but *the Congress* may at any time *by Law* make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. Art. I, §4, cl. 1 [emphasis added]. Thus, under the U.S. Constitution, only state legislatures, not the federal executive branch, may regulate elections, and only Congressional legislation may override that authority. *Id.*

Yet, through this sweeping Order, the President commanded every executive agency of the federal government—with the narrow exception of independent agencies—to perform voter registration and mobilization activities regardless of whether those agencies are authorized to do so under federal law, and to carry out this Order in coordination with third-party groups "approved" by the current administration. *See* 86 Fed. Reg. at 13623-24.  Even worse, this effort is being carried out in a secretive fashion despite loud and repeated calls for transparency from dozens of

members of Congress, State Attorneys General, and Secretaries of State.[1] This effort by the Executive branch to launch a first-of-its-kind nationwide voter registration and mobilization drive through Executive Order (EO) violates the National Voter Registration Act (NVRA), breaches the limits of the federal Constitution, and deploys federal funds without an appropriation in violation of the Anti-Deficiency Act. *See* 52 U.S.C. §§20502, 20506; U.S. CONST. Art. I, §4, cl. 1; 31 U.S.C. §1341. For all these reasons, EO 14019 must be set aside and all efforts to enforce it must be declared unlawful and enjoined.

### A. EO 14019 and the Biden administration's efforts to carry it out violate the NVRA

Invoking its power under the Elections Clause, Congress passed the NVRA back in 1993, empowering federal agencies to "perform voter registration activities," but only if designated to do so by the State government. 52 U.S.C. §§20502, 20506.  In the NVRA's 30 years of

---

[1] *See e.g., Budd, Hagerty, Colleagues Renew Demand for Transparency on Taxpayer-Funded Voter Mobilization*, Office of U.S. Senator Ted Budd (2023), bit.ly/42PQnZQ; *see also State Attorneys General Call for Repeal of Biden's Federal Electioneering EO*, Oklahoma Office of the Attorney General (2022), bit.ly/48pnrJs; *see also Official Statement: Biden Administration Attempts Another Federal Overreach*, Mississippi Secretary of State (2022), bit.ly/49N2ER7.

existence, no State had voluntarily designated a federal program as a voter registration agency, that is until President Biden's EO 14019 was issued. Briefing Room, *How the Biden-Harris Administration is Continuing to Promote Voting Access*, The White House (Sept. 20, 2022), bit.ly/3E48TTP.

According to the White House, in 2022, in response to EO 14019, five states *supposedly* designated a federal agency as a voter registration agency under the NVRA with Pennsylvania, Kentucky, and Michigan all designating the Department of Veterans Affairs, and Kansas and New Mexico designating two separate post-secondary schools operated by the U.S. Department of the Interior. *Id.* In 2023, two additional states publicly joined the group with Arizona and California designating U.S. Indian Health Service (IHS) facilities in their respective states as NVRA voter registration sites. Arizona designated a facility located in downtown Phoenix, while California designated a facility located outside of Sacramento.[2]

---

[2] Sergio Robles, *Northern California health center first in nation to be designated a voter registration center on Tribal lands*, Fox40.com (Sept. 13, 2023), bit.ly/4bG91Yh; Gabriel Pietrorazio, *Native Health becomes 1st IHS facility to receive voter registration agency status in U.S.*, KJZZ (Nov. 12, 2023), bit.ly/3wrosDq.

Under Section 7 of the NVRA, a "State" must designate a federal agency before the agency can "perform voter registration activities." 52 U.S.C. §§20502, 20506. Such activities include not only distributing voter registration applications to individuals who apply or reapply for benefits, or who change their address, but also helping the applicant to complete the application and then collecting the application with the promise to transmit it to the state on behalf of the applicant. 52 U.S.C. §20506(a)(4). The NVRA does not specify the way a "State" may designate a federal agency under the NVRA nor who may properly act on behalf of the "State" in making this designation. *See* §§20502, 20506. Thus, how each state government designates a federal agency under Section 7 of the NVRA is a question of state law. *See* 52 U.S.C. §20506(a)(3)(B)(ii). For most states, including Pennsylvania, NVRA designation can come from only one authority: the state legislature. *See* 25 Pa. Cons. Stat. Ann. §1101 *et seq.*; Pa. Const. Art. II, §1. Here, the Pennsylvania legislature has not designated a single federal agency as a voter registration agency under Section 7 of the NVRA, other than Armed Forces Recruitment Offices as *required* under paragraph (c). *See* 25 Pa. Cons. Stat. Ann. §1101 *et seq.*; *see also* 25 Pa. Cons. Stat. Ann. §1325(a);

