UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAWN KEEFER, *et al.*,

              Plaintiffs,

        v.

JOSEPH R. BIDEN, *et al.*,

              Defendants.

No. 1:24-cv-147
Judge Jennifer P. Wilson

**OPPOSITION TO MOTION FOR A PRELIMINARY
INJUNCTION ON BEHALF OF GOVERNOR JOSH SHAPIRO,
SECRETARY OF THE COMMONWEALTH AL SCHMIDT, AND
DEPUTY SECRETARY JONATHAN MARKS**

# TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Introduction............................................................................................1

Background..............................................................................................2

Standard of Review................................................................................7

Argument..................................................................................................7

   I.    Plaintiffs Will Not Succeed on the Merits ................................7

       A.    Plaintiffs Lack Standing .................................................7

       B.    Plaintiffs Lack a Cause of Action.....................................15

       C.    Plaintiffs' Claims Lack Merit..........................................16

   II.    Plaintiffs Are Not Irreparably Harmed and There is
       No Other Reason to Enter an Injunction....................................22

Conclusion ............................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787 (2015)............................................................................10

*Bognet v. Sec'y of the Commonwealth*, 980 F.3d 336 (3d Cir. 2020)..........................................................................................12, 15

*Bowyer v. Ducey*, 506 F. Supp. 3d 699 (D. Ariz. 2020) ...........................15

*Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628 (3d Cir. 1991)...........................................................................................................19

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005)..........................................................................................................15

*Coleman v. Miller*, 307 U.S. 433 (1939) ...................................................12

*Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018)............ 11, 12, 13

*Fair Fight Action, Inc. v. Raffensperger*, 593 F. Supp. 3d 1320 (N.D. Ga. 2021) .................................................................21, 22

*Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009).........................13

*Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989).............................................................................................16

*In re Georgia Senate Bill*, 622 F. Supp. 3d 1312 (N.D. Ga. 2022)..........................................................................................................24

*King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020).......................15

*Lance v. Coffman*, 549 U.S. 437 (2007)....................................................15

*League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224 (4th Cir. 2014)...............................................................24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................8

*Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) .........................7

*Merrill v. Milligan*, 142 S. Ct. 879 (2022) ................................................18

*Moore v. Harper*, 600 U.S. 1 (2023)...........................................16, 18

*O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022
    WL 1699425 (10th Cir. May 27, 2022) ................................................15

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ......................24

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)....................19

*Raines v. Byrd*, 521 U.S. 811 (1997) .........................................8, 9, 12, 13

*Rogers v. Gentex Corp.*, No. 16-137, 2016 WL 4708004 (M.D.
    Pa. Sept. 8, 2016) ................................................23

*Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441 (E.D.
    Tex. 2020)................................................15

*Toth v. Chapman*, No. 22-208, 2022 WL 821175 (M.D. Pa.
    2022)................................................15

*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945
    (2019)................................................10

*Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264
    (W.D. Wash. 2006) ................................................21

*Wise v. Circosta*, 979 F.3d 93 (4th Cir. 2020) ................................................19

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) ......................15

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir.
    2022)................................................ passim

*Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412 (3d Cir.
    2010)................................................1

## Constitutional Provisions

Pa. Const. art. VII, § 1................................................2

U.S. Const. art. I, § 4................................................12

U.S. Const. art. II, § 1 ................................................................ 12

U.S. Const. art. III, § 2 ................................................................ 7

**Statutes**

25 P.S. § 2621 ................................................................ 17

25 P.S. § 2642 ................................................................ 17

25 P.S. § 2811 ................................................................ 2

25 Pa.C.S. § 1323 ................................................................ 2, 3, 17

25 Pa.C.S. § 1327 ................................................................ 3

25 Pa.C.S. § 1328 ................................................................ 3, 4, 20

25 Pa.C.S. § 1803 ................................................................ 6, 17

42 U.S.C. § 1983 ................................................................ 8, 15

52 U.S.C. § 20504 ................................................................ 2

52 U.S.C. § 21083 ................................................................ 20, 21

Flat. Stat. § 97.053 ................................................................ 21

Wash Rev. Code § 29A.08.107 ................................................................ 22

## INTRODUCTION

A small handful of Pennsylvania's 203 state representatives and a single one of Pennsylvania's 50 senators seek a preliminary injunction based on the idea that the Secretary of the Commonwealth's performance of executive responsibilities statutorily assigned to him somehow usurps the role that the U.S. Constitution gave Pennsylvania's General Assembly for passing election laws. Nothing in the Constitution remotely substantiates that theory, which is wildly inconsistent with how elections are run across the country.

