# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REPRESENTATIVE DAWN KEEFER, et al.,**<br><br>                **Plaintiffs,**<br><br>        **v.**<br><br>**JOSEPH R. BIDEN, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al.,**<br><br>                **Defendants.** | Civil Action No.: 24-cv-00147 |

## PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# Table of Contents

I.      Plaintiffs Have Standing Based Upon the Deprivation of Their Federal
        Constitutional Rights. ................................................................................................ 1

II.     42 U.S.C. § 1983 Permits Recovery Under the Elections Clause and the
        Electors Clause. ........................................................................................................ 7

III.    The Defendants do not have the authority to subvert Pennsylvania law. .................... 8

IV.     Federal Court is the Appropriate Tribunal ................................................................. 16

V.      Irreparable Injury Has Been Demonstrated ............................................................... 17

# Table of Authorities

## Cases

*Am. Legion v. Am. Humanist Ass'n,*
139 S. Ct. 2067 (2019) .................................................................. 3

*Americold Realty Tr. v. Conagra Foods, Inc.,*
577 U.S. 378 (2016) ...................................................................... 3

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ...................................................................... 4

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010) ...................................................................... 6

*Coleman v. Miller,*
307 U.S. 433 (1939) ...................................................................... 1

*Colon-Marrero v. Velez,*
813 F.3d 1 (1st Cir. 2016) ............................................................ 8

*D.C. v. Heller,*
554 U.S. 570 (2008) ...................................................................... 5

*Fumo v. City of Philadelphia,*
600 Pa. 322 (1976)......................................................................... 7

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002) ...................................................................... 8

*Goode v. City of Philadelphia,*
539 F.3d 311 (3d Cir. 2008) ........................................................ 1

*Hickenlooper v. Kerr,*
576 U.S. 1079 (2015) .................................................................... 3

*Kerr v. Hickenlooper,*
744 F.3d 1156 (10th Cir. 2014)..................................................... 3

*Moore v. Harper,*
600 U.S. 1 (2023).................................................................. 3, 16, 17

*Mountz v. Columbia Borough,*
260 A.3d 1046 (Pa.Cmwlth. 2021) ............................................ 11

*P.R. v. Pa. Dep't of Pub. Welfare,*
759 A.2d 434 (Pa.Cmwlth. 2000) .............................................. 11

*P.R. v. Washington Association of Churches,*
492 F.Supp.2d 1264 (W.D. Wash. 2006) .................................... 15

*Panama Refining Co. v. Ryan,*
55 S.Ct. 241 (1935)...................................................................... 13

*Protz v. Workers' Compensation Appeal Board*,
   639 Pa. 645 (2017). ...................................................................... 10

*Raines v. Byrd*,
   521 U.S. 811 (1997) ..................................................................... 1, 2

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ......................................................................... 6

*Russell v. DeJongh*,
   491 F.3d 130 (3d Cir. 2007) ............................................................. 5

*Shapp v. Butera*,
   348 A.2d 910 (Pa.Commw.Ct. 1975) ............................................. 10

*Smiley v. Holm*,
   285 U.S. 355 (1932) ......................................................................... 5

*Stander v. Kelley*,
   433 Pa. 406 (1969) ...................................................................... 9, 10

*Tex. Voters All. v. Dallas Cnty.*,
   495 F.Supp.3d 441 (E.D. Tex. 2020) ............................................... 7

*U.S. v. Miller*,
   307 U.S. 174 (1939) ......................................................................... 5

*Virginia House of Delegates v. Bethune-Hill*,
   139 S.Ct. 1945 (2019) .................................................................. 4, 5

*Wilt v. Beal*,
   363 A.2d 876 (Pa.Cmwlth. 1976) .............................................. 4, 5, 7

*Yaw v. Del. River Basin Comm'n*,
   49 F.4th 302 (3d Cir. 2022) ............................................................. 1

