# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **REPRESENTATIVE DAWN KEEFER, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al.,**<br><br>Defendants. | Civil Action No.: 24-cv-00147 |

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## Table of Contents

Table of Authorities ..................................................................................................... 3

BACKGROUND ............................................................................................................ 1

STANDARD OF REVIEW ............................................................................................ 1

ARGUMENT ................................................................................................................. 2

I.      This Court has Subject Matter Jurisdiction Because Plaintiffs Have Standing
        as both Legislators and Candidates. ................................................................... 2

        A.      Plaintiffs have standing as individual legislators. ........................................ 2

        B.      Plaintiffs have standing to sue as candidates. ............................................. 6

II.     Plaintiffs Have Stated a Claim Upon Which Relief Can Be Granted .................. 9

        A.      EO 14019 constitutes an unconstitutional presidential re-election
                instrument. .................................................................................................... 9

        B.      The Federal Defendants' effectuation of EO 14019 is unsupported by
                Federal law. ................................................................................................. 11

        C.      Plaintiffs have pled a cognizable injury that is only redressable by a
                favorable decision. ...................................................................................... 14

        D.      Plaintiffs have pled sufficient facts such that its claims for violations of
                the APA will not only survive Defendants' MTD, but also succeed on
                the merits. .................................................................................................... 15

III.    The Balance of the Equities Favors Granting the Preliminary Injunction
        Motion. ............................................................................................................... 17

# Table of Authorities

Page(s)

## Cases

*Albence v. Higgin,*
   295 A.3d 1065 (Del. 2022).................................................................................... 12, 13

*Am. Legion v. Am. Humanist Ass'n,*
   139 S. Ct. 2067 (2019) ..............................................................................................7

*Americold Realty Tr. v. Conagra Foods, Inc.,*
   577 U.S. 378 (2016) ...................................................................................................9

*Armstrong v. Exceptional Child,*
   575 U.S. 320 (2015) .................................................................................................19

*Bower v. Ducey,*
   506 F.Supp.3d 699 (D.Az. 2020) ............................................................................12

*Burwell v Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014) .................................................................................................10

*Califano v. Sanders,*
   430 U.S. 99 ..............................................................................................................20

*Carson v. Simon,*
   978 F.3d 1051 (8th Cir. 2020) .................................................................................12

*Coleman v. Miller,*
   307 U.S. 433 (1939) ................................................................................................8, 9

*Crowder v. Kitagawa,*
   81 F.3d 1480 (9th Cir. 1996) ...................................................................................23

*Freedom Watch, Inc. v. Obama,*
   807 F. Supp. 2d 28 (D.D.C. 2011) ..........................................................................19

*Freedom Watch, Inc. v. Obama,*
   859 F. Supp. 2d 169 (D.D.C. 2012) ........................................................................19

*Fumo v. City of Phila.,*
   600 Pa. 322 (2009) ..................................................................................................10

*Goode v. City of Philadelphia,*
   539 F.3d 311 (3d Cir. 2008)......................................................................................11

*Gould Elecs. Inc. v. U.S.,*
  220 F.3d 169 (3rd Cir. 2000) ............................................................................6

*Grigby v. Kane,*
  205 F.Supp.2d 453 (M.D. Pa. 2003).............................................................14

*Jaffee v. United States,*
  592 F.2d 712 (3d Cir. 1979).........................................................................20

*Kerr v. Hickenlooper,*
  744 F.3d 1156 (10th Cir. 2014) .....................................................................9

*Kost v. Kozakiewicz,*
  1 F.3d 176 (3d Cir. 1993) .............................................................................14

*La. Pub. Serv. Comm'n v. FCC,*
  476 U.S. 355, (1986) .....................................................................................22

*Moore v. Harper,*
  143 S.Ct. 2065 (2023) .................................................................................8, 9

*N.J. Coalition of Rooming and Boarding House Owners v. Mayor*
  *and Council of City of Ashbury Park,*
  152 F.3d 217 (3d Cir. 1998)............................................................................7

*Nat'l Bd. of Med. Examiners v. Ramsey,*
  141 S.Ct. 1517 (2021) .....................................................................................7

*Niere v. St. Louis County, Missouri,*
  305 F.3d 834 (8th Cir. 2002) ........................................................................13

*Obama for America v. Husted,*
  697 F.3d 423 (6th Cir. 2012) ........................................................................16

*Petruska v. Gannon Univ.,*
  462 F.3d 294 (3d Cir. 2006)............................................................................6

*Phillips v. County of Allegheny,*
  515 F.3d 224 (3d Cir. 2008)............................................................................7

