UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN KEEFER, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JOSEPH R. BIDEN, *et al.*,<br><br>　　　　　Defendants. | No. 1:24-cv-147<br>Judge Jennifer P. Wilson |

**BRIEF IN SUPPORT OF MOTION TO DISMISS FILED BY
GOVERNOR JOSH SHAPIRO, SECRETARY OF THE
COMMONWEALTH AL SCHMIDT, AND DEPUTY SECRETARY
JONATHAN MARKS**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................ii

Introduction ............................................................................................1

Background .............................................................................................2

Standard of Review ...............................................................................5

Argument ..................................................................................................6

   I.     Plaintiffs Lack Standing ..........................................................6

   II.    Plaintiffs Lack a Cause of Action.......................................17

   III.   Plaintiffs' Claims Lack Merit ..............................................19

Conclusion ............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Allegheny Reprod. Health Ctr. v. Pennsylvania Dep't of Hum. Servs.*, -- A.3d --, No. 26 MAP 2021, 2024 WL 318389 (Pa. Jan. 29, 2024) ................................................................. 16

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787 (2015) ................................................................. 8

*Bognet v. Sec'y of the Commonwealth*, 980 F.3d 336 (3d Cir. 2020) ........................................................................... 11, 17

*Bowyer v. Ducey*, 506 F. Supp. 3d 699 (D. Ariz. 2020) ............................ 17

*Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628 (3d Cir. 1991) ................................................................................. 21

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005) ................................................................................. 18

*Coleman v. Miller*, 307 U.S. 433 (1939) ................................................. 12

*Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018) ............ 10, 11, 12

*Fair Fight Action, Inc. v. Raffensperger*, 593 F. Supp. 3d 1320 (N.D. Ga. 2021) .................................................... 23, 24

*Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989) ............................................................................. 18

*Hickenlooper v. Kerr*, 576 U.S. 1079 (2015) ........................................... 13

*Kerr v. Hickenlooper*, 824 F.3d 1207 (10th Cir. 2016) ............................ 14

*Kerr v. Hicklooper*, 744 F.3d 1156 (10th Cir. 2014) ................................ 13

*King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020) ....................... 17

*Lance v. Coffman*, 549 U.S. 437 (2007) .................................................. 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................ 7

*Markham v. Wolf*, 136 A.3d 134 (Pa. 2016) ............................................. 16

*Merrill v. Milligan*, 142 S. Ct. 879 (2022) ............................................. 20

*Moore v. Harper*, 600 U.S. 1 (2023) .............................................. 18, 20, 21

*O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022
    WL 1699425 (10th Cir. May 27, 2022) ................................................ 17

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) ..................... 21

*Raines v. Byrd*, 521 U.S. 811 (1997) ......................................... 7, 8, 12, 13

*Russell v. DeJongh*, 491 F.3d 130 (3d Cir. 2007) ......................... 6, 11, 14

*Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441 (E.D.
    Tex. 2020) ........................................................................................... 18

*Toth v. Chapman*, No. 22-208, 2022 WL 821175 (M.D. Pa.
    2022) ..................................................................................................... 17

*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945
    (2019) .......................................................................................... 9, 15, 16

*Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264
    (W.D. Wash. 2006) ............................................................................ 24

*Wise v. Circosta*, 979 F.3d 93 (4th Cir. 2020) ......................................... 22

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) ......................... 17

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir.
    2022) ................................................................................................ *passim*

## Constitutional Provisions

Pa. Const. art. VII, § 1 .................................................................................. 2

U.S. Const. art. I, § 4 ................................................................................. 11

U.S. Const. art. II, § 1 ................................................................................ 11

U.S. Const. art. III, § 2 ................................................................................. 6

**Statutes**

25 P.S. § 2621 ................................................................... 19

25 P.S. § 2642 ................................................................... 19

25 P.S. § 2811 ..................................................................... 2

25 Pa.C.S. § 1323 ................................................... 2, 3, 4, 19

25 Pa.C.S. § 1327 ................................................................. 3

25 Pa.C.S. § 1328 ......................................................... 3, 4, 23

25 Pa.C.S. § 1803 ......................................................... 5, 20

52 U.S.C. § 20504 ................................................................ 2

52 U.S.C. § 21083 ......................................................... 23, 24

Fla. Stat. § 97.053 ............................................................. 24

