# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN KEEFER, *et al.*, | : | Civil No. 1:24-CV-00147 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH R. BIDEN, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This lawsuit, brought by twenty-six Pennsylvania State Representatives and one Pennsylvania Senator,[1] challenges certain executive actions regarding voter registration taken by both United States President Joseph R. Biden and various federal officials[2] and Pennsylvania Governor Joshua Shapiro and various state

---

[1] The Plaintiffs in this matter are Representatives Dawn Keefer, Timothy Bonner, Barry Jozwiak, Barbara Gleim, Joseph Hamm, Wendy Fink, Robert Kauffman, Stephanie Borowicz, Donald (Bud) Cook, Paul (Mike) Jones, Joseph D'Orsie, Charity Krupa, Leslie Rossi, David Zimmerman, Robert Leadbetter, Daniel Moul, Thomas Jones, David Maloney, Timothy Twardzik, David Rose, Joanne Stehr, Aaron Berstine, Kathy Rapp, Jill Cooper, Marla Brown, Mark Gillen, and Senator Cris Dush.  They are referred to collectively as "Plaintiffs."

[2] The individual federal government Defendants, all sued in their official capacity, are as follows: President Joseph R. Biden, Secretary of Agriculture Tom Vilsack, Secretary of Health and Human Services Xavier Becerra, Secretary of State Antony Blinken, Secretary of Department of Housing and Urban Development Marcia Fudge, Secretary of Energy Jennifer Granholm, and Secretary of Education Dr. Miguel Cardona.  Plaintiffs also name the United States, U.S. Department of Agriculture ("USDA"), U.S. Department of Health and Human Services ("HHS"), U.S. Department of State ("State Department"), U.S. Department of Housing and Urban Development ("HUD"), U.S. Department of Energy, and U.S. Department of Education as defendants.  Collectively, the foregoing people and entities will be referred to as "Federal Defendants."

officials[3] on the ground that these executive actions violate both the Electors and Elections Clauses of the United States Constitution.  (Doc. 18.)  Before the court are the motions to dismiss for failure to state a claim and lack of jurisdiction filed by the Federal and State Defendants.  (Docs. 40, 46.)[4]  The motions to dismiss will be granted because this court does not have subject matter jurisdiction due to Plaintiffs' lack of standing to raise the claims at issue.[5]

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs challenge an Executive Order issued by President Biden, an announcement by Governor Josh Shapiro, and a "directive" issued by Former Pennsylvania Governor Tom Wolf, all regarding various aspects of voter registration.  (Doc. 18.)  Plaintiffs allege that these three executive actions have violated their individual Constitutional rights under the Electors and Elections Clauses of the United States Constitution.  (*Id.* at ¶67.)

The Electors Clause provides as follows:

---

[3] The individual state government Defendants, all sued in their official capacities, are Governor Joshua Shapiro, Secretary of the Commonwealth Al Schmidt, and Deputy Secretary for Elections and Commissions Jonathan Marks.  They are referred to collectively as "State Defendants."

[4] State Defendants filed their motion to dismiss on March 20, 2024.  (Doc. 46.)  Although this motion is not fully briefed, the issue of standing has been fully addressed in the context of Plaintiffs' motion for injunctive relief, such that the court can address the issue of standing with no further briefing.

[5] The court also notes that Plaintiffs filed a motion for preliminary injunction on February 16, 2024.  (Doc. 19.)  Because Plaintiffs do not have standing to bring the claims asserted in this lawsuit, the motion for preliminary injunction will be denied as moot in a separate order.

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. CONST. art. II, § 1, cl. 2.  The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."  U.S. CONST. art. I, § 4, cl. 1.

Plaintiffs allege that:

> [U]nder the Electors Clause, the Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislators, as part of two associations called the senate and the house of representatives respectively, may enact laws, subject to the Governor's veto, to regulate the times, places, and manner of Presidential and Congressional elections.  Thus, Plaintiffs, as individual state legislators, have federal rights under the Elections Clause and the Electors Clause to oversee and participate in making legislative decisions regulating the times, places, and manner of federal actions.

(Doc. 18, ¶¶ 49, 50.)