9

52 U.S.C. §20506(c).  For 30 years the Pennsylvania legislature had the option of designating a federal agency under the NVRA, and for 30 years it declined to do so.  This means any federal agency acting as a voter registration agency under the NVRA, even an agency that the governor or another state official claims to have supposedly designated under the NVRA, is acting contrary to federal law.  *See* 52 U.S.C. §20506(a)(3)(B)(ii); *see also* 5 U.S.C. §706(2)(C).  It also means the governor or any state officer who has made any such designation has acted outside the scope of his or her powers delegated under state law and the Pennsylvania Constitution rendering the designation meaningless.  *See* 25 Pa. Cons. Stat. Ann. § 1325(a); *Pagano v. Pa. State Horse Racing Com.*, 413 A.2d 44, 45 (Pa. Commw. Ct. 1980) (citing *Shapp v. Butera*, 348 A.2d 910 (Pa. Commw. Ct. 1975).  "Only executive orders which are authorized by the [Pennsylvania] Constitution or promulgated pursuant to statutory authority have the force of law."  *Id.*

Despite all of this, the Biden administration has openly admitted it is carrying out EO 14019 in violation of the NVRA, seeking NVRA designations only "whenever practicable."  *See* Briefing Room, *How the Biden-Harris Administration is continuing to Promote Voting Access*,

The White House (Sept. 20, 2022), bit.ly/3E48TTP.  To date, as detailed in Plaintiffs' brief, multiple federal agencies have begun to carry out EO 14019 across the country, including in Pennsylvania, without first obtaining an NVRA designation, and other agencies are likely doing so secretly without disclosing their activities to the public.  *See* Plaintiff's Amended Complaint (Doc. 18, ¶¶72-84).  Both the text of the NVRA and the constitutional limits on congressional regulation of elections make clear that federal executive agencies can perform voter registration *only* with a voluntary and proper State designation.  Doing so without a state designation is *ultra vires* and in excess of statutory authority.  *See* 5 U.S.C. §706(2)(C).  Clearly, the voter registration and mobilization activities being carried out under EO 14019 violate the NVRA.  *See* 52 U.S.C. §20506(a)(3)(B)(ii); *see also* 5 U.S.C. §706(2)(C).  Therefore, EO 14019 should be set aside and all efforts to carry out its directives should be declared unlawful and enjoined by this Court.

### B. EO 14019 violates the Elections Clause

Under the Elections Clause, "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but ***the Congress*** may at any

time *by Law* make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. ART. I, §4, cl. 1 [emphasis added]. Meanwhile, the Tenth Amendment makes clear that all power over elections that is presumptively held by the State legislature is, if not delegated to Congress, reserved to the State legislature. *See* U.S. CONST. amend. X.   "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." *Id.*   The states have thus always been, and remain, "sovereigns" over elections, and have delegated to Congress only a limited, "enumerated" power to regulate elections through legislation. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018).

Having received this limited power from the States, Congress is barred from delegating it to the Executive branch.  "All legislative Powers … [are] vested in [the] Congress of the United States," and "Congress … may not transfer to another branch 'powers which are strictly and exclusively legislative.'"  U.S. CONST. ART. I, §1; *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825)).   The power to override traditional State

sovereignty over elections is, thus, strictly and exclusively vested in "the Congress" as a lawmaking power and in no other branch of the federal government.  *See* U.S. CONST. Art. I, §4, cl. 1.

This means that under the U.S. Constitution, only state legislatures, not the federal executive branch, may regulate elections, and only Congressional legislation may override that authority.  *See Id.*; *see also* U.S. CONST. amend. X. The Biden administration's efforts to carry out EO 14019 are not authorized by the NVRA or any other federal statute.  *See* 52 U.S.C. §§20502, 20506.  These efforts, thus, "'form[] no part of the power to be conferred upon the national government' by the Elections Clause."  *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013) (quoting *The Federalist*, No. 60, at 371 (A. Hamilton)).  They are, therefore, "contrary to constitutional right, power, privilege, or immunity," and "otherwise not in accordance with law."  5 U.S.C. §706(2).  They should be declared unlawful and enjoined by this Court.

### C. EO 14019 violates the Anti-Deficiency Act

The Anti-Deficiency Act provides that "an officer or employee of the United States Government … may not … make or authorize an expenditure or obligation exceeding an amount available in an

appropriation," or else "involve [the] government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. §1341.