But this Court need not even delve into the reasons Plaintiffs' understanding of the Constitution is terribly wrong. Binding precedent unimpeachably dictates that individual legislators, like Plaintiffs, do not have Article III standing based on alleged injuries to a legislative body. And these Plaintiffs have not alleged any injury they have suffered themselves. So, this Court lacks jurisdiction.[1]

---

[1] Because subject matter jurisdiction is so evidently and incurably lacking, it would be appropriate to dismiss this action altogether without requiring the parties to brief the same defects in a motion to dismiss. *E.g.*, *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (holding that under a court's "continuing obligation to assess its subject matter jurisdiction, [it] can dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding").

As a result, Plaintiffs are not likely to succeed in this action, a threshold showing for a preliminary injunction. Nor would a preliminary injunction serve any equitable interest.

## BACKGROUND

***Statutory Framework***. Eligible individuals in Pennsylvania must register in order to vote. Pa. Const. art. VII, § 1; 25 P.S. § 2811.

The federal National Voter Registration Act requires that states make available certain methods of applying to register to vote. One of those methods is that an application for a new or renewed driver's license "shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504. This law is colloquially known as "Motor Voter."

To implement Motor Voter, Pennsylvania's General Assembly passed legislation instructing that a driver's license application "shall serve as an application to register to vote unless the applicant fails to sign the voter registration application." 25 Pa.C.S. § 1323(a)(1). The Secretary of the Commonwealth was assigned "primary responsibility for

2

implementing and enforcing the driver's license voter registration system created under this section." *Id.* § 1323(a)(2).[2]

The Motor Voter process that the General Assembly devised directs that the "Department of Transportation shall provide for an application for voter registration as part of a driver's license application." *Id.* § 1323(b)(1). The process further directs that "the format of the driver's license/voter registration application shall be determined and prescribed by the secretary [of the Commonwealth] and the Secretary of Transportation." *Id.* § 1323(b)(2).

The application must request the voter's name, address, prior registration address, political party, date of birth, telephone number, and race, but may not request any of this information more than once. *Id.* §§ 1323(b)(3), 1327(a). Applicants must also declare under penalty of perjury that they are qualified to vote in Pennsylvania. *Id.* § 1327(b). Completed applications are forwarded to the relevant county registration commission for review and a decision whether the application is approved. *Id.* §§ 1323(c)(1)-(3.1), 1328.

---

[2] Plaintiffs misread this section as assigning this role to the Secretary of Transportation. Am. Compl. ¶¶ 123, 129.

County commissions reject a registration application if: (1) it is "not properly completed" and, following the Commission's reasonable efforts, "remains incomplete or inconsistent," (2) if the applicant is not qualified, or (3) if the applicant is not entitled to the transfer of registration they have requested. *Id.* § 1328(b)(2).

***2023 Redesign***. On September 19, 2023, Governor Shapiro announced that the Departments of State and Transportation had redesigned the format of the driver's license/voter registration application. The newly formatted application streamlined the process for voters by, among other things, prescribing clearer language and eliminating duplicative parts of the application.

The new format was described as implementing "Automatic Voter Registration," *see* Ex. F to Br. in Supp. of Prelim. Inj. (ECF No. 23-6), because it shifted from an "opt-in" format to an "opt-out" format. Before the changes, the part of the application asking applicants if they wanted to apply to register to vote appeared like this:

**Applying for Voter Registration**

Do you wish to apply to register to vote now?

Press 1 for YES

Press 2 for NO

But after the changes, that part of the application appears like this:

**Option for Voter Registration Services**

As a part of your visit to PennDOT today, you will be registered to vote unless you decline to register. If you are already registered, you may update the information in your existing voter record.

To Vote:
- You must have been a United States citizen for at least one month on the day of the next election.
- You must be at least 18 years old on the day of the next election.
- You must have lived in Pennsylvania for at least 30 days before the next election.

To continue to register to vote, press **ENTER**

If you are not qualifed to vote, or you <u>do not</u> want to register to vote or update your existing registration today, press **9**

*See* Marks Decl. ¶¶ 10-11 (attached Ex. A); *see also* Exs. 1 & 2 to Marks Decl.