**Statutes**

25 Pa.C.S.A. § 1321 ......................................................................... 11

25 Pa.C.S.A. § 1325 ......................................................................... 11

25 Pa.C.S.A. § 1328 ...................................................................14, 15

25 Pa.C.S.A. § 1803 ......................................................................... 13

42 U.S.C. § 1983 .......................................................... 1, 3, 7, 8, 16, 17

52 U.S.C. § 20901 ........................................................................... 14

7 Pa.C.S.A. § 6102 .......................................................................... 11

**Constitutional Provisions**

U.S. Const. amend. II ........................................................................ 5

U.S. Const. art. I, § 4 .............................................................. 1, 2, 4, 7, 9

U.S. Const. art. II, § 1 .................................................................................................. 1, 2, 4, 7, 9

U.S. Const. art. IV, § 4 ................................................................................................................ 2

**State Constitutional Provisions**

Pa. Const. art. II, § 2 ................................................................................................................... 3

Pa. Const. art. VII, § 1 ........................................................................................................... 9, 14

Defendants Shapiro, Schmidt, and Marks have filed their response brief opposing Plaintiffs' Motion for Preliminary Injunction. Defendants' arguments cover the issues of standing, whether the Elections and Electors Clauses confer civil rights, whether the Defendants had the authority to take the executive actions complained of, whether the federal court is the proper forum, and the timeliness of Plaintiffs' complaint.

## I.     Plaintiffs Have Standing Based Upon the Deprivation of Their Federal Constitutional Rights.

Federal statute 42 U.S.C. § 1983 protects persons from the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  Plaintiffs are "real persons" who have particular rights granted by the U.S. Constitution's Elections Clause and Electors Clause.  The rights granted are specifically related to determining the times, places, and manner of federal elections and the manner of appointing presidential electors.

Defendants mischaracterize the complaint and improperly point to *Raines*, *Goode*, and *Yaw*. This case is distinguishable from those cases because they did not involve Elections Clause or Electors Clause rights. Here, the state Defendants took executive actions that nullified the plaintiffs' votes constitutionally protected by the Elections and Electors Clauses. The U.S. Supreme Court has already recognized state legislators' "right and privilege under the Constitution of the United States to have their votes given effect":

> Here, the plaintiffs include twenty senators, whose votes against ratification have been overridden and virtually held for naught…We think that these senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes . . . They have set up and claimed a right and privilege under the Constitution of the United States to have their votes given effect.

*Coleman v. Miller*, 307 U.S. 433, 438 (1939). The *Coleman* recognition was based on individual legislator standing under the U.S. Constitution's Article V on constitutional amendments. The

Plaintiffs claim that what is good for Article V is good for the Elections Clause and Electors Clause.

The Plaintiffs are real persons who are part of an exclusive entity, the state legislature of Pennsylvania. Each individual legislator has a right to protect that individual's constitutional rights and privileges to participate in making laws regarding the manner of elections. Officials of the executive branch should not be permitted to strip them of their rights. The U.S. Supreme Court, in the *Raines* case, where individual congressional member standing was denied, continued to recognize individual state legislator standing:

> It is obvious, then, that our holding in *Coleman* stands (at most, see n. 8, *infra* ) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), **on the ground that their votes have been completely nullified**.

*Raines v. Byrd,* 521 U.S. 811, 823 (1997) (emphasis added).

The Plaintiffs have no ability to undo the executive actions through ordinary legislation. In fact, the legislative actions already taken, the laws properly enacted by the members of the legislature, have been nullified and overridden by the executive actions. Plaintiffs have been denied a voting opportunity to accept or reject a voter registration schema that, under the Constitution, can only originate in the Pennsylvania legislature or U.S. Congress. The U.S. Court of Appeals for the Tenth Circuit held that individual legislator standing existed under the U.S. Constitution's Republican Government Guarantee Clause of Article IV, § 4:

> Considering both state and federal cases on legislative standing, the court distinguished between alleged injuries related to "lost political battles" and those concerning "nullification of votes." The Court characterized *Coleman* as involving vote nullification, and *Raines* as a "lost vote" case. *Id.* It concluded that the plaintiff possessed standing in part because he was "not seeking to obtain a result in a courtroom which he failed to gain in the halls of the

Legislature." . . . In contrast, the court explained that the *Raines* plaintiffs "lost their political battles when legislation was validly enacted over their opposition." *Id.* We are not confronted with claimants who complain of nothing more than a lack of success within the legislature; plaintiffs' complaint alleges that TABOR has stripped the legislature of its rightful power.