*Project Vote v. Kelly,*
  805 F. Supp.2d 152 (W.D. Pa. 2011) ...........................................................13

*R.I. Dep't of Envtl. Mgmt,*
  304 F.3d 31 (1st Cir. 2002) ..........................................................................20

*Raines v. Byrd,*
    521 U.S. 811 (1997) ..................................................................................9

*Ramsey v. Nat'l Bd. of Med. Examiners,*
    968 F.3d 251 (3d Cir. 2020)........................................................................7

*Russell v. DeJongh,*
    491 F.3d 130 (3d Cir. 2007)......................................................................11

*Sak v. City of Aurelia, Iowa,*
    832 F.Supp.2d 1026 (N.D.Iowa, 2011) ....................................................23

*Smiley v. Holm,*
    285 U.S. 355 (1932) .........................................................................11, 17

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ................................................................................23

*Trump v. Wisconsin Elections Commission,*
    893 F.3d 919 (7th Cir. 2020) ...................................................................12

*Virginia House of Delegates v. Bethune-Hill,*
    139 S.Ct. 1945 (2019) .............................................................................10

*Wilt v. Beal,*
    363 A.2d, 876 (Pa. Commw. Ct.. 1976)...................................................10

*Wood v. Raffensperger,*
    981 F.3d 1307 (11th Cir. 2020).................................................................12

*Yaw v. Delaware River Basin Commission,*
    49 F.4th 302 (3d Cir 2022) ......................................................................11

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ................................................................................18

**Statutes**

5 U.S.C. § 553 ..........................................................................................21

5 U.S.C. § 702(2)(B) .................................................................................20

5 U.S.C. § 702(2)(C) .................................................................................21

5 U.S.C. § 706(2)(A)..................................................................................20

25 Pa. C.S.A. § 1321 ................................................................................................ 13, 18

25 Pa. C.S.A. § 1325(d) ................................................................................................. 13

28 U.S.C. § 1331 ............................................................................................................ 19

28 U.S.C. § 1361 ............................................................................................................ 19

52 U.S.C. § 20506(a) ..................................................................................................... 18

52 U.S.C. § 20901(a) ..................................................................................................... 22

52 U.S.C. §§ 20502, 20506 ........................................................................................... 22

Pa. Const., Art. II, § 2 .................................................................................................... 9

U.S. Const. Art. I, § 4, cl. 1 ........................................................................................... 22

U.S. Const. art. II ........................................................................................................... 18

U.S. Const. art. VI, cl. 2 .......................................................................................... 17, 18

## Rules

Fed. R. Civ. P.Rule 12(1)(b) ............................................................................................ 6

Fed. R. Civ. P.Rule 12(b)(1) ........................................................................................... 6

Fed. R. Civ. P.Rule 12(b)(6) ........................................................................................... 6

## Other Authorities

14 Fed. Prac. & Proc. Juris. § 3655 (4th ed.) ............................................................... 20

Senate Bill 982 ............................................................................................................... 16

The Federal Defendants have exceeded their constitutional authority by interfering with the operation of Pennsylvania's election system through the issuance and implementation of Executive Order 14019 ("EO 14019").

## BACKGROUND

On February 16, 2024, Plaintiffs filed their First Amended Complaint ("FAC"), ECF 18, seeking, *inter alia*, declaratory and injunctive relief against EO 14019. On March 1, 2024, the Federal Defendants, *see* ECF 40, n.1 ("Federal Defendants" or "Defendants"), filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion"). Supporting this motion, the Federal Defendants filed their Memorandum in Opposition to Plaintiffs' Preliminary Injunction Motion and In Support of Federal Defendants' Motion to Dismiss (the "Memorandum"). ECF 41. Plaintiffs here respond to the Federal Defendants' arguments supporting the motion to dismiss and reply to their arguments against granting Plaintiffs' preliminary injunction motion.

## STANDARD OF REVIEW

When considering a facial attack under a Rule 12(b)(1) motion and a Rule 12(b)(6) motion "the standard is the same[.]" *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006). For Rule 12(1)(b) motions, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3rd Cir. 2000). For Rule 12(b)(6) motions, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

In order to receive injunctive relief, the plaintiffs must show that (1) the plaintiffs are likely to prevail on the merits of their claims; (2) the extent to which the moving party is being irreparably harmed by the complained-of-conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. See *Ramsey v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 256 (3d Cir. 2020), *cert. denied*, 141 S.Ct. 1517 (2021).

## ARGUMENT

For the following reasons, the motion to dismiss should be denied and the motion for preliminary injunction should be granted.