Wash Rev. Code § 29A.08.107 ............................................. 24

## INTRODUCTION

A small handful of Pennsylvania's 203 state representatives and one of its 50 senators have brought this action based on the idea that the Secretary of the Commonwealth's performance of executive responsibilities statutorily assigned to him somehow usurps the role that Pennsylvania's General Assembly has for passing election laws. Nothing remotely substantiates that unprecedented theory, which is wildly inconsistent with how elections are run across the country.

But this Court need not delve into the reasons that Plaintiffs' theory is terribly wrong. Binding precedent unimpeachably dictates that individual legislators, like these Plaintiffs, do not have Article III standing based on alleged injuries to a legislative body, like those claimed in this case. The briefs Plaintiffs have filed in support of their motion for a preliminary injunction only underscore this point. And these Plaintiffs have not alleged any injury that they have suffered themselves. As a result, this Court lacks jurisdiction and the Amended Complaint should be dismissed.

## BACKGROUND

***Statutory Framework.*** Eligible individuals in Pennsylvania must register in order to vote. Pa. Const. art. VII, § 1; 25 P.S. § 2811.

The federal National Voter Registration Act requires that states make available certain methods of applying to register to vote. One of those methods is that an application for a new or renewed driver's license "shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504. This law is colloquially known as "Motor Voter."

To implement Motor Voter, Pennsylvania's General Assembly passed legislation instructing that a driver's license application "shall serve as an application to register to vote unless the applicant fails to sign the voter registration application." 25 Pa.C.S. § 1323(a)(1). The Secretary of the Commonwealth was assigned "primary responsibility for implementing and enforcing the driver's license voter registration system created under this section." *Id.* § 1323(a)(2).[1]

---

[1] Among the many ways Plaintiffs misconstrue § 1323, they allege that the Secretary of Transportation has these responsibilities. Am. Compl. ¶¶ 123, 129 (ECF No. 18).

2

The Motor Voter process that the General Assembly devised directs that the "Department of Transportation shall provide for an application for voter registration as part of a driver's license application." *Id.* § 1323(b)(1). The process further directs that "the format of the driver's license/voter registration application shall be determined and prescribed by the secretary [of the Commonwealth] and the Secretary of Transportation." *Id.* § 1323(b)(2).

The application form must request the applicant's name, address, prior registration address, political party, date of birth, telephone number, and race. *Id.* §§ 1323(b)(3), 1327(a). Applicants must also declare under penalty of perjury that they are qualified to vote in Pennsylvania. *Id.* § 1327(b). Completed applications are forwarded to the applicant's county registration commission for review and a decision whether the application will be approved. *Id.* §§ 1323(c)(1)-(3.1), 1328.

County commissions reject a registration application if: (1) it is "not properly completed" and, following the Commission's reasonable efforts, "remains incomplete or inconsistent," (2) if the applicant is not qualified, or (3) if the applicant is not entitled to the transfer of registration they have requested. *Id.* § 1328(b)(2).

3

***2023 Redesign***. On September 19, 2023, Governor Shapiro announced that the Departments of State and Transportation had redesigned the format of the driver's license/voter registration application. The newly formatted application streamlined the process for voters by, among other things, prescribing clearer language and eliminating duplicative parts of the application. Am. Compl. ¶ 109.

The new format was described as implementing "Automatic Voter Registration," because it shifted from a format in which individuals who meet Pennsylvania's voter-eligibility criteria may "opt-in" to completing a voter registration application to a format in which those individuals may "opt-out" from completing a voter registration application. Ex. F to Am. Compl. (ECF No. 18-6).

As before, anyone who meets the eligibility criteria may choose to complete a voter registration application or not.

Also as before, any application that is completed is directed to the appropriate county commission for review and an approval decision. 25 Pa.C.S. §§ 1323(c)(1)-(3.1), 1328.