Regarding the Federal Defendants, Plaintiffs challenge Executive Order 14019 ("EO 14019"),[6] which, they allege "requires all federal agencies to develop a plan to increase voter registration, and increase voter participation, or get out the vote . . . efforts."  (*Id.* at ¶ 70.)  Plaintiffs allege that HHS, HUD, Department of

---

[6] EO 14019 went into effect on March 7, 2021.

3

Energy, USDA, and U.S. General Services Administration "GSA"),[7] have implemented voter registration plans in accordance with EO 14019 and have registered voters in Pennsylvania in accordance with these plans.  (*Id.* at ¶¶ 72–84.) Plaintiffs contend that EO 14019

> directs *all* non-independent executive agencies to engage in voter registration and to solicit and facilitate third-party organizations to conduct voter registration on agency premises, including those located in the state of Pennsylvania, so it is certain that other agencies are carrying out similar efforts without disclosing their unlawful activities to the public or to the Pennsylvania Legislature.

(*Id.* at ¶ 85.)  Plaintiffs allege that EO 14019 requires all federal agencies to "identify and partner with specified partisan third party organizations[,]" "distribute voter registration and vote-by-mail ballot application forms[,]" "assist applicants in completing voter registration and vote-by-mail ballot application forms[,]" "solicit third-party organizations and directs state officials to provide voter registration services on agency premises."  (*Id.* at ¶¶ 86–90.)

Plaintiffs contend that "all agency action in conformity with [EO] 14019 is without congressional delegation or funding, and conducted merely by executive fiat[,]" and that "all federal agency actions in conformity with [EO] 14019 are unauthorized by law."  (*Id.* at ¶¶ 102, 103.)  Plaintiffs further allege that EO 14019

---

[7] GSA is not a named defendant in this action.

4

is not in conformity with Pennsylvania's voter registration scheme, as provided by Pennsylvania law.  (*Id.* at ¶¶ 107, 108.)

In Count I, Plaintiffs request a declaratory judgment that EO 14019 is unconstitutional because it "nullifies the votes of the individual legislators, nullifies the enactment of the Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights, and jeopardizes candidates' rights to an election free from fraud and abuse."  (*Id.* at ¶ 178.) Plaintiffs also allege that they are suffering "an injury-in-fact because the Executive Order denies them a voting opportunity to which the Constitution entitles them."  (*Id.* at ¶ 179.)  In sum, the Plaintiffs allege that EO 14019 unlawfully attempts to regulate the registration of Pennsylvania electors and, thus, "[t]he order should not be permitted to nullify the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections."  (*Id.* at ¶ 186.)  In Count II, Plaintiffs challenge EO 14019 under the Administration[8] Procedure Act ("APA") as substantively arbitrary and capricious and contrary to Constitution or statute.  (*Id.* at ¶¶ 194–201.)  In Count III, Plaintiffs challenge EO 14019 as procedurally

---

[8] The court notes that 5 U.S.C. § 706 is more commonly referred to as the Administrative Procedure Act.

arbitrary and capricious for failing to comply with notice and comment procedures under the APA.  (*Id.* at ¶¶ 202–21.)

Regarding the State Defendants, Plaintiffs challenge two executive actions. First, Plaintiffs challenge Governor Shapiro's 2023 announcement that "he was unilaterally implementing automatic voter registration in Pennsylvania." (*Id.* at ¶ 109.)  Plaintiffs allege that "[b]eginning on September 19, 2023, Commonwealth residents obtaining new or renewed driver licenses and ID cards have been and continue to be automatically registered to vote by the Pennsylvania Department of Transportation unless they opt out of doing so."  (*Id.* at ¶ 110.) Plaintiffs allege that the "regulatory schema of elections" set forth by the legislature requires an "application" to register to vote, which requires an overt action by the applicant.  (*Id.* at ¶¶ 115–119.)  In sum, Plaintiffs argue that Governor Shapiro's directive to the Department of Transportation to change the process for applying to vote in conjunction with applying for a driver's license violates Pennsylvania's established procedures, codified at 25 PA. CON. STAT. ANN. §§ 1321, 1323, 1327.  Plaintiffs allege that "Governor Shapiro's directive to the Pennsylvania Department of Transportation, and its implementation, is inconsistent with existing laws, and as such, is not legally authorized."  (*Id.* at ¶ 128.)[9]

---

[9] Plaintiffs also allege that the state legislature has previously declined to pass automatic voter registration laws, most recently in January 2023, as support for their claim that this action by the Governor nullifies their votes.  (*Id.* at ¶¶ 132, 133.)