EO 14019 requires federal officers and employees to participate in voter registration activities as well as solicit and support third-party organizations to perform those activities on agency premises, which involves either an expenditure of federal funds or a contract with third parties for the payment of federal funds. The amount of these funds is neither "available in an appropriation" nor "authorized by law," because those funds are spent in violation of the NVRA. *See* 31 U.S.C. §1341.

EO 14019, and the Biden administration's efforts to carry it out, are thus "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" and "otherwise not in accordance with law." 5 U.S.C. §706(2). EO 14019 must be set aside, and Plaintiffs are entitled to declaratory and injunctive relief to halt these violations of the Anti-Deficiency Act.

II.   **EO 14019 is a taxpayer-funded get-out-the-vote effort designed to benefit the current President's political party through *targeted* voter registration which will cause irreparable harm to Plaintiffs unless enjoined by this Court**

To understand the true aim of EO 14019, one must understand its origin.  The impetus behind EO 14019 was a plan published by a New York-based third-party organization in December 2020, a self-described champion of "bold progressive ideas," which was shared with the Biden administration during the transition period following President Biden's election.  *Executive Action to Advance Democracy: What the Biden-Harris Administration and the Agencies Can Do to Build a More Inclusive Democracy*, Demos (Dec. 3, 2020), bit.ly/48vxP2a; *Demos Applauds Biden's Executive Order Aimed at Facilitating Voter Registration, Urges Strong Follow-Through*, Demos (March 7, 2021), bit.ly/49InIbd.  The plan called on the newly elected President to "[i]ssue an executive order directing federal agencies serving **under-registered populations** to provide voter registration services" by acting "as voter registration agencies [under the NVRA]." *Id.* [emphasis added].  From its inception, the plan has appeared not to promote the widespread registration of *all* eligible voters, but rather to mobilize only a select group of voters, those this group closely aligned with the current

president characterizes as "under-registered populations," through a *targeted* voter registration effort. Tarren Bragdon & Stewart Whitson, *Voter Registration Drive: What's Biden Hiding?*, Wall Street Journal (Apr. 19, 2022), on.wsj.com/3uJRw8M. Given the ideological alignment between the architects of this plan and the Biden administration there is a legitimate concern that this effort is focused on turning out voters of only one political party: the current president's. *See Id.*

Shortly after publishing this plan and sharing it with the Biden administration, two key leaders from this organization, it's President and its Director of Legal Strategies were hired by the White House and placed into key roles where they could help bring this plan to fruition. Stewart Whitson, *Biden's Unlawful Plan to Federalize Elections*, The American Spectator (Oct. 22, 2021), bit.ly/3OTS1Up. On March 7, 2021, after both leaders were settled into their new roles at the White House, President Biden issued EO 14019. *See* 86 Fed. Reg. 13623. Months later, when the White House convened a "listening session" in the summer of 2021 to coach federal agencies on how to go about implementing EO 14019, this same organization was given a prominent speaking role delivering prepared remarks on "[a]ffirmative opportunities for voter registration."

*Emails Re: Voting EO Listening Session #2*, Foundation for Government Accountability (2023), bit.ly/3T6cSq1.  In June 2023, IHS admitted it was working directly with this same group behind closed doors in furtherance of EO 14019.   Fred Lucas, *Exclusive: Demos, ACLU Among 'Voter Advocacy Groups' Helping Federal Agencies Turn Out Vote on Biden's Order*, The Daily Signal (June 7, 2023), dailysign.al/49Ak6IA.  According to the Heritage Foundation's Oversight Project, this same organization has also worked directly with the U.S. Department of Agriculture (USDA), which oversees the nation's food stamp program, behind closed doors to help it implement EO 14019.  Fred Lucas, *USDA Colludes with Left-Wing Group to Turn Out Voters Under Biden Order, document Reveal*, The Daily Signal (February 20, 2024), dailysign.al/49r5vzs.