Between September 19, 2023, and February 28, 2024, 57,449 new Motor Voter applications to register have been approved by county commissions. *Id.* ¶ 13. Of those, 34% registered with the Republican

Party, 31% registered with the Democratic Party, and 35% registered with some other party or as unaffiliated. *Id.* ¶ 15.

*2018 HAVA Directive.* Separately, in 2018, under its authority to take any action "necessary to ensure compliance and participation by the commissions" with voter registration laws, 25 Pa.C.S. § 1803(a), the Department of State directed county registration commissions not to reject an application solely because of a non-match between an applicant's driver's license number or Social Security number—which the federal Help America Vote Act ("HAVA") requires an applicant provide if she has one—and external databases against which HAVA requires that information be compared. *See* Ex. B. to Br. in Supp. of Prelim. Inj. (ECF No. 23-2).

*Plaintiffs' Amended Complaint.* As to the three Pennsylvania Defendants, Plaintiffs—26 of the 203 representatives and one of the 50 senators in Pennsylvania's General Assembly—allege that the 2023 redesign and 2018 HAVA directive violate Article I, § 4 (the Elections Clause) and Article II, § 1 (the Electors Clause) of the U.S. Constitution. Am. Compl. ¶¶ 212-30 (ECF No. 18).

Plaintiffs now seek a preliminary injunction. Mot. for Prelim. Inj. (ECF No. 19).

## STANDARD OF REVIEW

To obtain the extraordinary remedy of a preliminary injunction, the "moving party must demonstrate, first, a likelihood of success on the merits, and second, that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021). "If both factors are established,… the district court considers the two remaining factors—whether granting relief will result in even greater harm to the nonmoving party or other interested persons and whether the public interest favors such relief." *Id.*

## ARGUMENT

This Court should deny Plaintiffs' request for a preliminary injunction because they cannot demonstrate a likelihood of success on either claim against the three Pennsylvania Defendants, and because the equities militate in favor of denying their request.

## I.   Plaintiffs Will Not Succeed on the Merits

### A.   Plaintiffs Lack Standing

The U.S. Constitution confines a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limit is

enforced by requiring that a plaintiff establish her standing, which in turn requires her to demonstrate that she suffered (1) an injury in fact, (2) caused by the conduct complained of, and that is (3) capable of judicial remedy. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022).[3]

For injury in fact, a plaintiff cannot rely upon a general interest "in the proper application of the Constitution and laws." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). Injuries must be personal to the plaintiff and be "concrete" and "particularized." *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997); *see also Yaw*, 49 F.4th at 311, 314-15.

Here, accepting their non-conclusory allegations, Plaintiffs have not alleged any concrete, particularized injury specific to them. Without that, this Court does not have jurisdiction to grant any relief.

Plaintiffs' amended complaint and preliminary injunction brief make abundantly clear that the alleged injury here is the supposed usurpation of the Pennsylvania General Assembly's institutional prerogatives under the Elections and Electors Clauses. *See* Am. Compl.

---

[3] Plaintiffs conflate standing and the availability of an action under 42 U.S.C. § 1983, Br. in Supp. of Prelim. Inj. at 5-10, and get both wrong, *infra* at 15-16.

¶¶ 30-49, 112-114, 147, 167 (ECF No. 18) (detailing powers of the "legislature"); *see* Br. in Supp. of Prelim. Inj. at 4 (ECF No. 21) (describing "certain privileges and rights" belonging to "state legislatures" and this case as a "challenge to the usurpation of state legislative power"). In other words, Plaintiffs allege an institutional injury to the General Assembly.

These individual legislators, however, cannot establish their own standing under Article III based on alleged injuries to the General Assembly as a whole. The Supreme Court said as much in *Raines v. Byrd*. There, six members of Congress filed suit challenging a statute that allowed the President to "'cancel' certain spending and tax benefit measures after he has signed them into law." 521 U.S. 811, 814 (1997). The legislators asserted standing based on a claimed interest in maintaining the effectiveness of their votes. *Id.* at 821-22. The Court ruled that those interests were shared equally by every member of Congress's two bodies such that no individual member had a personal stake; the alleged injury was instead an "institutional injury." *Id.* at 821, 829-30.