*Kerr v. Hickenlooper*, 744 F.3d 1156, 1167 (10th Cir. 2014), *judgment vacated on other grounds*, *Hickenlooper v. Kerr*, 576 U.S. 1079, 1079 (2015).

Plaintiffs have each suffered personal injury because they have been denied rights and privileges secured by the US Constitution. The "usual demands of Article III, requiring a real controversy with **real impact on real persons** to make a federal case out of it." *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2068 (2019) (Emphasis added). The Plaintiffs have no other recourse but § 1983 to supply a remedy for the vindication of their rights secured by the Constitution.

Recently, in *Moore v. Harper*, 600 U.S. 1 (2023), the Supreme Court clarified that when the state legislature carries out its constitutional power, it is acting as the "entity assigned particular authority by the Federal Constitution." And Pennsylvania's Constitution describes that entity with particular authority as the General Assembly which is made up of "members" who "shall be chosen at the general election." Pa. Const. art. II, § 2. So, the real persons who make up the entity are the individuals elected as state legislators. And "[h]istorically, the relevant citizens for jurisdictional purposes in a suit involving a 'mere legal entity' were that entity's 'members,' or the 'real persons who come into court'" *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (citations omitted).

When rights that belong to real persons are extended to corporations or other entities, the purpose is, nonetheless, to protect the rights of the people. The U.S. Supreme Court stated,

"When rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706-707 (2014).

Pennsylvania legislators are a small, particular class of citizens who make up the state constitutionally authorized and federal-constitutionally-recognized entity, the "legislature." Only 253 of Pennsylvania's 13 million citizens are members of the "legislature." The Elections and the Electors Clauses grant those 253 state legislators constitutional rights to determine the times, places, and manner of elections and to choose the method of presidential elector selection.

Defendants, as they must, concede that the Pennsylvania Supreme Court has recognized individual state legislator standing for all legal topics:

> [W]e find this distinction to be sound for it is clear that certain additional duties are placed upon members of the legislative branch which find no counterpart in the duties placed upon the citizens the legislators represent. These duties have their origin in the Constitution and in that sense create constitutional powers to enforce those duties. Such powers are in addition to what we normally speak of as the constitutional rights enjoyed by all citizens.

*Wilt v. Beal*, 363 A.2d 876, 881 (Pa.Cmwlth. 1976). Under the test in *Virginia House of Delegates*, the Plaintiffs meet the requirements for federal standing. Justice Ginsberg wrote, "Virginia, had it so chosen, could have authorized the House to litigate on the State's behalf, either generally or in a **defined class of cases**.  Some states have done just that." *Va. House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1952 (2019) (emphasis added). Pennsylvania is one such state where there is a defined class of cases that explicitly give individual legislators standing:

> What emerges from this review of the federal cases is the principle that legislators, as legislators, are granted standing to challenge executive actions

4

> when specific powers unique to their functions under the Constitution are
> diminished or interfered with."

*Wilt*, 363 A.2d at 881. According to *Virginia House of Delegates,* Pennsylvania state legislators,
individually, have federal standing to bring their Elections Clause and Electors Clause claims.