## I.   This Court has Subject Matter Jurisdiction Because Plaintiffs Have Standing as both Legislators and Candidates.

Defendants' argument against subject matter jurisdiction rests solely on the assertion that Plaintiffs' lack standing. ECF 41 at 2, 6, 11. When examining alternative theories of standing, a court need only find sufficiency in one to establish jurisdiction. *N.J. Coalition of Rooming and Boarding House Owners v. Mayor and Council of City of Ashbury Park*, 152 F.3d 217, 220 (3d Cir. 1998).

### A.   Plaintiffs have standing as individual legislators.

The "usual demands of Article III, requiring a real controversy with real impact on real persons to make a federal case out of it," have been met here. *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2068 (2019).  EO 14019 injures Plaintiffs by depriving them of their supreme powers under the Elections Clause and Electors Clause.

The Defendants inaccurately present case law precedent on standing under *Raines* and *Virginia House of Delegates*. The Defendants cite no cases precluding individual state legislator standing. And, the Defendants fail to cite the adverse authorities of *Moore* and *Coleman*. In *Moore*, the U.S. Supreme Court affirmed the supreme powers given to the state legislatures under the Elections Clause:

> Thus, when a state legislature carries out its federal constitutional power to prescribe rules regulating federal elections, it acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution.

*Moore v. Harper*, 143 S.Ct. 2065, 2069 (2023). And, in *Coleman,* the Supreme Court recognized individual state legislator standing based on an individual state legislator's "right and privilege under the Constitution of the United States to have their votes given effect":

> Here, the plaintiffs include twenty senators, whose votes against ratification have been overridden and virtually held for naught…We think that these senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes. Petitioners come directly within the provisions of the statute governing our appellate jurisdiction. They have set up and claimed a right and privilege under the Constitution of the United States to have their votes given effect.

*Coleman v. Miller*, 307 U.S. 433, 438 (1939) (involving Article V constitutional amendment process).

The U.S. Supreme Court, in the *Raines* case, cited by Federal Defendants (ECF 41, at 11-12), where individual Congressional member standing was denied, continued to recognize *Coleman* individual state legislator standing:

> It is obvious, then, that our holding in *Coleman* stands (at most, see n. 8, *infra* ) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.

*Raines v. Byrd,* 521 U.S. 811, 823 (1997). *See Kerr v. Hickenlooper***,** 744 F.3d 1156, 1167 (10th Cir. 2014) (individual state legislator standing existed under the U.S. Constitution's Republican Government Guarantee Clause of Article IV, § 4), *judgment vacated on other grounds,* 576 U.S. 1079, 1079 (U.S. 2015).

Moreover, in *Moore*, 143 S.Ct. at 2069, the U.S. Supreme Court clarified that when the state legislature carries out its constitutional power it is acting as the "entity assigned particular authority by the Federal Constitution." Pennsylvania's Constitution describes that entity with particular authority as the General Assembly, the state legislature, which is made up of "Members" who "shall be chosen at the general election." Pa. Const., Art. II, § 2. So, the real persons who make up the entity are the individuals elected as state legislators. And, "[h]istorically, the relevant citizens for jurisdictional purposes in a suit involving a "mere legal entity" were that entity's "members," or the "real persons who come into court"" *Americold Realty Tr. v. Conagra Foods, Inc.,* 577 U.S. 378, 378 (2016).

Under *Coleman,* the Plaintiffs have standing as real persons who are part of an exclusive entity, the state legislature of Pennsylvania. Each individual legislator has a right to protect their constitutional rights and privileges to participate in making laws regarding the manner of elections. And, each individual legislator has standing if those federal constitutional rights are violated. Pennsylvania legislators are a small, particular class of citizens who make up the state-constitutionally-authorized and federal-constitutionally-recognized **entity**, the "legislature." Only 253 of Pennsylvania's 13 million citizens are members of the "legislature." The Elections and the Electors Clauses, under *Moore,* grant

4

those 253 state legislators constitutional rights to determine the times, places, and manner of elections and to choose the method of presidential elector selection.

The U.S. Supreme Court in *Burwell v Hobby Lobby*, stated, "When rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people." 573 U.S. 682, 707 (2014). Accordingly, the Pennsylvania Supreme Court has recognized individual state legislator standing for all legal topics. *Fumo v. City of Phila.*, 600 Pa. 322, 339-340 (2009) (quoting *Wilt v. Beal*, 363 A.2d, 876, 881 (Pa. Commw. Ct.. 1976)).