***2018 HAVA Directive***. Separately, in 2018, under its authority to take any action "necessary to ensure compliance and participation by the

commissions" with voter registration laws, 25 Pa.C.S. § 1803(a), the Department of State directed county registration commissions not to reject an application solely because of a non-match between an applicant's driver's license number or Social Security number—which the federal Help America Vote Act ("HAVA") requires a voter-registration applicant provide if she has one—and external databases against which HAVA requires that information be compared, if provided. *See* Ex. B. to Am. Compl. (ECF No. 18-2).

***Plaintiffs' Amended Complaint***. As to the three Pennsylvania Defendants, Plaintiffs—26 of the 203 representatives in Pennsylvania's General Assembly and one of the 50 senators—allege that the 2023 redesign and 2018 HAVA directive violate Article I, § 4 (the Elections Clause) and Article II, § 1 (the Electors Clause) of the U.S. Constitution. Am. Compl. ¶¶ 212-30.

## STANDARD OF REVIEW

Facial challenges to subject matter jurisdiction under Rule 12(b)(1) and motions to dismiss under Rule 12(b)(6) are evaluated under the same standard of review. *Nigro v. Pa. Higher Educ. Assistance Agency*, No. 19-2000, 2020 WL 5369980, at *5 (M.D. Pa. Sept. 8, 2020). Here, then, the

Court must consider whether the Amended Complaint contains sufficient plausible factual allegations to establish this Court's subject matter jurisdiction and whether it states a claim for relief that is plausible on its face. *Id.* at \*4-5.

## ARGUMENT

This Court should dismiss the Amended Complaint because no Plaintiff has standing and therefore the Court lacks subject matter jurisdiction. While the Court need not—and should not—go beyond the absence of subject matter jurisdiction, if the Court does it should dismiss the Amended Complaint for failure to state a claim for relief.

## I.   Plaintiffs Lack Standing

The U.S. Constitution confines a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limit is enforced by requiring that a plaintiff establish her standing, which in turn requires her to demonstrate that she suffered (1) an injury in fact, (2) caused by the conduct complained of, and that is (3) capable of judicial remedy. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022). Respect for separation of powers makes standing concerns "particularly acute" in cases brought by legislators. *Russell v. DeJongh*, 491 F.3d 130, 134 (3d Cir. 2007).

For injury in fact, a plaintiff cannot rely upon a general interest "in the proper application of the Constitution and laws." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). Injuries must be personal to the plaintiff as well as "concrete" and "particularized." *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997); *see also Yaw*, 49 F.4th at 311, 314-15.

Here, accepting their non-conclusory allegations, Plaintiffs have not alleged any concrete, particularized injury specific to them.

The Amended Complaint makes abundantly clear that the supposed injury here is a usurpation of the Pennsylvania General Assembly's institutional prerogatives under the Elections and Electors Clauses. *See* Am. Compl. ¶¶ 30-49, 112-114, 147, 167 (detailing constitutional powers of the "legislature"). Those alleged injuries were purportedly caused by executive acts of the Pennsylvania Defendants that Plaintiffs believe conflict with state law. *Id.* at ¶¶ 109-138 (registration application); *id.* ¶¶ 139-157 (HAVA directive).

Yet these allegations raise quintessential claims of institutional injuries that do not support an individual legislator's own standing under Article III. The Supreme Court said as much in *Raines v. Byrd*. There, six members of Congress filed suit challenging a statute that allowed the

7

President to "'cancel' certain spending and tax benefit measures after he has signed them into law." 521 U.S. 811, 814 (1997). The legislators asserted they had standing based on a claimed interest in maintaining the effectiveness of their votes. *Id.* at 821-22. The Court ruled that such an interest was shared equally by every member of Congress's two bodies such that no individual member had a personal stake; the alleged injury was instead an "institutional injury." *Id.* at 821, 829-30. Further, the legislators' powers remained unencumbered because nothing about the challenged statute would "nullify [the legislators'] votes in the future" and a "majority of Senators and Congressmen can pass or reject appropriation bills; the Act has no effect on this process." *Id.* at 824. A majority also could have repealed the challenged statute altogether. *Id.*