In Count IV, Plaintiffs bring a claim under 42 U.S.C. § 1983 against Governor Shapiro seeking an injunction "enjoining and prohibiting [his] automatic voter registration regime" as unconstitutional because it nullifies the legislators' vote and the enactments of the State Legislature, violates the Electors and Elections Clauses, "diminishes the influence of the individual legislators," and "deprives [them] of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an elections free from fraud and abuse." (Doc. 18, ¶ 215.) Plaintiffs also allege that the announcement "denies Plaintiffs a voting opportunity to the acceptance [or] rejection of a voter registration schema, that under the U.S. and Pennsylvania Constitutions can only originate in the Pennsylvania legislature or U.S. Congress." (*Id.* at ¶ 216.)

The second state executive action that Plaintiffs challenge is a 2018 "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" ("2018 Directive") issued under former Governor Tom Wolf. (*Id.* at ¶ 139.) This challenge is brought against Secretary of the Commonwealth Al Schmidt and Deputy Secretary for Elections Jonathan Marks. (*Id.*) The 2018 Directive "directs Pennsylvania counties to register applicants even if an applicant provides invalid identification." (*Id.* at ¶ 140.) Plaintiffs allege that this directive violates Pennsylvania law, specifically 25

PA. CONS. STAT. ANN § 1328.  (*Id.* at ¶¶ 144–46.)  Further, Plaintiffs allege that the directive, which "direct[s] the counties to process incomplete or inconsistent voter applications like all other applications violates clear provisions of Pennsylvania law[,]" and as such, "undermines the state legislature as the 'entity assigned particular authority by the Federal Constitution' to regulate the times, places, and manner of Presidential and Congressional elections."  (*Id.* at ¶¶ 154, 155.)

In Count V, Plaintiffs bring a claim under 42 U.S.C. § 1983, asking the court to enjoin and prohibit the 2018 Directive "and similar guidance" as unconstitutional because it nullifies the legislators' vote and the enactments of the State Legislature, violates the Electors and Elections Clauses, "diminishes the influence of the individual legislators" and "deprives [them] of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an elections free from fraud and abuse."  (Doc. 18, ¶ 223.)  Plaintiffs also allege that the 2018 Directive denied them "their U.S. constitutional right to vote on and direct election policy, established under both the Elections Clause and Electors Clause."  (*Id.* at ¶ 226.)

Underlying all counts, Plaintiffs allege they have standing as state legislators because they "are injured by Defendants when [Defendants] exercise positive regulatory authority over election practices that circumvent or usurp the authority of the legislature."  (*Id.* at ¶ 160.)  Specifically, Plaintiffs allege they have "been

8

denied the opportunity to exercise their constitutionally vested authority to cast their legislative vote on affirming or rejecting those new regulatory regimes." (*Id.* at ¶ 162.)  Plaintiffs also allege they have standing as candidates who will suffer the harm of having to compete in "elections [that] have been interfered with by unlawful regulations" and "where their opponents have been provided an unlawful advantage." (*Id.* at ¶¶ 171, 172.)  Finally, Plaintiffs allege they have standing as citizens, taxpayers, and voters. (*Id.* at ¶¶ 174, 175.)

Plaintiffs initiated this lawsuit by filing a complaint on January 25, 2024. (Doc. 1.)  Thereafter, they filed the operative amended complaint and simultaneously filed a motion for preliminary injunction. (Docs. 18, 19.)[10]  Federal Defendants filed a motion to dismiss for failure to state a claim and lack of jurisdiction on March 1, 2024. (Doc. 40.)  Federal Defendants also filed a brief in opposition to the motion for preliminary injunction on the same date. (Doc. 41.)  State Defendants filed a brief in opposition to the motion for preliminary injunction on March 1, 2024. (Doc. 42.)  Plaintiffs filed reply briefs to State Defendants and Federal Defendants briefs in opposition on March 15, 2024. (Docs. 44, 45.)  On March 20, 2024, State Defendants filed a motion to dismiss

---

[10] On February 23, 2024, the Foundation for Government Accountability filed a motion for leave to file an amicus brief, which was granted on February 26, 2024.  (Docs. 29, 33.)  The amicus brief was filed on February 26, 2024, and the court reviewed the amicus brief in considering the motions to dismiss.  (Doc. 34.)

and brief in support.  (Docs. 46, 47.)  Accordingly, the issue of standing is ripe for review.