Perhaps, most troubling about this plan and EO 14019 is the great lengths the administration has gone to carry out this plan in secret, ignoring and stonewalling inquiries into its implementation.  Members of Congress and private organizations have aggressively sought records from the administration regarding agency plans for implementation of EO 14019 (the EO required agencies to prepare those plans by September 2021), yet the administration has steadfastly refused to produce those

critical documents notwithstanding its obligation to do so under the federal FOIA statute. *See, e.g. Budd, Hagerty, Colleagues Renew Demand for Transparency on Taxpayer-Funded Voter Mobilization*, Office of U.S. Senator Ted Budd (2023), bit.ly/42PQnZQ; *see also* 5 U.S.C. 552(a)(3). One such request is currently being litigated by our organization, FGA, *see The Found. For Gov't Accountability v. United States*, 2:22-cv-252 (M.D. Fla.), but the Biden administration has responded by producing only heavily redacted documents with blanket and overbroad assertions of privilege, which the federal judge overseeing this ongoing matter described as "concerning." *Id.* (Doc. 67, fn. 8). Despite these efforts to bring transparency to the process, the full extent of the administration's whole-of-government voter registration drive remains intentionally shrouded in secrecy.

To date, all of the federal agencies FGA has identified as taking active steps to carry out EO 14019 have one thing in common: They provide government welfare benefits and other services to groups of voters the vast majority of which have historically voted Democrat. *See, e.g.*, Rich Morin, *The Politics and Demographics of Food Stamp Recipients*, Pew Research Center (July 12, 2013), pewrsr.ch/42M6HKW;

*see also* The Maxwell School of Citizenship and Public Affairs, Maxwell School Poll: 2004-2007 Survey on Inequality and the American Public, Roper iPoll, bit.ly/3UO7gCj; *see also* Long-Term Unemployed Survey, Kaiser Family Foundation/NPR (Dec. 2011), n.pr/49o1ziH.  For example, the U.S. Department of Health and Human Services has turned more than 1,400 community health centers located across the country, including in Pennsylvania, into voter registration agencies, where third-party groups "approved" by the Biden administration can engage in voter outreach efforts on site. Briefing Room, *Fact sheet: Biden-Harris administration releases report on Native American voting rights*, The White House (2022), bit.ly/49nLsBS.  The U.S. Department of Labor has done the same to more than 2,300 American Job Centers, some of which are located in Pennsylvania, as has the U.S. Department of Housing and Urban Development with more than 3,000 public housing authorities managing 1.2 million housing units across the country, including in Pennsylvania. *US Department of Labor issues guidance to states, territories to designate American Job Centers as voter registration agencies*, U.S. Department of Labor (2022), bit.ly/4bOOYHc; Fred Lucas,

*HUD Pushes Voter Registration Drives in Public Housing Under Biden's Executive Order*, The Daily Signal (2022), dailysign.al/3IdvyxK.

By engaging in a *targeted* voter registration effort of this magnitude, focused specifically on these agencies and the groups of potential voters they interact with, leveraging the resources and reach of the federal government, this effort appears to be a taxpayer-funded get-out-the-vote effort designed to benefit the current President's political party. Given the fact that Plaintiffs are all members of a different political party than the President, they are directly harmed by this effort not only as individual legislators, but also as individual candidates in 2024 and beyond.

As Plaintiffs noted in their brief, "[a]n election that is operated unlawfully has an effect on candidates' interests, which impacts them in a "personal and individual way." *Trump v. Wisconsin Elections Commission*, 983 F.3d 919, 924 (7th Cir. 2020); s*ee also Albence v. Higgin*, 295 A.3d 1065, 1087 (Del. 2022) ("for standing purposes, it matters little whether the ballots are unlawful because they are constitutionally unauthorized absentee ballots or because they are cast by unlawfully registered voters").

"The inability to compete on an equal footing due to the application of allegedly biased criteria has been recognized in many contexts as an injury in fact sufficient to support constitutional standing." *Nelson v. Warner*, 472 F. Supp. 3d 297, 304 (S.D. W. Va. 2020) (citing *Nat. Law Party of U.S. v. Fed. Elec. Comm'n*, 111 F. Supp. 2d 33, 44 (D.D.C. 2000) (collecting cases); *e.g. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993) (holding contractors had standing to challenge city ordinance based on "inability to compete on an equal footing in the bidding process"); *see also Fulani v. Brady*, 935 F.2d 1324, 1327, 290 U.S. App. D.C. 205 (D.C. Cir. 1991) (collecting cases) (explaining that courts have recognized "competitor standing" in "circumstances where a defendant's actions benefitted a plaintiff's competitors, and thereby caused the plaintiff's subsequent disadvantage").

Explaining the theory of "competitive standing" courts have held that "when regulations illegally structure a competitive environment—whether an agency proceeding, a market, or a **reelection race**—parties defending concrete interests (e.g., **retention of elected office**) in that

21

environment suffer legal harm under Article III." *Shays v. Fed. Elec. Comm'n,* 414 F.3d 76, 87, (D.C. Cir. 2005) [emphasis added].