Since *Raines*, the Supreme Court has reiterated that only a legislature has standing based on injuries to the legislature. In *Arizona*

9

*State Legislature v. Arizona Independent Redistricting Commission*, the Court concluded that Arizona's complete legislature had standing to bring a claim alleging violations of the Elections Clause. 576 U.S. 787, 804-04 (2015). The Court distinguished *Raines* as an action brought by only individual legislators. *Id.* 801-02. The Supreme Court reaffirmed that distinction in *Virginia House of Delegates v. Bethune-Hill*, holding that "[j]ust as individual members lack standing to assert the institutional interests of a legislature, a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." 139 S. Ct. 1945, 1953-54 (2019) (citing *Raines*).

In 2022, the Third Circuit, in an action brought by several Pennsylvania legislators, reenforced that any supposed deprivations of legislative powers are institutional injuries that individual legislators lack standing to pursue in federal court. *See Yaw*, 49 F.4th at 311. It does not matter how individual legislators attempt to describe their loss of legislative power: "A general loss of legislative power that is widely dispersed and necessarily damages all members of the General Assembly equally" is an institutional injury that only the institution itself may

pursue in court. *Id.* at 313-14 (cleaned up). It also does not matter if the injuries occur to a federal or state legislative body. *Id.* at 315.

A three-judge panel of this Court enforced the same line when leaders of Pennsylvania's General Assembly and members of the U.S. House of Representatives asserted that the Pennsylvania Supreme Court had violated the Elections Clause by declaring a congressional districting map unconstitutional and issuing a remedial map. *Corman v. Torres*, 287 F. Supp. 3d 558, 565 (M.D. Pa. 2018). This Court, citing *Raines* and *Arizona*, held that Pennsylvania legislators did not suffer any particularized injury from the "purported usurpation of the Pennsylvania General Assembly's exclusive rights under the Elections Clause of the United States Constitution." *Id.* at 567. *Raines* and *Arizona*, this Court recognized, definitively resolved that "a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature." *Id.*

Plaintiffs' arguments for standing are indistinguishable from those made in *Raines*, *Yaw*, and *Corman*. And Plaintiffs have no way around

this conclusive precedent that they deride as the basis for a "strawman" response. Br. in Supp. of Prelim. Inj. at 9.[4]

Plaintiffs insist that they are not complaining of any "institutional injury," but instead of infringements of "individual legislators' federal rights under the Elections and Electors Clauses." *Id.*; *see also* Am. Compl. ¶¶ 50, 160-166 (making conclusory assertion that legislators have a federal right at stake here). That assertion does not explain what *injury* any Plaintiff has suffered.[5]

None of the five declarations attached to the preliminary injunction brief supplies an explanation either. Each merely asserts that the three

---

[4] *Coleman v. Miller*, 307 U.S. 433 (1939), does not support Plaintiffs. *Contra* Br. in Supp. of Prelim. Inj. at 8. *Coleman* "stands (at most) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823. That is not the case here.

[5] It is also wrong. The Elections and Electors Clauses speak only of responsibilities assigned to the "legislature." U.S. Const. art. I, § 4; U.S. Const. art. II, § 1. For that reason, claims for alleged violations of these provisions would belong to the legislature (if anyone). *Bognet v. Sec'y of the Commonwealth*, 980 F.3d 336, 350 (3d Cir. 2020), *vacated as moot by Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *see also Corman*, 287 F. Supp. 3d at 569 (ruling that an alleged "usurpation of the General Assembly's power" does not deprive any individual legislator "of any rights vested personally in them by the Elections Clause").

Pennsylvania Defendants have violated the law. *See generally* ECF No. 22-1 to 22-5. And there is nothing in either the amended complaint or brief (nor could there be) that identifies how any Plaintiff is affected by the conduct challenged in this case in a way that is any different from any other member of Pennsylvania's General Assembly.

The absence of any distinction between members dooms Plaintiffs' standing. Grievances that belong to "all members of the General Assembly equally" are "classic examples of institutional injuries." *Yaw*, 49 F.4th at 314 (cleaned up); *see also Raines*, 521 U.S. at 821 (holding that legislators lacked standing because none had "been singled out for specially unfavorable treatment as opposed to other Members of their respective bodies"). In these circumstances, "United States Supreme Court precedent is clear—a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature." *Corman*, 287 F. Supp. 3d at 567.

While Plaintiffs allege that Pennsylvania law allows individual legislators to "bring legislative usurpation claims," Br. in Supp. of Prelim. Inj. at 8 (citing *Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009)), that claim has no relevance here. As the Third Circuit said in response

to precisely the same argument (relying on precisely the same Pennsylvania decision), "even if Pennsylvania state law would have afforded appellants standing if they had brought [an] action in state court, we must ensure that they satisfy the federal requirements for standing as well." *Yaw*, 49 F.4th at 316. And as *Fumo* itself noted, while standing is not a jurisdictional predicate in Pennsylvania it is in federal court. *Id.* (citing *Fumo*, 972 A.2d at 343 n.5).