To be sure, "[t]he courts have drawn a distinction, however, between a public official's
mere disobedience of a law for which a legislator voted—which is not an injury in fact—and
an official's "distortion of the process by which a bill becomes law" by nullifying a legislator's
vote or depriving a legislator of an opportunity to vote—which is an injury in fact." *Russell v.
DeJongh,* 491 F.3d 130, 135 (3d Cir. 2007) Here, the executive officials have nullified duly
enacted legislation and have distorted the legislative process, which is an injury in fact.
Pennsylvania executive officials cannot usurp the rights of the Legislators to determine the
manner of elections, including the authority to regulate "notices, registration, supervision of
voting, protection of voters, prevention of fraud and corrupt practices… All this is comprised
in the subject of 'times, places and manner of holding elections,' and involves lawmaking in
its essential features and most important aspect." *Smiley v. Holm*, 285 U.S. 355, 366 (1932).

Constitutionally recognized entities such as the Militia and the Press similarly identify
the rights of real persons who comprise the entity. For example, the Second Amendment
identifies the Militia as an entity "comprised all males physically capable of acting in concert
for the common defense." *U.S. v. Miller,* 307 U.S. 174, 179 (1939)  The <u>people</u> make up the
militia.  "[T]he 'militia' in colonial America consisted of a subset of 'the people'—those who
were male, able bodied, and within a certain age range" *D.C. v. Heller*, 554 U.S. 570, 580 (2008).
The individual members of the militia carried their guns just as the individual members of the

legislature cast their votes. An entity cannot bear arms—only the people who are members of the entity use guns.

Similarly, there is no "press" without individuals who are writing and editing and publishing. The Press is an entity comprised of individual people. As the Supreme Court stated in *Citizens United*:

> The freedom of "the press" was widely understood to protect the publishing activities of individual editors and printers…Their activities were not stripped of First Amendment protection simply because they were carried out under the banner of an artificial legal entity.

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 390 (2010).

In this case, Plaintiffs are real persons who are part of an exclusive entity, the legislature of Pennsylvania. Each individual legislator has a right to protect their individual constitutional rights to participate in making laws regarding the manner of elections. The Plaintiffs have not suggested that they are acting on behalf of a State or on behalf of an entity. The Plaintiffs sued to protect their rights as individual legislators. Individual legislators' rights are at the heart of our democratic system; as the Supreme Court stated in *Reynolds v. Sims*:

> [R]epresentative government is in essence self-government through the medium of elected representatives of the people, and each and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies. Most citizens can achieve this participation only as qualified voters through the election of legislators to represent them.

377 U.S. 533, 565 (1964). The people don't vote for the "legislature"; instead, people vote for individuals, like the Plaintiffs, to represent them as their state legislators.

## II.     42 U.S.C. § 1983 Permits Recovery Under the Elections Clause and the Electors Clause.

The Defendants assert that a § 1983 claim is unavailable to the Plaintiffs because the Elections and Electors Clauses do not speak to individual rights. ECF 42 at 15.  The sole case cited for this proposition is a Texas federal district court decision, *Tex. Voters All. v. Dallas Cnty.*, 495 F.Supp.3d 441 (E.D. Tex. 2020), in which a lawsuit was brought by the Texas Voters Alliance, a group of private citizens, against counties, alleging a violation of the Elections Clause. In denying their motion for a temporary restraining order, the court held that "[p]rivate litigants cannot derive a cause of action directly from the constitutional text of the Elections Clause." *Id.* at 462. But this case is not a citizen suit.  Instead, the Plaintiffs in the present action are Legislators who filed suit based upon "a discernible and palpable infringement on their authority as legislators." *Fumo v. City of Philadelphia*, 600 Pa. 322, 345 (1976).

In *Wilt*, 363 A.2d 876, the Plaintiff, a member of the general assembly, filed an action to enjoin state officials from operating the recently completed but unused mental-health facility. In his original complaint, Wilt alleged only his standing to sue as a taxpayer. In an amended complaint, he added standing as a Pennsylvania legislator. Although the court ultimately ruled against Wilt on the standing issue, the court held individual state legislator standing existed:

> [L]egislators, as legislators, are granted standing to challenge executive actions when specific powers unique to their functions under the Constitution are diminished or interfered with…These duties have their origin in the Constitution and in that sense create constitutional powers to enforce those duties…Interference with the performance of this duty would be an injury to members of the Senate sufficient to give each senator standing to protect the injury to his or her "constitutional right…"

*Id.* at 881.