Under the test in *Virginia House of Delegates*, cited by Federal Defendants (ECF 41, at 11), the plaintiffs meet the requirements for federal standing. Justice Ginsberg wrote, "Virginia, had it so chosen, could have authorized the House to litigate on the State's behalf, either generally or in a defined class of cases. Some states have done just that." 139 S.Ct. 1945, 1952 (2019). Pennsylvania has "done just that." *Id.* Pennsylvania is one such state where there is a defined class of cases that explicitly give individual legislators standing:

> What emerges from this review of the federal cases is the principle that legislators, as legislators, are granted standing to challenge executive actions when specific powers unique to their functions under the Constitution are diminished or interfered with.

*Wilt*, 363 A.2d at 881. The Defendants protest that federal court standing requirements can be more strict than state court standing requirements. ECF 41, at 14-15. But, according to *Virginia House of Delegates,* consistent with *Coleman,* Pennsylvania state legislators, individually, have federal standing to bring their Elections and Electors Clauses claims against the unconstitutional EO 14019.

To be sure, "[t]he courts have drawn a distinction, however, between a public official's mere disobedience of a law for which a legislator voted—which is not an injury in fact—and an official's "distortion of the process by which a bill becomes law" by nullifying a legislator's vote or depriving a legislator of an opportunity to vote—which is an injury in fact." *Russell v. DeJongh,* 491 F.3d 130, 135 (3d Cir. 2007) Here, the Defendants have done both-- which satisfies the injury-in-fact requirement. Defendants cannot usurp the rights of the legislators to determine the manner of elections including the authority to regulate "notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices… All this is comprised in the subject of 'times, places, and manner of holding elections,' and involves lawmaking in its essential features and most important aspect." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). EO 14019 injures Plaintiffs by depriving them of their supreme powers under the Elections Clause and Electors Clause.

Finally, the Defendants discuss the Third Circuit decisions in *Goode* and *Yaw.* ECF 41, at 12-13.  Both cases are distinguishable from the Plaintiffs' case.  In *Goode v. City of Philadelphia,* 539 F.3d 311 (3d Cir. 2008), the plaintiffs were city councilmembers, which means they would not have a standing argument based on their supreme powers under the Elections and Electors Clauses.  In *Yaw v. Delaware River Basin Commission,* 49 F.4th 302, 308 (3d Cir 2022), although two plaintiffs were Pennsylvania State Senators, the case was about a "fracking ban" so, a standing argument based on the State Senators' supreme powers under the Elections and Electors Clauses was not at issue.

## B. Plaintiffs have standing to sue as candidates.

Defendants assert that, despite EO 14019 unlawfully operating in Pennsylvania, the

candidate Plaintiffs do not have a "certainly impending" injury in their respective upcoming elections. ECF 41, at 10. However, as the FAC makes clear, every action taken to further the EO in the Commonwealth is an act which undermines the integrity of Pennsylvania's elections. The FAC details how federal agencies in the Commonwealth are attempting to implement the EO (FAC ¶¶ 72-84), and details how neither Pennsylvania's voter registration regulations (FAC ¶¶ 47, 58-66, 107), nor the United States Constitution (FAC ¶¶ 31, 39) nor any Congressional act (FAC ¶¶ 44) authorize the implementation of the EO in Pennsylvania.

Conducting an election in an unlawful manner affects a candidate in a "concrete and particularized" manner and affects the candidate in "a personal and individual way." *Trump v. Wisconsin Elections Commission*, 893 F.3d 919, 924 (7th Cir. 2020). Further, whether the issue is the casting of an unlawful absentee ballot or an unlawful voter registration, the impact is the same and may be challenged by a candidate. *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020) (presidential electors had candidate standing when executive officials usurped state legislative authority under the Electors Clause by extending the legislatively-enacted election day deadline for receipt of mailed absentee ballots); *Albence v. Higgin*, 295 A.3d 1065, 1087 (Del. 2022) ("for standing purposes, it matters little whether the ballots are unlawful because they are constitutionally unauthorized absentee ballots or because they are cast by unlawfully registered voters"); *see also, Bower v. Ducey*, 506 F.Supp.3d 699, 710 (D.Az. 2020) (rejecting claim by electors on standing grounds court observes, "Notably, the Republican candidate whose name was on the ballot is not a plaintiff in this case."); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (in rejecting claim by a voter with only a generalized grievance, the court observed that if the plaintiff, "were a political candidate harmed by the recount, he would

satisfy this requirement because he could assert a personal, distinct injury."). Candidates have a clear and protected interest in going through an election process that is conducted in compliance with election laws. *Albence*, 295 A.3d at 1087-1088.