Since *Raines*, the Supreme Court has reiterated that only a legislature has standing based on injuries to the legislature. In *Arizona State Legislature v. Arizona Independent Redistricting Commission*, the Court concluded that Arizona's complete legislature had standing to bring a claim alleging violations of the Elections Clause. 576 U.S. 787, 804-04 (2015). The Court distinguished *Raines* as an action brought by only individual legislators. *Id.* 801-02. And the legislature itself had

standing because the referendum being challenged had "*permanently* deprived the legislative plaintiffs of their role in the redistricting process." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1954 (2019) (emphasis in original) (explaining Court's holding in *Arizona*).

In *Yaw v. Delaware River Basin Commission*, the Third Circuit affirmed that supposed deprivations of a legislature's constitutional lawmaking powers are institutional injuries that individual legislators lack standing to pursue in federal court. In that case, the Third Circuit considered whether Pennsylvania senators had standing to challenge a localized ban on fracking that they alleged had "deprived them of their lawmaking authority." *Yaw*, 49 F.4th at 311 (cleaned up). Plaintiffs had tried seven different ways to describe how the ban had harmed them as legislators, including claiming that the ban "displaced and/or suspended the Commonwealth's comprehensive statutory scheme" and that the ban "attempted to exercise legislative authority exclusively vested in the General Assembly." *Id.* at 313-14. But the Third Circuit affirmed that it does not matter how individual legislators attempt to describe their loss of legislative power: "A general loss of legislative power that is widely

9

dispersed and necessarily damages all members of the General Assembly equally" is an institutional injury that only the institution itself may pursue in court. *Id.* at 313-14 (cleaned up).

A three-judge panel of this Court enforced the same limit when leaders of Pennsylvania's General Assembly and members of the U.S. House of Representatives asserted that the Pennsylvania Supreme Court had violated the Elections Clause by declaring a congressional districting map unconstitutional and issuing a remedial map. *Corman v. Torres*, 287 F. Supp. 3d 558, 565 (M.D. Pa. 2018). This Court, citing *Raines* and *Arizona*, held that Pennsylvania legislators did not suffer any particularized injury from the "purported usurpation of the Pennsylvania General Assembly's exclusive rights under the Elections Clause of the United States Constitution." *Id.* at 567. *Raines* and *Arizona*, this Court recognized, definitively resolved that "a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature." *Id.*

Plaintiffs have no way around this conclusive precedent, which "flows naturally from bedrock standing requirements." *Yaw*, 49 F.4th at 314.

10

Instead, they make conclusory assertions that standing exists because executive acts that allegedly conflict with state law infringe upon legislators' rights under the U.S. Constitution to make election laws. Am. Compl. ¶¶ 50, 164. But that assertion—in addition to being materially indistinguishable from *Yaw* and *Corman*—does not explain what *injury* any Plaintiff has suffered.[2] And precedent "uniformly" holds that an allegation that executive action violated a duly enacted statute, and thus deprived a lawmaker of their powers, "is not an injury for standing purposes." *Russell*, 491 F.3d at 134.

There is nothing in the Amended Complaint (nor could there be) that identifies how any Plaintiff is affected by the conduct challenged in this case in a way that is any different from any other member of Pennsylvania's General Assembly. Am. Compl. ¶¶ 160-168. The absence of any distinction among members dooms Plaintiffs' standing. Grievances

---

[2] It is also wrong. The Elections and Electors Clauses speak only of responsibilities assigned to the "legislature." U.S. Const. art. I, § 4; U.S. Const. art. II, § 1. For that reason, claims for alleged violations of these provisions would belong to the legislature. *Bognet v. Sec'y of the Commonwealth*, 980 F.3d 336, 350 (3d Cir. 2020), *vacated as moot by Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *see also Corman*, 287 F. Supp. 3d at 569 (ruling that an alleged "usurpation of the General Assembly's power" does not deprive any individual legislator "of any rights vested personally in them by the Elections Clause").

that belong to "all members of the General Assembly equally" are "classic examples of institutional injuries." *Yaw*, 49 F.4th at 314 (cleaned up); *see also Raines*, 521 U.S. at 821 (holding that legislators lacked standing because none had "been singled out for specially unfavorable treatment as opposed to other Members of their respective bodies"). In these circumstances, "United States Supreme Court precedent is clear—a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature." *Corman*, 287 F. Supp. 3d at 567.