**STANDARD OF REVIEW**

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)).  Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.)  Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this instance, Defendants argue Plaintiffs do not have standing and present the court with a facial attack on subject matter jurisdiction.  As a result, the court will "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176 (citing *Mortensen*, 549 F.2d at 891.)

## DISCUSSION

Both the Federal and State Defendants argue that the amended complaint must be dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing to pursue their claims.  Plaintiffs argue they have standing because the complaint alleges "that the Elections and Electors' Clauses' references to 'legislature' confer rights onto the individual state legislators." (Doc. 21, p. 10.) On this basis, Plaintiffs contend that their individual rights as state legislators are injured by the executive actions at issue because those actions are an "exercise [of] positive regulatory authority over election practices that circumvent[s] or usurp[s] the authority of the legislature." (Doc. 18, ¶ 160.)  Essentially, Plaintiffs argue they have each been injured individually because they have "been denied the opportunity to exercise their constitutionally vested authority to cast their

11

legislative vote on affirming or rejecting those new regulatory regimes." (*Id.* at ¶ 162.)

Plaintiffs present various arguments to support their theory of individual legislator standing.  First, Plaintiffs analogize their membership in the legislature to various other types of entities, such as a corporation, arguing that as "the purpose of extending rights to corporations is to protect the rights of the people associated with the corporation[,]" so too the "purpose of the Elections Clause and Electors Clause  . . .  is to protect the privileges and rights of the individual state legislators."  (Doc. 21, p. 9.)  Plaintiffs also analogize a state legislature to a militia and the press, as "entities" made up of real persons who have the right to defend their participation in the entity.  (Doc. 44, pp. 10, 11.)

Second, Plaintiffs rely on *Coleman v. Miller*, 307 U.S. 433 (1939), *Moore v. Harper*, 600 U.S. 1, 27 (2023),[11] and their assertion that the Pennsylvania Supreme Court has authorized "individual state legislators to bring legislative usurpation claims."  (Doc. 21, p. 10.) (citing *Fumo v. City of Phila.*, 972 A.2d 487, 491 (Pa. 2009)).  Plaintiffs also argue that they have standing as candidates for office who

---

[11] Plaintiffs' reliance on *Moore v. Harper* consists of quoting the language from the decision stating: "[t]he legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution."  600 U.S. at 27.  Plaintiffs rely on this quotation to support their theory that because they are members of "the entity assigned particular authority by the Federal Constitution [,]" they possess an individual right that gives them standing to vindicate that right in the federal courts. (Doc. 21, p. 10.)

potentially may run in an unlawfully-operated election.  (*Id.* at 12.)  Plaintiffs argue that they are injured by the executive actions because "it results in the registration of voters outside of [Pennsylvania's] carefully constructed and constitutionally-authorized registration regime." (Doc. 45, p. 14.)  Finally, Plaintiffs argue they have standing as citizens, taxpayers, and voters.  (Doc. 21, p. 13.)

In response, Federal Defendants argue that, under Supreme Court case law, "individual members [of a legislature] lack standing to assert the institutional interests of a legislature." (Doc. 41, p. 11.) (citing *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1954 (2019)).  In support of this argument, Federal Defendants contend that Plaintiffs' alleged injury, usurpation of the authority to regulate elections conferred upon state legislatures, is not meaningfully distinguishable from the institutional injuries alleged in *Raines v. Byrd*, 521 U.S. 811 (1997), *Goode v. City of Phila.*, 539 F.3d 311 (3d Cir. 2008), and *Yaw v. Delaware River Basin Comm.*, 49 F.4th 301 (3d Cir. 2022).  In each of these cases, the Supreme Court and Third Circuit, respectively, found that individual legislators did not have standing to bring a challenge to an action that allegedly injured the legislature as a whole.  (Doc. 41, pp. 11–13.)  In sum, Federal Defendants argue that the alleged injury "concerns the right to vote of '*all Members* of' the Pennsylvania Legislature 'equally,' and so it is precisely the type of non-

particularized, 'institutional injury' that is insufficient for legislator standing." (*Id.* at 13) (emphasis in original)).[12]

In response to Plaintiffs' argument regarding their potential standing as candidates, Federal Defendants argue that the amended complaint "contains no concrete allegations establishing that the EO will have a material impact on the votes cast in Plaintiffs' particular districts, and that this impact will harm Plaintiffs' electoral prospects." (*Id.* at 15.)