The *Nelson* court listed a number of cases that applied the competitive standing theory to elections, holding that harm to a candidate's chances of winning is sufficient to show an injury-in-fact. Nelson, 472 F. Supp. 3d at 297 (citing *Green Party of Tenn. v. Hargett,* 767 F.3d 533, 538 (6th Cir. 2014) (holding Green Party and Constitution Party had standing to challenge state's ballot access and ballot order statutes); *Drake v. Obama,* 664 F.3d 774, 783 (9th Cir. 2011) (explaining that the "potential loss of an election" was an injury-in-fact sufficient to give a local candidate and party officials supporting that candidate standing); *Tex. Democratic Party v. Benkiser,* 459 F.3d 582, 587-88 (5th Cir. 2006) (holding party demonstrated injury of "harm to its election prospects" and "threatened loss of political power" and candidate demonstrated injury because the opposing party's actions "threaten[ed] his election prospects"); *Fulani v. Hogsett,* 917 F.2d 1028, 1030 (7th Cir. 1990) (holding third party and its candidates faced the injury of "increased competition" when the defendants allegedly improperly placed major-party candidates on the ballot); *Schulz v. Williams,* 44 F.3d 48, 53

22

(2d Cir. 1994) (holding the "well-established concept of competitors' standing" gave Conservative Party representative standing because the party "stood to suffer a concrete, particularized, actual injury— competition on the ballot from candidates that . . . were able to 'avoid complying with the Election Laws' and a resulting loss of votes")); *see also Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS), 2020 U.S. Dist. LEXIS 103989, 2020 WL 3183249, at *12-14 (D. Minn. June 15, 2020) (holding two Democratic Party committees had standing to challenge a ballot order statute based on an injury to their electoral prospects); *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) ("[C]ourts have held that a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election."); *Mann v. Powell*, 333 F. Supp. 1261, 1265 (N.D. Ill. 1969) (holding candidates had standing to challenge ballot order statute based on statute's possible threat of discriminatory treatment).

As the 9th Circuit has held, "[i]f an allegedly unlawful election regulation makes the competitive landscape worse for a candidate or that candidate's party than it would otherwise be if the regulation were

declared unlawful, those injured parties have the requisite concrete, non-generalized harm to confer standing." *Mecinas v. Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022).

Here, there can be no doubt that a targeted voter registration and mobilization scheme that impacts the manner in which Pennsylvania elections are run, advanced through a Presidential EO that is unconstitutional on its face and carried out in a secretive manner in defiance of Congressional demands and court orders, will, if left unchecked, make the competitive landscape for Plaintiffs running for office in 2024 and beyond worse than it otherwise would be if the EO were declared unlawful by this court.  Plaintiffs, thus, possess the requisite standing under this theory as well as under the other theories offered by Plaintiffs.  As a result, EO 14019 must be set aside, and Plaintiffs are entitled to declaratory and injunctive relief.

## CONCLUSION

For the foregoing reasons, FGA respectfully urges the Court to grant Plaintiffs' motion for preliminary injunction.

Respectfully submitted,

Walter S. Zimolong III (PA 89151)
ZIMOLONG LLC
P.O. Box 552
Villanova, PA 19085
Telephone: (215) 665-0842
wally@zimolonglaw.com

David Craig (WI 1121040)
Sofia DeVito (FL 1019192)
Stewart L. Whitson (MN 0391405)
FOUNDATION FOR GOVERNMENT ACCOUNTABILITY
15275 Collier Blvd., Suite 201
Naples, FL  34119
Telephone: (239) 244-8808
dcraig@thefga.org
sdevito@thefga.org
stewart@thefga.org

*Attorneys for Amicus Curiae,*
*Foundation for Government Accountability*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served upon all counsel of record by means of the Court's electronic filing system on this 23rd day of February 2024.

/s/ Walter S. Zimolong
Walter S. Zimolong III

*Attorney for Amicus Curiae,
Foundation for Government
Accountability*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this case has been assigned to the standard case management track and that the brief adheres to the word-count requirement of Local Civ. R. 7.8(b)(2). The brief contains 4,727 words as determined by the Microsoft Word processing software used to prepare the brief.

/s/ Walter S. Zimolong
Walter S. Zimolong III

*Attorney for Amicus Curiae,
Foundation for Government
Accountability*