Finally, there is no actual allegation that legislative powers have been usurped. Nor could there be. Neither changes to a registration application nor instructions to counties—both done under statutorily assigned authority—stops the General Assembly from passing any laws regarding either topic. So even if this action was on behalf of the entire General Assembly, it still would need to be dismissed because of the absence of any injury.[6]

---

[6] Plaintiffs' alternative standing arguments, such as that they have standing as candidates for office or as "citizens, taxpayers, and voters," Br. in Supp. of Prelim. Inj. at 10-11; *see also* Am. Compl. ¶¶ 169-175, are as frivolous. Plaintiffs fail to identify any concrete or particularized way that eligible electors registering to vote injures them in any of these capacities. Instead, Plaintiffs maintain that they are injured by alleged non-compliance with the law, *see generally* ECF No. 22-1 to 22-5, a quintessential generalized grievance that courts have repeatedly held

**B.     Plaintiffs Lack a Cause of Action**

The absence of standing is sufficient to deny Plaintiffs' motion.
Denial would be separately required, however, because these legislators
cannot enforce alleged violations of the Elections and Electors Clauses
through 42 U.S.C. § 1983, as they attempt. *See* Am. Compl. ¶¶ 213-14,
221-22. To bring a § 1983 action, a plaintiff must demonstrate that she is
the beneficiary of a right protected by federal statute or the U.S.
Constitution. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113,
120 (2005).

Section 1983 is unavailable here because the Elections Clause (like
the Electors Clause) "does not speak to individual rights" and instead
"outlines a structural principle of the American system of federalism."
*Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 462 (E.D. Tex. 2020).
Indeed, Plaintiffs' brief emphasizes that the two constitutional provisions
embody structural principles. *See* Br. in Supp. of Prelim. Inj. at 15-17.

---

does not support standing in any capacity, *e.g.*, *Lance v. Coffman*, 549
U.S. 437, 441-42 (2007); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th
Cir. 2020); *Bognet*, 980 F.3d at 349; *O'Rourke v. Dominion Voting Sys.,
Inc.*, No. 21-1161, 2022 WL 1699425, at *2 (10th Cir. May 27, 2022); *Toth
v. Chapman*, No. 22-208, 2022 WL 821175, at *7 (M.D. Pa. 2022) (three-
judge panel); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 709-11 (D. Ariz.
2020); *King v. Whitmer*, 505 F. Supp. 3d 720, 735-36 (E.D. Mich. 2020).

15

In that way, the Elections and Electors Clauses are like the Supremacy Clause, which also does not create any right enforceable through § 1983. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989).

In fact, far from creating rights, the Elections Clause imposes a duty on state legislatures to prescribe rules for federal elections (and on Congress if a legislature refuses). *Moore v. Harper*, 600 U.S. 1, 11 (2023).

Because neither the Elections nor Electors Clause confers any rights (and certainly not in any entity other than a legislature, *see supra* at 12 n.5), Plaintiffs cannot enforce alleged violations of them under § 1983. For that additional reason, Plaintiffs will not prevail in either claim against the three Pennsylvania Defendants.

## C.   Plaintiffs' Claims Lack Merit

Finally, there is no merit to Plaintiffs' constitutional claims against the Pennsylvania Defendants.

Pennsylvania's General Assembly, like every other state legislature, assigns election officials certain responsibilities for election administration. *See, e.g.,* 25 P.S. § 2621 (describing some of the powers

assigned to the Secretary); *id.* § 2642 (describing some of the powers assigned to county boards of elections).

Relevant here, under Pennsylvania's voter registration law, a driver's license application "shall serve as an application to register to vote unless the applicant fails to sign the voter registration application," *Id.* § 1323(a)(1). And the Secretary (along with the Secretary of Transportation) shall "determine[] and prescribe[]" "the format of the driver's license/voter registration application." 25 Pa.C.S. § 1323(b)(2).

Further, the Secretary has "authority to take any actions, including the authority to audit the registration records of a commission, which are necessary to ensure compliance and participation by the commissions." 25 P.S. § 1803(a). He used this power when issuing the 2018 directive to ensure that county commissions understood what HAVA required during the registration process.