The Plaintiffs cite § 1983 as their private cause of action.  42 U.S.C. § 1983 provides a private cause of action when federal rights or privileges are violated by a person under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

People seeking relief through § 1983 do "not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes" or by the federal Constitution. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).

The U.S. Supreme Court has articulated three factors that must be applied when determining whether a federal legal text can be the basis for a § 1983 private cause of action. *Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016) (citations omitted). All three factors have been clearly addressed. ECF 21, at 6-8.

## III.   The Defendants do not have the authority to subvert Pennsylvania law.

Defendants next assert that the Plaintiffs' claims lack merit because the Defendants have the authority to unilaterally enact automatic voter registration and issue directives to county commissions advising them to ignore provisions of state law. The Defendants claim that these unilateral actions are justified because running state-wide elections is "complicated and difficult," Defendants claim they were merely performing executive functions, and that

they were given the statutory authority to create automatic voter registration and issue directives which violate state law.

But, consistent with the U.S. Constitution's Elections and Electors Clauses, the Pennsylvania Constitution vests the legislative power in the state senate and the house of representatives to regulate the registration of electors in Pennsylvania. Pa. Const. art. VII, § 1. Therefore, the Pennsylvania legislature has the exclusive authority to enact laws, subject to the Governor's veto, to regulate the manner in which voters are registered to vote. The lawful extent of Governor Shapiro's authority and the authority of state election officials over the regulatory schema of elections in Pennsylvania starts and stops with the powers delegated to them by duly enacted legislation.

As to automatic voter registration, the Secretary was only given the task of "implementing and enforcing" the driver's license voter registration system.  Obviously, the Secretary's implementation and enforcement must be performed within the confines of state law.  According to Merriam-Webster Dictionary, the term "implement" is defined "as to carry out or to accomplish." It does not mean to change or modify – but simply to put into practice. It is not the function of the executive branch to create law or even to interpret it. In *Stander v. Kelley*, 433 Pa. 406 (1969), the Pennsylvania Supreme Court defined the separation of powers in this way:

> Generally speaking, the Executive branch has the power to recommend legislation and the power and the duty to see that the laws are faithfully administered and carried out. The Legislative branch has the power and the duty to pass legislation; and the Courts have the power, the duty and the responsibility of interpreting the Constitution and all legislation and determining whether legislation and presidential orders and all other questions and issues meet or violate the requirements of the Constitution.

*Id.* at 482.

Governor Shapiro unilaterally changed the law in Pennsylvania through an announcement, as opposed to through an executive order.  In *Shapp v. Butera*, 348 A.2d 910 (Pa.Commw.Ct. 1975), the court analyzed the "legal status of a Governor's executive order" including 3 different "classes" of executive orders, and concluded:

> In no event, however, may any executive order be contrary to any constitutional or statutory provision, nor may it reverse, countermand, interfere with, or be contrary to any final decision or order of any court. The Governor's power is to execute the laws and not to create or interpret them. The Legislative Branch of government creates laws, and the Judicial Branch interprets them.

*Id.* at 915.

The Pennsylvania Supreme Court has held that only the legislature has legislative power:

> [W]hen the General Assembly empowers some other branch or body to act, our jurisprudence requires 'that the basic policy choices involved in 'legislative power' actually be made by the [l]egislature as constitutionally mandated.' *Tosto v. Pa. Nursing Home Loan Agency*, 460 Pa. 1, 331 A.2d 198, 202. This constraint serves two purposes. First, it ensures that duly authorized and politically responsible officials make all of the necessary policy decisions, as is their mandate per the electorate . . . And second, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power.