In order to combat fraud and abuse, states may lawfully require eligible citizens to register before voting. *See, e.g., Niere v. St. Louis County, Missouri*, 305 F.3d 834, 838 (8th Cir. 2002). To preserve the integrity of the election process, courts have long upheld state efforts to ensure voter registration efforts are free from fraud. *See, e.g., Project Vote v. Kelly*, 805 F. Supp.2d 152, 185 (W.D. Pa. 2011). The Pennsylvania voter registration regime is a carefully constructed effort by the General Assembly to ensure that Commonwealth elections are fair, orderly, and free from fraud.

To this end, the voter registration regime carefully sets out the locations and means by which a person may register to vote. 25 Pa. C.S.A. § 1321. Importantly, when a registration takes place before an official authorized by the General Assembly to accept a registration, staff may not seek to influence the party selection of the registrant, display a preference to a party, take any action to discourage an applicant to not register, nor make any statement suggesting that the government benefit they are seeking is connected with the decision to register. 25 Pa. C.S.A. § 1325(d).

When EO 14019 is implemented—in any fashion—within the Commonwealth, it results in the registration of voters outside of this carefully constructed and constitutionally-authorized registration regime. As the General Assembly made no provision for federal officials (outside of military recruitment offices) to engage in registration efforts, these regulations are simply inapplicable to federal officials implementing the EO 14019 in

Pennsylvania. If a federal official does any of these things—influences a registration or party selection decision, displays a party preference, ties the receipt of federal benefits to a registration decision—there is no question at all that the pool of Pennsylvania voters would have been manipulated by legally unauthorized, deceptive practices, undermining the integrity of elections across the Commonwealth. Accordingly, the implementation of EO 14019 in Pennsylvania establishes a clear concrete injury to the candidate Plaintiffs' personal interests in a fair election, compliant with established law, and free from fraudulent interference.

## II.   Plaintiffs Have Stated a Claim Upon Which Relief Can Be Granted

As a threshold matter, it is inappropriate at the motion to dismiss stage for the Court to come to any conclusion on the merits. As this Court has held: "[t]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Grigby v. Kane*, 205 F.Supp.2d 453, 456 (M.D. Pa. 2003) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). That said, as Defendants' Memorandum serves also as an opposition to Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs here respond to those merit challenges.

### A.   EO 14019 constitutes an unconstitutional presidential re-election instrument.

The Federal Defendants' memorandum is pollyannaish—pleasantly, unrealistically optimistic—about EO14019's purposes.  ECF 41 at 1, 3-4.  Defendants claim the President doesn't need authority from either Congress or the state legislature to direct federal agencies' voter registration drives (VRD) and get-out-the-vote campaigns (GOTV) in Pennsylvania. ECF 41, at 18-19.

9

Apparently, relying on this bad legal advice, President Biden in EO 14019 picks and chooses specific demographic groups to target for federal agencies' voter-registration drives (VRD) and get-out-the-vote campaigns (GOTV) in Pennsylvania:

Some of the Pennsylvania groups that EO targets in Pennsylvania vote more often for Democratic Party candidates than Republican Party candidates providing a non-competitive advantage for the President's re-election campaign.  For example, federal employees, identified in Section 6 of the EO, tend to vote for Democratic candidates.    See: https://www.govexec.com/workforce/2022/11/poll-      federal-employees-slightly-prefer-democrats-upcoming-midterms/378843/ (last visited: Mar. 15, 2024). From section 10, Native Americans tend to vote for Democratic candidates.   See: https://www.brookings.edu/ articles/native-americans-support-democrats-over-republicans-across-house-and-senate-races/(last visited: Mar. 15, 2024).

Likewise, college students and young people supported Democrat candidates by margin of 28% in 2022.   See: https://www.nytimes.com/2022/11/12/us/young-voter-turnout-election-democrats.html (last visited: Mar. 15, 2024) Unsurprisingly, the US Department of Education's EO 14019 Action Plan encourages universities to increase turnout and partner with third-party organizations. See: https://www2.ed.gov/documents/press-releases/student-voter-toolkit.pdf (last visited: Mar. 15, 2024) So, EO 14019 is President Biden's re-election instrument.

But, as President Biden knows from a 2012 Obama-Biden campaign case, the government unlawfully discriminates when it "pick[s] and choose[s] among groups of similarly situated voters to dole out special voting privileges." *Obama for America v. Husted*, 697 F.3d 423,

435–36 (6ᵗʰ Cir. 2012).  In that case, the Sixth Circuit held that states were not permitted to pick and choose 'military voters' among groups of similarly situated voters to dole out special voting privileges:

> Equally worrisome would be the result if states were permitted to pick and choose among groups of similarly situated voters to dole out special voting privileges.