In preliminary injunction briefing that preceded this motion to dismiss, Plaintiffs completely ignored *Arizona*, *Yaw*, and *Corman*, despite that those cases conclusively resolve their standing. *See generally* Br. in Supp. of Prelim. Inj. (ECF No. 23); Reply in Supp. Prelim. Inj. (ECF No. 44). Cases that Plaintiffs did cite only confirm that standing is unavoidably lacking here. *See* Reply in Supp. of Prelim. Inj. at 1-3.

In *Coleman v. Miller*, Kansas's Senate had evenly split on a resolution; the Lieutenant Governor resolved the divide by voting in favor of the resolution. 307 U.S. 433, 426 (1939). The defeated bloc filed an action for an order declaring that the resolution had not passed, which the Supreme Court allowed to proceed because the senators' "votes

12

against ratification [had] been overridden and virtually naught" and the senators had an "interest in maintaining the effectiveness of their votes." *Id.* at 438. The Supreme Court has since explained that *Coleman* "stands (at most) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823; *see also Yaw*, 49 F.4th at 315-16 (explaining limits of *Coleman*). That is not the case here.

Plaintiffs also have cited the Tenth Circuit's vacated 2014 decision in *Kerr v. Hickenlooper*, in which that court concluded individual legislators had standing to challenge an amendment to Colorado's Constitution that had modified the process for raising revenue. 744 F.3d 1156, 1161-62 (10th Cir. 2014). Stunningly, Plaintiffs have claimed that the 2014 decision was vacated on unrelated grounds. Reply in Supp. of Prelim. Inj. at 3. In fact, it was vacated for further consideration after the Supreme Court's *Arizona* decision. *See Hickenlooper v. Kerr*, 576 U.S. 1079 (2015). On remand, the Tenth Circuit reversed its 2014 legislative standing decision, explaining that *Arizona* made it unmistakably clear

that individual legislators do not have standing to redress alleged injuries that "necessarily impact[] all members of the General Assembly equally." *Kerr v. Hickenlooper*, 824 F.3d 1207, 1214-17 (10th Cir. 2016).

*Coleman* and *Kerr* certainly do not aid Plaintiffs.

Finally, Plaintiffs have suggested this Court consider Plaintiffs' standing under Pennsylvania law rather than Article III. Br. in Supp. of Prelim. Inj. at 8-9; Reply in Supp. of Prelim. Inj. at 4-5. Their suggestion fails three times over.

*First*, legislators, like every federal plaintiff, must satisfy Article III requirements. The Third Circuit already has rejected the very argument Plaintiffs advance here, holding that "even if Pennsylvania state law would have afforded appellants standing if they had brought [an] action in state court, we must ensure that they satisfy the federal requirements for standing as well." *Yaw*, 49 F.4th at 316; *see also Russell*, 491 F.3d at 133 ("Legislators, like other litigants in federal court, must satisfy the jurisdictional prerequisites of Article III standing."). Borrowing from Pennsylvania decisions for this Court's standing analysis would be particularly misguided because standing is not a jurisdictional predicate in Pennsylvania as it is in federal court. *See Yaw*, 49 F.4th at

14

316 (citing *Fumo v. City of Philadelphia*, 972 A.2d 487, 500 n.5 (Pa. 2009)).

*Second*, Plaintiffs' belief that standing here should be resolved under Pennsylvania law is based on a complete misunderstanding of *Virginia House of Delegates v. Bethune-Hill*. In that case, the Supreme Court considered two questions: (1) could Virginia's House of Delegates represent Virginia's own legally cognizable interest in defending a state statute and (2) if not, did the House of Delegates have standing in its own right.