State Defendants' arguments regarding institutional injury and legislative standing largely mirror those of Federal Defendants and rely on the same body of case law. (*See* Doc. 42, pp. 12–19.) State Defendants additionally note that the declarations attached to the amended complaint simply state that Defendants have violated the law and provide no individualized allegation of injury, the amended complaint contains no allegation of "how any Plaintiff is affected by the conduct challenged in this case in a way that is any different from any other member of Pennsylvania's General Assembly [,]" and the amended complaint contains no allegation that "legislative powers have been usurped" because "[n]either changes to a registration application nor instructions to counties–both done under statutorily

---

[12] Both Plaintiffs and Federal Defendants address standing globally and make no separate arguments based on the cause of action.  Therefore, the court will do the same.

14

assigned authority–stops the General Assembly from passing any laws regarding either topic." (*Id.* at 17–19.)

### A. Article III Standing

Pursuant to Article III of the United States Constitution, federal courts are constrained to resolve only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines*, 521 U.S. at 818 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). Ensuring that a plaintiff has Article III standing "'serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

Article III standing requires that the plaintiff, who bears the burden of establishing these elements, prove: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable decision. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). When standing is challenged at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

As to the first element, an injury-in-fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).  A particularized injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.  Further, any threatened injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

**1.     Plaintiffs Lack Standing as Legislators**

The seminal case regarding legislative standing is the Supreme Court's decision in *Raines v. Byrd*, 521 U.S. 811 (1997).  There, members of the U.S. Congress who voted against the Line Item Veto Act sued the Secretary of the Treasury and the Director of the Office of Management and Budget, asserting that the Line Item Veto Act was unconstitutional because it altered "the legal and practical effect of all votes [the members] may cast on bills[,]" divested the members "of their constitutional role in the repeal of legislation," and altered "the constitutional balance of powers between the Legislative and Executive branches[.]" *Id.* at 816.

The Supreme Court held that the members who filed suit did not have standing because they did not allege any "injury to themselves as individuals," rather "the institutional injury they allege is wholly abstract and widely dispersed, and their attempt to litigate this dispute at this time and in this form is contrary to

16

historical experience." *Id.* at 829 (citations omitted).  The Court held that the members who filed suit failed to allege an injury to themselves as individuals because they had "not been singled out for specially unfavorable treatment as opposed to other Members of their respective bodies[,]" and they only alleged that the Act caused "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both House of Congress equally." *Id.* at 821.  Further, the Court noted that the members did not allege a deprivation of "something to which they *personally* are entitled–such as their seats as Members of Congress after their constituents had elected *them*." *Id.*

The Court also distinguished one prior case that addressed the issue of legislator standing, *Coleman v. Miller*, 307 U.S. 433 (1939).  In *Coleman*, the Kansas State Senate was split twenty to twenty on the passage of the child labor amendment to the federal constitution. *Id.* at 436.  The Lieutenant Governor then cast a tie-breaking vote, and the twenty losing Senators sued to challenge "the right of the Lieutenant Governor to cast the deciding vote in the Senate." *Id.*  The Supreme Court held that the twenty senators who voted against ratification had standing to sue because they had "a plain, direct and adequate interest in maintaining the effectiveness of their votes." *Id.* at 438.  The *Coleman* Court further explained that the Kansas senators had "set up and claimed a right and

17

privilege under the Constitution of the United States to have their votes given effect and the state court has denied that right and privilege." *Id.*

The *Raines* Court limited the holding and application of *Coleman*, stating that *Coleman* stands "for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823. Thus, the *Raines* court held that the members in that case did not have standing under *Coleman* because they did not allege "that they voted for a specific bill, that there were sufficient votes to pass the bill, and that the bill was nonetheless deemed defeated." *Id.* at 824.