Assigning election officials executive duties such as these is as common as it is essential, because "[r]unning elections state-wide is extraordinarily complicated and difficult. Those elections require enormous advance preparations by state and local officials and pose significant logistical challenges." *Merrill v. Milligan*, 142 S. Ct. 879, 880

17

(2022) (Kavanaugh, J., concurring in grant of stay). Indeed, as reflected by the multitude of responsibilities that the General Assembly has given them, Pennsylvania's election officials are essential to the operation of Pennsylvania's elections.

And just as nothing in the Elections or Electors Clause prohibits state judges from performing their judicial roles, *Moore*, 600 U.S. at 22-26, nothing in either clause prohibits executive officials from performing the executive functions assigned to them by a state legislature. Performing those executive functions is not "mak[ing] law." *Contra* Br. in Supp. of Prelim. Inj. at 13.

To the extent Plaintiffs allege that either of the two executive actions at issue here somehow violates state law (and thus the U.S. Constitution), that issue is not properly before this Court, and such allegations are meritless as well.

"[S]tate courts are the appropriate tribunal" for questions about the scope of authority that the legislature has assigned to the Secretary of the Commonwealth under Pennsylvania law. *Moore*, 600 U.S. at 34 (cleaned up); *see also id.* at 36 (holding only that the U.S. Constitution may set the far outer limits of "state court interpretations of state law").

18

Acting here on what are fundamentally questions of state law would invite an endless parade of parties bringing state election disputes immediately into federal courts.[7]

Lastly, although the Court should not reach these issues, neither the 2023 redesign nor the 2018 HAVA directive can plausibly be said to conflict with any law that the General Assembly has passed.

***2023 Redesign***. Plaintiffs do not identify any intelligible theory for how the 2023 changes conflict with state law. They cite a provision of law that authorizes (as federal law requires) voters to apply to register to vote when applying for a driver's license, Br. in Supp. of Prelim. Inj. at 13 (citing 25 Pa.C.S. § 1321). The redesign continues to allow for that opportunity. Marks Decl. ¶¶ 3-6; *see also* Ex. 2 to Marks Decl.

---

[7] Federal court appropriately abstain when presented with a purported federal question that depends on an interpretation of an important state law question. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500-01 (1941); *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991). The Fourth Circuit followed this practice when presented with a request to enjoin state conduct that allegedly violated the Elections Clause because Plaintiffs were asking a federal court to determine "a close issue of *state* law involving competing interpretations of North Carolina's statutes governing election procedures and implicating complex questions concerning the separation of powers in the state." *Wise v. Circosta*, 979 F.3d 93, 101 (4th Cir. 2020) (emphasis in original).

Plaintiffs note that the dual license/registration application must in fact be an application. Am. Compl. ¶¶ 117-122, 129. But that remains the case. Here, too, Plaintiffs do not (and could not) allege facts suggesting differently. Applicants for a new or a renewed driver's license may opt to simultaneously apply to register voter. Marks Decl. ¶¶ 3-6. If they choose to take advantage of that opportunity, the registration portion of their application is sent to the relevant county commission for review and an approval determination under 25 Pa.C.S. § 1328. *See* Marks Decl. ¶ 8.  And if an individual does not want to apply to register, they can decline. *Id.* ¶ 6; *see also* Ex. 2 to Marks Decl.

*2018 HAVA Directive*. HAVA instructs that voter registration applications must include the applicant's driver's license number or the last four digits of their Social Security number. 52 U.S.C. § 21083(a)(5)(a)(i). If the applicant does not have either, the state can give the voter "a number which will serve to identify the applicant for voter registration purposes." *Id.* § 21083(a)(5)(A)(ii).

HAVA requires that if an applicant provides their driver's license or Social Security number, that number is compared to a department of transportation's database or to Social Security information. *Id.*

20

§ 21083(a)(5)(B). Yet, while HAVA requires this matching process, "it does not say what the consequences of failing a match are on voter registration." *Fair Fight Action, Inc. v. Raffensperger*, 593 F. Supp. 3d 1320, 1328 (N.D. Ga. 2021); *see also Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1268 (W.D. Wash. 2006) (describing function of HAVA's matching requirement as administrative rather than for confirming eligibility). Instead, HAVA allows states to determine if the number that HAVA requires an applicant provide when possible "is sufficient to meet the requirements [of HAVA], in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii).