*Protz v. Workers' Compensation Appeal Board*, 639 Pa. 645, 655 (2017).

Basic policy decisions regarding voter registration have been articulated by the General Assembly. Pennsylvania law requires that individuals must "apply to register."

> An individual qualified to register to vote under section 1301(a) (relating to qualifications to register) may apply to register as follows:
> (1)    Under section 1322 (relating to in-person voter registration).
> (2)    Under section 1323 (relating to application with driver's license application).
> (3)    Under section 1324 (relating to application by mail).
> (4)    Under section 1325 (relating to government agencies).

25 Pa.C.S.A. § 1321. An application, by definition, is a formal request to an authority. It requires an overt action by the person. "Where a term is not [statutorily] defined, . . . words and phrases shall be construed according to rules of grammar and according to their common and approved usage." *P.R. v. Pa. Dep't of Pub. Welfare*, 759 A.2d 434, 437 (Pa.Cmwlth. 2000). "In ascertaining the common and approved usage or meaning, a court may resort to the dictionary definitions of the terms left undefined by legislature." *Mountz v. Columbia Borough*, 260 A.3d 1046, 1050 n.4 (Pa.Cmwlth. 2021)(citations omitted). According to the Merriam-Webster Dictionary, the term "apply" is defined as "to make an appeal or request especially in the form of a written application." Although not specifically defined in the Election Code, the General Assembly has defined the term "application" in other contexts. Specifically, in 7 Pa.C.S.A. § 6102, the term application is defined as "a request."

Moreover, the Pennsylvania legislature has already established that failure to check a box is considered a declination to register.

25 Pa.C.S.A. § 1325(c) states:

> Effect.—Failure to check either box under subsection (b)(3) shall be considered a declination to register to vote.

Prior to September 19, 2023, when Governor Shapiro unilaterally announced changes to Pennsylvania's voter registration laws, individuals who wished to register to vote when applying for or updating a driver's license, would be led through a series of questions on a photo screen. Screen 2 asked, "Are you a citizen of the United States?" If the user pressed 2 – for "No," then the system would exit from the motor voter questions.  If users answered "Yes," they were then asked if they were already registered to vote, and then they were asked

"Do you wish to apply to register to vote now?" See Marks Decl. ¶ 10; See also Ex. 1. Users affirmatively indicated their **<u>request</u>** to register in this way.  This method was consistent with state law. Following Governor Shapiro's edict, all are now opted into the voter registration process. No "request" to register is made because this statutory requirement was unilaterally eliminated through a press release from the Governor's office. (FAC, Ex. F).

The Defendants' claim that automatic voter registration simply constitutes a "2023 Redesign" is disingenuous. The state legislature, in its deliberative process, has, in fact, opted not to pass a regulatory scheme that mirrors what Governor Shapiro has attempted to do by fiat. Through the years, several bills establishing automatic voter registration have been introduced in the proper body of government for those policy considerations, but on each occasion, the proposal failed in the legislature.

Most recently, in January 2023, Pennsylvania State Senator Hughes introduced Senate Bill 20 in an effort to enact automatic voter registration. (FAC, Ex. D-E). Like similar bills in prior legislative sessions, the bill failed because the legislature representing the citizens of Pennsylvania did not support automatic voter registration.

Moreover, Defendants' claim that this change was made to present information to applicants "in clearer language" similarly fails. ECF 42-1, Marks Decl. ¶ 12. Screen 2 of the redesigned form asks:

"Are you a citizen of the United States?"

Users who press 1 for yes, are directed to screen 3 where they are told that they will be registered to vote automatically unless they opt out of the process. Users who press 2 for no, indicating that they are NOT a citizen of the United States, **are no longer exited from the**

**system of motor voter questions** but are taken to another screen—screen 13, which is titled, "Cancel Your New or Updated Voter Registration Application."  ECF 42-1, Ex. 2.