697 F.3d at 435–36.  Similarly, EO 14019 is unconstitutional because it picks and chooses demographic groups in Pennsylvania for targeted VRD and GOTV initiatives.

EO 14019 also directs federal agencies in Pennsylvania to collaborate with "nonpartisan third-party organizations" in direct contrast to a 2022 Pennsylvania law that passed to specifically prohibit third party organizations from influencing elections.  Senate Bill 982, which was passed as part of Act 88, does not authorize the third-party efforts encouraged by Executive Order. FAC ¶¶ 59-66.

**B. The Federal Defendants' effectuation of EO 14019 is unsupported by Federal law.**

Defendants concede that the Elections Clause vests state legislatures with the power to prescribe the procedural mechanisms for holding elections. ECF 41 at 11. While Defendants attempt to narrow this category of power to *counting votes* and *publishing election returns*, ECF 41, at 11, it is self-evident that the Elections Clause likewise contemplates a power to regulate voter registration. As the Supreme Court commented in *Arizona v. Inter Tribal Council of Arizona, Inc.*, "the terms 'Times, Places, and Manner' 'embrace authority to provide a complete code for congressional elections,' including regulations relating to 'registration.'" 570 U.S. 1, 2 (2013) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). While it is true that EO

14019 does not "determine who is allowed to vote or where they may vote[,]" ECF 41, at 11, it is equally true that EO 14019 affects the operation of voter registration in Pennsylvania.

Plaintiffs' FAC alleges that the Federal Defendants, pursuant to EO 14019, have conducted voter registration efforts and established voter registration operations in violation of Pennsylvania voter registration law. FAC ¶¶ 67, 72-84, 94, 104-108. To rebut this, Defendants cite four federal agencies that have established guidance or policy that affects the registration of voters. ECF 41, at 3-4, n.3. Defendants suggest that the inclusion of language asking participants to *consult with legal counsel* or *in compliance with state law* abates Plaintiffs allegations. ECF 41, at 4. What is noticeably lacking is any assertion that this language is of any effect, or that voter registration by Defendants pursuant to EO 14019 is not taking place in Pennsylvania. EO 14019 has established a schema where federal agencies assert a positive authority to register voters in Pennsylvania and places the onus of complying with Pennsylvania law upon Pennsylvania's health centers and public housing agencies. *See* ECF 41, at 3-4.

Defendants attempt to rebut Plaintiffs' claims by asserting that EO 14019 did not require congressional approval, and that the Supremacy Clause, U.S. Const. art. VI, cl. 2, equates to federal executive branch primacy. ECF 41, at 13-14. Not only are these arguments inaccurate, they are also not applicable here. First, whether an Executive Order as a procedural vehicle for the exercise of executive power requires Congressional approval is an entirely separate question to whether the executive power asserted is lawfully exercised. As Justice Jackson famously wrote "[w]hen the president takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his

own constitutional powers, minus any constitutional powers of Congress over the matter." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J. concurring). Under the NVRA, Congress has made their express will known and has delegated to the states the choice of whether to designate federal agencies as voter registration agencies. 52 U.S.C. § 20506(a). Pennsylvania has chosen to refuse the aid of federal agencies. 25 Pa.C.S.A. §§ 1321-25; FAC ¶¶ 120-29. Article II grants no independent authority to the executive branch to regulate elections, *see, e.g.,* U.S. Const. art. II, § 1, and EO 14019.

Insofar as EO 14019 causes federal agencies in Pennsylvania to interfere with and violate the voter registration schema established by the Commonwealth's legislature, EO 14019 has no constitutional justification or warrant of authority.  In so doing, the President and federal agencies have acted and act, ultra vires, without legal authority.

Second, Defendants fail to understand that the Supremacy Clause, U.S. Const. art VI, cl. 2, does not vest final supreme authority in the executive branch, it vests it in the Constitution itself. The Constitution vests states with supreme power to regulate federal elections, subject only to Congressional enactment. Where, as here, there is no relevant congressional enactment that would justify the Defendants' effectuation of EO 14019 within the Commonwealth, EO 14019 is without Constitutional support. In short, the Supremacy Clause supports the exact opposite proposition posited by Defendants.