On the first question, the Court wrote that Virginia had "standing to defend the constitutionality of its statute." *Virginia House of Delegates*, 139 S. Ct. at 1951. Then, the Court explored which parties Virginia had authorized to represent its legally cognizable interests, acknowledging that states may make different choices about who may litigate on its behalf. *Id.* at 1951-52. Plaintiffs mistake this discussion of representation for a discussion of standing. On the second question, the Court held that "[j]ust as individual members lack standing to assert the institutional interests of a legislature, a single House of a bicameral legislature lacks

15

capacity to assert interests belonging to the legislature as a whole." *Id.* at 1953-54 (citing *Raines*).

*Third*, Plaintiffs would not satisfy Pennsylvania's prudential standing requirements. In Pennsylvania, legislator standing exists only when a legislator's "ability to participate in the voting process is negatively impacted, or when a legislator has suffered a concrete impairment or deprivation of an official power or authority to act as a legislator." *Allegheny Reprod. Health Ctr. v. Pennsylvania Dep't of Hum. Servs.*, -- A.3d --, No. 26 MAP 2021, 2024 WL 318389, at *22 (Pa. Jan. 29, 2024); *see also Markham v. Wolf*, 136 A.3d 134, 145 (Pa. 2016). In Pennsylvania, "[l]egislators may not challenge actions when the injuries affect conduct outside the legislative forum unrelated to voting or the approval process." *Allegheny*, 2024 WL 318389, at *22.[3] Therefore, just as Plaintiffs cannot satisfy what Article III requires for legislator

---

[3] Plaintiffs' belief that "the Pennsylvania Supreme Court has recognized individual state legislator for all legal topics," Reply in Supp. of Prelim. Inj. at 4, is therefore patently wrong. Nor is that claim even supported by the intermediate court decision Plaintiffs cite.

16

standing, Plaintiffs could not satisfy what Pennsylvania prudentially requires for legislator standing.[4]

## II.    Plaintiffs Lack a Cause of Action

The absence of standing is sufficient to dismiss Plaintiffs' Amended Complaint. Dismissal would be separately required, however, because these legislators cannot enforce alleged violations of the Elections and Electors Clauses through 42 U.S.C. § 1983, as they attempt. *See* Am. Compl. ¶¶ 213-14, 221-22.

To bring a § 1983 action, a plaintiff must demonstrate as a threshold matter that she is the beneficiary of a right protected by federal statute or the U.S. Constitution. *City of Rancho Palos Verdes, Cal. v.*

---

[4] Plaintiffs' alternative standing arguments, such as that they have standing as candidates for office or as "citizens, taxpayers, and voters," *see also* Am. Compl. ¶¶ 169-175, are baseless. Plaintiffs fail to identify any concrete or particularized way that streamlining the process by which eligible electors can apply to register to vote injures Plaintiffs in any of these capacities. So here too, Plaintiffs maintain that they are injured by alleged non-compliance with the law, the same generalized grievance that courts have repeatedly held does not support standing in any capacity, *e.g.*, *Lance v. Coffman*, 549 U.S. 437, 441-42 (2007); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020); *Bognet*, 980 F.3d at 349; *O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022 WL 1699425, at *2 (10th Cir. May 27, 2022); *Toth v. Chapman*, No. 22-208, 2022 WL 821175, at *7 (M.D. Pa. 2022) (three-judge panel); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 709-11 (D. Ariz. 2020); *King v. Whitmer*, 505 F. Supp. 3d 720, 735-36 (E.D. Mich. 2020).

*Abrams*, 544 U.S. 113, 120 (2005). Section 1983 is unavailable here because the Elections Clause (like the Electors Clause) "does not speak to individual rights" and instead "outlines a structural principle of the American system of federalism." *Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 462 (E.D. Tex. 2020). In that way, the Elections and Electors Clauses are like the Supremacy Clause, which also does not create any right enforceable through § 1983. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989).

In fact, far from creating rights, the Elections Clause imposes *a duty* on state legislatures to prescribe rules for federal elections (and on Congress if a legislature refuses). *Moore v. Harper*, 600 U.S. 1, 11 (2023).