The Supreme Court has considered legislator standing twice since *Raines*. In *Arizona State Legislature v. Arizona Independent Redistricting Comm.*, 576 U.S. 787, 792 (2015), the entire Arizona State Legislature sued to challenge the constitutionality of a voter-adopted initiative which established an independent commission charged with drawing and adopting redistricting maps, arguing that giving this authority to an independent commission is contrary to the Elections Clause's directive that the legislature of each state shall determine the times, places, and manner of elections. In *Arizona*, the defendants challenged the plaintiffs' standing under *Raines*, but the Supreme Court held that the legislature,

as a whole and authorized by an internal vote, had standing to redress the alleged institutional injury suffered by the legislature as a whole.  *Id.* at 802.  Ultimately, the court held that the voter initiative at issue "would 'completely nullif[y]' any vote by the Legislature, now or 'in the future,' purporting to adopt a redistricting plan."  *Id.* at 804 (citing *Raines*, 521 U.S. at 823–24).[13]

Conversely, in *Va. House of Delegates*, the Supreme Court held that only one house of a bicameral state legislature did not have standing to sue on behalf of the legislature as a whole.  *Va. House of Delegates*, 139 S. Ct. at 1952.  First, the Court noted that it is possible for a state to designate its House of Representatives as its agent, which would be sufficient to confer standing to vindicate the state's interests.  *Id.* at 1951–52.  Per the *Va. House of Delegates* Court, a state may authorize the "House to litigate on the State's behalf, either generally or in a defined class of cases."  *Id.* at 1952.  The Court held that Virginia had not done so in that case.  *Id.*  Second, the Court considered whether the House of Representatives had legislator standing under *Raines*.  The Court held that the "Virginia constitutional provision the House [challenges] allocates redistricting authority to the 'General Assembly,' of which the House constitutes only a part."  *Id.* at 1953.  Thus, the Court held the case was more similar to *Raines* because

---

[13] On the merits in *Arizona*, the Supreme Court held that "the Elections Clause permits the people of Arizona to provide for redistricting by independent commission[,]" and denied the Legislature's appeal.  *Id.* at 813.

"[j]ust as individual members lack standing to assert the institutional interests of a legislature, a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Id.* at 1953–54 (citations omitted).

The Third Circuit has decided cases in line with *Raines*, most recently in *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022).  In *Yaw*, a group of Pennsylvania Senators sued the Delaware River Basin Commission, arguing that the ban on fracking at issue in that case "deprived [them] of their lawmaking authority relative to millions of Pennsylvanians residing within the 6,000 square miles of Sovereign territory subsumed by the Basin and any legislation, now or in the future, on this subject has been nullified." *Id.* at 311. Relying on a review of the same cases discussed above, the Third Circuit held that "this argument runs headlong into the well-established principle that individual legislators lack standing to assert institutional injuries belonging to the legislature as a whole." *Id.*  The Third Circuit held that the alleged injuries were "classic examples of institutional injuries because they sound in a general loss of legislative power that is 'widely dispersed' and 'necessarily damages all [members of the General Assembly] ... equally.'" [14]  *Id.* at 314 (citing *Raines*, 521 U.S. at 821)

---

[14] The alleged injuries in *Yaw* included suspending law in the Commonwealth, displacing/suspending the Commonwealth's "comprehensive statutory scheme," attempting to "exercise legislative authority exclusively vested in the General Assembly," wholly nullifying

(alterations in original).  The Third Circuit noted that the plaintiffs "alleged no injury to themselves as individuals[,]" and had not "been authorized to represent the interests of these institutions in court."  *Id.* at 314.  Finally, the Third Circuit noted that, under the theory presented by plaintiffs, "*any* individual legislator would have standing to challenge *any* federal statute or regulation . . . that, under the Constitution's Supremacy Clause, has a preemptive effect on state lawmaking. Article III does not sweep so broadly."  *Id.* at 315 (citation omitted).

Here, Plaintiffs attempt to circumvent the institutional injury issue by asserting that the Elections and Electors Clauses give them an "individual" right which they are seeking to vindicate.  However, as the descriptions of their alleged injuries make clear, they are seeking to vindicate injuries that would be suffered by the Legislature as a whole.[15]  Just as in the binding precedent described above,

---

"any present or future legislative action," depriving Commonwealth citizens of the "right to be governed by their duly-elected representatives," diluting the rights of the citizens of the Commonwealth "to choose their own officers for governmental administration," and diminishing the "legislative powers of the Senate Plaintiffs."  *Id.* at 313–14.