Since HAVA was enacted, some states have required a driver's license or Social Security number as part of their own voter application process or have mandated that the information provided under HAVA be used for a particular purpose in the state's process (such as confirming the applicant's identity). *E.g.*, Flat. Stat. § 97.053(5)(A), (6); Wash Rev. Code § 29A.08.107; *Fair Fight*, 593 F. Supp. 3d at 1330 (describing Georgia's matching requirement).

Pennsylvania's General Assembly has done neither. Thus, if there is any requirement that an applicant's driver's license number or Social

21

Security number match the same number in an external database as a condition of successful registration in Pennsylvania (and there is not), it must derive from HAVA and not any law that the General Assembly passed.

Because the 2018 directive does not even implicate a state law, it certainly does not conflict with a state law.

*     *     *     *     *

Between the obvious lack of standing, the absence of a cause of action, and the frivolous merits claims, Plaintiffs will not succeed in any part of their case. Their request for a preliminary injunction therefore must be denied.

## II.   Plaintiffs Are Not Irreparably Harmed and There is No Other Reason to Enter an Injunction

For the same reason they lack standing, Plaintiffs have failed to demonstrate that they will suffer any irreparable harm absent immediate relief on their claims. The irreparable harm they try to describe—that the law purportedly is being violated, Br. in Supp. of Prelim. Inj. at 16-17—only affirms that Plaintiffs lack standing.

Further undercutting any claim of irreparable harm, Plaintiffs waited over five years to take any action as to the 2018 HAVA directive

22

and five months to take any action as to the 2023 redesign. Delays of this sort are incompatible with claims of irreparable injury. *Rogers v. Gentex Corp.*, No. 16-137, 2016 WL 4708004, at *7 n.2 (M.D. Pa. Sept. 8, 2016) (collecting cases concluding that delays in seeking a preliminary injunction undermine assertions of irreparable injury).

The Pennsylvania Defendants, however, would be harmed by any injunction. The Elections and Electors Clause apply only to federal elections. But registration applies for state and federal elections alike. Because a preliminary injunction could not be crafted specifically for applications to register in federal elections, any injunction would necessarily interfere with conduct that not even Plaintiffs allege is illegal.

Further, an injunction would be contrary to the public interest. The public interest favors permitting qualified electors to register to vote and ultimately for the fullest participation of qualified voters in the electoral process that can be achieved. *E.g.*, *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012); *In re Georgia Senate Bill*, 622 F. Supp. 3d 1312, 1341 (N.D. Ga. 2022). An injunction would certainly

impair that objective. Both the 2023 redesign and 2018 HAVA directive facilitate qualified voters' participation in the electoral process. Indeed, since September 19, 2023, 57,449 new registration applications submitted through the Motor Voter process have been approved, spread across multiple political affiliations. Marks Decl. ¶¶ 13, 15.

At bottom, the equities weigh decisively in favor of continuing to allow qualified Pennsylvanians to participate in the democratic process.

## CONCLUSION

For these reasons, the motion for a preliminary injunction should be denied.

March 1, 2024                                  Respectfully submitted,

Michael J. Fischer                             /s/ *Jacob B. Boyer*
Executive Deputy General Counsel               Jacob B. Boyer (Bar. No. 324396)
333 Market Street, 17th Floor                  Deputy General Counsel
Harrisburg, PA 17101                           333 Market Street, 17th Floor
(717) 831-2847                                 Harrisburg, PA 17101
mjfischer@pa.gov                               (717) 460-6786
                                               jacobboyer@pa.gov

Erich Greiner                                  *Counsel for Governor Josh*
Office of Attorney General                     *Shapiro, Secretary of the*
Strawberry Square                              *Commonwealth Al Schmidt, and*
15th Floor                                     *Deputy Secretary Jonathan*
Harrisburg, PA 17102                           *Marks*
(717) 783-6301
egreiner@attorneygeneral.gov

24

## <u>CERTIFICATES</u>

I hereby certify that a copy of this response has been served on all counsel of record using the Court's CM/ECF system.

I further certify that this brief contains 4,532 words and therefore complies with Local Rule 7.8(b). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

March 1, 2024                         /s/ *Jacob B. Boyer*
_____
                                    Jacob B. Boyer
                                    *Counsel for Governor Josh Shapiro,*
                                    *Secretary of the Commonwealth Al*
                                    *Schmidt, and Deputy Secretary*
                                    *Jonathan Marks*