Pursuant to the instructions provided on the "redesigned" form, Screen 13 only appears if a user pressed 9 on Screen 3; 6 on Screen 10; or 2 on Screen 11 – NO mention is made of display of this screen through pressing option #2 on Screen 2. ECF 42-1, Ex. 2. These instructions create ambiguity, as does the language that purports to "cancel" a new or updated application. Moreover, when asked again on Screen 13 whether a user is sure that he/she wishes to cancel the process, there is no indication of what happens when a user answers "No." So, if a user says that the user is not a U.S. citizen, and answers "No" on Screen 13 to the question of whether the user is sure that the user wishes to cancel – it is unclear as to which screen that person is directed, as the only information provided is if "Yes" is selected.

Although the Defendants also seem to suggest that their overreach is justified because voter registration numbers have increased, "[t]he point is not one of motives, but of constitutional authority, for which the best of motives is not a substitute." *Panama Refining Co. v. Ryan*, 55 S.Ct. 241, 248 (1935).

As to the HAVA directive, Defendants rely on 25 Pa.C.S.A. § 1803(a) as support for their authority to issue directives that are not compliant with Pennsylvania law.

25 Pa.C.S.A § 1803(a) states:

> The department shall have the authority to take any actions, including the authority to audit the registration records of a commission, which are necessary to ensure compliance and participation by the commissions.

This provision does not empower the department to advise county election officials to disregard clear provisions of Pennsylvania law.

The Directive Concerning HAVA-Matching directs Pennsylvania counties to register applicants even if an applicant provides invalid identification. (FAC, Ex B). Based on this directive, if an applicant simply affirms that the applicant meets the age, citizenship, and residency requirements to become a qualified elector, the applicant must be registered — regardless of verification of identity. The directive specifically states:

> Counties must ensure their procedures comply with state and federal law, which means that if there are no independent grounds to reject a voter registration application other than a non-match, the application may *not* be rejected and must be processed like all other applications.

Pennsylvania law, however, clearly requires verification of both identity and eligibility in the voter registration process[1]:

25 Pa.C.S.A. § 1328(a) requires the county, upon receiving a voter registration application, to determine whether applications are complete and whether applicants are qualified.  The qualifications for electors are constitutionally defined in Pennsylvania. In order to register to vote, one must be 18 years of age, a U.S. citizen, a Pennsylvania resident for at least 90 days immediately preceding an election, and have resided in the election district where he intends to offer a vote at least 30 days preceding the election. Pa. Const. art. VII, § 1.

Section 303(a) of HAVA (Help America Vote Act), 52 U.S.C. § 20901, states that voter registration applicants are required to provide a valid driver's license number, or, for applicants who do not have a valid driver's license, the last four digits of his Social Security number.

Under Pennsylvania law, an application must be rejected if incomplete or

---

[1] Ironically, Defendants cite to this statutory provision as support for their claim that the "2023 Redesign" is still an application because county commissions can reject a registration application…if "incomplete or inconsistent" or "the applicant is not qualified."  ECF 42 at 4.

inconsistent.

25 Pa.C.S.A. § 1328(b) specifically states:

> Decision.—A commission shall…:
>
> (2)    Reject a voter registration application, indicate the rejection and the reasons for the rejection on the application and notify the applicant…if the commission finds during its examination under subsection (a) any of the following:
>
> > (i)    the application was not properly completed and after reasonable efforts by the commission to ascertain the necessary information, the application remains incomplete or inconsistent.
> >
> > (ii)    The applicant is not a qualified elector.

The department's directive instructs counties to register even if the application information does not match government records. In its illegal directive, the department relies on a misinterpretation of a district court case from Washington state as justification for its overreach. (FAC, Ex. C). According to *P.R. v. Washington Association of Churches,* 492 F.Supp.2d 1264 (W.D. Wash. 2006), if the state is unable to match an applicant's driver's license or social security number, the applicant "shall be provisionally registered to vote." *Id.* (FAC,. Ex. C.)