Finally, Defendants hypothesize a parade of horribles under their representation of Plaintiffs' theory, ECF 41, at 12, but this merely highlights their fundamental misunderstanding of that theory. Plaintiffs seek to enjoin the Defendants from altering and preempting state authority in the regulation of elections. FAC ¶¶ 223-230. Subject only to

Congressional enactment, the Constitution positions the states, not the federal government, as the regulator and operator of state-run elections. The full participation of duly-registered lawful voters, and the political speech of government actors (or any person), *see* ECF 41, at 12, are likewise protected by that same Constitution, and are not contemplated by the state legislature's vested power, nor by the powers vested in each Plaintiff as a legislator.

### C. Plaintiffs have pled a cognizable injury that is only redressable by a favorable decision.

As described above, Plaintiffs have suffered *inter alia*, a constitutional injury. This Court has subject matter jurisdiction over such injuries. 28 U.S.C. § 1331; 28 U.S.C. § 1361 (authorizing "actions in the nature of mandamus" against the President and federal agencies); *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28 (D.D.C. 2011) (mandamus relief against President denied, but mandamus could be available against President if clear duty owed), subsequent determination, 859 F. Supp. 2d 169 (D.D.C. 2012). The authority of courts to "enjoin unconstitutional actions by state and federal officers" is a longstanding judicial remedy derived from a court's inherent equity powers. *Armstrong v. Exceptional Child*, 575 U.S. 320, 327 (2015).

Plaintiffs have no other options to remedy these injuries. Were the Defendants enjoined from interfering and altering the voter registration schema within Pennsylvania, Plaintiffs, as state legislators would no longer suffer a nullification of their Constitutional power, and, as candidates, would no longer be obliged to participate in an election tainted by Defendants' unlawful actions.

**D. Plaintiffs have pled sufficient facts such that its claims for violations of the APA will not only survive Defendants' MTD, but also succeed on the merits.**

The Plaintiffs' APA claims include that the Defendants' issuance and implementation of EO 14019 are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and without constitutional authority or ultra vires.  5 U.S.C. § 706(2)(A) prohibits federal action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 702(2)(B) prohibits federal action which is "contrary to constitutional right." And, the U.S. Supreme Court has recognized that a federal court with subject matter jurisdiction may review Government wrongdoing in a lawsuit seeking injunctive or declaratory relief against a federal officer, even when a statute does not authorize such review.  APA lawsuits under this theory are said to be seeking "nonstatutory review." § 3655 Actions Against Federal Agencies and Officers, 14 Fed. Prac. & Proc. Juris. § 3655 (4th ed.); *Califano v. Sanders*, 430 U.S. 99, 107, n.7 (legislative history to Administrative Procedure Act noted availability of nonstatutory review of agency action); *Jaffee v. United States,* 592 F.2d 712, 719 (3d Cir. 1979); *R.I. Dep't of Envtl. Mgmt*, 304 F.3d 31, 42 (1st Cir. 2002).

As detailed above, the Plaintiffs' claim that the Defendants' issuance and implementation of EO 14019 in Pennsylvania is unconstitutional because neither Congress nor the state legislature approved EO 14019. And, Plaintiffs' state a claim to relief that is plausible on its face.  5 U.S.C. § 706(2)(A) enjoins the Defendants' issuance and implementation of EO 14019 as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 702(2)(B) enjoins the Defendants' issuance and implementation

of EO 14019 as "contrary to constitutional right." § 702(2)(C) enjoins the Defendants' issuance and implementation of EO 14019 as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," And, APA nonstatutory review is available to enjoin Federal Defendants' issuance and implementation of EO 14019 because EO 14019 is ultra vires, without legal authorization.

The Defendants' arguments in response are: no reviewable "final" agency decision; no violation of Elections and Electors Clause; no Help America Vote Act (HAVA) compliance issues; no APA notice-and-comment rulemaking required. ECF 41, at 19-20.

The implementation of EO 14019 is reviewable as "final" under the APA  because EO 14019 had legal effect superseding section 3 of Executive Order 12926 of September 12, 1994 (Implementation of the National Voter Registration Act of 1993 (NVRA).

EXECUTIVE DOCUMENTS
EX. ORD. NO. 12926. IMPLEMENTATION OF NATIONAL VOTER REGISTRATION ACT OF 1993...
Sec. 3. *Acceptance of Designation.* [Superseded by Ex. Ord. No. 14019, Mar. 7, 2021, 86 F.R. 13623, set out as a note preceding section 20101 of this title, see section 4(a) of Ex. Ord. No. 14019.]

*See* https://uscode.house.gov/view.xhtml?path=/prelim@title52/subtitle2/ chapter205&edition=prelim (last visited: Mar. 14, 2024).  As a change to the existing EO 12926, EO 14019 is final.  Any public notice-and-comment requirements of 5 U.S.C. § 553 would have occurred prior to EO 14019's legal effect superseding EO 12926, section 3.