Because the Elections and Electors Clauses are structural provisions that impose duties rather than confer any rights, Plaintiffs cannot enforce alleged violations of them under § 1983. For this reason, Plaintiffs have failed to state a claim against the three Pennsylvania Defendants. The Amended Complaint may also be dismissed on this basis.

18

## III. Plaintiffs' Claims Lack Merit

Finally, there is no merit to Plaintiffs' constitutional claims against the Pennsylvania Defendants.

Pennsylvania's General Assembly, like every other state legislature, assigns election officials certain responsibilities for election administration. *See, e.g.,* 25 P.S. § 2621 (describing some of the powers assigned to the Secretary); *id.* § 2642 (describing some of the powers assigned to county boards of elections).

Relevant here, under Pennsylvania's voter registration law, a driver's license application "shall serve as an application to register to vote unless the applicant fails to sign the voter registration application," *Id.* § 1323(a)(1). And the Secretary (along with the Secretary of Transportation) shall "determine[] and prescribe[]" "the format of the driver's license/voter registration application." 25 Pa.C.S. § 1323(b)(2).[5]

Further, the Secretary has "authority to take any actions, including the authority to audit the registration records of a commission, which are

---

[5] In contrast to the power assigned to the Secretaries to determine the format of the Motor Voter application, the General Assembly prescribed more specific requirements for the format of the voter registration application made available through other government agencies. 25 Pa.C.S. § 1325(b).

necessary to ensure compliance and participation by the commissions."
25 P.S. § 1803(a). The Secretary used this power when issuing the 2018
directive to ensure that county commissions understood what HAVA
required during the registration process.

Assigning election officials executive duties such as these is as
common as it is essential, because "[r]unning elections state-wide is
extraordinarily complicated and difficult. Those elections require
enormous advance preparations by state and local officials and pose
significant logistical challenges." *Merrill v. Milligan*, 142 S. Ct. 879, 880
(2022) (Kavanaugh, J., concurring in grant of stay). Indeed, as reflected
by the multitude of responsibilities that the General Assembly has given
them, Pennsylvania's election officials are essential to the operation of
Pennsylvania's elections.

Just as nothing in the Elections or Electors Clause prohibits state
judges from performing their judicial roles, *Moore*, 600 U.S. at 22-26,
nothing in either clause prohibits executive officials from performing the
executive functions assigned to them by a state legislature. And while
Plaintiffs try to describe the two executive actions as usurping legislative
power, Am. Compl. ¶¶ 160, 162-163, there is no plausible allegation that

20

legislative powers have been usurped. Nor could there be. Neither changes to a registration application nor instructions to counties—both done under statutorily assigned authority—stops the General Assembly from passing any laws now or in the future regarding either topic.

To the extent Plaintiffs allege that either of the two executive actions at issue here somehow violates state law, that issue is not properly before this Court, and such allegations are meritless as well.

"[S]tate courts are the appropriate tribunal" for questions about the scope of authority that the legislature has assigned to the Secretary of the Commonwealth under Pennsylvania law. *Moore*, 600 U.S. at 34 (cleaned up); *see also id.* at 36 (holding only that the U.S. Constitution may set the far outer limits of "state court interpretations of state law"). Acting on purported constitutional claims that fundamentally are challenges under state law would invite an endless parade of parties bringing state election disputes immediately into federal courts.[6]

---

[6] Federal courts appropriately abstain when presented with a purported federal question that depends on an interpretation of an important state law question. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500-01 (1941); *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991). The Fourth Circuit followed this practice when presented with a request to enjoin state conduct that allegedly violated

Lastly, although the Court should not reach these issues, neither the 2023 redesign nor the 2018 HAVA directive conflicts with any law that the General Assembly has passed.

***2023 Redesign***. Plaintiffs do not identify any intelligible theory for how the 2023 changes conflict with state law. They cite a provision of law that authorizes (as federal law requires) voters to apply to register to vote when applying for a driver's license. Am. Compl. ¶¶ 120, 122. The redesign continues to allow for that opportunity.