[15] For example, Plaintiffs allege that EO 14019 "nullifies the votes of the individual legislators, nullifies the enactment of the Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights, and jeopardizes candidates' rights to an election free from fraud and abuse."  (Doc. 18, ¶ 178.)  They allege the automatic voter registration announcement by Governor Shapiro "nullifies the votes and diminishes the influence of the individual legislators, nullifies the enactments of the State Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an election free from fraud and abuse."  (*Id.* at ¶ 215.)  And, they allege the HAVA directive by Secretary Schmidt "nullifies the votes and diminishes the influence of the individual legislators, nullifies the enactments of the State Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights in exercising constitutional

Plaintiffs here do not allege that they specifically, as individuals, are suffering a harm because of the executive actions at issue.  Rather, the harm is to the authority of the Pennsylvania General Assembly to establish the times, places, and manner of elections as provided by the Constitution.  Moreover, Plaintiffs claim that they, as "real persons who are part of an exclusive entity, the state legislature of Pennsylvania[, . . . have] a right to protect [their] individual [] constitutional rights and privileges to participate in making laws regarding the manner of elections []." (Doc. 44, p. 7.)  Just as the Third Circuit concluded in *Yaw*, this claim sweeps too broadly.  If every state legislator has an individual right to vindicate their right to "participate in making laws," then the standing requirement of a particularized injury would be rendered meaningless because *every* legislator would suffer an injury in the same way.  *See Yaw*, 49 F.4th at 314.

Further, there is no allegation that these specific Plaintiffs have suffered an injury that is any different than any other member of the Pennsylvania General Assembly.  Thus, Plaintiffs have alleged only an institutional injury resulting from "a general loss of legislative power[.]"  *Yaw*, 49 F.4th at 314.  Additionally, unlike in *Coleman*, Plaintiffs here have not suffered a complete nullification of their vote, such that they no longer can legislate in the election field.  Plaintiffs' argument that

---

powers specifically delegated to them, and jeopardizes candidates' rights to an election free from fraud and abuse."  (*Id.* at ¶ 223.)

they "have no ability to undo the executive actions through ordinary legislation[,]" and that the laws they already have passed "have been nullified and overridden by the executive actions[,]" overstates the matter, as none of the executive actions challenged in this case remove or divest any authority from the legislature in creating voting regulations within the state, such as in *Arizona*. Should the General Assembly wish to counter any of the alleged effects of the challenged executive actions, the executive actions do not constrain them from doing so. Moreover, as in *Arizona*, should the Pennsylvania General Assembly, as a whole, wish to challenge these executive actions as contrary to law and usurping its authority, the General Assembly may do so. However, these twenty-seven Plaintiffs, may not seek to vindicate that institutional injury without the approval of the institution. Therefore, Plaintiffs are seeking to assert an injury to the institutional rights of the Pennsylvania General Assembly, which they cannot do as individual legislators.[16]

---

[16] The court notes that there is no allegation that they have been authorized to undertake this action on behalf of the General Assembly as a whole. Plaintiffs argue that they have been "authorized' by the State to undertake litigation in a "class of cases" under *Va. House of Delegates*. (Doc. 45, p. 11.) Plaintiffs claim that Pennsylvania case law holding that legislators "are granted standing to challenge executive actions when specific powers unique to their functions under the constitution are diminished or interfered with[,]" shows that they have been authorized to litigate on the state's behalf in "a defined class of cases." (*Id.* (citing *Wilt v. Beal*, 363 A.2d 876, 881 (Pa. Commw. Ct. 1976) and *Va. House of Delegates*, 139 S. Ct. at 1952)). This is incorrect. The Supreme Court in *Va. House of Delegates* pointed to state statutes, such as in Indiana, where the legislature, through statute, had authorized itself to "employ attorneys other than the Attorney General to defend any law enacted creating legislative or congressional districts for the State of Indiana." 139 S. Ct. at 1952 (citing Ind. Code § 2-3-8-1 (2011)). Holding that a certain party has standing to pursue a certain case does not equate to the state authorizing that party to bring all actions on its behalf.