The directive, unilaterally issued to Pennsylvania counties, directing the counties to process incomplete or inconsistent voter registration applications "like all other applications" violates clear provisions of Pennsylvania law.  Moreover, the case relied upon by the DOS has no binding authority in Pennsylvania and only directed Washington to **provisionally** register applicants with non-matches while they attempted to obtain proper identification. Accordingly, the Directive attempting to regulate the registration of Pennsylvania electors is

unlawful.

Even if the Defendants believed that Pennsylvania law was no longer compliant with federal law, the proper remedy would be through the legislative branch, repealing and drafting new legislation. Through this Directive, Plaintiffs have been denied a voting opportunity to accept or reject a voter registration schema that, under the U.S. and Pennsylvania constitutions can only originate in the Pennsylvania legislature or U.S. Congress.

## IV.   Federal Court is the Appropriate Tribunal

Defendants assert that state court is the appropriate tribunal for this action because this case involves "questions about the scope of authority that the legislature has assigned." ECF 42, at 18. Once again, Defendants mischaracterize Plaintiffs' claims. This case arises under the Elections and Electors Clauses of the U.S. Constitution. The Plaintiffs are real persons who have particular rights granted to them through these constitutional provisions. 42 U.S.C. § 1983 protects persons from the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The Plaintiffs, as state legislators, have particular civil rights that are specifically granted to only 253 "real persons" in the Commonwealth of Pennsylvania. By directing and effectuating their respective election regulation schema, each Defendant has established and enforced undeliberated election law, and each plaintiff has been denied the opportunity to exercise that individual's constitutionally vested authority. Moreover, in *Moore v. Harper*, 600 U.S. 1 (2023), the United States Supreme Court held:

> State courts retain the authority to apply state constitutional restraints when legislatures act under the power conferred upon them by the Elections Clause. But federal courts must not abandon their own duty to exercise judicial review.

*Id.* at 29-20. Federal court is the appropriate tribunal for this case.

## V.   Irreparable Injury Has Been Demonstrated

Defendants' final argument rests upon whether the Plaintiffs have suffered an irreparable injury based upon the delay in filing this action. Plaintiffs' claims are predicated on the U.S. Supreme Court's recent ruling in *Moore v. Harper*, 600 U.S. 1 (2023) which recognized state legislative powers under the Elections Clause as "the entity assigned particular authority" by the federal Constitution.  Pursuant to 42 U.S.C. § 1983, and according to the legal analysis provided above, the violation of those federal rights by state executive officials is continuing irreparable injury and is actionable.

Respectfully submitted, this 15th Day of March.

/s/ Erick G. Kaardal
By: Erick G. Kaardal (MN No. 229647)
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
(612) 341-1074
kaardal@mklaw.com


/s/ Karen DiDalvo
By: Karen DiSalvo (PA No. 80309)
Election Research Institute
Of Counsel, Mohrman, Kaardal & Erickson, P.A.
1451 Quentin Road, Suite 232
Lebanon, PA 17042
717-281-1776
kd@election-institute.com


/s/ Richard Lawson
By: Richard Lawson (Pro Hac Vice)
AMERICA FIRST POLICY INSTITUTE

Jessica H. Steinmann (Pro Hac Vice)
Patricia Nation (Pro Hac Vice)
Jase Panebianco (Pro Hac Vice)
1001 Pennsylvania Ave. N.W., St. 530
Washington, D.C. 20004
(832) 535-7332
jsteinmann@americafirstpolicy.com

*Attorneys for Plaintiffs*

**Word Count Certification**

I certify that this brief contains 4,876 words and therefore complies with Local Rule 7.8(b)(2). In making this certificate, I have relied on the word count of the word-processing system used to prepare this brief.

*/s/ Erick Kaardal*

**Certificate of Service**

I hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

March 15, 2024

*/s/ Erick G. Kaardal*
By: Erick G. Kaardal (MN No. 229647)
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
(612) 341-1074
kaardal@mklaw.com