The Elections Clause and Electors Clause provide that, only state legislatures, not the Defendants, may regulate federal elections, and only Congressionally-enacted legislation may override that authority to regulate times, places and manner of federal elections. *Id.*  In fact, the NVRA only applies to 44 states, including Pennsylvania. Congressionally-enacted HAVA,

52 U.S.C. § 20901(a), prohibits use of HAVA funds by states for VRD and GOTV. ECF 18, Am. Compl. ¶ 95. These federal constitutional and statutory laws prohibit the Defendants issuance and implementation of EO 14019 in Pennsylvania. *See* 52 U.S.C. § § 20502, 20506; U.S. Const. Art. I, § 4, cl. 1.

In turn, the Defendants' arguments rely solely on "the President's Article II authority." ECF 41, at 18, as they must, because the Defendants can point to no federal law or no Pennsylvania state law authorizing Defendants' EO 14019. Lacking such a proper federal or state authorization, Defendants carrying out EO 14019 in Pennsylvania are acting *ultra vires,* without legal authority, and are liable under the APA.

Finally, a federal agency cannot act without Congressional authorization. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374, (1986). It cannot confer power upon itself. *Id.* "To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant to the agency power to override Congress." *Id.* at 374–75. Therefore, the Defendants are liable under the APA.

## III.   The Balance of the Equities Favors Granting the Preliminary Injunction Motion.

The Defendants assert that the balance of equities favors denying the preliminary injunction motion. ECF 41, at 15-16.  To the contrary, Plaintiffs have submitted substantial evidence of harms to themselves as individual legislators and candidates.  Further, there will also be harm to the full electorate of Pennsylvania if the unlawful EO is permitted to impact upcoming elections in the Commonwealth.

The Plaintiffs have suffered an injury under the APA because they have been deprived of their procedural right to notice and comment on implementation of EO 14019 as the APA

requires. "A plaintiff can show a cognizable injury if it has been deprived of 'a procedural right to protect [its] concrete interests.'" *EEOC*, 933 F.3d at 447 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). "A violation of the APA's notice-and-comment requirements is one example of a deprivation of a procedural right." *Id.*

On the other hand, the Defendants have failed to present any evidence of harm to them or the public.  The Defendants' failure to comply with the APA's notice-and-comment requirements to benefit the public nullifies the Defendants' argument that any delay in filing suit shows a lack of ongoing harm to Plaintiffs. Such notice may have led to no EO 14019 and, therefore, no lawsuit. There is no harm to the government or public enjoining an unconstitutional EO. Generally, when there is a difference between a Congressionally-identified public interest and a specifically-identified public interest, the Court must ensure that the Congressionally-identified public interest prevails.  *See Crowder v. Kitagawa,* 81 F.3d 1480 (9th Cir. 1996)("[I]t is incumbent upon the courts to insure that the mandate of federal law is achieved); *Sak v. City of Aurelia, Iowa,* 832 F.Supp.2d 1026, 1046-47 (N.D.Iowa, 2011). In this case, granting prospective declaratory and injunctive relief is in the national public interest.

Respectfully submitted, this 15th Day of March.

/s/ Erick G. Kaardal
By: Erick G. Kaardal (MN No. 229647)
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
(612) 341-1074
kaardal@mklaw.com

*/s/ Karen DiDalvo*
By: Karen DiSalvo (PA No. 80309)
Election Research Institute
Of Counsel, Mohrman, Kaardal & Erickson, P.A.
1451 Quentin Road, Suite 232
Lebanon, PA 17042
717-281-1776
kd@election-institute.com


*/s/ Richard Lawson*
By: Richard Lawson (Pro Hac Vice)
AMERICA FIRST POLICY INSTITUTE
Jessica H. Steinmann (Pro Hac Vice)
Patricia Nation (Pro Hac Vice)
Jase Panebianco (Pro Hac Vice)
1001 Pennsylvania Ave. N.W., St. 530
Washington, D.C. 20004
(832) 535-7332
jsteinmann@americafirstpolicy.com


*Attorneys for Plaintiffs*

## Word Count Certification

I certify that this brief contains 4,951 words and therefore complies with Local Rule 7.8(b)(2). In making this certificate, I have relied on the word count of the word-processing system used to prepare this brief.

*/s/ Erick Kaardal*

## Certificate of Service

I hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

March 15, 2024

*/s/ Erick G. Kaardal*
By: Erick G. Kaardal (MN No. 229647)
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
(612) 341-1074
kaardal@mklaw.com