Plaintiffs note that the dual license/registration application must in fact be an application. *Id.* ¶¶ 117-22, 129. But that remains the case after the redesign. Individuals who meet Pennsylvania's voter-eligibility criteria are presented with the voter registration application when applying for a new or a renewed driver's license. Anyone may decline to complete the registration application by opting out. Anyone who does not opt out then completes the application's required fields. The completed

_____

the Elections Clause because Plaintiffs were asking a federal court to determine "a close issue of *state* law involving competing interpretations of North Carolina's statutes governing election procedures and implicating complex questions concerning the separation of powers in the state." *Wise v. Circosta*, 979 F.3d 93, 101 (4th Cir. 2020) (emphasis in original).

application is then sent to the relevant county commission for review and an approval determination under 25 Pa.C.S. § 1328.

No one is required to go through the voter-registration application process, and no one who does go through the process is automatically registered. Plaintiffs do not (and could not) plausibly allege any differently. *See generally id.* ¶¶ 109-38.

***2018 HAVA Directive***. HAVA instructs that voter registration applications must include the applicant's driver's license number or the last four digits of their Social Security number. 52 U.S.C. § 21083(a)(5)(a)(i). If the applicant does not have either, the state can give the voter "a number which will serve to identify the applicant for voter registration purposes." *Id.* § 21083(a)(5)(A)(ii).

HAVA further requires that if an applicant provides their driver's license or Social Security number, that number is compared to a department of transportation's database or to Social Security information. *Id.* § 21083(a)(5)(B). Yet, while HAVA requires this matching process, "it does not say what the consequences of failing a match are on voter registration." *Fair Fight Action, Inc. v. Raffensperger*, 593 F. Supp. 3d 1320, 1328 (N.D. Ga. 2021); *see also Washington Ass'n of*

*Churches v. Reed*, 492 F. Supp. 2d 1264, 1268 (W.D. Wash. 2006) (describing function of HAVA's matching requirement as administrative rather than for confirming eligibility). Instead, HAVA allows states to determine if the number that HAVA requires an applicant provide when possible "is sufficient to meet the requirements [of HAVA], in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii).

Since HAVA was enacted, some states have required a driver's license or Social Security number as part of their own voter application process or have mandated that the information provided under HAVA be used for a particular purpose in the state's process (such as confirming the applicant's identity). *E.g.*, Fla. Stat. § 97.053(5)(A), (6); Wash Rev. Code § 29A.08.107; *Fair Fight*, 593 F. Supp. 3d at 1330 (describing Georgia's matching requirement).

Pennsylvania's General Assembly has done neither. Thus, HAVA alone requires a registration applicant in Pennsylvania to provide their driver's license number or Social Security number if they have one. Under HAVA, that number, if provided, must be compared against an external database. But there is nothing in Pennsylvania law (or in

HAVA) that requires that number match the same number in an external database as a condition of successful registration.

Because the 2018 directive does not even implicate a state law, it certainly does not conflict with a state law.

## CONCLUSION

Because no Plaintiff has standing, the Amended Complaint should be dismissed under Rule 12(b)(1). Otherwise, the Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) because Plaintiffs have failed to state a claim.

March 20, 2024

Michael J. Fischer
Executive Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 831-2847
mjfischer@pa.gov


Erich Greiner
Office of Attorney General
Strawberry Square
15th Floor
Harrisburg, PA 17102
(717) 783-6301
egreiner@attorneygeneral.gov

Respectfully submitted,

/s/ *Jacob B. Boyer*
Jacob B. Boyer (Bar. No. 324396)
Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Governor Josh Shapiro, Secretary of the Commonwealth Al Schmidt, and Deputy Secretary Jonathan Marks*

## **CERTIFICATES**

I hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

I further certify that this brief contains 4,769 words and therefore complies with Local Rule 7.8(b). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

March 20, 2024                    /s/ *Jacob B. Boyer*
                                                        Jacob B. Boyer
                                                        *Counsel for Governor Josh Shapiro,*
                                                        *Secretary of the Commonwealth Al*
                                                        *Schmidt, and Deputy Secretary*
                                                        *Jonathan Marks*