The court recognizes that Plaintiffs rely on *Kerr v. Hickenlooper*, 744 F.3d 1156 (10th Cir. 2014) ("*Kerr I*") to support their argument that an individual legislator has standing to challenge a specific law that "has stripped the legislature of its rightful power." *Id.* at 1167. However, as noted by State Defendants, although Plaintiffs state that the judgment in *Kerr I* was "vacated on other grounds," it was, in fact, vacated on the issue of standing after the Supreme Court decided *Arizona*. *See Hickenlooper v. Kerr*, 576 U.S. 1079 (2015). On remand, the Tenth Circuit looked again at the issue of whether individual legislator plaintiffs had standing to claim that a state constitutional amendment "deprive[d] them of their ability to perform the 'legislative core functions of taxation and appropriation.'" *Kerr v. Hickenlooper II*, 824 F.3d 1207, 1215 (10th Cir. 2016) ("*Kerr II*"). In *Kerr II*, the Tenth Circuit explicitly held that "the legislator-plaintiffs assert only an institutional injury, and thus lack standing to bring this action." Accordingly, the decision in *Kerr II* provides no support to Plaintiffs.

Finally, to the extent that Plaintiffs argue they have standing based on Pennsylvania law, this same argument was dismissed by the Third Circuit in *Yaw*. Whether it is true or not that individual legislators have standing under Pennsylvania law, the *Yaw* court held that "[t]he fact that a party has standing in state court does not mean that they have standing in federal court. . . . Article III standing 'limits the power of *federal* courts and is a matter of *federal* law. It does

not turn on state law, which obviously cannot alter the scope of the federal judicial power.'"  *Yaw*, 49 F.4th at 316 (citing *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 730–31 (7th Cir. 2020)).

Accordingly, the court concludes that, in reality, Plaintiffs allege an institutional injury to the power of the Pennsylvania General Assembly as a whole to legislate the times, places, and manner of elections.  As such, Plaintiffs, as individual legislators, do not have standing because they have not alleged any particular injury that is not also suffered by each member of the Pennsylvania General Assembly.

### B. Plaintiffs Lack Standing as Candidates

Plaintiffs also argue they have standing as candidates.  (Doc. 18, ¶¶ 169–173; Doc. 21, pp. 11, 12; Doc. 45, pp. 12–15).  Plaintiffs argue that "Defendants' actions collectively undermine the integrity of Pennsylvania's elections by introducing procedures that were not provided by the Legislature."  (Doc. 21, p. 12.)  They further argue that implementation of these executive actions results in "the pool of Pennsylvania voters [being] manipulated by legally unauthorized, deceptive practices, undermining the integrity of elections across the Commonwealth."  (Doc. 45, p. 15.)

Federal Defendants argue that this injury is not "certainly impending[,]" as required by Article III and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401

(2013), and the "Complaint contains no allegations describing how Plaintiffs'
candidacies will 'certainly' be harmed by the EO." (Doc. 41, p. 15.) State
Defendants argue that "Plaintiffs fail to identify any concrete or particularized way
that eligible electors registering to vote injures them in any of these [candidates,
citizens, taxpayers, and voters] capacities." (Doc. 42, p. 19 n.6)

The court agrees with the Federal and State Defendants that Plaintiffs have
not alleged any particular harm to their candidacies as a result of any executive
actions taken by any defendant. A vague, generalized allegation that elections,
generally, will be undermined, is not the type of case or controversy that this court
may rule on under Article III. *See Toth v. Chapman*, 2022 WL  821175, at * 7
(M.D. Pa. March 16, 2022.) Accordingly, Plaintiffs do not have standing as
candidates.[17]

## CONCLUSION

Plaintiffs do not have standing to assert the institutional injuries they raise
here. Plaintiffs argue they have been granted an "individual" right in the Electors
and Elections Clauses of the U.S. Constitution, but binding precedent obligates this
court to reject this argument. The injuries that Plaintiffs allege are suffered equally

---

[17] Plaintiffs also alleged they have standing as citizens, taxpayers, and voters. (Doc. 18, p. 29.)
As noted by both Defendants, these claims are entirely speculative, and Plaintiff does not argue
these bases of standing beyond their motion in support of preliminary injunction. (Doc. 41, p.
16; Doc. 47, p. 22 n.4.) Accordingly, the court concludes that Plaintiffs have not established
standings on any of these grounds either.

by each Pennsylvania legislator.  As such, Plaintiffs have not alleged any

individualized and particularized harm.  Accordingly, Plaintiffs do not have

standing to pursue their challenges to the executive actions at issue in this lawsuit,

and their amended complaint is dismissed.  An order follows.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania


Dated: March 26, 2024